**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| SYMETRA LIFE INSURANCE CO., *et al.*, | § § § |
| Plaintiffs, | § § § |
| VS. | §   CIVIL ACTION NO. H-05-3167 |
| RAPID SETTLEMENTS LTD., | § § § § |
| Defendant. | § |

**MEMORANDUM AND OPINION**

Two pending motions are addressed in this memorandum and opinion. First, the National Association of Settlement Purchasers (NASP) has moved to intervene under Rule 24 of the Federal Rules of Civil Procedure. (Docket Entry No. 19). Defendant Rapid Settlements, Ltd. has responded, (Docket Entry No. 26); the NASP has replied, (Docket Entry No. 28); and Rapid Settlements has surreplied, (Docket Entry No. 31). Second, Rapid Settlements has moved under Rule 19 to dismiss because indispensable parties cannot be joined or to require the joinder of additional parties. (Docket Entry No. 27). Plaintiffs Symetra Life Insurance Company and Symetra Assigned Benefits Service Company have responded opposing this motion. (Docket Entry No. 29).

Based on the pleadings, the motions and responses, and the applicable law, this court grants the NASP's motion for permissive intervention and denies the Rapid Settlements motion to dismiss or to require the joinder of additional parties. The reasons are explained

below.

**I.     Background**

This lawsuit concerns the funding and administration of primary and secondary structured settlement markets. When a structured settlement is used to settle a personal injury claim, the settling plaintiff contracts to exchange his tort claim in return for a promise by the defendant (or the defendant's insurer) to make future payments. The defendant usually assigns its obligation to make future payments to a third party, which funds the payment obligation by purchasing an annuity from a life insurance company. The market for transactions originating structured settlements to settle tort claims is referred to as the "primary market." The plaintiffs allege that they participate in the primary market for structured settlements. Symetra Assigned Benefits Service Company accepts assignments from settling defendants to make settlement payments. Symetra Life Insurance Company sells annuities to Symetra Assigned Benefits Service Company to finance the payment obligations.

Rapid Settlements participates in the secondary market by purchasing future payment streams from plaintiffs who have entered into structured settlement agreements. In the secondary market, companies such as Rapid Settlements purchase all or part of a tort plaintiff's contractual promise to receive future payments in return for a lump-sum payment, a secured loan, or another type of benefit. Companies that provide these "liquidity options" to tort claimants are referred to as funding companies. Many states, including Texas, have enacted "protection" statutes to regulate secondary market transfers of structured settlements.

These structured settlement transfer statutes generally require written disclosures and explanations of the nature of the transaction and require court approval. The Texas transfer statute requires that before a secondary market transaction can occur, a court must approve the transfer by finding that it is in the best interest of the payee, that the payee has been advised in writing to seek independent professional advice regarding the transfer, and that the transfer does not violate any applicable statute or order of any court or other governmental authority. TEX. CIV. PRAC. & REM. CODE §§ 141.001, 141.004. The purpose of the statutes is to protect the claimant/payee from overreaching by funding companies and to ensure that the decision to give up future payment streams in exchange for a present benefit is an informed decision.

In this suit, the plaintiffs allege that they have objected to a number of proposed transfers from settling plaintiffs on the ground that Rapid Settlements has failed to comply with state protection statutes. The plaintiffs allege that Rapid Settlements improperly circumvents statutory requirements for court approval for transfers from settling plaintiffs. Specifically, plaintiffs allege that Rapid Settlements "arbitrates" a transfer that it wishes to obtain, secures an "agreed arbitration award" that the settling plaintiff approved the transfer, and then submits such awards to courts in Houston for approval, even after courts in the state in which the settling plaintiff lived had rejected the transfer request. The plaintiffs seek a declaratory judgment that, among other things, no transfer to Rapid Settlements is effective absent court approval in accordance with the terms of the applicable state structured settlement transfer statutes; that the state statute in the state where a settling plaintiff lives

must be complied with; that the plaintiffs are not obligated to pay Rapid Settlements absent such court approval and are entitled to object to transfers as allowed by the applicable state statutes; and that the plaintiffs have no duty to perform any obligations not within its contracts with settling plaintiffs or to perform any act in connection with any proposed transfer to Rapid Settlements except as provided in the applicable state statutes. Finally, the plaintiffs seek an injunction preventing Rapid Settlements from bringing or pursuing any action in Texas to obtain a transfer of payment rights owing to residents of other states or to compel the plaintiffs to pay Rapid Settlements with respect to non-Texas residents other than by obtaining court approval in the state where such individuals do reside. (Docket Entry No. 13).

