# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| SYMETRA LIFE INSURANCE CO., *et al.*, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-05-3167 |
| RAPID SETTLEMENTS LTD., | § § | |
| Defendant. | § § | |

## MEMORANDUM AND ORDER

This case involves the secondary market in structured settlements. In this market, tort claimants who settled by entering into structured settlements transfer some or all of their future payments to a "factoring company" in exchange for a discounted lump sum paid in the present. The legislatures of forty-three states, including Texas, saw a potential for abuse in these secondary-market transactions and enacted paternalistic statutes regulating them. These statutes typically require the factoring company fully to disclose the effect of the proposed transfer and require a state-court judge affirmatively to approve it as in the best interests of the settling tort claimant.

Most litigation involving the secondary market in the annuities used to fund structured settlements has involved antiassignment clauses that the issuer invokes to protest a proposed transfer.[1] This case involves a different issue. This case involves the use of arbitration

---

[1] *See, e.g., W. United Life Assurance Co. v. Hayden*, 64 F.3d 833, 842–43 (3d Cir. 1995) (validating an assignment of payment rights); *Liberty Life Assurance Co. of Boston v. Stone St. Capital, Inc.*, 93 F. Supp.

provisions in the proposed transfer agreements.   The agreements are between a transferee/factoring company known as Rapid Settlements Ltd. and tort claimants who obtained structured settlements funded by annuities issued by the plaintiffs, Symetra Life Insurance Co. and Symetra Assigned Benefits Service Co.   Symetra Assigned Benefits Service Co. accepts assignments of structured settlement obligations from defendants in personal injury cases.   Symetra Assigned Benefits Service Co. meets its obligations by purchasing annuities from, among others, Symetra Life Insurance Co., which issues annuities to fund structured settlements.

Symetra alleges that Rapid Settlements has used the arbitration clauses in the proposed transfer agreements to obtain the right to future-payment streams from the annuitants, even though either: (1) a state judge had disapproved the proposed transfer under the applicable state structured settlement protection statute; or (2) Rapid Settlements has not pursued or obtained state-court approval under the applicable statute.   Instead, Rapid

---

2d 630, 638 (D. Md. 2000) (voiding an assignment of structured settlement rights); *Grieve v. Gen. Am. Life Ins. Co.*, 58 F. Supp. 2d 319, 324 (D. Vt. 1999) (enforcing an antiassignment provision because it was unambiguous and bargained for); *Johnson v. Structured Asset Servs., L.L.C.*, 148 S.W.3d 711 (Tex. App.—Dallas 2004, no pet.) (holding an assignment of settlement rights valid and not against public policy). Much of the scholarly literature to date has also focused on the assignability of structured settlements. *See* Adam F. Scales, *Against Settlement Factoring? The Market in Tort Claims Has Arrived*, 2002 WIS. L. REV. 859; John Krahmer, *Anti-Assignment Clauses and Structured Settlements Under Revised Article 9*, 56 CONSUMER FIN. L.Q. 25 (2002); Gregory Scott Crespi, *Selling Structured Settlements: The Uncertain Effect of Anti-Assignment Clauses*, 28 PEPP. L. REV. 787 (2001).  Courts interpret antiassignment clauses in one of four ways.  Some courts view the clauses as failing to bar assignments.  Other courts interpret the antiassignment clauses as "enforceable promises made by the obligee but not as bars to effective assignments," resulting in enforceable assignments subject to a breach of contract claim remedied through a damage award.  Courts also view the clauses as making attempted assignments ineffective, with the result that attempted assignments do not breach the contract.  Finally, courts may view these clauses as making an attempted assignment an act that terminates the entire contract, resulting in a breach of contract that discharges the obligor from further performance.  Crespi, *supra*, at 794–95.  Most cases follow either the second or third approach.  *Id.* at 795.

Settlements obtains arbitration awards in Texas against the annuitants, many of whom live out-of-state.   Rapid Settlements invokes the arbitration clause by asserting that the prospective transferor has breached the proposed transfer agreement by, for example, failing to repay an advance payment or "loan."   In the arbitrations, Rapid Settlements typically alleges a right to recover its own attorneys' fees and costs as well as "damages" for the asserted breach of the proposed transfer agreements.   The arbitration proceedings are generally held in Houston, Texas, with the annuitant participating by telephone, before an arbitrator chosen by Rapid Settlements.   The awards are usually "agreed to."   The awards have the effect of transferring all or most of the future income stream under the annuity to Rapid Settlements as the remedy for the asserted breach of the proposed transfer agreement. Rapid Settlements then files a petition in Texas state court to enter a final judgment confirming the award.

According to Symetra, although Rapid Settlements gives it notice of the arbitration proceeding, its involvement has proven futile because the arbitrator routinely enters an award notwithstanding Symetra's objection.   Rapid Settlements then asserts that Symetra's participation in the arbitration waived any right to challenge the award in subsequent proceedings.   Symetra also alleges that Rapid Settlements delays giving Symetra notice of court filings seeking to confirm arbitration awards until it is too late for Symetra to prevent or challenge the confirmation.   The resulting judgments purport to require Symetra as the company issuing the annuity to make the future payments to Rapid Settlements rather than to the annuitant.   Symetra challenges the use by Rapid Settlements of such contractual

3

arbitration provisions to effect a transfer of future-payment rights without the state-court review and approval required by state structured settlement protection statutes.  Symetra seeks a preliminary injunction preventing Rapid Settlements from using arbitration to obtain awards and state-court judgments confirming those awards to transfer a Symetra annuitant's future-payment rights if a state court has either disapproved or has not approved the transfer under the applicable state structured settlement protection statute.  (Docket Entry Nos. 32 & 36).[2]

Rapid Settlements responds that Symetra cannot show a right to relief on the merits. Rapid Settlements argues that:  the arbitration provisions in its agreements with proposed transferees are valid; the FAA preempts any state structured settlement protection act requirement that would preclude arbitration; and any objection Symetra wishes to assert to the arbitration must be presented to the arbitrator or in the state-court proceeding to confirm the award, not to this federal court.  Rapid Settlements also asserts that Symetra cannot show irreparable harm that would justify a preliminary injunction.  Finally, Rapid Settlements asserts that Symetra has unclean hands and is attempting to harm a competitor in the secondary market (which Symetra has recently entered, in addition to its long-standing and extensive presence in the primary market).  Rapid Settlements complains that it has not been able to conduct discovery as to its assertion that Symetra has unclean hands.

This court held a hearing on Symetra's application for a preliminary injunction.  Both

---

[2] Symetra originally requested relief as to its annuitants who reside outside Texas.  (Docket Entry No. 13 at 10).  It amended its request to include Texas residents as well.  (Docket Entry No. 32).

parties have submitted extensive supplemental briefs.  Based on the pleadings, the motions and responses, the parties' submissions, and the applicable law, this court grants Symetra's application for a preliminary injunction in part and denies it in part.  The reasons are explained below.

## I.      Background

### A.      The Legislation Related to the Structured Settlement Secondary Market

As noted, the state structured settlement protection acts generally require written disclosures and explanations of the nature of the transaction and require court approval.  The purpose of the statutes is to protect the claimant/payee from overreaching by factoring companies and to ensure that the decision to give up future-payment streams in exchange for a present discounted benefit is informed and voluntary.  The Texas Structured Settlement Protection Act, for example, requires that before a secondary market transfer can occur, a court must approve the transfer by finding that it is in the best interests of the payee, that the payee has been advised in writing to seek independent professional advice regarding the transfer, and that the transfer does not violate any applicable statute or order of any court or other governmental authority.  TEX. CIV. PRAC. & REM. CODE § 141.004.  The purpose of the "best interests" finding is to make sure that the payee does not give up his or her right to the future-income stream in exchange for a much smaller present payment, unless there is good reason for the transaction.  *Settlement Capital Corp. v. BHG Structured Settlements, Inc.*, 319 F. Supp. 2d 729, 734 (N.D. Tex. 2004).  "This maintains the purpose and reason for the structured settlement while at the same time allowing for changed circumstances that may

warrant exchanging future income for current income." *Id.*

State structured settlement protection statutes typically require that the party seeking approval of the transfer serve written disclosures on all interested parties before the hearing to consider whether the proposed transfer is in the best interests of the proposed transferor and meets the other statutory requirements for approval. *See, e.g.*, TEX. CIV. PRAC. & REM. CODE § 141.006(b).[3]  Interested parties include the annuity issuer and any other party with continuing rights or obligations under the structured settlement. *Id.* § 141.002(7).  Interested parties are entitled to "support, oppose, or otherwise respond to the transferee's application,

---

[3] Section 141.006(b) provides:

> At least 20 days before the date of the scheduled hearing on any application for approval of a transfer of structured settlement payment rights under Section 141.004, the transferee shall file with the court and serve on all interested parties a notice of the proposed transfer and the application for authorization, including with the notice:

> (1)  a copy of the transferee's application;

> (2)  a copy of the transfer agreement;

> (3)  a copy of the disclosure statement required under Section 141.003;

> (4)  a listing of each of the payee's dependents, together with each dependent's age;

> (5)  notice that any interested party is entitled to support, oppose, or otherwise respond to the transferee's application, either in person or by counsel, by submitting written comments to the court or by participating in the hearing; and

> (6)  notice of the time and place of the hearing and notification of the manner in which and the time by which written responses to the application must be filed to be considered by the court.

TEX. CIV. PRAC. & REM. CODE § 141.006(b)(5).

either in person or by counsel, by submitting written comments to the court or by participating in the hearing."  *Id.* § 141.006(b)(5).

In 2002, Congress enacted legislation directed at reinforcing the state protection acts. Under this legislation, the Internal Revenue Code imposes a forty percent federal excise tax on any party that acquires payment rights in a "structured settlement factoring transaction" that does not receive court approval required by an applicable statute.  26 U.S.C. § 5891(a). The statute excepts from the tax transactions that are approved in advance by a "qualified order."  26 U.S.C. § 5891(b).  A "qualified order" is defined as

> a final order, judgment, or decree which (A) finds that the transfer . . . (i) does not contravene any Federal or State statute or the order of any court or responsible administrative authority, and (ii) is in the best interest of the payee, taking into account the welfare and support of the payee's dependents, and (B) is issued (i) under the authority of an applicable State statute by an applicable State court, or (ii) by the responsible administrative authority (if any) which has exclusive jurisdiction over the underlying action or proceeding which was resolved by means of the structured settlement.

26 U.S.C. § 5891(b)(2).  The Internal Revenue Code exemption requirements dovetail with and implement the two primary requirements for an effective transfer under the state structured settlement protection acts:  the proposed transfer must be in the payee's best interests and must be affirmatively approved by a state court under the applicable state structured settlement protection statute.

## B.    The Evidence as to How Rapid Settlements Uses Arbitration

The record shows that Rapid Settlements enters into proposed transfer agreements

with tort claimants who have settled their claims using structured settlements, including

claimants who have annuities issued by Symetra.  These proposed transfer agreements have

some variations in language, but generally purport to transfer the annuitant's future-payment

right to Rapid Settlements in exchange for an "Assignment Price."  The proposed transfer

agreements include the following (or similar) language on the first page:

> This Transfer Agreement is subject to court approval.  A court
> must approve Assignor's (the annuitant's) sale, assignment, and
> transfer to Rapid Settlements of the Assigned Payments before
> such payments can be transferred and the Assignment
> Price . . . paid to Assignor.  However, the approval process does
> not pertain to any non-structured settlement payment rights
> under this Agreement.  The Final Order shall state that the court
> at least has made all findings required by applicable law, and
> that Annuity Owner and Annuity Issuer are authorized and
> directed to pay the Assigned Payments to Rapid Settlements, it
> successors and, or assigns.  Assignor and Rapid Settlements
> agree to proceed in good faith to obtain court approval of this
> Transfer Agreement.

(Docket Entry No. 36, Ex. A-1).[4]

The proposed agreements also contain a "Further Assurances" clause, which states:

> Assignor shall fully cooperate with Rapid Settlements, including
> making any court appearances as reasonably requested by Rapid
> Settlements in obtaining the court order and/or acknowledgment
> referred to above and in the taking of or performing any and all
> acts necessary to facilitate the objectives of this Agreement.

---

[4] The transfer agreements for each of the Symetra annuitants in this case differ slightly, but each contains this provision or similar language.  The exact language differs slightly from agreement to agreement.  These agreements are found in various places in the record:  some are attached as exhibits to Symetra's supplement to its motion for a preliminary injunction, (Docket Entry No. 36); others can be found in a binder of Symetra's exhibits to the preliminary injunction hearing, (Symetra Binder); and others are attached to Rapid Settlements's Notice of Recent Actions, (Docket Entry No. 80), and Post-TRO Hearing Brief, (Docket Entry No. 82).

> Assignor shall execute any additional documents as Rapid Settlements may reasonably request. Assignor shall immediately endorse and forward to Rapid Settlements, as applicable, any Assigned Payment which may be made out to Assignor or which Assignor receives.

(*Id.*).