The NASP has moved to intervene to assert its own claims against Rapid Settlements. (Docket Entry No. 19). The NASP describes itself as a nonprofit trade association that "exists to educate the public about structured settlements; promote and support the secondary market; encourage sound, fair, and appropriate business practices in the secondary market; and support industry efforts in the courts and in the legislative arena." (*Id.* at 3). In its proposed complaint in intervention, the NASP alleges that use of arbitration by Rapid Settlements to circumvent transfer statutes violates those statutes. The NASP alleges that Rapid Settlements includes a right of first refusal and/or security interest in its secondary market transactions without seeking court approval, which violates transfer statutes in Texas and other states. The NASP alleges that Rapid Settlements obtains an unfair competitive advantage in the secondary market by using arbitration proceedings to avoid court approval

requirements under the state transfer statutes. The NASP seeks a declaratory judgment that Rapid Settlements violates the Texas transfer statute and similar statutes in other states; that Rapid Settlements must comply with the transfer statute of the state in which a particular payee resides; and that compliance specifically includes court approval for a right of first refusal and/or security interest in the secondary market transactions that Rapid Settlements enters. (*Id.*, Ex. A at 5).

## II.     Analysis

### A.     The Motion to Intervene

The NASP moves to intervene as of right under Rule 24(a) or, alternatively, permissively under Rule 24(b). Rule 24 provides:

> (a) Intervention of right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
>
> (b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.

The courts have interpreted Rule 24(a)(2) to require that: (1) the intervention application must be timely; (2) the applicant must have an interest relating to the property that is the subject of the action; (3) the applicant must be so situated that the disposition may, as a practical matter, impair or impede his ability to protect that interest; and (4) the

5

applicant's interest must be inadequately represented by the existing parties. *Sierra Club v. City of San Antonio*, 115 F.3d 311, 314 (5th Cir. 1997) (citing *Sierra Club v. Glickman*, 82 F.3d 106, 108 (5th Cir. 1996)).

"Rule 24(b)(2) provides for permissive intervention when (1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 n.2 (5th Cir. 1989). District courts should also consider whether the would-be intervenor is adequately represented by the existing parties and whether the intervenor's presence is likely to make a significant contribution to the development of the underlying factual issues. *Id*. at 189. While the discretion of district courts in granting motions to permissively intervene is wide, intervention should nevertheless be allowed "where no one would be hurt and greater justice could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (quoting *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970)); *Clements*, 884 F.2d at 189.

The parties agree that the NASP's motion to intervene is timely, satisfying the first element for intervention under either Rule 24(a) or (b). The second requirement for intervention as of right under Rule 24(a) is that the applicant have an interest in the subject matter of the action. *Espy*, 18 F.3d at 1207. The NASP asserts that it has a direct, substantial, and legally protectible interest in the contractual and business rights of its members, which are at risk should the court rule in favor of Rapid Settlements. Rapid

Settlements responds that the NASP's interest is "merely economic" and consequently does not meet the requirement of a direct, substantial, and legally protectible interest. *Piambino v. Bailey*, 610 F.2d 1306, 1321 (5th Cir. 1980).

The NASP represents members engaged in secondary market structured settlement transactions, in competition with Rapid Settlements. Their contractual and business rights will be directly affected by the outcome of this litigation, in which a court is asked to determine the legality of the alleged circumvention of court-approval requirements under state transfer statutes, whether Rapid Settlements can assert rights of first refusal and/or security interests without court approval, and whether the use of arbitration proceedings meets the court-approval requirement of the state transfer statutes. The NASP asserts that if Rapid Settlements is able to circumvent such statutes, it will gain a competitive advantage over the NASP members who comply with state laws.

Under the interest requirement, the substantive law must recognize the asserted interest as belonging to or owned by the prospective intervenor. *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir. 1984); *see also Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir. 1970) (stating that the rule requires an interest in the property or other rights that are at issue, provided the other elements of intervention are present). Courts have held that "[t]he threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest." *Utahns for Better Transp. v. U.S. Dept. of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002). The NASP has met the interest requirement for intervention as of right.