The proposed transfer agreements also contain a paragraph entitled "Covenants; Conditions Precedent to Rapid Settlement's Obligations." This paragraph states:

> Assignor covenants that each of the representations and warranties made herein continue to be true as and of the date(s) of payment of the Assignment Price by Rapid Settlements. Except as may be expressly waived in writing by Rapid Settlements, Rapid Settlements' obligation to pay all or any portion of the Assignment Price is subject to: (i) the representations and warranties made herein being true when made and as and of the date(s) the Assignment Prices is paid; and (ii) Rapid Settlements having received the approval of a court for the sale and assignment contemplated in this Agreement. Assignor acknowledges that Rapid Settlements has no obligation to pay Assignor until Assignee obtains the Final Order. Additionally, Assignee's obligations to pay the Assignment Price hereunder are subject to the receipt and approval by Assignee of all documentation related to: (i) the Periodic Payment (e.g., the annuity contract, the settlement agreement and the related court order); and (ii) any prior transfer by Assignor of any Periodic Payments.

(*Id.*).

The proposed transfer agreements also have broad arbitration clauses, as follows:

> This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Texas. Any dispute or disagreement arising under this Agreement of any nature whatsoever including but not limited to those sounding in constitutional, statutory, or common law theories as to the performance of any obligations, the satisfaction of any rights,

9

and/or the enforceability hereof, shall be resolved through demand by any interested party to arbitrate the dispute and shall submit the same to a nationally recognized, neutral, arbitration association for resolution pursuant to its single arbitrator, expedited rules. . . . The arbitration decision shall be final and binding in all respects and shall be non-appealable. Any person may have a court of competent jurisdiction enter into its record the findings of such arbitrators for all purposes, including for the enforcement of the award. In any event, the parties to this Agreement hereby waive the right to trial by jury in any action or proceeding instituted with respect to this Agreement.

(*Id.*).

The agreements also contain a severability clause, which states: "If any provision of this Agreement is found to be invalid or unenforceable, the validity or enforceability of any other provision of this Agreement shall not be affected thereby." (*Id.*).

The proposed transfer agreements end with a merger clause and, just above the signature line, the following statement: "This Agreement shall take effect on the date on which it is last executed by either party. ASSIGNOR SHALL HAVE THE RIGHT TO CANCEL THIS AGREEMENT WITHIN THREE (3) BUSINESS DAYS OF ASSIGNOR'S EXECUTION." (*Id.*).

Symetra has submitted documents relating to seven of its annuitants, who entered into proposed transfer agreements with Rapid Settlements and as to whom Rapid Settlements invoked arbitration provisions. In these arbitration proceedings, Rapid Settlements asserted breaches of the proposed transfer agreements signed by the annuitants. To remedy the alleged breach, and to recover its attorneys' fees and costs, Rapid Settlements sought, directly or indirectly, to require the transfer of all or part of the annuitant's future-payment

rights.  Before Rapid Settlements invoked the arbitration clauses, a state-court judge had expressly refused to approve the proposed transfer under the applicable state structured settlement protection statute or Rapid Settlements had not pursued such approval.  As to some of these annuitants, Rapid Settlements has taken the arbitration award to a state court and sought confirmation and the entry of final judgment.  Rapid Settlements then sought to use the arbitration award or the judgment confirming the arbitration award to effect the transfer of all or part of the future-payment stream under the annuities, despite the absence of court approval for such a transfer under the applicable state structured settlement protection statute.

The seven annuitants are Candy Ann Richardson, Paul Patterson, Kenneth Gross, Thomas Remedies, Mary Foreman, Leslie Dean, and Robert Hargette.  In the preliminary injunction application, Symetra asked this court to enjoin Rapid Settlements from seeking to enforce the arbitration awards or the judgments confirming those awards against Symetra with respect to these seven annuitants pending the permanent injunction hearing.  Symetra also asked this court to enjoin Rapid Settlements from pursuing any additional arbitrations with Symetra annuitants to effect a transfer of all or part of the future-payment stream if state-court approval under the applicable state protection act has not been obtained, pending the permanent injunction hearing.

The facts set out in the record as to each of the seven annuitants are described below.

### 1.    *Candy Ann Richardson*

In 1991, Candy Ann Richardson settled claims against General Motors Corporation

11

relating to a 1989 accident.  The settlement agreement provided that Richardson would receive $1,081 per month guaranteed for 20 years, from June 14, 1995 to May 14, 2015, then $1,081 per month from June 14, 2015 for the remainder of Richardson's life.  General Motors purchased an annuity from Symetra to fund the settlement.  Symetra began making payments to Richardson.  Rapid Settlements entered into a proposed transfer agreement with Richardson to receive a portion of the future-payment rights on November 1, 2004.  Rapid Settlements was to receive $581 of each of Richardson's monthly payments of $1,081 from December 14, 2001 until May 14, 2015, and $581 of each of Richardson's monthly payments of $1,081 from June 15, 2015 through May 14, 2042.  (Docket Entry No. 32, Ex. 1).  These future-payments had a discounted present value of $69,646 when Richardson and Rapid Settlements signed the proposed transfer agreement.  Rapid Settlements agreed to pay Richardson a lump sum of $11,200 in exchange for the right to a large part of each future monthly payment.

Rapid Settlements sought approval of this proposed transfer agreement under the Texas Structured Settlement Protection Act.  In November 2004, Rapid Settlements filed a motion for approval of the proposed transfer in the state court in Dallas County, Texas, where Richardson resides.  The state court found that the transfer was not in Richardson's best interests because she was not married, had three dependent children, did not have a job, had no means of support other than her structured settlement payments, and owed significant medical and credit card bills.  The state court refused to approve the proposed transfer until Richardson had complied with a number of conditions.  The court required  Richardson to

12

finish her college education, pay down her debts, and clean up her credit before the transfer would be approved. The state court dismissed the petition to have the transfer approved in December 2005 because Richardson had failed to meet the conditions that it had set in 2004.

In February 2006, Rapid Settlements sent Richardson a letter invoking the arbitration clause in the November 1, 2004 proposed transfer agreement. (Docket Entry No. 32, Ex. 2). Rapid Settlements alleged that Richardson had breached the agreement by failing to meet the state court's conditions for approving the transfer. Rapid Settlements asked the arbitrator to garnish Richardson's payments under the annuity or, alternatively, to enforce the transfer agreement in its entirety. Rapid Settlements provided Symetra with notice of the arbitration. Symetra did not participate.

The arbitration hearing was conducted on March 14, 2006 in Houston, Texas. Richardson participated by telephone. The arbitrator found that Richardson had breached the November 1, 2004 proposed transfer agreement by failing to achieve the requirements the state court set as conditions for approving the transfer under the Texas Structured Settlement Protection Act. Richardson did not contest the findings or the award. The arbitrator issued his "Agreed Award" on April 6, 2006. The award stated that the transfer complied with all the substantive and procedural requirements of the Texas Structured Settlement Protection Act. The award stated that Richardson would receive the "fair-market value" of the transferred portion of the structured settlement payments—$11,200—and that the transfer was in her best interests. The arbitrator ordered Symetra to pay Rapid Settlements the amount identified in the transfer agreement. Rapid Settlements was to

13

receive $581 of each of Richardson's monthly payments of $1,081 from December 14, 2001 until May 14, 2015, and $581 of each of Richardson's monthly payments of $1,081 from June 15, 2015 through May 14, 2042.  The arbitrator ordered Rapid Settlements to pay Richardson the purchase price for transferring the future payments, $11,200, as provided in the proposed transfer agreement.  The arbitrator found that Symetra's interest in the arbitration was "in the nature of a stakeholder similar to that in an interpleader action. [Symetra does not] hold any substantive right to the proceeds."  (Docket Entry No. 32, Ex. 2).  The arbitrator also found that Symetra will "bear no relevant or material burden whatsoever by changing the address on its computer records and paying the monies as ordered herein to Rapid's assignee rather than to Richardson."  (*Id.*).

At some point between the issuance of the arbitration award on April 6, 2006 and April 24, 2006, Rapid Settlements filed a petition in the state court in Harris County, Texas seeking a final judgment confirming the arbitrator's award.  According to Symetra, Rapid Settlements did not serve or otherwise provide notice of the filing.  On April 24, 2006 the state court entered an "agreed" final judgment confirming the arbitration award.  The final judgment ordered Symetra to issue a formal acknowledgment that the structured settlement payments would be made to Rapid Settlements.

Under Texas law, a state trial court loses authority to alter or vacate a final judgment 30 days after it is issued.  TEX. R. CIV. P. 329b(d).  A notice of appeal must be filed within 30 days of the entry of judgment if no motion for a new trial is filed.  TEX. R. APP. P. 26.3.  Rapid Settlements sent Symetra a letter enclosing a copy of the final judgment on May 22,

2006, two days before the trial court's authority over it expired and two days before the notice of appeal was due.  Symetra asserts that this was the first notice of the final judgment it received.  Symetra asserts that as a result of the delayed notice, it did not have an opportunity to ask the state court to alter or vacate the judgment or to appeal.

### 2.    *Paul Patterson*

On January 3, 2005, Rapid Settlements entered into a transfer agreement with Symetra annuitant Paul Patterson.  The agreement proposed to transfer Patterson's future-payment rights.  Patterson's annuity provided him $1250 each month beginning on April 5, 1996 for the remainder of his life, with a 180-month guarantee.  (Symetra Binder 2.1).  Under the proposed transfer, Rapid Settlements would receive "[s]ixty-Three (63) monthly payments each in the amount of $1250 beginning on January 5, 2006 through and including March 5, 2011."  These payments had a present value of $68,614.  In return, Patterson would receive $50,500.

On January 17, 2006, Rapid Settlements sought state-court approval of the proposed transfer by Paul Patterson of his structured settlement annuity.  Rapid Settlements filed the request for approval in Guadalupe County, Texas.  Patterson is an Iowa resident.  Symetra received notice of the application for approval and timely objected on February 15, 2006.  Rapid Settlements took no additional action in the Guadalupe County court or in another court to obtain approval of the proposed transfer of Patterson's future annuity payments under a state structured settlement protection act.  Instead, on June 15, 2006, Rapid Settlements filed an arbitration demand against Patterson, invoking the clause in the proposed

transfer agreement Patterson had signed on January 3, 2005.  Rapid Settlements alleged that Patterson had breached his proposed transfer agreement by failing to return $1,000 advanced to him before applying for court approval of the proposed transfer and by selling the future payments to a third party.  (Symetra Binder 2.3).

In the arbitration, Rapid Settlements sought enforcement of the proposed transfer agreement as the remedy for Patterson's asserted breach.  The arbitration hearing took place on July 20, 2006 in Houston, Texas.  (Docket Entry No. 80, Ex. A).  On August 3, 2006, the arbitrator issued an agreed award.  The arbitrator stated that Rapid Settlements had given Symetra notice of the arbitration but that Symetra did not attend.  Patterson and counsel participated by telephone from Iowa.  The arbitrator found in favor of Rapid Settlements and approved a garnishment of Patterson's right to future payments in exchange for a present lump sum.  The arbitrator stated as follows:

> Patterson breached the foregoing agreement with Rapid.  The parties herein have agreed to settle their dispute upon the following terms and conditions: (i) Rapid shall pay to Patterson the amount of $40,00.00 in cash and (ii) Patterson shall pay to Rapid the amount of $68,750 ("Damages").  The net amount of $28,750.00 due to Rapid may be paid in cash by Patterson to Rapid by August 31, 2006.  If not paid, the following payments otherwise due to Patterson under the Annuity Contract No. AA0697021 are hereby garnished and transferred to Rapid's assignee, which constitutes the financial equivalent (time value adjusted) of the Damages:

>> Sixty-Three (63) monthly payments each in the amount of $1250 beginning on January 5, 2006 through and including March 5, 2011 (hereinafter the "Garnished Payments").

(Docket Entry No. 80, Ex. A).  The arbitrator ordered Patterson to pay Rapid Settlements $28,750 in cash by August 21, 2006 and ordered Symetra to deliver Patterson's structured settlement payments to Rapid Settlements as follows:  "Sixty-Three (63) monthly payments each in the amount of $1250 beginning on January 5, 2006 through and including March 5, 2011."  (*Id.*).  The arbitrator ordered Rapid Settlements to pay Patterson a lump sum of $40,000.  The arbitrator found that Symetra's interest in the arbitration was "in the nature of a stakeholder similar to that in an interpleader action. [Symetra does not] hold any substantive right to the proceeds."  (*Id.*).  The arbitrator also found that Symetra will "bear no relevant or material burden whatsoever by changing the address on its computer records and paying the monies as ordered herein to Rapid's assignee rather than to Patterson."  (*Id.*).

Rapid Settlements sought confirmation of the arbitration award in a Texas county court at law.  That court confirmed the award and entered a final judgment on August 11, 2006.  (Docket Entry No. 80, Ex. A).  Rapid Settlements did not serve Symetra or otherwise provide notice of the filing of the petition to confirm the award.  (Docket Entry No. 80 at 2).  As a result, Symetra had no opportunity to seek judicial review of its challenges to the arbitration award.

### 3.    *Kenneth Gross*

Kenneth Gross holds a Symetra-issued annuity under which he has received or will receive 480 monthly payments of $3,000 per month beginning on October 1, 1996; a lump sum $150,000 payable on September 1, 2006; and a lump sum payment of $250,000 payable on September 1, 2011.  (Symetra Binder 3.6).  In November 2005, Gross's monthly payments

17

were reduced by court-approved garnishments to 321 Henderson (another secondary-market participant) of $1,000 through November 1, 2007 and $500 through January 1, 2009.  As a result, Gross was receiving $1,500 per month after the November 2005 garnishment order.