The NASP has also met the second element for permissive intervention, which requires that the intervention and main action have a common question of law or fact. Both the NASP and the Symetra plaintiffs claim that Rapid Settlements is improperly circumventing the court-approval requirements of state transfer statutes.

The third requirement for intervention as of right is that the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect his interest. *Espy*, 18 F.3d at 1207. The NASP argues that the effect of this litigation will impair its members' ability to protect their contractual and business rights in the secondary market. (Docket Entry No. 19 at 10). The Fifth Circuit has consistently held that if a court's ruling may adversely impact an intervenor's interest, the third requirement is satisfied. *Edwards v. City of Houston*, 78 F.3d 983, 1004–05 (5th Cir. 1996); *Espy*, 18 F.3d at 1207; *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1204 (5th Cir. 1992); *Atlantis Dev. Corp. v. United States*, 379 F.2d 818, 829 (5th Cir. 1967). Whether the alleged efforts by Rapid Settlements to circumvent court approval under state transfer statutes is a valid basis to obtain transfers of structured settlement payment rights and to obtain a right of first refusal and/or security interest in the settled payments assigned to it will directly affect the contractual and business interests of the NASP members. The third requirement for intervention as of right is satisfied.

Because the NASP demonstrates timeliness, interest, and impairment, Rule 24(a)(2) entitles it to intervene as of right unless that interest is adequately represented by existing parties. This burden is characterized as a "minimal" one of showing that representation may

be inadequate. *Espy*, 18 F.3d at 1207. Although the possibility that the interests of the applicant and the parties may diverge need not be great, this burden "cannot be treated as so minimal as to write the requirement completely out of the rule." *Edwards*, 78 F.3d at 1005 (internal quotation marks omitted). The Fifth Circuit has held that "'[w]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance.'" *Bush v. Viterna*, 740 F.2d 350, 355–56 (5th Cir. 1984) (quoting *Int'l Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967 (5th Cir. 1978)), *cert. denied*, 469 U.S. 1019 (1984).

The NASP argues that the Symetra plaintiffs cannot adequately represent its interests because its members are participants in the secondary structured settlement transfer market, while Symetra participates solely in the primary market. (Docket Entry No. 19 at 11). Rapid Settlements challenges this assertion. An excerpt from Symetra Financial's 2004 Annual Report states that in 2005, a Symetra affiliate will begin offering "a new service to structured settlement payees, allowing them to exchange future benefits for an immediate lump sum should they experience unanticipated life changes." (Docket Entry No. 31, Ex. 1 at 2). Rapid Settlements argues that because a Symetra affiliate is participating in the secondary market, the NASP does not represent a unique perspective.

The NASP also argues that its interests are inadequately represented by the Symetra entities because it alleges violations of state structured settlement protection statutes that the Symetra entities do not assert. The NASP specifically challenges the Rapid Settlements

9

practice of "claiming non-court approved rights of first refusal and/or security interests." (Docket Entry No. 19 at 11). Rapid Settlements responds that the Symetra plaintiffs' request for declaratory relief that "[n]o transfer to Rapid Settlements is effective absent court approval in accordance with the terms of the applicable protection Acts" seeks the same end. (Docket Entry No. 31 at 3). Although the Symetra plaintiffs and the NASP do not frame their challenges to the Rapid Settlements methods of obtaining structured settlement payment rights transfers in identical terms, the ultimate objective is the same: to obtain a declaration that no transfer to Rapid Settlements is effective absent court approval in accordance with the applicable state protection acts. A presumption of adequate representation arises when the would-be intervenor has the same ultimate objective as the existing party. *Edwards*, 78 F.3d at 1005. In such cases, the prospective intervenor must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption. *Id.* The NASP has not made this showing.

Although the NASP has not met the requirements for intervention as of right, it has amply satisfied the elements of permissive intervention under Rule 24(b). Permissive intervention "is wholly discretionary with the court." *New Orleans Pub. Serv., Inc.*, 732 F.2d at 470–71. In addition to timeliness and the presence of common legal and factual issues, the court may consider whether intervention will unduly delay the proceedings or prejudice the existing parties, whether the would-be intervenor is adequately represented by the existing parties, and whether the intervenor's presence is likely to make a significant contribution to the development of the underlying factual issues. While the discretion of

district courts in granting permissive intervention is wide, intervention should be allowed "where no one would be hurt and greater justice could be attained." *Espy*, 18 F.3d at 1205 (quoting *McDonald*, 430 F.2d at 1074); *Clements*, 884 F.2d at 189; FED. R. CIV. P. 24(b).