Gross entered into four separate transfer agreements with Rapid Settlements: one on August 9, 2004, one on February 9, 2005, and two on March 28, 2005.  (Docket Entry No. 82, Exs. B–E).  Rapid Settlements sought approval of the August 2004 proposed transfer agreement in an Indiana court under that state's structured settlement protection act.  The Indiana court rejected the proposed transfer on December 20, 2004.  Gross then entered into the February 9, 2005 proposed transfer agreement with Rapid Settlements and another proposed transfer agreement with 321 Henderson.  Rapid Settlements invoked the arbitration clauses in these two agreements.  Rapid Settlements asserted that by entering into the agreement with 321 Henderson, Gross had breached the right-of-first-refusal provisions in the February 9, 2005 proposed transfer agreement.  Gross then cancelled the agreement with 321 Henderson and entered into the two March 2005 proposed transfer agreements with Rapid Settlements.  In satisfaction of the alleged breach of the August 2004 and February 2005 agreements, Rapid Settlements pressed forward with the arbitration in Harris County, seeking the arbitrator's approval of the future-payment transfers set out in the two March 2005 agreements as a remedy for the alleged breach.

The August 9, 2004 proposed transfer agreement provided that Rapid Settlements would receive the following:

> Twenty-seven (27) monthly payments each in the amount of $1500 out of the monthly payment of $3000 beginning on July 1, 2004 through and including September 1, 2006; one (1) lump sum payment in the amount of $75,000 out of the lump sum payment of $150,000 due and payable on September 1, 2006; Twenty-eight (28) monthly payments each in the amount of $1500 out of the monthly payment of $3000 beginning on October 1, 2006 through and including January 1, 2009; and One hundred twenty-five (125) monthly payments each in the amount of $2000 out of the monthly payment of $3000 beginning on February 1, 2009 through and including June 1, 2019.

(Docket Entry No. 82, Ex. B).

The February 9, 2005 proposed transfer agreement provided for the following transfer to Rapid Settlements:

> Thirty-three (33) monthly payments each in the amount of $2000 out of $3000 beginning on March 1, 2005 through and including November 1, 2007; one (1) lump sum payment in the amount of $150,000 due and payable on September 1, 2006; fourteen (14) monthly payments each in the amount of $2500 out of $3000 beginning on December 1, 2007 through and including January 1, 2009; three hundred thirty-two (332) monthly payments each in the amount of $3000 beginning on February 1, 2009 through and including September 1, 2036; and one (1) lump sum payment in the amount of $250,000 due and payable on September 1, 2011.

(Docket Entry No. 82, Ex. C).

The first March 28, 2005 proposed transfer agreement provided for the following transfer to Rapid Settlements:

> Eighteen (18) monthly payments each in the amount of $1500 out of the monthly payment of $3000 beginning March 1, 2005 through and including August 1, 2006; one (1) lump sum payment in the amount of $150,000 due and payable on

19

> September 1, 2006; fourteen (14) monthly payments each in the
> amount of $1500 out of the monthly payment of $3000
> beginning on October 1, 2006 through and including November
> 1, 2007; fourteen (14) monthly payments each in the amount of
> $2500 out of the monthly payment of $3000 beginning on
> December 1, 2007 through and including January 1, 2009; and
> thirty-one (31) monthly payments each in the amount of $3000
> beginning on February 1, 2009 through and including August 1,
> 2011.

(Docket Entry No. 82, Ex. D).

The second March 28, 2005 proposed transfer agreement between Gross and Rapid

Settlements provided that the following structured settlement payments would be made to

Rapid Settlements:

> Eighteen (18) monthly payments each in the amount of $500 out
> of the monthly payment of $3000 beginning on March 1, 2005
> through and including August 1, 2006; one (1) monthly payment
> in the amount of $2000 out of the monthly payment of $3000
> due and payable on September 1, 2006; fourteen (14) monthly
> payments each in the amount of $500 out of the monthly
> payment of $3000 beginning on October 1, 2006 through and
> including November 1, 2007; one (1) lump sum payment in the
> amount of $250,000 due and payable on September 1, 2011; and
> three hundred one (301) monthly payments each in the amount
> of $3000 beginning on September 1, 2011 through and including
> September 1, 2036.

(Docket Entry No. 82, Ex. P).  As to this March 28, 2005 proposed transfer agreement, the

payments totaled $1.171 million and had a discounted present value of $601,065.  In return

for these payment rights, Rapid Settlements would pay Gross a lump sum of $197,400.[5]

---

[5] The record is incomplete as to the aggregate values, discounted present values, and amounts that
Rapid Settlements would pay Gross under the August 9, 2004, February 9, 2005, and first March 28, 2005
proposed transfer agreements.

An arbitrator in Harris County, Texas issued an agreed award on May 25, 2005. (Symetra Binder 3.7).  Symetra had notice of the arbitration but did not participate except to file a written objection to the arbitrator's jurisdiction over it, stating, "Symetra is not a party to this arbitration." (*Id.*).  The arbitrator stated that he had the authority to rule on Symetra's objection and further noted that Symetra's position in the arbitration was that of a stakeholder in an interpleader action and that Symetra had no right to the proceeds of the award.  The arbitrator also stated that Symetra's substantive rights were unaffected by the arbitration proceedings.  The arbitrator concluded "that under a theory of equitable estoppel which would bind nonsignatories to an arbitration agreement and because Symetra's issues are inextricably intertwined with those of Rapid and Gross, that Symetra's rights in the Assigned Payments, to the extent that such exist other than as a stakeholder simply obligated to make the Assigned Payment to a third party, are not affected; only the actual party to whom Symetra is to pay the Assigned Payments is at issue." (*Id.*).  The arbitrator did not rule on his jurisdiction over Symetra, but instead severed that issue from the remainder of the proceedings.  Gross and his attorney appeared by telephone from Indiana.

The arbitrator noted that Gross would receive consideration at the present fair-market value for his future settlement payments and that the transfer was in his best interests, observing that both Gross and his wife were employed, could meet current financial obligations, and that the money would be used to pay for improvements in his business and to pay off debts.  The arbitrator ordered Symetra to pay Gross's structured settlement payments to Rapid Settlements.  The order combined the payments provided for in the March

21

28, 2005 agreements:

> Eighteen (18) monthly payments each in the amount of $1500 out of the monthly payment of $3000 beginning March 1, 2005 through and including August 1, 2006; one (1) lump sum payment in the amount of $150,000 due and payable on September 1, 2006; fourteen (14) monthly payments each in the amount of $1500 out of the monthly payment of $3000 beginning on October 1, 2006 through and including November 1, 2007; fourteen (14) monthly payments each in the amount of $2500 out of the monthly payment of $3000 beginning on December 1, 2007 through and including January 1, 2009; and thirty-one (31) monthly payments each in the amount of $3000 beginning on February 1, 2009 through and including August 1, 2011. Eighteen (18) monthly payments each in the amount of $500 out of the monthly payment of $3000 beginning on March 1, 2005 through and including August 1, 2006; one (1) monthly payment in the amount of $2000 out of the monthly payment of $3000 due and payable on September 1, 2006; fourteen (14) monthly payments each in the amount of $500 out of the monthly payment of $3000 beginning on October 1, 2006 through and including November 1, 2007; one (1) lump sum payment in the amount of $250,000 due and payable on September 1, 2011; and three hundred one (301) monthly payments each in the amount of $3000 beginning on September 1, 2011 through and including September 1, 2036.

(Symetra Binder 3.7). The arbitrator ordered Rapid Settlements to pay Gross the amounts

due under the March 28, 2005 agreements once the award was domesticated in an Indiana

court.

A Harris County, Texas state court entered an agreed final judgment confirming the

arbitration award two days later, on May 27, 2005. The final judgment adopted the language

of the agreed award and ordered Symetra to make annuity payments to Rapid Settlements.

Rapid Settlements tried to domesticate the Texas judgment in Indiana state court in Posey

County on June 1, 2005, but that court denied the domestication.  Symetra asserts that it did not receive notice of the application for, nor issuance of, the final judgment confirming the award in the Harris County court until more than thirty days after it had issued.  Symetra nonetheless asked that court to vacate the final judgment on the basis that the arbitration could not circumvent the requirements of the Texas Structured Settlement Protection Act. On July 19, 2005, the Harris County court vacated its earlier-issued final judgment confirming the arbitration award.  Rapid Settlements then sought mandamus relief from a Texas appellate court.  The First Court of Appeals held that when the trial court vacated its judgment, it lacked plenary power to do so, making the vacateur void.  The appellate court refused to order enforcement of the judgment as to Symetra, however, because Symetra had not received notice within the time that would have permitted it to challenge Rapid Settlements's effort to confirm the award or appeal from the final judgment confirming the award.

Meanwhile, Kent Neimeier, who had a $112,800.06 judgment against Gross, sought to garnish certain annuity payments from Symetra to satisfy his judgment.  On November 2, 2005, an Indiana court approved Niemeier's garnishment of $112,800.06 from Gross's scheduled $150,000 September 1, 2006 lump-sum payment from Symetra.  (Symetra Binder 3.6).  On August 25, 2006, counsel for Rapid Settlements sent a letter to Symetra demanding that it comply with the Harris County, Texas arbitration award and the final judgment confirming that award, rather than the Indiana court's garnishment order.  Symetra has refused, citing the Indiana court's garnishment order and the Texas appellate court's order

23

reversing the trial court's vacateur of the judgment confirming the arbitration award but declining to enforce that judgment against Symetra.

On November 28, 2006, Rapid Settlements obtained another arbitrator's order enforcing the May 25, 2005 award and May 27, 2005 judgment confirming that award. (Docket Entry No. 82, Ex. O). This arbitration hearing occurred on November 14, 2006 in Harris County, Texas before the same arbitrator who presided over the May 2005 arbitration. Rapid Settlements's representatives appeared in person at this arbitration, while Gross and his counsel appeared by telephone. Symetra, JG Wentworth (another secondary-market participant), and counsel for Kent Niemeier were given notice of this proceeding but did not appear. At the hearing, Rapid Settlements represented that it was not receiving any payments from Symetra under the May 2005 award. Gross testified that he was receiving his $1,500 monthly payments from Symetra. Rapid Settlements testified that Symetra had admitted in this court that it was holding the September 1, 2006 $150,000 payment, which it had not paid to Niemeier, Gross, or Rapid Settlements. The arbitrator found that Niemeier was in privity with Gross because he acquired his rights through Gross and was bound by the terms of the May 2005 award and judgment. The arbitrator also honored the agreement between Gross and Rapid Settlements that would allow Gross to continue receiving the $1,500 monthly payments until the resolution of the case, on the condition that Rapid Settlements would receive a dollar-for-dollar credit for these payments if it received a favorable outcome. The arbitrator enjoined Gross and "all persons with notice of this Award" from interfering with the terms of the May 2005 award. (Docket Entry No. 82, Ex. O). The arbitrator also ordered

24

Rapid Settlements to depose Gross, Niemeier, and their respective attorneys to determine whether they had "defrauded" the May 2005 award. The arbitrator scheduled another hearing on January 5, 2007.

*4.*     *Thomas Remedies*

Rapid Settlements sought state-court approval of its proposed transfer of Thomas Remedies's future Symetra annuity payments in Louisiana, under the Louisiana structured settlements protection act. Remedies is a Louisiana resident. The proposed transfer agreement was dated May 3, 2005 and provided for the following transfer to Rapid Settlements:

> Twelve (12) monthly payments each in the amount of $450 out of the monthly payment of $500 beginning May 21, 2008 through and including April 21, 2009; fifty-eight (58) monthly payments each in the amount of $75 out of the monthly payment of $500 beginning May 21, 2009 through and including February 21, 2014; and two hundred thirty-seven (237) monthly payments each in the amount of $450 out of the monthly payment of $500 beginning on March 21, 2014 through and including November 21, 2033.

(Docket Entry No. 36, Ex. A-2). In return, Rapid Settlements was to pay Remedies the lump sum amount of $13,850.[6]

Symetra objected to the proposed transfer in the Louisiana court. Rapid Settlements took no further action to obtain that court's approval. Instead, Rapid Settlements filed an arbitration demand against Remedies. Rapid Settlements asserted that Remedies had

---

[6] No discounted present value appears in the record.

breached the proposed transfer agreement by failing to return $500 that Rapid Settlements had advanced before seeking the Louisiana court's approval of the proposed transfer. In the arbitration, Rapid Settlements sought repayment of the advanced amount along with its costs and attorneys' fees or, alternatively, enforcement of the proposed transfer agreement. Rapid Settlements provided Symetra with notice of the arbitration, but Symetra did not appear. (Docket Entry No. 47, Ex. 18).

The arbitration took place in Houston, Texas on July 26, 2006. Remedies participated by telephone. The arbitrator found that the transfer was in Remedies's best interests and that the requirements for transfer under the Louisiana structured settlement protection act were met. The arbitrator found that Symetra's interest in the arbitration was "in the nature of a stakeholder similar to that in an interpleader action. [Symetra does not] hold any substantive right to the proceeds." (Docket Entry No. 47, Ex. 18). The arbitrator also found that Symetra will "bear no relevant or material burden whatsoever by changing the address on its computer records and paying the monies as ordered herein to Rapid's assignee rather than to Remedies." (*Id.*).

Rapid Settlements filed a petition to have a Harris County, Texas court confirm the arbitration award. Symetra asserts that it did not receive service or notice of Rapid Settlements's petition to confirm the award. The Harris County court entered a final judgment confirming the arbitration award and ordering Symetra to begin paying Remedies's settlement payments to Rapid Settlements. (Docket Entry No. 47, Ex. 19). On November 22, 2006, Rapid Settlements notified this court that it had reached a settlement agreement

26

with Symetra as to the Remedies matter.  (Docket Entry No. 80 at 4–5).

>    5.    *Mary Foreman*

Rapid Settlements and Mary Foreman entered into a proposed transfer agreement on August 9, 2004, under which Rapid Settlements would receive Foreman's future annuity payments.  Foreman's annuity payments consisted of a $325,362 lump-sum payment; $1,000 per month from December 1, 1996 through June 1, 2005; and $789 per month, beginning on July 1, 2005, guaranteed for 10 years, increasing at 3% annually, and payable thereafter for Foreman's life.  The proposed transfer agreement provided for Rapid Settlements to receive the following:

> Six (6) monthly payments each in the amount of $942.11 beginning on January 11, 2012 through and including June 1, 2012; and Thirty-Six (36) monthly payments each in the amount of $970.37, both sets of payments subject to a 3% annual increase each July 1st, beginning on July 1, 2012 through and including June 1, 2015, ultimately increasing to $1029.47 per month.

(Symetra Binder 4.2).  These payments had an aggregate total of $41,645 and a discounted present value of $26,999.  In exchange, Rapid Settlements was to pay Foreman the lump sum of $10,500.

Rapid Settlements applied for and received approval of the proposed transfer in Illinois state court under the Illinois structured settlements protection act.  Foreman is an Illinois resident.  On June 8, 2006, the Illinois appellate court reversed the trial court's order and rejected the proposed transfer.  On June 20, 2006, Rapid Settlements sent an arbitration demand to Foreman invoking the arbitration clause in the proposed transfer agreement.

27

Rapid Settlements alleged that Foreman breached that agreement by refusing to return a $7,875 advance that Rapid Settlements had provided before the Illinois appellate court rejected the proposed transfer.

In the arbitration, Rapid Settlements sought recovery of the advanced amount along with its fees and costs or, in the alternative, enforcement of the proposed transfer agreement. (Docket Entry No. 47, Ex. 7).  Symetra received notice of the arbitration but did not appear. The arbitration took place in Harris County, Texas; Foreman appeared by telephone.

The arbitrator ordered Foreman to pay $9,875 in cash (the advance plus attorneys' fees) by August 31, 2006.  Rapid Settlements was ordered to pay Foreman $1,000.  The arbitrator also awarded Rapid Settlements a "garnishment" of Foreman's future settlement payments as provided in the proposed transfer agreement.  This award appears to conflict with the parties' agreed settlement, which provided that Foreman would pay Rapid Settlements the $9,875 in cash by August 31, 2006, and in the event that did not occur, Rapid Settlements would garnish Foreman's payments.  The arbitrator found that Symetra's interest in the arbitration was "in the nature of a stakeholder similar to that in an interpleader action. [Symetra does not] hold any substantive right to the proceeds."  (*Id.*).  The arbitrator also found that Symetra will "bear no relevant or material burden whatsoever by changing the address on its computer records and paying the monies as ordered herein to Rapid's assignee rather than to Foreman."  (*Id.*).

Rapid Settlements claims that a Texas state court entered judgment confirming the arbitration award, but the record does not contain a copy of that judgment.  (Docket Entry

28

No. 55, Ex. A).  Nor does the record indicate whether Symetra received notice of any filing to confirm the arbitration award.

### 6. & 7.        *Leslie Dean & Robert Hargette*

On July 29, 2004 and July 12, 2004 Rapid Settlements entered into proposed transfer agreements with Leslie Dean and Robert Hargette, respectively, to receive their future-payment streams under Symetra annuities.  Dean's annuity payments were as follows: $3,000 on July 28, 1994; $10,000 on July 28, 1997; $15,000 on July 28, 2000; $25,000 on July 28, 2003; $30,000 on July 28, 2006; $40,000 on July 28, 2009; $45,000 on July 28, 2012; $55,000 on July 28, 2015; and $65,691 on July 28, 2018.  Dean's proposed transfer agreement called for the transfer of a lump-sum payment of $40,000 due on July 28, 2009 to Rapid Settlements in exchange for the payment of $19,000.  (Symetra Binder 5.2).  Dean's $40,000 payment due in 2009 had a discounted present value of $31,917.

Hargette's annuity pays him $549 monthly for life.  Hargette's proposed transfer agreement provided for the transfer of "Fifty-Seven (57) monthly payments in the amount of $549 beginning on August 1, 2004 through and including April 1, 2009" to Rapid Settlements, in exchange for the payment of $21,355.  (Symetra Binder 6.2).  The record does not contain any information as to discounted present value of the future payments.

Rapid Settlements sought approval of the proposed transfers from a Washington state court, under that state's structured settlement protection act.  Dean and Hargette are North Carolina residents.  North Carolina's structured settlement protection act provides that approval of a transfer can be obtained from a court in the state where the annuitant resides

29

or in the state where the structured settlement obligor maintains its principal place of business.  Symetra's principal place of business is in King County, Washington.  Symetra objected to the proposed transfers in the King County trial court.  That court approved the proposed transfers and Symetra appealed.  A Washington state appellate court consolidated the cases and reversed the trial court approvals.

On August 1, 2006, Rapid Settlements filed arbitration demands against Dean and Hargette, asserting that they had breached the proposed transfer agreements by refusing to return money Rapid Settlements had advanced before the Washington appellate court rejected the transfers.  Rapid Settlements had advanced Dean $14,250 and Hargette $11,273.25.  Symetra was given notice of the arbitration hearing, which was set for August 31, 2006 in Houston, Texas.  Rapid Settlements states that it sought to garnish the future-payment streams to recover the advanced money plus costs and attorneys' fees.  The record contains no additional information concerning the results of the arbitration or whether a Texas state court was asked to enter judgment confirming an award.

### C.    The Preliminary Injunction Issues

A court must consider four factors in deciding whether to grant a preliminary injunction:  whether the plaintiff is likely to prevail on the merits; whether the plaintiff will be irreparably harmed if the injunction does not issue; whether the defendant will be harmed if the injunction does issue; and whether the public interest will be served by the injunction. *ICEE Distribs., Inc. v. J & J Snack Foods Corp.*, 325 F.3d 586, 597 n.34 (5th Cir. 2003) (citations omitted).

30

Symetra moves for a preliminary injunction prohibiting Rapid Settlements from invoking the arbitration provisions in proposed transfer agreements with Symetra annuitants to obtain, directly or indirectly, a transfer of all or part of the future annuity payments, unless and until a state court has approved the proposed transfer under the applicable state structured settlement protection statutes.

Symetra alleges that Rapid Settlements is using arbitration to circumvent the state protection statutes and their requirement of court approval for proposed transfers and to prevent annuity issuers such as Symetra from objecting to such improper conduct. Symetra asserts that by obtaining such orders, Rapid Settlements interferes with Symetra's contractual relationships with its payees and exposes Symetra to the risk of competing demands for payment. Symetra points to the *Gross* case as an example of conflicting court orders. Symetra also asserts that because the court orders obtained by Rapid Settlements violate the state structured settlement protection act requirements, they may not protect Symetra from conflicting demands based on collateral challenges to such orders.

Rapid Settlements has asserted a number of objections to the arguments Symetra raises. Rapid Settlements asserts that if the state structured settlement protection acts are viewed as precluding arbitration, the Federal Arbitration Act preempts. Rapid Settlements also argues that there is no inconsistency between the state structured settlement protection acts and its use of arbitration to resolve disputes arising out of a breach of contract and to obtain damages that are not "transfers" governed by the state statutes. Rapid Settlements also asserts that Symetra cannot challenge the arbitrations or judgments confirming the awards

31

in a federal court but must do so in the arbitration proceedings or the state-court confirmation proceedings. Each of these arguments is examined below.

## II.     The Likelihood of Success on the Merits

This court must determine whether Symetra is likely to succeed on the merits of its claim that such arbitration proceedings and awards, and the judgments purporting to confirm them are improper because they circumvent and undermine the state protection acts.

### A.     Is There an Agreement to Arbitrate?

Symetra argues that the use of arbitration proceedings to circumvent or attempt to replace the state structured settlement protection acts' requirement of court approval of a proposed transfer is improper because there is no arbitration agreement in effect absent such court approval. Rapid Settlements asserts that whether there is a valid arbitration agreement is an argument that should be presented to the arbitrator, not to a federal court. The question is whether the challenge is to the validity of the arbitration agreements—which is for the arbitrator to decide—or the existence of the arbitration agreements—which is for the court to decide.

Validity has to do with whether a contract that meets contract-formation requirements is enforceable. Whether a contract exists depends on whether the requirements for contract formation are met. *See, e.g.*, *Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362 (2d Cir. 2003) (refusing to order arbitration because the signature on the agreement was not genuine); *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851 (11th Cir. 1992) (refusing to compel arbitration when one party had not signed the agreement containing the arbitration clause).

Similarly, a contract may impose conditions that must be met before the contract is formed. *See, e.g.*, *Castroville Airport, Inc. v. City of Castroville*, 974 S.W.2d 207, 210 (Tex. App.—San Antonio 1998, no pet.) (citing *Hohenberg Bros. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976)). A court must determine whether a contract containing an arbitration clause exists before an arbitrator has the authority to decide a dispute that appears to be within the scope of that clause. *Will-Drill Resources, Inc. v. Samson Resources Co.*, 352 F.3d 211, 219 (5th Cir. 2003). "Generally under the FAA, state law governs whether a litigant agreed to arbitrate, and federal law governs the scope of an arbitration clause." *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005); *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1077–78 (5th Cir. 2002) (same), *opinion supplemented on denial of rehearing*, 303 F.3d 570 (5th Cir. 2002). "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotations omitted). An arbitrator may not determine his or her own jurisdiction. *Smith Barney Shearson, Inc. v. Boone*, 47 F.3d 750, 752 (5th Cir. 1995).

The Supreme Court has recently examined whether a court or an arbitrator is to decide the gateway questions of whether there is an arbitration agreement in place, whether it is valid, and whether it covers the disputed issues. In *Buckeye Check Cashing, Inc. v. Cardegna*, 126 S. Ct. 1204 (2006), the Court stated that challenges to the "validity of arbitration agreements 'upon such grounds exist at law or in equity for the revocation of any contract' can be divided into two types": those that challenge the validity of the arbitration agreement

33

itself and those that challenge the validity of the contract as a whole on a ground that affects the entire agreement or because one of the contract's provisions makes the entire contract invalid. *Buckeye*, 126 S. Ct. at 1208. A court is to decide challenges to the arbitration clause itself. An arbitrator is to determine challenges to the validity of the contract. *Id.* at 1209; *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 396–97 (5th Cir. 2006).

The Court recognized a third category of issues as well, that of the existence—as opposed to the validity—of the contract. The Court stated:

> The issue of the contract's validity is different from the issue of whether any agreement between the alleged obligor and obligee was ever concluded. Our opinion today addresses only the former, and does not speak to the issue decided in the cases cited by respondents (and by the Florida Supreme Court), which hold that it is for courts to decide whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal, and whether the signor lacked the mental capacity to assent.

*Id.* at 1208 n.1. Whether a contract was formed despite the failure of a condition precedent is in the category of "challenges to the making of an agreement to arbitrate" that are for a court, rather than an arbitrator, to decide. *See, e.g.*, *Copeland v. KB Home*, No. Civ. A. 3:03-CV-227-L, 2004 WL 1778949, at *3 (N.D. Tex. Aug. 4, 2004).

A court must first determine if there is an agreement to arbitrate. *Will-Drill*, 352 F.3d at 218. In *Will-Drill*, the party resisting arbitration attacked the existence of the contract of sale on the basis that not all of the parties to whom the offer was made signed the sale agreement. *Id.* at 212. The resisting party contended that no contract ever existed because the offer's material terms were not accepted (*i.e.*, to purchase the property of all the sellers),

making the acceptance by some of the sellers a counteroffer under state contract law. *Id.* at

215.  Because no contract existed, the arbitrator had no authority over the matter. *Id.*  The

Fifth Circuit agreed, vacated the district court's order compelling arbitration, and remanded

the case for a determination of whether a contract existed. The court stated:

> We reject the argument that where there is a signed document containing an arbitration clause which the parties do not dispute they signed, we must presume that there is a valid contract and send any general attacks on the agreement to the arbitrator.  The base point to which the analysis inevitably returns is that the separability doctrine rests on the assumption that there is an underlying agreement.  That one of the parties later disputes the enforceability of that *agreement* does not change the fact that at some point in time, the parties reached an agreement, and that agreement included the decision to arbitrate disputes arising out of the agreement.  The existence of this agreement provides the arbitrator with the authority required to decide whether the agreement will continue to exist.  Even if the arbitrator concludes that the agreement was void, and the parties are returned to their pre-agreement positions *as if* the agreement never existed, the agreement existed long enough to give the arbitrator the power to decide the dispute.
>
> In contrast, where the very existence of an agreement is challenged, ordering arbitration could result in an arbitrator deciding that no agreement was ever formed.  Such an outcome would be a statement that the arbitrator *never* had any authority to decide the issue.  A presumption that a signed document represents an agreement could lead to this untenable result.  We therefore conclude that where a party attacks the very existence of an agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute.

*Id.* at 218–19 (citations omitted).  The Supreme Court approvingly noted this distinction in

*Buckeye*.  126 S. Ct. at 1208 n.1.  The Court stated that "[t]he issue of the contract's validity

is different from the issue of whether any agreement between the alleged obligor and obligee

was ever concluded." *Id.* (adding that the *Buckeye* opinion only addressed the validity issue).

In determining whether an agreement to arbitrate exists, courts generally apply state-law principles of contract formation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Courts may not invalidate arbitration agreements under state laws that apply only to arbitration provisions and not to all contracts as a whole. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281 (1995) ("What states may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause."). Courts may apply state law if that law governs issues regarding the validity, revocability, and enforceability of contracts generally. *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) ("[S]tate law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of [the Federal Arbitration Act] § 2."); *accord Will-Drill*, 352 F.3d at 218 ("Where the very existence of any agreement is disputed, it is for the courts to decide at the outset whether an agreement was reached, applying state-law principles of contract.").

Symetra alleges that "Rapid has violated the Texas Structured Settlement Protection Act, which requires court review of proposed transfers and court approval before any transfer is effective." (Docket Entry No. 32 at 2–3). Symetra asserts that under both the state structured settlement protection acts and the language in the proposed transfer agreements

36

containing the arbitration clauses Rapid Settlements invokes, court approval is a condition precedent to the existence of the agreement, not merely its validity.

Under Texas law, to determine whether a condition precedent exists, the court must ascertain the parties' intention. *Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990); *see also Lopez v. Munoz, Hockema, & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000). "A condition precedent may be either a condition to the formation of a contract or to an obligation to perform under an existing agreement." *Castroville Airport, Inc.*, 974 S.W.2d at 210 (citing *Hohenberg Bros.*, 537 S.W.2d at 3). A condition precedent to contract formation means that no binding contract exists until the condition has occurred or has been performed. *Parkview General Hosp., Inc. v. Eppes*, 447 S.W.2d 487, 490–91 (Tex. Civ. App.—Corpus Christi 1969, writ ref. n.r.e.); *In re Hudgins*, 188 B.R. 938, 942 (Bnkr. E.D. Tex. 1995) (citing *Fred v. Ledlow*, 309 S.W.2d 490 (Tex. Civ. App.—San Antonio 1958); *Shaper v. Gilkison*, 217 S.W.2d 878 (Tex. Civ. App.—Austin 1949, writ ref. n.r.e.); *Couch v. Stewart*, 200 S.W.2d 642 (Tex. Civ. App.—Galveston 1947, no writ)); 13 WILLISTON ON CONTRACTS § 38:7 (4th ed. 1990) ("[W]here the parties to a proposed contract have agreed that the contract is not to be effective or binding until certain conditions are performed or occur, no binding contract will arise until the conditions specified have occurred or been performed."). Conditions precedent to an obligation to perform are those acts or events taking place after a contract is formed, which must occur before there is a right to enforce performance and before there can be a breach of contractual duty. *Gulf Constr. Co. v. Self*, 676 S.W.2d 624, 628 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.) (citing

37

*Hohenberg Bros.*, 537 S.W.2d at 3).

The Texas Structured Settlement Protection Act is typical of other state structured settlement protection acts in stating that "no direct or indirect transfer of structured settlement payment rights shall be effective and no structured settlement obligor or annuity issuer shall be required to make any payment directly or indirectly to any transferee of structured settlement payment rights unless the transfer has been approved in advance in a final court order." TEX. CIV. PRAC. & REM. CODE § 141.004.[7]   Rapid Settlements's proposed transfer agreements track this requirement:

> This Transfer Agreement is subject to court approval.  A court must approve Assignor's sale, assignment, and transfer to Rapid Settlements of the Assigned Payments before such payments can be transferred and the Assignment Price . . . paid to Assignor. The Final Order shall state that the court at least has made all findings required by applicable law, and that Annuity Owner and Annuity Issuer are authorized and directed to pay the Assigned Payments to Rapid Settlements, its successors and, or assigns.

(Docket Entry No. 32, Ex. 1).  The proposed agreements also prominently state the following

---

[7] Other state protection acts contain similar language.  *See* ALASKA STAT. § 09.60.200(a) (2003); ARIZ. REV. STAT. ANN. § 12-2902(A) (2003); CAL. INS. CODE § 10139.5 (West 2004); COLO. REV. STAT. ANN. § 13-23-104 (West 2003); CONN. GEN. STAT. ANN. § 52-225i (West 2003); DEL. CODE ANN. tit. 10, § 6601 (2002); FLA. STAT. ANN. § 626.99296(3)(a) (West 2004); GA. CODE ANN. § 51-12-71(a) (2002); IDAHO CODE § 28-9-109 (2004); 215 ILL. COMP. STAT. ANN. 153/15 (West 2004); IND. CODE ANN. § 34-50-2-5 (West 2004); IOWA CODE ANN. § 682.4(1) (West 2004); KY. REV. STAT. ANN. § 454.431 (West 1999); LA. REV. STAT. ANN. § 9:2715(B) (2004); ME. REV. STAT. ANN. tit. 24, § 2243(2) (2000); MD. CODE ANN., CTS. & JUD. PROC. § 5-1102(b) (West 2002); MASS. GEN. LAWS ANN. ch. 231C, § 2(a) (West 2003); MINN. STAT. ANN. § 549.31 (West 2004); MISS. CODE ANN. § 11-57-7 (2003); MO. ANN. STAT. § 407.1062 (West 2001); NEB. REV. STAT. § 25-3104 (2002); NEV. REV. STAT. § 42.030 (2003); N.J. STAT. ANN. § 2A:16-66 (West 2004); N.Y. GEN. OBLIG. LAW § 5-1706 (McKinney 2004); N.C. GEN. STAT. § 1-543.12 (2003); OHIO REV. CODE ANN. § 2323.581 (West 2003); OKLA. STAT. ANN. tit. 12, § 3241 (West 2004); 40 PA. CONS. STAT. § 4003 (2004); R.I. GEN LAWS § 27-9.3-4 (2002); S.C. CODE ANN. § 15-50-40 (2003); S.D. CODIFIED LAWS § 21-3B-3 (2004); TENN. CODE ANN. § 47-18-2603 (2001); UTAH CODE ANN. § 78-59-104 (2002); VA. CODE ANN. § 59.1-476 (2001); WASH. REV. CODE ANN. § 19.205.030 (West 2004); W. VA. CODE § 46A-6H-3 (1999).

in capital letters on the first page:

> NOW THEREFORE IN CONSIDERATION THEREOF, SUBJECT TO THE OTHER TERMS AND CONDITIONS STATED HEREIN, RAPID SETTLEMENTS AGREES TO PAY TO ASSIGNOR, AND ASSIGNOR AGREES TO ACCEPT AS FULL AND COMPLETE PAYMENT FROM RAPID SETTLEMENTS, THE "ASSIGNMENT PRICE" (SEE SECTION 2 BELOW).

(*Id.*).   In a section labeled "Covenants; Conditions Precedent to Rapid Settlements' Obligations," the proposed transfer agreements provide:

> Except as may be expressly waived in writing by Rapid Settlements, Rapid Settlements' obligation to pay all or any portion of the Assignment Price is subject to: . . . (ii) Rapid Settlements having received the approval of a court for the sale and assignment contemplated in this Agreement.   Assignor acknowledges that Rapid Settlements has no obligation to pay Assignor until Assignee obtains the Final Order.

(*Id.*).  The proposed transfer agreements contain a "Further Assurances" section, in which the annuitant promises to "fully cooperate with Rapid Settlements . . . in obtaining the court order . . . and in the taking of or performing any and all acts necessary to facilitate the objectives of this Agreement."   (*Id.*).   The proposed transfer agreements also contain a severability clause—which provides that if any part of the agreement should be found invalid, its invalidity does not affect the validity of the rest of the agreement—and a three-day right-of-recission clause.

The phrases "subject to," "a court must approve . . . before," and the "obligation to pay . . . is subject to" clearly indicate that court approval is a condition precedent.  *See Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987); *Broughton Assocs. Joint*

*Venture v. Boudreaux*, 70 S.W.3d 324, 328 (Tex. App.—Waco 2002, no pet.); *Castroville Airport, Inc.*, 974 S.W.2d at 210.  The question is whether court approval is a condition precedent to the contract's existence or rather a condition precedent to Rapid Settlements's obligation to pay and to a prospective transferor's ability and obligation to transfer his or her annuity rights or interest.

The purpose of the proposed transfer agreement is to transfer payment rights in exchange for a lump-sum payment.  But the agreement also contains promises by the proposed transferor to perform tasks necessary to pursue the desired transfer, including "fully cooperat[ing] with Rapid Settlements" and "execut[ing] any additional documents as Rapid Settlements may reasonably request."  (Docket Entry No. 32, Ex. 1).  The proposed transfer agreements clearly state that Rapid Settlements's obligation to pay and the annuitant's right and obligation to assign are "subject to" a court approving the transfer agreement.  The agreements do not state that "all obligations under this contract" are subject to court approval.  To the contrary, the proposed transfer agreements state that "the approval process does not pertain to any non-structured settlement payment rights under this Agreement."  (Docket Entry No. 32, Ex. 1).  The terms of the agreements lend support for finding that court approval is a condition precedent to Rapid Settlements's obligation to pay and to the transferor's ability and obligation to transfer his or her future-payment rights, rather than a condition precedent to the existence of the contract itself.

The three-day right-of-recission clause also supports this result.  That clause provides that the agreement will take effect once both parties sign the document and allows the

annuitant to cancel without penalty for three days following the effective date. This provision does not state that the annuitant has three days to cancel after a court approves the proposed transfer. Rather, the contract states that a proposed transferor may rescind the entire contract three days after signing and that a court must approve the proposed transfer before Rapid Settlements is obligated to pay or the transferor is obligated to assign any future-payment rights.

In *Sun Exploration*, the Texas Supreme Court found that the language stating "15 days after sight and upon approval of title" on the face of a bank draft made approval a condition precedent to the formation of a contract. *Sun Exploration & Prod. Co.*, 728 S.W.2d at 37. Similarly, in *Broughton*, a Texas appellate court found that the statement "On approval of lease or mineral deed described hereon, and on approval of title to same by drawee not later than 15 banking days after arrival of this draft at collecting bank" made the approvals conditions precedent to the contract's formation. *Broughton Assocs. Joint Venture*, 70 S.W.3d at 328. In *Castroville Airport*, a Texas appellate court analyzed whether a contract provision requiring city council approval of a settlement agreement between the city and a party with whom it had a dispute was a condition precedent to formation of the contract to settle. *Castroville Airport, Inc.*, 974 S.W.2d at 208–09. That court held that the city council's approval was a condition precedent to formation and found that the settlement document signed by the city's agent and the other party was not a contract until council approval was obtained. *Id.* at 210.

The contracts in these cases did not impose any obligations for performance other than

41

the duties subject to approval by a third party.  The Rapid Settlements proposed transfer agreements do impose obligations that precede and are separate from the assignment of and payment for future-payment rights.  For example, the proposed transfer agreements state that "[a]ssignor shall fully cooperate with Rapid Settlements . . . [and] execute any additional documents as Rapid Settlements may reasonably request."  (Docket Entry No. 32, Ex. 1).

A Texas appellate court has analyzed this issue.  In *In re Rapid Settlements, Ltd.*, 202 S.W.3d 456 (Tex. App.—Beaumont 2006, no pet. h.), the court interpreted the court-approval requirement in the Texas Structured Settlement Protection Act and in the Rapid Settlements transfer agreements as a condition precedent to the existence of any contract.  That court reasoned that because the required state-court approval had not been obtained, the transfer agreement—including the arbitration provision—never came into existence.  *Id.* at *3 ("Because the agreement is not effective until the trial court approves the transfer in a final order, and it is undisputed that no such order exists, there is no agreement to arbitrate.").  As a result, the Federal Arbitration Act did not apply because no agreement to arbitrate was formed until the protection act requirements had been fulfilled.  The court denied Rapid Settlements's request for mandamus relief, affirming the trial court's stay of the arbitration. *Id.*  The Texas appellate court did not, however, examine whether the court-approval requirement applied only to the transfer obligation or whether there were other, preceding, obligations.

State-court approval of the transfer is a condition precedent to Rapid Settlements's obligation to pay the assignment price and to the annuitant's ability and obligation to make

42

the assignment, but not a condition precedent to the existence of the contract itself.  The lack of court approval goes to the contract's validity, not its existence.  This finding does not address whether the arbitration agreement binds Symetra.

### B.  Does the Arbitration Contravene the State Structured Settlement Protection Acts?

Symetra contends that Rapid Settlements's use of arbitration to effectuate a transfer of structured settlement payment rights in the absence of statutorily required court approval contravenes the state structured settlement protection acts.  This court agrees.  Although Rapid Settlements characterizes the damages it seeks in arbitration as remedies for contract breaches, the effect in most cases is to enforce the transfer agreement without the court approval required by the state protection statutes.  The arbitrator is asked to make the same findings that the state-court judge is charged with making under the state structured settlement protection acts, including that the transfer is in the annuitant's best interests.  The state statutes require that a state-court judge make these findings.  *See, e.g.*, TEX. CIV. PRAC. & REM. CODE § 141.004.  The Texas Structured Settlement Protection Act, for example, requires that the transfer be "approved in advance in a final court order based on express findings by the court."  *Id.*

Obtaining confirmation of an arbitration award in state court clearly does not equate to the statutorily required court approval of the proposed transfer.  When a court is asked to confirm an arbitration award, its inquiry is limited.  Judicial review of arbitrators' decisions is "extraordinarily narrow" under the FAA; it is limited to the statutory exceptions enumerated

43

in the FAA plus any judicially recognized nonstatutory bases.  9 U.S.C. § 9; *Gulf Coast Indus.*

*Workers Union v. Exxon Co.*, 70 F.3d 847, 850 (5th Cir. 1995); *Forsythe Int'l S.A. v. Gibbs*

*Oil Co. of Tex.*, 915 F.2d 1017, 1020 (5th Cir. 1990).  The FAA provides four statutory bases

for vacating an award:

> (1)   where the award was procured by corruption, fraud, or
>        undue means;
> (2)   where there was evident partiality or corruption in the
>        arbitrators, or either of them;
> (3)   where the arbitrators were guilty of misconduct . . . or of
>        any other misbehavior by which the rights of any party
>        have been prejudiced; or
> (4)   where the arbitrators exceeded their powers . . . .

9 U.S.C. § 10(a).

Under Texas law, a trial court may set aside an arbitration award "only if the decision

is tainted with fraud, misconduct, or gross mistake as would imply bad faith and failure to

exercise honest judgment."  *Pheng Investments, Inc. v. Rodriguez*, 196 S.W.3d 322, 329 (Tex.

App.—Fort Worth 2006, no pet.) (citing *IPCO-G.&C. Joint Venture v. A.B. Chance Co.*, 65

S.W.3d 252, 256 (Tex. App.—Houston [1st Dist.] 2001, no pet.)); *Teleometric Int'l Inc. v.*

*Hall*, 922 S.W.2d 189, 193 (Tex. App.—Houston [1st Dist.] 1995, writ denied).  A Texas state

court asked to confirm an arbitration award may not review the award on the merits.

An arbitrator's determination that a proposed transfer is in the annuitant's best interests

does not satisfy the court-approval requirements of state structured settlement protection acts,

even if that determination is confirmed by a final judgment entered on an arbitration award.

This conclusion does not mean that all of Rapid Settlements's arbitrations with its contracting

parties contravene the state structured settlement protection acts.  This court's holding is limited: Symetra has shown a likelihood of success in demonstrating that by using arbitration and subsequent state-court confirmation proceedings to effect the transfer to Rapid Settlements of Symetra annuitants' future-payment rights, in the absence of state-court approvals under applicable state structured settlement protection acts, Rapid Settlements is violating those acts.

### C.    Does the Federal Arbitration Act Preempt the State Structured Settlement Protection Acts?

Rapid Settlements argues that its use of arbitration procedures is valid because the Federal Arbitration Act preempts the state structured settlement protection acts requirements of state-court approval.  Rapid Settlements argues that if the arbitration proceedings it uses are inconsistent with the state structured settlement protection acts, federal preemption applies.  (Docket Entry No. 47 at 5–6).  Rapid Settlements contends that by requiring a state court to approve a proposed transfer agreement, the state protection acts impermissibly conflict with the FAA.  Symetra asserts that the state statutes create no conflict that would trigger preemption.

The state structured settlement protection acts generally require that a state court must find that the transfer is in the annuitant's best interests, that the annuitant has been advised in writing to seek independent professional advice regarding the transfer, and that the transfer does not contravene any applicable statute or order.  *See, e.g.*, TEX. CIV. PRAC. & REM. CODE § 141.004(1)–(3).  Preemption would only occur if the state statutes prohibited arbitration; and

the protection acts do not. *Casarotto*, 517 U.S. at 687 (holding that the FAA preempted a state statute regulating arbitration clauses in franchise agreements); *Allied-Bruce*, 513 U.S. at 281 (holding that the FAA preempted a state statute prohibiting predispute agreements to arbitrate); *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 338 n.7 (5th Cir. 2004) (noting that the FAA preempts state laws that contradict its purpose by requiring a judicial forum for the resolution of claims that the contracting parties agreed to resolve by arbitration); *Saturn Distrib. Corp. v. Paramount Saturn, Ltd.*, 326 F.3d 684, 687 (5th Cir. 2003) (finding that the strong federal policy in favor of arbitration would preclude a Texas statute's attempt to provide the Texas Motor Vehicle Board exclusive jurisdiction over contractual disputes between franchisors and franchisees in the motor vehicle industry, to the extent it limited availability of arbitration over such disputes); *In re R&R Personnel Specialists of Tyler, Inc.*, 146 S.W.3d 699, 703–04 (Tex. App.—Tyler 2004, no pet.) (finding that the FAA preempted a Texas Labor Code statute invalidating waivers of a cause of action to recover for personal injury or death).

A Texas appellate court recently addressed the same argument that Rapid Settlements raises here, that the FAA preempts the Texas Structured Settlement Protection Act if that Act is asserted to prohibit the use of arbitration to effect a transfer of all or part of a structured settlement future-payment stream in the absence of court review and approval under the Act. In *In re Rapid Settlements, Ltd.*, 202 S.W.3d at 460, the court considered a dispute between Rapid Settlements and an annuity provider, Berkshire Hathaway Life Insurance Company of Nebraska. Rapid Settlements had entered into a proposed transfer agreement with the holder

of a Berkshire Hathaway structured settlement annuity to have the future-payment rights under that annuity transferred to Rapid Settlements in exchange for a present lump-sum payment. Rapid Settlements sought approval of the transfer in a court in San Jacinto County, Texas, under the Texas Structured Settlement Protection Act. Berkshire Hathaway objected to the requested transfer on the basis that it was below the present fair-market value of the future payments. Rapid Settlements then filed a demand for arbitration against the annuitant, based on the arbitration clause in the proposed transfer agreement. Rapid Settlements asked the arbitrator to issue a temporary restraining order preventing Berkshire Hathaway from making a competing offer to the annuitant, which the arbitrator did. Berkshire Hathaway successfully objected to the arbitration proceedings in the trial court, which stayed the arbitration proceedings and set aside the arbitrator's order. Rapid Settlements then sought mandamus relief in the Texas appellate court, arguing that the stay was invalid because the FAA preempted the Texas Structured Settlement Protection Act. *Id.* at 458–59.

In the mandamus proceeding, the appellate court analyzed whether the FAA preempted the Texas Structured Settlement Protection Act. *Id.* at 459–60. That court examined the content of the Act in detail and determined that none of its provisions addressed or precluded arbitration of a breach of the transfer agreement in any way. That court held that the FAA did not conflict with the Texas Structured Settlement Protection Act and therefore did not preempt it. *Id.* at 460.

> None of the court findings required by section 141.004 prohibits the creation of arbitration rights in a transfer agreement. . . . Moreover, the SSPA does not explicitly address

47

the issue of arbitrability of structured settlement transfer contracts. Nothing in the statute prohibits parties from including an arbitration provision in the transfer agreement. . . . Section 141.004 of the SSPA requires prior court approval of the transfer agreement, not the arbitration clause, and is therefore not pre-empted by the FAA.

*Id.*

This holding is consistent with the precedents on preemption. *See Casarotto*, 517 U.S. at 687; *Allied-Bruce*, 513 U.S. at 281; *Freudensprung*, 379 F.3d at 338 n.7; *Saturn Distrib. Corp.*, 326 F.3d at 687. There is no conflict between the FAA and the state structured settlement protection acts. The FAA does not preempt those acts.

### D.  Do the Arbitration Agreements Bind Symetra?

"Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam*, 537 U.S. at 83; *see also Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000). Whether an arbitration agreement is binding on a nonparty is for a court, rather than an arbitrator, to determine. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546–47 (1964); *Weekley Homes*, 180 S.W.3d at 130. Texas courts apply state law, while striving to keep it as consistent as possible with federal law, to determine whether a nonsignatory is bound by an agreement to arbitrate. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005); *Weekley Homes*, 180 S.W.3d at 131.

An arbitration agreement can be enforced as to a nonsignatory only if the nonsignatory is bound to that agreement under recognized contract or agency law principles. *Bridas*

48

*S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347 (5th Cir. 2003); *Weekley Homes*, 180 S.W.3d at 131. The courts are properly cautious in binding individuals who have not signed contracts containing arbitration clauses to arbitrate under those contracts. Courts have compelled arbitration involving nonsignatories under the following contract and agency principles: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) estoppel; and (6) third-party beneficiary. *See, e.g.*, *Kellogg Brown & Root*, 166 S.W.3d at 739; *see also Bridas*, 345 F.3d at 356. Rapid Settlements asserts that estoppel binds Symetra to the arbitration award. The arbitrator in the *Gross* arbitration proffered a similar finding.

Texas courts and courts in the Fifth Circuit recognize two types of equitable estoppel: direct-benefits estoppel and an "intertwined claims" theory of estoppel. *Bridas*, 345 F.3d at 361–62; *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 761 (Tex. 2006). Under direct-benefits estoppel, a nonsignatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes. *Kellogg Brown & Root*, 166 S.W.3d at 739. This estoppel theory applies when a nonsignatory "knowingly exploits the agreement containing the arbitration clause." *Bridas*, 345 F.3d at 361–62. If the nonsignatory seeks, through the lawsuit, to derive a direct benefit from the contract containing the arbitration clause, direct benefits estoppel will preclude the suit and compel the nonparty to arbitrate. *Weekley Homes*, 180 S.W.3d at 131.

In this case, direct-benefits estoppel is inapposite. Symetra seeks to enforce the terms of the state structured settlement protection acts, not the terms of the transfer agreements containing the arbitration clauses. *See Weekley Homes*, 180 S.W.3d at 132, 134 ("Direct-

benefits estoppel requires a colorable claim to the benefits."); *see also Kellogg Brown & Root*, 166 S.W.3d at 741 ("[A]lthough a non-signatory's claim may relate to a contract containing an arbitration provision, that relationship does not, in itself, bind the nonsignatory to the arbitration provision.  Instead, a nonsignatory should be compelled to arbitrate a claim only if it seeks, through the claim, to derive a *direct benefit* from the contract containing the arbitration provision.").

Rapid Settlements also asserts that Symetra's claims are so intertwined with those of its annuitants as to bind Symetra.  The Fifth Circuit has expressly disavowed the notion that a nonsignatory may be estopped from asserting that it is not bound by an arbitration agreement when the signatory raises allegations of substantially interdependent claims against both a signatory and nonsignatory to the agreement. *Bridas*, 345 F.3d at 360.  In *Bridas*, the court held that this principle may apply to a signatory to the agreement, but the reverse is not also true.  *Id.* at 361.  A signatory may be estopped from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.  *Id.* (quoting *Thompson-C.S.F., S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)).  A signatory, however, "may not estop a nonsignatory from avoiding arbitration regardless of how closely affiliated that nonsignatory is with another signing party." *MAG Portfolio Consultant, GMBH v. Merlin Biomed Group, LLC*, 268 F.3d  58, 61 (2d Cir. 2001); *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 201–02 (3d Cir. 2001).

In this case, Rapid Settlements, a signatory to the transfer agreements, seeks to bind

Symetra, a nonsignatory, to an arbitration agreement to which it is not a party.  The theories of estoppel Rapid Settlements asserts do not reach this far.  Symetra cannot be bound through estoppel to an arbitration agreement that it did not sign.  *Bridas*, 345 F.3d at 361.

Rapid Settlements also argues that the arbitrator's jurisdiction over Symetra was *in rem* because Symetra's stake in the action was in the nature of interpleader.[8]  Rapid Settlements claims that Symetra's role is simply to pay the settlement payments; to whom the payments are made is inconsequential to Symetra.  Interpleader under Rule 22 of the Federal Rules of Civil Procedure and similar state rules "*affords* a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding."  7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE: Civil 3d § 1704 (3d ed. 2001) (emphasis added); *see also White v. F.D.I.C.*, 19 F.3d 249, 251 (5th Cir. 1994) ("Interpleader is a procedural device which *entitles* a person holding money or property, concededly belonging at least in part to another, to join in a single suit two or more persons asserting mutually exclusive claims to the fund." (emphasis added)).  Interpleader may be one option, but Rapid Settlements has not cited authority that would

---

[8] A party who files a strict bill of interpleader relinquishes all interest in the interpleaded funds, while a party who files a bill in the nature of interpleader reserves at least some right to those funds.  *See Texas v. Florida*, 306 U.S. 398, 406–07 (1939) ("The essential of the bill in the nature of interpleader is that it calls upon the court to exercise its jurisdiction to guard against the risks of loss from the prosecution in independent suits of rival claims where the plaintiff himself claims an interest in the property or fund which is subjected to the risk."); *see also* FED. R. CIV. P. 22(1) (allowing for both strict interpleader complaints and complaints in the nature of interpleader).

make interpleader the only option or a requirement.

### E.   The Limits on a Federal Court's Authority

Symetra asks this court to issue a preliminary injunction preventing Rapid Settlements from "seeking, pursuing, or enforcing any arbitration award" transferring future annuity payments with respect to the seven named annuitants and any other Symetra annuitant as to whom no state court has approved a transfer to Rapid Settlements under the applicable state structured settlement protection act.  Because state courts have confirmed the arbitration awards and entered final judgments in several of the cases, federalism concerns require an initial inquiry into this court's ability to issue an order affecting those cases.

The Full Faith and Credit Act governs the preclusive effect of a state-court judgment in a subsequent federal action.  28 U.S.C. § 1738.  This statute provides that final judgments of state courts "have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."  *Id.*  "A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land.  For claim and issue preclusion (res judicata) purposes, in other words, the judgment of the rendering state gains nationwide force."  *Baker v. Gen. Motors Corp.*, 522 U.S. 222, 233 (1998).  A federal court applies the rendering state's preclusion law to determine whether to accord a state court's final judgment preclusive effect.  28 U.S.C. § 1738; *Lance v. Dennis*, 126 S. Ct. 1198, 1202 (2006); *Lange v. City of Batesville*, 160 Fed. Appx. 348, 351–52 (5th Cir. 2005).  Texas preclusion law

applies.

In Texas, an agreed judgment confirming an arbitration award has the effect of a final judgment. *Continental Holdings, Ltd. v. Leahy*, 132 S.W.3d 471, 474 (Tex. App.—Eastland 2003, no pet.) (citing *CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002)). On the other hand, the Supreme Court has stated that unconfirmed arbitration awards are not subject to the Full Faith and Credit Act. *McDonald v. City of W. Branch*, 466 U.S. 284, 287–88 (1984) ("Arbitration is not a 'judicial proceeding' and, therefore, [the Full Faith and Credit Act] does not apply to arbitration awards.").

Claim preclusion precludes relitigation of claims that have been finally adjudicated or litigation of claims that arise out of the same subject matter and could have been litigated in a prior action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996); *U.S. Fire Ins. Co. v. Fugate*, 171 S.W.3d 508, 510 (Tex. App.—Waco 2005, pet. denied). "The policies behind the doctrine reflect the need to bring all litigation to an end, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery." *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 629 (Tex. 1992). Under Texas law, claim preclusion requires: (1) a final judgment on the merits issued by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) the second suit is based on the same claims as those that were raised or that could have been raised in the first suit. *State & County Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 696 (Tex. 2001); *Amstadt*, 919 S.W.2d at 652. The first two elements are not at issue here.

As to the third element, the Texas Supreme Court has adopted the transactional

approach from the *Restatement (Second) of Judgments* § 24(1) to determine whether a particular claim should have been pursued in the prior litigation. *Miller*, 52 S.W.3d at 696; *Barr*, 837 S.W.3d at 631.   Additionally, the first adjudication must have satisfied the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause. *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481–82 (1982).

At issue is whether Symetra can ask this court to enjoin Rapid Settlements from enforcing against Symetra the state-court judgments confirming arbitration awards purporting to transfer future annuity payments, on the ground that Symetra did not have a "full and fair opportunity to litigate" in the state courts. *Allen v. McCurry*, 449 U.S. 90, 101 (1980); *Lange*, 160 Fed. Appx. at 352.  The "full and fair opportunity to litigate" requirement is met if the Due Process Clause is satisfied.  *Kremer*, 456 U.S. at 485; *Lange*, 160 Fed. Appx. at 352.

The record reveals that a Texas state court confirmed the arbitration award in the *Richardson* case and entered final judgment.  Symetra asserts that although it received notice of the arbitration hearing, it did not receive timely service or notice that Rapid Settlements had filed a state-court petition to confirm an award that ordered Symetra to pay Rapid Settlements rather than Richardson.  Symetra asserts that Rapid Settlements did not provide any notice until it sent a copy of the final judgment two days before the trial court's plenary power over the judgment expired.  *See* Tex. R. Civ. P. 329b(d); *Middleton v. Murff*, 689 S.W.2d 212, 213 (Tex. 1985).

Rapid Settlements states that it gave Symetra notice of the arbitration hearing in the *Patterson* case, in which the arbitrator awarded Rapid Settlements a garnishment of

54

Patterson's future-payment stream.  Rapid Settlements sought confirmation of the arbitration award in a Harris County, Texas county court.  That court confirmed the award and entered final judgment on August 11, 2006.  (Docket Entry No. 80, Ex. A).  Rapid Settlements admits that it did not provide Symetra service or notice of the confirmation proceedings, stating that it did not do so because Symetra had not participated in the arbitration.  (Docket Entry No. 80 at 2).

In the *Gross* case, the state trial court's final judgment ordered Symetra to pay Gross's annuity amounts to Rapid Settlements.  In the Texas appellate court, Symetra argued that it could not be bound to the judgment because it had not been timely served before entry of judgment.  The appellate court refused to order entry of judgment against Symetra because "[i]f the Semetra [sic] parties were never served, the portion of the judgment that affects them is voidable."  *In re Rapid Settlements, Ltd.*, No. 01-05-00938-CV, at 2 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding).

A Harris County court confirmed the arbitration award in the *Remedies* case.  Symetra asserts that it did not receive service or notice of the petition Rapid Settlements filed to confirm the award.  The state trial court confirmed the arbitration award and entered a final judgment that orders Symetra to begin paying Remedies's payments to Rapid Settlements. (Docket Entry No. 47, Ex. 19).

Rapid Settlements states that a Harris County court entered final judgment approving the arbitration award in the *Foreman* case, but Symetra asserts it did not receive service ir notice of any filing in the state court seeking to confirm the arbitration award.

55

The record as to the *Dean* and *Hargette* cases does not include enough information to show whether Symetra was given service or notice of any effort by Rapid Settlements to have a state court confirm an arbitration award and enter judgment. Arbitration took place on August 31, 2006 in those cases, but the record does not reveal the outcome or any subsequent proceedings.

As to the cases in which the record shows that a final judgment issued, the record also shows that Symetra did not receive timely service or notice of the steps taken by Rapid Settlements to ask the state court to confirm the arbitration award or that the court had entered final judgment until it was too late to assert any challenge. Both the Due Process Clause and the Texas Structured Settlement Protection Act require that an annuity issuer such as Symetra be given adequate notice of proceedings seeking to transfer the future payments due under the annuities. As to the cases in which final judgments were issued without timely service or notice to Symetra to permit it an effective opportunity to challenge the award in the Texas state court asked to confirm and enter final judgment, the final judgments are voidable under Texas law as to Symetra. As to the cases in which there is an arbitration award but no final judgment, there is no preclusion bar to the injunctive relief Symetra seeks.

## F.    Symetra's "Standing"

Rapid Settlements argues that Symetra lacks standing to challenge the proposed transfer agreements because it is not a signatory to those agreements. (Docket Entry No. 40 at 13). To satisfy the standing requirement, a plaintiff must show: (1) an injury in fact; (2) that is traceable to the defendant's challenged conduct; and (3) that is likely to be

56

redressed by a favorable decision in the district court.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *McCall v. Dretke*, 390 F.3d 358, 361 (5th Cir. 2004).  Symetra has shown injury in fact because of its exposure to double liability.  For example, in the *Gross* matter, an Indiana court order requires Symetra to make annuity payments to one of Gross's creditors, Kent Niemeier, while a Harris County, Texas arbitration award confirmed in a final judgment orders Symetra to make those same payments to Rapid Settlements.  In the *Richardson* matter, a Dallas County, Texas court expressly denied Rapid Settlements's application for the structured settlement payment transfer because the transfer was not in her best interests, but a conflicting Harris County, Texas court order confirming an arbitration award orders Symetra to stop paying Richardson and instead to pay Rapid Settlements.  Symetra's exposure to double liability satisfies the injury-in-fact element of the standing analysis.

Causation and redressibility are also present.  The injury that Symetra is complaining of directly results from Rapid Settlements using arbitration proceedings to enforce proposed structured settlement transfer agreements even if a state court has not approved the transfer under the state structured settlement protection act.  If Rapid Settlements is enjoined from using arbitration awards confirmed by state courts to avoid the state structured settlement protection act requirements that a court approve the proposed transfers, that avoids the exposure to conflicting court orders.  Symetra has standing to bring this suit.

### G.    Other Federalism Concerns

Rapid Settlements argues that this court should not review state-court proceedings.

57

(Docket Entry No. 47 at 25).  Rapid Settlements does not specifically assert the bars to such authority.  This court has identified several that could apply.

### 1.      The Anti-Injunction Act

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  Symetra does not ask this court to enjoin a state court from acting.  Rather, the relief Symetra requests is against Rapid Settlements.  Because the Anti-Injunction Act does not proscribe federal courts from enjoining private actors, it is inapplicable.

### 2.      The Rooker-Feldman Doctrine

The *Rooker-Feldman* doctrine[9] precludes federal district courts from exercising original jurisdiction to "review and reverse" certain state-court judgments.  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005).  In *Exxon Mobil*, the Supreme Court emphasized the limited scope of the doctrine:

> The *Rooker-Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name:  cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.  *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

---

[9] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

544 U.S. at 284.  The *Rooker-Feldman* doctrine applies only in the limited circumstance of when the losing party in state court effectively asks a federal district court to review and reject the state-court judgment.  *Id.* at 291.  Symetra is not asking this court to review and reverse state-court judgments in cases it litigated and lost.  In the cases disclosed in this record, Symetra was not a party to the state-court proceeding that Rapid Settlements filed that resulted in a judgment confirming an arbitration award.  In these cases, Symetra asserts that it did not even have notice of the court proceedings seeking to confirm arbitration awards and enter final judgments on those awards until after the final judgment had issued and the time for challenge was effectively or actually past.  *Rooker-Feldman* does not apply.

> *3.*     Colorado River *Abstention*

The *Colorado River* abstention doctrine applies when there are parallel proceedings pending in federal and state court.  *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 395 n.7 (5th Cir. 2006).  This doctrine is based on federalism, comity, and conservation of judicial resources.  *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1189 (5th Cir. 1988).  It represents an "extraordinary and narrow exception" to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them."  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817 (1976).  The Supreme Court has not prescribed a "hard and fast rule" governing when *Colorado River* abstention applies, but it has identified six factors that a district court may consider and weigh in determining whether to decline jurisdiction:  (1) assumption by either state or federal court of jurisdiction over a *res*; (2) the relative inconvenience of the forums; (3) the avoidance of piecemeal

litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether and to what extent federal law provides the rules of decision on the merits; and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction. *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 738 (5th Cir. 1999). A federal court must keep in mind that "the balance [should be] heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 16 (1983).

In this case, there is no *res* over which a court has assumed jurisdiction. Nor is the federal forum more or less convenient than the Harris County, Texas state courts that Rapid Settlements has used as the forum to seek confirmation of arbitration awards obtained against Symetra annuitants. The third factor, the avoidance of piecemeal litigation, weighs in favor of this court exercising its jurisdiction to resolve to the extent possible the issues involved in attempts by Rapid Settlements to use arbitration to effect a transfer of all or part of a Symetra annuitant's right to future payments despite an order from a state court refusing to approve such a transfer under the applicable state structured settlements protection act or in the absence of a state-court order approving the transfer.

The fourth factor, the order in which jurisdiction was obtained, weighs against abstention as well. The state-court proceedings are in various stages and Symetra's focus is on future efforts by Rapid Settlements to use arbitration to circumvent or avoid the requirements of state structured settlement protection acts.

The fifth factor, the extent to which the cases involve state and federal law, is neutral. This case involves some issues of federal law, relating to the Federal Arbitration Act, and

otherwise involves only issues of state law.  "The absence of a federal-law issue does not counsel in favor of abstention." *Evanston Ins. Co.*, 844 F.2d at 1193.  "[O]ur task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional circumstances,' the 'clearest of justifications,' that can suffice under *Colorado River* to justify the surrender of that jurisdiction." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 26.  "The presence of state law issues weighs in favor of surrender only in rare circumstances." *Evanston Ins. Co.*, 844 F.2d at 1193.

The sixth factor asks whether the rights of the party invoking federal jurisdiction will be protected adequately in state court.  The present record does not show that when Symetra has had timely service and notice of state-court proceedings filed by Rapid Settlements seeking to confirm arbitration awards against a Symetra annuitant, directly or indirectly transferring future-payment rights to Rapid Settlements, the state-court forum has been inadequate in any way.  Symetra has been hampered in its ability to raise the issues before the state courts by what it asserts is Rapid Settlements's systematic failure to give Symetra timely service and notice of the confirmation proceedings. This factor "can only be a neutral factor or one that weighs against, not for, abstention." *Evanston Ins. Co.*, 844 F.2d at 1193.

Because each of the factors either weighs against abstention or is neutral, *Colorado River* abstention appears inapplicable.

### 4.    Brillhart *Abstention*

A similar abstention doctrine arises from the Supreme Court case of *Brillhart v. Excess*

61

*Insurance Co. of America*, 316 U.S. 491 (1942). *Brillhart* abstention is applicable "[w]hen a district court is considering abstaining from exercising jurisdiction over a declaratory judgment action." *Southwind Aviation, Inc. v. Bergen Aviation, Inc.*, 23 F.3d 948, 950 (5th Cir. 1994). Under *Brillhart*, a district court "should ascertain whether the questions in controversy between the parties to the federal suit . . . can be better settled in the proceeding pending in the state court." *Brillhart*, 316 U.S. at 494; *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 389 (5th Cir. 2003). "In contrast, when actions involve coercive relief the trial court must apply the standards enunciated by the Court in *Colorado River*." *Southwind Aviation, Inc.*, 23 F.3d at 951. Symetra seeks both declaratory and injunctive relief; the appropriateness of abstention must be assessed under *Colorado River. Id.* There is an exception to this rule if a party's request for injunctive relief is frivolous or made solely to avoid the *Brillhart* standard. *See PPG Indus., Inc. v. Continental Oil Co.*, 478 F.2d 674, 679 (5th Cir. 1973). Because there is no indication that Symetra's request for injunctive relief is either frivolous or made in an effort to avoid the *Brillhart* doctrine, the appropriateness of abstention in this case is properly assessed under *Colorado River* rather than *Brillhart. See Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 652 (5th Cir. 2000).

> 5.   Younger *Abstention*

Abstention under *Younger v. Harris*, 401 U.S. 37 (1971), is appropriate when federal court jurisdiction would interfere with pending criminal, civil, or administrative state proceedings. *La. Debating & Literary Ass'n v. City of New Orleans*, 42 F.3d 1483, 1489 (5th Cir. 1995); *Word of Faith World Outreach Center Church, Inc. v. Morales*, 986 F.2d 962, 966

(5th Cir. 1993), *cert. denied*, 510 U.S. 823 (1993).  To determine whether *Younger* abstention

is appropriate, courts apply the following three-part test: (1) whether the dispute involves an

ongoing state judicial proceeding; (2) whether important state interests are implicated; and

(3) whether there is an "adequate" or "full and fair" opportunity to raise the federal claims in

the state proceedings.  *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S.

423, 432 (1982).  If all three prongs of the test are met, then the court should abstain from

hearing the case as long as bad faith, harassment, or other extraordinary circumstances are not

involved in the case.

The present record shows that Rapid Settlements not only obtains arbitration awards

that have the effect of requiring a transfer of the annuitants' future-payment rights but fails

to provide Symetra timely service and notice of the steps taken to confirm those awards in

state courts.  The lack of timely service and notice has prevented Symetra from bringing to

the state courts the problems that the unapproved transfers present under the applicable state

structured settlement protection acts, as well as other issues that may be involved.  *Younger*

abstention does not apply.

> ### 6.    Burford *Abstention*

The Fifth Circuit has described abstention under *Burford v. Sun Oil Co.*, 319 U.S. 315

(1943), as follows:

> Where timely and adequate state-court review is available, a
> federal court sitting in equity must decline to interfere with the
> proceedings or orders of state administrative agencies: (1) when
> there are "difficult questions of state law bearing on policy
> problems of substantial public import whose importance

transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 588 (5th Cir. 1994) (quoting *New Orleans Public Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989)).

In *Burford*, the Sun Oil Company filed a federal court suit seeking to enjoin an order by the Texas Railroad Commission granting Burford a permit to drill four oil wells. *Burford*, 319 U.S. at 317. The issue in the lawsuit was whether the Commission had improperly applied its oil and gas regulations so as to deny Sun Oil due process. The Court determined that abstention was proper to protect the State's administrative process from undue federal influence, noting that the lawsuit involved highly technical and complicated regulatory issues that affected the entire State's oil and gas conservation system and that the State had created a comprehensive centralized system for judicial review of the Commission's orders. *Id.* at 320–24, 332–33.

Although "*Burford* is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy." *New Orleans Pub. Serv.*, 491 U.S. at 362. In this case, Symetra is asking this court to issue orders that would protect the state-law provisions that regulate the secondary market in structured settlements and would address what it asserts is a recurring conflict with those provisions. *Burford* abstention does not apply.

64

7.      Pullman *Abstention*

"*Pullman* abstention . . . is addressed to the inappropriateness of federal court resolution of difficult or unsettled questions of state law and the undesirability of reaching constitutional questions that might be mooted by the application of state law." *Word of Faith World Outreach Center Church, Inc. v. Morales*, 986 F.2d 962, 966 (5th Cir. 1993), *cert. denied*, 510 U.S. 823 (1993). "The abstention doctrine is not an automatic rule applied whenever a federal court is faced with a doubtful issue of state law; it rather involves a discretionary exercise of a court's equity powers." *Baggett v. Bullitt*, 377 U.S. 360, 375 (1964). More accurately, abstention is the exception, not the rule. *Nissan Motor Corp. in U.S.A. v. Harding*, 739 F.2d 1005, 1008 (5th Cir. 1984). The Fifth Circuit has recognized that

> the extraordinary decision to stay federal adjudication requires more than an ambiguity in state law and a likelihood of avoiding constitutional adjudication. A district court must carefully assess the totality of circumstances presented by a particular case. This requires a broad inquiry which should include consideration of the rights at stake and the costs of delay pending state court adjudication.

*Duncan v. Poythress*, 657 F.2d 691, 697 (5th Cir. 1981), *cert. dismissed*, 459 U.S. 1012 (1982). Generally, *Pullman* abstention is appropriate only when there is an issue of uncertain state law that is "fairly subject to an interpretation [by a state court] which will render unnecessary or substantially modify the federal constitutional question." *La. Debating & Literary Ass'n*, 42 F.3d at 1491 (internal quotation marks omitted).

The Texas Structured Settlement Protection Act is not ambiguous. TEX. CIV. PRAC. & REM. CODE § 141.001, *et seq.* It provides a clear procedure and standard for state-court

approval of proposed transfer agreements by requiring notice, disclosures, a state-court finding that the transfer is in the payee's best interests, and state-court approval. The Act clearly states that none of its provisions may be waived by any payee. This case does not present constitutional questions that state-court decisions on state-law matters could avoid. *Pullman* abstention does not appear to apply.

### H.   Conclusion as to the Likelihood of Success on the Merits

Symetra has shown a likelihood of showing that: (1) the use of arbitration proceedings to avoid the applicable state structured settlement protection acts by obtaining arbitration awards and court orders confirming those awards to effect a transfer of structured settlement future-payment rights, despite lack of court approval as required under those acts, conflicts with the state acts; (2) the FAA does not preempt the state structured settlement protection acts; (3) a court may resolve this dispute rather than an arbitrator because Symetra is not bound by the agreements to arbitrate under the estoppel theory Rapid Settlements invokes; (4) the state-court judgments do not preclude further review given the lack of service and notice to Symetra; (5) Symetra has standing to sue; and (6) other federalism concerns have been satisfied.

## IV.   Irreparable Harm

Symetra argues that it will be irreparably harmed without injunctive relief because it will be exposed to the risk of double payments. (Docket Entry No. 32 at 12). The structured settlement protection acts require court approval before any transfer takes effect. If Symetra follows the protection acts, it must continue to make payments to its annuitants until court

approval of the transfer under the applicable protection act.   At the same time, Rapid Settlements has obtained judgments confirming arbitration awards that purport to require Symetra to pay Rapid Settlements that are based on arbitration awards that conflict or are inconsistent with the state-court approval requirement of the applicable state structured settlement protection act.

The *Gross* case presents an additional complication that furthers the risk of exposure to conflicting payment demands.  In a recent letter, Rapid Settlements demands that Symetra cease making payments to one of Gross's creditors, Kent Niemeier, and begin making those payments to Rapid Settlements under the final judgment entered in Texas.  Symetra argues that because the Niemeier payments are made under an Indiana court order, Symetra faces two conflicting court orders.

The record shows that the issuance of judgments confirming arbitration awards that order Symetra to make annuity payments to Rapid Settlements rather than to the annuitant may expose Symetra to a risk of double payment that is both significant and irreparable.  The arbitration/confirming judgment approach Rapid Settlements is taking as to proposed transfers that a state court has not approved under the applicable state structured settlement protection act exposes Symetra to significant uncertainty as to whom it must pay and a significant risk of double liability.

## V.      The Balance of Harms and the Public Interest

Rapid Settlements claims that because it is a relatively small company, the preliminary injunction will have a significant harmful effect on its business.  At the motion hearing and

in briefing, Rapid Settlements has repeatedly stated that it uses arbitrations in only approximately 3% of its structured settlement transfers.  (Docket Entry No. 47 at 1).  "Over the approximately 3 years of Rapid's corporate existence, it has obtained a total of just 21 arbitration awards, which is approximately 3% of Rapid's transactions."  (Docket Entry No. 47, Ex. 3).  Because arbitrated transfers are such a small percentage of Rapid Settlements's business, it will not suffer such harm if this court issues an injunction to preclude relief.  This factor does not weigh against granting a preliminary injunction.

The next factor requires examination of whether an injunction would serve the public interest.  The structured settlement protection acts require court approval before the transfer agreements are valid and enforceable.  TEX. CIV. PRAC. & REM. CODE § 141.004.  The statutes are paternalistic; their purpose is to protect unwary structured settlement recipients who are "in need of cash from exploitation by factoring companies."  *Johnson v. Structured Asset Servs., L.L.C.*, 148 S.W.3d 711, 729 (Tex. App.—Dallas 2004, no pet.).  State legislatures, including the Texas legislature, have already determined that it is in the public interest to condition a proposed secondary-market transfer on state-court findings that there has been sufficient disclosure and that the transfer is in the annuitant's best interests.  Using arbitration to effect a transfer of all or part of an annuitant's future payments, when a state court has either refused to approve such a transfer under the applicable state structured settlement protection act or such approval has not been pursued or obtained, is contrary to the public interest as determined by these state legislatures.  This factor weighs in favor of granting the injunction.

## VI.    The Issue of Whether Symetra Has Unclean Hands

Rapid Settlements also argued that Symetra seeks injunctive relief with unclean hands. (Docket Entry No. 47 at 42).  In particular, Rapid Settlements claims that Symetra has taken inconsistent positions with respect to antiassignment clauses; using them to Symetra's advantage and opposing their use when a competitor employs a similar method.  Rapid Settlements asserts that it should be permitted discovery to determine whether there is additional evidence to support its unclean-hands argument.

Rapid Settlements is correct in stating that "he who comes into equity must come with clean hands."  *Flory v. United States*, 138 F.3d 157, 160 (5th Cir. 1998).  Rapid Settlements asserts that given the opportunity to conduct discovery in this case, it will be able to prove that Symetra side-steps state structured settlement protection acts in various ways.  While  Rapid Settlements has argued that  Symetra inconsistently invokes antiassignment clauses in the annuities it issues, Rapid Settlements has made no suggestion that Symetra is not abiding by the state structured settlement protection acts.  Extensive case law holds that the assignment of structured settlement payment rights is permissible under certain conditions; recognizes the validity of antiassignment provisions; and does not view inconsistent invocations of antiassignment provisions as inequitable.  *See* Gregory Scott Crespi, *Selling Structured Settlements: The Uncertain Effect of Anti-Assignment Clauses*, 28 PEPP. L. REV. 787 (2001) (detailing the antiassignment case law).  The record does not show inequitable conduct that would weigh against the preliminary injunction Symetra seeks.

## VII.    The Terms of the Preliminary Injunction

Rapid Settlements is enjoined from taking further action to compel Symetra to comply with the judgments entered in the *Richardson*, *Patterson*, and *Gross* matters pending the hearing on a permanent injunction. The parties have indicated that they have entered into mutually agreeable settlement terms in *Remedies*; this injunction does not address that matter. As to the *Foreman*, *Dean*, and *Hargette* cases, Rapid Settlements is required to provide specific information as to their present status no later than January 26, 2007. The parties are to inform the court as to the status of annuity payments made to Rapid Settlements or the annuitants in the *Richardson*, *Patterson*, *Gross*, *Foreman*, *Dean*, and *Hargette* matters by January 26, 2007.

Rapid Settlements is enjoined from using arbitration to resolve disputes between it and any Symetra annuitant, if that arbitration, directly or indirectly, effects a transfer of all or part of the annuitant's future-payment stream, unless a state court has approved the transfer as required under the applicable state structured settlement protection act. A hearing will be held on January 26, 2007, at 9:00 a.m. to set a schedule for discovery and resolution of the application for a permanent injunction and the request for entry of declaratory judgment.

## VIII. Conclusion

Symetra's application for a preliminary injunction is granted in part. No later than **January 19, 2007**, Symetra must submit a proposed form of preliminary injunction to the court. A hearing will be held on **January 26, 2007, at 9:00 a.m.** to set a schedule for

discovery and resolution of the application for a permanent injunction and the request for entry of declaratory judgment.

      SIGNED on January 10, 2007, at Houston, Texas.

_____
             Lee H. Rosenthal
        United States District Judge