This case is at an early stage and intervention will neither delay the proceedings nor prejudice the existing parties. Although the NASP has not rebutted the presumption that the Symetra plaintiffs will provide adequate representation, the NASP has shown that its interests are not identical to those of the Symetra plaintiffs. The Symetra plaintiffs are primarily focused on the primary market and only recently entered the secondary market. The NASP is exclusively focused on the secondary market and has much greater experience with, and expertise about, this market than the Symetra plaintiffs. The NASP's presence is likely to make a significant contribution to the development of the underlying factual and legal issues. The NASP's motion for permissive intervention is granted.

### B.      The Motion to Dismiss or Add Parties

Rapid Settlements moves to dismiss under Rule 19(b) for lack of indispensable parties or to add parties. (Docket Entry No. 27). Rapid Settlements contends that the annuitants who could be affected by this court's rulings are indispensable parties who must be added or the case dismissed. The Symetra plaintiffs assert that the annuitants are neither necessary nor indispensable and that their joinder is not required. (Docket Entry No. 29).

Rule 19 provides for the joinder of persons who should be parties to a suit. *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1308 (5th Cir. 1986). Rule 19(a) provides:

> (a) Persons to be Joined if Feasible. A person who is subject to service of

> process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.  If the person has not been so joined, the court shall order that the person be made a party.  If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff.  If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

In a diversity action, if a person cannot be joined without defeating diversity jurisdiction, a "court should determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." FED. R. CIV. P. 19(b); *see also Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80, 84 (5th Cir. 1997); *Sandefer Oil & Gas, Inc. v. Duhon*, 871 F.2d 526, 529 (5th Cir. 1989).  "Under the flexible joinder rules, pragmatic concerns rather than conclusory labels control."  *Moreau v. Oppenheim*, 663 F.2d 1300, 1309 (5th Cir. 1981) (internal quotation marks omitted), *cert. denied*, 458 U.S. 1107 (1982).

To determine whether an absent party is indispensable, a court focuses on the four factors set out in Rule 19(b):

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

FED. R. CIV. P. 19(b).

The burden is on Rapid Settlements to show that the relief plaintiffs seek requires the joinder of the annuitants. *Boundy v. Dolenz*, 3:96cv0301-G, 2002 WL 1160075, at *5 (N.D. Tex. May 30, 2002). Rapid Settlements has not met this burden. Rapid Settlements has not shown that complete relief cannot be granted in the absence of the annuitants. Nor has Rapid Settlements shown that the annuitants are so situated that the disposition of this action may as a practical matter impair or impede their ability to protect their interests in structured settlement agreements. As the Symetra plaintiffs point out, the declaratory and injunctive relief they seek is directed at Rapid Settlements, not the annuitants. The Symetra plaintiffs do seek a declaratory judgment that they have no duty "to perform any obligation not contained within any contract with a Settled Plaintiff, or to examine its records, answer any question or furnish any information to Rapid or to any Settled Plaintiff with respect to any proposed transfer to Rapid except as expressly provided in any applicable Protection Act." (Docket Entry No. 13, ¶ 27). To the extent this raises any concern that the ability of annuitants whose payment rights Rapid Settlements seeks to purchase to protect their interests may be impaired or impeded, any judgment could be tailored to address only whether Rapid Settlements, and not annuitants, has the right to obtain information from the Symetra entities.

Rapid Settlements cites Section 11 of the Uniform Declaratory Judgments Act, which states that all persons who claim any interest which would be affected by the declaration shall be made parties, and several Texas state court cases applying this joinder rule. (Docket Entry

No. 27 at 2). This argument does not take into account the established rule that in a diversity case, the question of joinder is one of federal law. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 125 n.22 (1968). Although state-law questions may arise in determining the nature of the interest held by a person who is not a party, the question whether a federal court may proceed without joining that person as a party under Rule 19(b) is a federal-law question. *Id*.

The motion to dismiss or add parties under Rule 19 is denied.

### III.     Conclusion

The motion to intervene filed by the NASP is granted; the motion to dismiss or add parties filed by Rapid Settlements is denied.

SIGNED on August 16, 2006, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge