IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SYMETRA LIFE INSURANCE CO., *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-05-3167 |
| | § | |
| RAPID SETTLEMENTS LTD., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM, OPINION, AND ORDER**

This is a suit between companies that provide, service, and purchase structured settlement payment rights. The structured settlement industry is regulated in forty-six states by structured settlement protection acts (SSPAs). The SSPAs impose requirements that must be met before an annuitant may transfer future structured settlement payment rights to a third party. *See, e.g.*, TEX. CIV. PRAC. & REM. CODE § 141.001 *et seq*. The legislatures of forty-six states enacted these paternalistic statutes to protect annuitants from what were perceived as abusive and overly aggressive tactics by "factoring companies" that purchase future-payment rights. The SSPAs require the factoring company and the annuitant to obtain court approval for a proposed transfer of structured settlement payment rights, based on a specific finding that the annuitant understands the transaction and that it is in the annuitant's best interests. *See, e.g.*, *id.* § 141.004.

The plaintiffs, Symetra Life Insurance Company and Symetra Assigned Benefits Service Company (together "Symetra"), and the intervenor, the National Association of

Settlement Purchasers (NASP), participate in the structured settlement markets.  Symetra both issues annuities and purchases them in the secondary market.  The NASP is a trade association of companies that purchase annuities in the secondary market.  The plaintiffs allege that Rapid Settlements, Ltd., which purchases annuities in the secondary market, uses arbitration to side-step the SSPA requirements.  Symetra and NASP complain that Rapid Settlements has circumvented the required court approval under applicable SSPAs by invoking arbitration provisions in proposed transfer agreements between it and certain Symetra annuitants.

In a detailed memorandum and order, this court discussed Rapid Settlements's use of arbitration as a means of effecting transfer of structured settlement payment rights without obtaining court approval under applicable SSPAs.  (Docket Entry No. 84).  This court granted Symetra's motion for temporary injunction, preventing Rapid Settlements from using arbitration to effect a transfer of any Symetra annuitant's structured settlement payment rights without complying with the applicable state SSPA requirements.  A hearing on the permanent injunction motion is set for September 10, 2007.

This memorandum and opinion addresses the following motions:

•      Rapid Settlements has moved for leave to file affirmative defenses and assert counterclaims. (Docket Entry No. 129). NASP, J.G. Wentworth and 321 Henderson, and Symetra have responded. (Docket Entry Nos. 143, 144, 150).  NASP has moved for leave to amend its complaint, (Docket Entry No. 88), and Rapid Settlements has responded, (Docket

Entry No. 99).  Symetra has moved for leave to file its third amended complaint, (Docket Entry No. 152), Rapid Settlements has responded, (Docket Entry No. 159), and Symetra has replied, (Docket Entry No. 162).  Rapid Settlements's motion for leave is granted in part and denied in part.  NASP and Symetra's motions for leave to amend are granted.

- Rapid Settlements has moved to remand two related and consolidated cases, Civil Action Nos. 4:07-cv-855 and 4:07-cv-856, and for reconsideration of this court's order consolidating those cases into the lead case, Civil Action No. 4:05-cv-3167.  (Docket Entry Nos. 120, 121).  Symetra has responded.  (Docket Entry No. 128).  Symetra has moved to consolidate another related case, Civil Action No. 4:07-cv-1302, currently pending before another judge in this district.  (Docket Entry No. 123).  Rapid Settlements has responded and moves to remand that case.  (Docket Entry No. 127).  The motions to remand and for reconsideration are denied; the motion to consolidate Civil Action No. 4:07-cv-1302 into this lead case is granted.

- J.G. Wentworth and 321 Henderson Receivables Limited Partnership—also participants in the structured settlement markets—have moved to dismiss the complaint filed against them by Rapid Settlements in a consolidated suit, Civil Action No. 4:06-cv-

3

2933.  (Docket Entry No. 103).  Rapid Settlements has responded, (Docket Entry No. 112), J.G. Wentworth and 321 Henderson have replied, (Docket Entry No. 117), and Rapid Settlements has surreplied, (Docket Entry No. 122).  The motion to dismiss is granted.

•    Rapid Settlements has moved for sanctions against Symetra, asserting that Symetra has vexatiously increased the number of suits filed between the parties.  (Docket Entry No. 83).  Symetra has responded, (Docket Entry No. 85), Rapid Settlements has replied, (Docket Entry No. 102), and Symetra has surreplied, (Docket Entry No. 104).  The motion for sanctions is denied.

The reasons for these decisions are set out below.

## I.    Background

This court's January 10, 2007 memorandum and order details the background facts. (Docket Entry No. 84).  Briefly, Symetra filed this suit against Rapid Settlements on September 9, 2005.  Symetra alleged that Rapid Settlements uses arbitration to effect transfers of Symetra annuitants' structured settlement payment rights without first obtaining the state-court approval required under the applicable SSPA.  According to Symetra, Rapid Settlements enters into transfer agreements with Symetra annuitants for the transfer of their structured settlement payment rights in return for a lump-sum payment.  With some variation in language, the transfer agreements contain the following arbitration clause:

4

> This Agreement shall be governed by and construed and
> enforced in accordance with the laws of the State of Texas. Any
> dispute or disagreement arising under this Agreement of any
> nature whatsoever including but not limited to those sounding
> in constitutional, statutory, or common law theories as to the
> performance of any obligations, the satisfaction of any rights,
> and/or the enforceability hereof, shall be resolved through
> demand by any interested party to arbitrate the dispute and shall
> submit the same to a nationally recognized, neutral, arbitration
> association for resolution pursuant to its single arbitrator,
> expedited rules. . . . The arbitration decision shall be final and
> binding in all respects and shall be non-appealable.  Any person
> may have a court of competent jurisdiction enter into its record
> the findings of such arbitrators for all purposes, including for the
> enforcement of the award.  In any event, the parties to this
> Agreement hereby waive the right to trial by jury in any action
> or proceeding instituted with respect to this Agreement.

(Docket Entry No. 36, Ex. A-1).

In many cases, after the transfer agreement is signed, but before approval of the

transfer is sought, Rapid Settlements provided the annuitant an advance on the lump sum and

obtained a promissory note.  In some cases, Rapid Settlements attempted to get state-court

approval of the transfer, but was denied.  The state court found that the transfer was not in

the annuitant's best interests.  After the state court's denial of the proposed transfer, Rapid

Settlements nonetheless effected the transfer.  Rapid Settlements did so by enforcing the

terms of the promissory note and demanding that the annuitant return the advance.  If that did

not occur, Rapid Settlements deemed the annuitant in breach of the transfer agreement and

promissory note and sought redress through arbitration.  In other cases, Rapid Settlements

did not even seek approval of the proposed transfer from the state court under the SSPA.

Instead, Rapid Settlements would pay an advance that was not repaid or use another failure to comply with a transfer-agreement provision to declare a breach and demand arbitration.

In arbitration, Rapid Settlements was awarded enforcement of the transfer agreement as a remedy for the breach of that agreement. The arbitrator enforced the proposed transfer that the state court either had already determined was not in the annuitant's best interests under the SSPA or that no state court had reviewed under the SSPA. Rapid Settlements then confirmed the arbitration awards in another state court and demanded that the annuity-issuers (*e.g.*, Symetra) comply with the order confirming the award by making the structured settlement payments to Rapid Settlements rather than to the annuitant.

Symetra has shown that by using arbitration in this fashion, Rapid Settlements exposes Symetra to the risk of double payment. If, for example, the annuitant has transferred his or her payment rights to a factoring company in compliance with the SSPAs, there are two demands for payment of the structured settlement annuity, only one of which has gone through the state SSPA procedures.

Since this suit was filed, Rapid Settlements has brought several related suits against Symetra and other factoring companies in state courts in Harris County, Texas, many of which have been removed to federal court and consolidated into this suit. In those cases, Rapid Settlements alleges that Symetra and others tortiously interfere with Rapid Settlements's proposed transfers with annuitants by objecting to those transfers when approval is sought in state court through the SSPA. In its motion for leave to file affirmative defenses and counterclaims, Rapid Settlements asserts many of the same claims as those

brought in the state-court suits.  NASP and Symetra also move for leave to file amended complaints against Rapid Settlements.

In consolidated Civil Action No. 4:06-cv-2933, Rapid Settlements sued J.G. Wentworth, 321 Henderson, Symetra, and a Symetra annuitant named Kenneth Gross.[1] Kenneth Gross and Rapid Settlements entered into several agreements to transfer his payment rights under a structured settlement and sought state-court approval for the transfer under the SSPA.  The transfer agreements were denied.  Gross then entered into another contract for the transfer of his payment rights with 321 Henderson, which was approved under the SSPA.  (Docket Entry No. 112, Ex. D).  That transfer agreement provides that 321 Henderson receives a portion of Gross's payment rights and Gross receives the remainder. Under the state-court approved transfer agreement, Symetra makes the annuity payments to 321 Henderson, which services the payment and withdraws the amount it is owed, forwarding the remainder to Gross.

Rapid Settlements enforced the arbitration provision in the transfer agreements with Gross, asserting that Gross was in breach by not adhering to the right-of-first-refusal clause when he failed to give Rapid Settlements notice of his transfer contract with 321 Henderson. On May 25, 2005, the arbitrator awarded Rapid Settlements damages for the breach in the form of a "garnishment" of Gross's structured settlement payments.  The amount of the

---

[1] Rapid Settlements states that J.G. Wentworth and 321 Henderson are affiliated companies and are under common control.  (Docket Entry No. 112 at 4 n.1).  Rapid Settlements asserts claims against both companies, but makes allegations against only 321 Henderson in the *Gross* matter at issue.  The record is not clear what role, if any, J.G. Wentworth played in these transactions.

award was identical to the proposed transfer agreement between Rapid Settlements and Gross that had been *disapproved* in state court under the SSPA.  (Docket Entry No. 112, Ex. A). According to Rapid Settlements, the arbitration award had the effect of approving the transfer agreement between Gross and Rapid Settlements, despite the state-court rejection of the proposed transfer.  (Docket Entry No. 112 at 1–2).  Rapid Settlements then sought and obtained a judgment in state court confirming the arbitration award on May 27, 2005. Symetra later challenged the judgment, arguing that it did not receive notice of the hearing to confirm the award.  The trial court agreed and overturned its final judgment, but did so after the expiration of that court's plenary power over the case.  Rapid Settlements appealed. The state appellate court found that the trial court acted outside the scope of its authority. The final judgment was upheld as against Gross, but the appellate court held that the judgment was voidable as to Symetra due to Rapid Settlements's failure to provide notice. *In re Rapid Settlements, Ltd.*, No. 01-05-00938-CV, at 2 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding).[2]

In this consolidated action, Rapid Settlements contends that 321 Henderson continues to make the structured settlement payments to Gross, rather than to Rapid Settlements.  Rapid Settlements seeks a declaration as to the rights of the parties to Gross's structured settlement payments; actual damages equal to the amounts it believes are due and owing under the

---

[2]  On July 18, 2007, the Harris County court that confirmed the May 25, 2005 arbitration award between Rapid Settlements and Kenneth Gross set aside its May 27, 2005 judgment confirming that award. In the order setting aside the judgment, the court stated that the judgment confirming the award exceeded $100,000.00, the jurisdiction limit of the county court.  As a result, the court lacked subject matter jurisdiction over the action when the judgment was entered.  (Docket Entry No. 161, Ex. A).

transfer agreement; a temporary and permanent injunction requiring enforcement of the transfer agreement; and entry of an order requiring Symetra, J.G. Wentworth, and 321 Henderson to interplead Gross's annuity payments pending resolution of the case.  (Civil Action No. 4:06-cv-2933, Docket Entry No. 1, Ex. B).

J.G. Wentworth and 321 Henderson contend that they are not bound by the arbitration award or by the judgment confirming that award.  (Docket Entry No. 103).  Neither J.G. Wentworth nor 321 Henderson received notice of the arbitration hearing until several weeks after it took place and did not receive notice of the state-court hearing confirming the award. The arbitration award mentions neither company.  Rapid Settlements states that it provided those companies notice of the award on July 16, 2005—almost three weeks after the hearing to confirm the award—requesting that they honor its terms.  (Docket Entry No. 112 at 4). J.G. Wentworth and 321 Henderson move to dismiss the claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The various motions are analyzed below.

## II.    Analysis

### A.    The Motions for Leave to Amend

#### 1.    *The Legal Standard*

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend pleadings "'shall be freely given when justice requires,' FED. R. CIV. P. 15(a), and 'evinces a bias in favor of granting leave to amend.'"  *Martin's Herend Imports, Inc. v. Diamond & Gem Trading*, 195 F.3d 765, 770 (5th Cir. 1999) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)).  Leave to amend "is not automatic."  *Matagorda*

*Ventures Inc. v. Travelers Lloyds Ins. Co.*, 203 F. Supp. 2d 704, 718 (S.D. Tex. 2000) (citing

*Dussouy*, 660 F.2d at 598).  A district court reviewing a motion to amend pleadings under

Rule 15(a) may consider factors such as "whether there has been 'undue delay, bad faith or

dilatory motive . . . undue prejudice to the opposing party, and futility of amendment.'"

*Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998) (quoting *In re Southmark Corp.*, 88

F.3d 311, 314–15 (5th Cir. 1996)).  Denial of leave to amend on the basis of futility is

"premised . . . on the court's evaluation of the amendment as insufficient to state a claim."

*Jamieson v. Shaw*, 772 F.2d 1205, 1209 (5th Cir. 1985).  A denial on this basis "tends to blur

the distinction between analysis of the procedural context under Rule 15(a) and analysis of

the sufficiency of the complaint under Rule 12(b)(6)."  *Id.* at 1208–09 (citing *Pan-Islamic

Trade Corp. v. Exxon*, 632 F.2d 539, 546 (5th Cir. 1980)).  Courts often explicitly equate the

futility analysis under Rule 15(a) with the legal sufficiency standard of Rule 12(b)(6).  *See

Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996) ("In reviewing for

'futility,' the district court applies the same standard of legal sufficiency as applies to a Rule

12(b)(6) motion."); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.

1997) (same); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th

Cir. 1997) (same).

                    2.       *Rapid Settlements's Motion for Leave to Amend*

       Rapid Settlements seeks leave to assert affirmative defenses and counterclaims against

Symetra, J.G. Wentworth, 321 Henderson, and NASP.  (Docket Entry No. 129).  The current

scheduling order in this case governs discovery into the issues relating to Symetra's

permanent injunction motion and Rapid Settlements's defenses.  There currently is not a scheduling order in place for resolving the remaining claims.  Rapid Settlements's motion for leave is timely.

Rapid Settlements's proposed affirmative defenses and counterclaims include an unclean-hands defense against Symetra and NASP, (Docket Entry No. 130 at 4–7), a defense it plans to assert in response to the permanent injunction motion.  Rapid Settlements also asserts claims of tortious interference with contract and prospective business relationships, unfair competition, and violations of the Sherman Act, 15 U.S.C. § 2.  Rapid Settlements also seeks a declaratory judgment that asks this court to determine the legality of a number of business practices used in the structured settlement markets.  Rapid Settlements is entitled to assert defenses in response to the permanent injunction motion as well as in response to Symetra's complaint.  The issue is to what extent the claims, particularly for declaratory relief, far exceed those defenses and introduce extraneous, time-consuming and prejudicial new issues into this suit.

J.G. Wentworth, 321 Henderson, and NASP argue that allowing Rapid Settlements to add numerous claims for declaratory judgment would be futile and would needlessly enlarge the scope of this suit.  (Docket Entry Nos. 143, 144).  NASP argues that granting Rapid Settlements's leave to amend would "require the parties to conduct discovery on, and the Court to evaluate, virtually every business practice used in the structured settlement secondary market."  (Docket Entry No. 143 at 3).  NASP also argues that it would suffer prejudice from the delay that would occur in resolution of its claims as a result of Rapid

Settlements's expansive counterclaims.  It also argues that Rapid Settlements's counterclaim for declaratory judgment would be futile because it does not comply with federal pleading requirements, fails to state a claim upon which relief may be granted, or fails to show that Rapid Settlements has standing to seek that relief.  J.G. Wentworth and 321 Henderson argue that Rapid Settlements's proposed counterclaim for declaratory judgment does not give them fair notice of the parties against whom it is seeking relief.  (Docket Entry No. 144 at 4).  They also assert that Rapid Settlements cannot maintain a cause of action for declaratory judgment that merely restates an affirmative defense.

Rapid Settlements seeks a declaration that "[a]ny attempt by any annuity issuer, annuity owner or payee under a structured settlement arrangement to voluntarily transfer, redirect, convey or assign . . . without a court order redirecting such payment rights to another person, is void *ab initio* and cannot be enforced under any legal theory."  (Docket Entry No. 130, ¶ 23(a)).  The requested relief is extraordinarily broad.  Rapid Settlements asks this court to declare the rights and obligations that could arise from a variety of different circumstances.  This declaration requests relief far beyond this court's ability to provide.  *See* 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.").  The motion for leave to amend paragraph 23(a) is denied as both futile and as unnecessarily expanding the issues in this case, causing delay and prejudice.

12

Paragraph 23(b) seeks a declaratory judgment that "[c]ontractual disputes relating to acquiring structured settlements may be resolved under the Federal Arbitration Act, where the contract involves interstate commerce." (Docket Entry No. 130, ¶ 23(b)). Again, this request for declaratory judgment suffers from gross overbreadth. Leave to amend to assert this claim is denied.

At paragraph 23(b)(1), Rapid Settlements seeks a declaratory judgment that an injunction should issue prohibiting Symetra, NASP, and J.G. Wentworth from "interfering with Rapid Settlements and its customers' attempts to expeditiously resolve their differences in arbitration." (Docket Entry No. 130, ¶ 23(b)(1)). A party seeking injunctive relief must show that: (1) it is likely to prevail on the merits; (2) it will be irreparably harmed if the injunction does not issue; (3) the opposing party will not be harmed if the injunction does issue; and (4) the public interest will be served by the injunction. *ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 597 n.34 (5th Cir. 2003) (citations omitted). A party seeking an injunction must also plead and prove an irreparable injury for which no adequate remedy at law exists. *Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 861, 867–68 (5th Cir. 2004) (citing *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 795 (Tex. App.—Houston [1st Dist.] 2001, no pet.)). An adequate remedy at law exists when the situation sought to be enjoined is capable of being remedied by legally measurable damages. *Id.*

Rapid Settlements waited nearly two years from the time this suit was brought until it asserted this claim. Rapid Settlements knew that Symetra, NASP, J.G. Wentworth, and

321 Henderson were objecting to its use of arbitration proceedings well before this suit was filed. *See Wireless Agents, L.L.C. v. T-Mobile USA, Inc.*, No. 3:05-cv-0094-D, 2006 WL 1540587, at *3 (N.D. Tex. June 6, 2006).  Rapid Settlements also seeks actual and consequential damages for the losses it allegedly suffered from the proposed transfer agreements that were not approved under the applicable SSPA but that Rapid Settlements attempted to enforce, in whole or in part, through the use of arbitration.  Rapid Settlements has a remedy at law for the harm it alleges.  Rapid Settlements's motion for leave to amend to seek a declaratory judgment under paragraph 23(b) is denied as futile and dilatory.

Paragraph 23(c) seeks a declaratory judgment that "[t]he totality of 'transfers' of structured settlement payment rights are not controlled by SSPAs; rather only the subset of 'transfers' that are as defined and limited by the definitions set forth in the SSPAs are subject to the terms of said acts."  (Docket Entry No. 130, ¶ 23(c)).  This court cannot properly declare the rights and obligations of all possible proposed transfer agreements.  Leave to amend to include this claim is denied as futile and as prejudicial.

Paragraph 23(d) seeks a declaration that "Symetra has engaged in self-dealing and improper conduct concerning the payment and transfer of the structured settlement payment rights of Symetra annuitants.  This self-dealing includes, but is not limited to, soliciting annuitants after receiving notice letters from factoring companies such as Rapid Settlements.  Such actions are sufficient for this Court to conclude that Symetra comes to this Court with unclean hands."  (Docket Entry No. 130, ¶ 23(d)).  This claim restates Rapid Settlements's affirmative defense of unclean hands.  *See* (Docket Entry No. 130, ¶ 11–13).  "[A] motion

14

for declaratory judgment that merely restates a party's defenses is insufficient unless the party can prove that there are issues of greater ramification to be resolved." *Hanson Aggregates, Inc. v. Roberts & Schafer Co.*, No. 3:05-cv-1883-P, 2006 WL 2285575, at *3 (N.D. Tex. Aug. 9, 2006) (quoting *Albritton Prop. v. Am. Empire Surplus Lines*, No. 3:04-CV-2531-P, 2005 WL 975423, at *3 (N.D. Tex. Apr. 25, 2005)). Rapid Settlements has not presented an issue of greater ramification. Leave to amend to add paragraph 23(d) is denied.

Proposed paragraph 23(e) asks this court to determine whether methods of obtaining a transfer of structured settlement payment rights, such as garnishments, turnover orders, or confessions of judgment, employed by NASP members violate SSPA requirements. (Docket Entry No. 130, ¶ 23(e)). Again, as a broad request for declaratory relief, this proposed claim asks this court to rule on a wide variety of possible facts and circumstances beyond the specific facts presented. As a more narrow request, this paragraph restates Rapid Settlements's affirmative defense of unclean hands against the NASP members. The motion to amend to add paragraph 23(e) is denied.

Paragraph 23(f) seeks a declaratory judgment that "Rapid Settlements has a valid and enforceable arbitration agreement in its Transfer Agreement with each of the annuitants. Arbitration is proper in the case of a breach of contract between the parties." (Docket Entry No. 130, ¶ 23(f)). In the January 10, 2007 memorandum and order, this court undertook a detailed analysis of Rapid Settlements's use of arbitration to effect transfers of future-payment rights of specific annuitants whose cases were part of the record before this court.

15

Rapid Settlements asks this court to issue a much broader declaratory judgment.  Rapid Settlements's motion for leave to amend to allege paragraph 23(f) is denied.

In paragraph 23(g), Rapid Settlements seeks a declaratory judgment that "[a]ny attempt by Symetra to assert that a transfer must comply with the Washington SSPA in addition to the SSPA of the state in which the transfer takes place is improper."  (Docket Entry No. 130, ¶ 23(g)).  Rapid Settlements's leave to amend to add this paragraph is uncontested.  The motion for leave to amend to add the claim asserted in paragraph 23(g) is granted.

Rapid Settlements's motion for leave to amend to assert affirmative defenses and counterclaims is granted except as to the declaratory judgment claims asserted in paragraphs 23(a)–23(f).

### 3.    *NASP's Motion for Leave to Amend*

NASP also moves for leave to amend its complaint in intervention to seek preliminary and permanent injunctive relief against Rapid Settlements.  (Docket Entry No. 88).  NASP seeks the same relief for its members that Symetra is pursuing.  NASP alleges that its members—competitors of Rapid Settlements—are at a competitive disadvantage when Rapid Settlements uses its arbitration procedures to effect transfers of structured settlement payment rights without complying with the SSPA requirements.  NASP also alleges that Rapid Settlements's arbitration process interferes with its members' business relations.  Rapid Settlements argues that granting NASP leave to amend would be futile because NASP members engage in conduct similar to the acts Rapid Settlements is alleged to engage in.

This argument is not supported by the current record.  NASP's motion for leave to amend is granted.

### 4.    *Symetra's Motion for Leave to Amend*

Symetra also moves for leave to file its third amended complaint, by which it seeks to "refine some of the requested relief, consistent with the evidence presented at the preliminary injunction hearing, as well as evidence Symetra anticipates presenting at the trial on Symetra's request for permanent injunction."  (Docket Entry No. 152 at 1).  In part, Symetra moves to amend its claim to enjoin Rapid Settlements's use of arbitration as to Symetra annuitants nationwide, not just annuitants who reside in Texas.  Symetra argues that this amendment is consistent with the evidence presented at the preliminary injunction hearing.

Rapid Settlements responds that amending the complaint to seek relief as to non-Texas Symetra annuitants will materially broaden the scope of discovery.  The record evidence belies Rapid Settlements's contention.  On February 6, 2007, this court enjoined Rapid Settlements "from using arbitration to effect, directly or indirectly, a transfer of all or part of a Symetra annuitant's future-payment stream."  (Docket Entry No. 98 at 4).  The injunction is not limited to Symetra annuitants who reside in Texas.  Moreover, all but one of the annuitants whose future-payment streams were at issue in the preliminary injunction reside outside of Texas.  Candy Ann Richardson lived in Texas; Paul Patterson was an Iowa resident; Kenneth Gross lived in Indiana; Thomas Remedies lived in Louisiana; Mary Foreman lived in Illinois; and Leslie Dean and Robert Hargette were residents of North

17

Carolina.  (Docket Entry No. 84 at 11–30).  Rapid Settlements's argument that Symetra's proposed amendment will materially broaden the scope of discovery is inconsistent with the current record.

Rapid Settlements also asserts that Symetra's other proposed amendments would be unduly prejudicial, and are brought untimely and in bad faith.  Rapid Settlements does not identify support for its claim that Symetra's motion to amend was brought in bad faith or that Rapid Settlements will be prejudiced.  Symetra states that the amendment will make consistent the allegations in the complaint and the record evidence.  Discovery has been limited thus far to issues related to Symetra's permanent injunction motion, which will be heard in September 2007.  No scheduling order currently is in place for resolving the other claims.  Symetra's motion for leave to file its third amended complaint is granted.

### B.    The Related Cases:  Remand and Consolidation Issues

Rapid Settlements has moved to remand Civil Action Nos. 4:07-cv-855 and 4:07-cv-856 and for reconsideration of this court's order consolidating those cases into this lead case, Civil Action No. 4:05-cv-3167.  Rapid Settlements also opposes the consolidation of Civil Action No. 4:07-cv-1302 into the lead case and moves to remand.  (Docket Entry Nos. 120, 121, & 127).

Rapid Settlements filed these three cases in state court in Harris County, Texas against Symetra, asserting claims for tortious interference with contract and with prospective business relationships.  Rapid Settlements opposes Symetra's objections to the proposed transfers of Symetra annuitants' structured settlement payment rights and contends that such

18

objections interfere with Rapid Settlements's present and prospective contractual relationships with these annuitants. Rapid Settlements also argues that the consolidated cases should be remanded to state court because the damages sought do not meet the jurisdictional amount required under 28 U.S.C. § 1332.

In its affirmative defenses and counterclaims in this suit, Rapid Settlements alleges that Symetra tortiously interferes with its present contractual and prospective business relationships through its practice of objecting to proposed transfers with Symetra annuitants. These allegations are the same that Rapid Settlements makes in the three state-court cases. In its counterclaim, Rapid Settlements seeks funds that it claims resulted from Symetra's alleged interference with the transfers. Those damages include the sums Rapid Settlements would have received had the proposed transfers been approved in state court. In Civil Action No. 4:07-cv-855, Rapid Settlements seeks damages related to the proposed transfer of Abigail Dempsey's future-payment stream, which totals $96,000.00. Under the transfer agreement, Rapid Settlements would have paid Dempsey a lump sum of $14,000.00, for a net of $82,000.00. (Civil Action No. 4:07-cv-855, Docket Entry No. 1, Ex. D). In Civil Action No. 4:07-cv-856, Rapid Settlements seeks damages related to the proposed transfer of Candy Ann Richardson's future-payment stream, which had an aggregate total of $212,646.00. The transfer agreement in that case provided that Richardson would receive $11,200.00 in return for her payment rights, with Rapid Settlements's net exceeding $200,000.00. (Civil Action No. 4:07-cv-856, Docket Entry No. 1, Ex. D). In Civil Action No. 4:07-cv-1302, Rapid Settlements seeks damages related to the proposed transfer of Paul

19

Patterson's future-payment stream, which had an aggregate total of $78,750.00. Under the transfer agreement, Patterson would have been paid a lump sum of $50,500.00, netting Rapid Settlements over $28,000. (Civil Action No. 4:07-cv-1302, Docket Entry No. 1, Ex. D).

In the motions to remand, Rapid Settlements disputes that in the state-court suits it is seeking damages based on the lost future-payment streams. Rapid Settlements argues that it is seeking damages suffered "as a result of [Symetra's] interference with their contracts, which is less than $75,000." (Docket Entry No. 121 at 7). Rapid Settlements does not state how the damages calculation is different from the same damages alleged in its federal-court counterclaim. This court finds that Rapid Settlements's characterization of the damages it seeks in the three state-court suits is inconsistent with the damages allegations it makes in the federal-court suit. *See DeAguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). There is no basis for remand due to jurisdictional amount when the claims asserted in state court are the same as the damages alleged in the counterclaims brought in federal court, which exceed $75,000. The motions to remand Civil Action Nos. 4:07-cv-855 and 4:07-cv-856 and for reconsideration are denied.

The issues presented in Civil Action No. 4:07-cv-1302 are the same as those raised in Rapid Settlements's counterclaim asserted in this case. The motion to consolidate Civil Action No. 4:07-cv-1302 into this case is granted. Rapid Settlements's motion to remand that case is denied.

20

### C.      The Motion to Dismiss

#### 1.      *The Legal Standard*

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted."  FED. R. CIV. P. 12(b)(6).   The Supreme Court recently clarified the standards that apply in a motion to dismiss for failure to state a claim.   In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007), the Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a),  which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).   A court must not dismiss a complaint for failure to state a claim unless the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974; *see also Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007).   Although material allegations in the complaint must be accepted as true and construed in the light most favorable to the nonmoving party, a court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.

In considering a Rule 12(b)(6) motion to dismiss, a court must limit itself to the contents of the pleadings, with one exception.   In *Collins v. Morgan Stanley Dean Witter*, the Fifth Circuit approved the district court's consideration of certain documents the defendant attached to a motion to dismiss.   *Collins*, 224 F.3d at 498–99.   The Fifth Circuit "restricted such consideration to documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim."  *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir.

2003) (citing *Collins*, 224 F.3d at 498–99).  Other courts approve the same practice, stating

that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the

pleadings if they are referred to in the plaintiff's complaint and are central to her claim."

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *see also*

*Field v. Trump*, 850 F.2d 938, 949 (2d Cir. 1998).

>        2.      *Analysis*

In consolidated Civil Action No. 4:06-cv-2933, Rapid Settlements seeks a judgment

declaring the parties' rights to Kenneth Gross's structured settlement payments; actual

damages for the past payments it asserts are due and owing as "supplemental damages to

declaratory relief"; injunctive relief; and an order requiring Symetra, 321 Henderson, and

J.G. Wentworth to interplead the funds pending resolution of this suit.[3]  (Civil Action No.

4:06-cv-2933, Docket Entry No. 1, Ex. B).  J.G. Wentworth and 321 Henderson move to

dismiss Rapid Settlements's claims against them.

A declaratory judgment is appropriate only if a justiciable controversy exists as to the

rights and status of the parties and the controversy will be resolved by the declaration sought.

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).  "To constitute

a justiciable controversy, there must exist a real and substantial controversy involving

genuine conflict of tangible interests and not merely a theoretical dispute."  *Bonham State*

*Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995).  J.G. Wentworth and 321 Henderson

---

[3] Rapid Settlements also sought a temporary restraining order but was denied that request in state court on September 6, 2006, before this case was removed.  (Civil Action No. 4:06-cv-2933, Docket Entry No. 1, Ex. F).

argue that Rapid Settlements's claim for declaratory relief should be dismissed because no justiciable controversy exists.  (Docket Entry No. 103 at 3–7).

J.G. Wentworth and 321 Henderson were not parties to the proposed transfer agreement between Rapid Settlements and Gross.  J.G. Wentworth and 321 Henderson were not given notice of the arbitration or the award until nearly one month after the award was entered.  Nor were they given notice of the state-court hearing confirming the award.  Neither the arbitration award nor the judgment confirming that award mention either J.G. Wentworth or 321 Henderson.

As this court discussed at length in its January 10, 2007 memorandum and opinion, arbitration awards are binding on nonsignatories in only few circumstances.  Rapid Settlements argues that the arbitration award and judgment confirming that award are binding on J.G. Wentworth and 321 Henderson "under a theory of privity."  (Docket Entry No. 112 at 7–8).  Rapid Settlements contends that J.G. Wentworth and 321 Henderson are "in privity" with Gross because they share a "similarity of interests" in the structured settlement payment rights.  This argument is unpersuasive.  Courts have compelled arbitration involving nonsignatories under the following contract and agency principles: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) estoppel; and (6) third-party beneficiary.  *See, e.g.*, *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005); *see also Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 356 (5th Cir. 2003).  J.G. Wentworth and 321 Henderson did not act as Gross's alter egos, were not incorporated by reference into the agreements to arbitrate, were not third-party beneficiaries to the transfer

23

agreements between Gross and Rapid Settlements, and are not in an agency relationship with Gross.

Nor do either of the estoppel theories bind J.G. Wentworth or 321 Henderson to the arbitration agreements. Texas courts and courts in the Fifth Circuit recognize two applicable types of estoppel: direct-benefits estoppel and an "intertwined claims" theory of estoppel. *Bridas*, 345 F.3d at 361–62; *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 761 (Tex. 2006). Under direct-benefits estoppel, a nonsignatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes. *Kellogg Brown & Root*, 166 S.W.3d at 739. This estoppel theory applies when a nonsignatory "knowingly exploits the agreement containing the arbitration clause." *Bridas*, 345 F.3d at 361–62. If the nonsignatory seeks, through the lawsuit, to derive a direct benefit from the contract containing the arbitration clause, direct benefits estoppel will preclude the suit and compel the nonparty to arbitrate. *Weekley Homes*, 180 S.W.3d at 131. Rapid Settlements sued J.G. Wentworth and 321 Henderson to enforce the arbitration award; the defendants are not seeking to benefit from the contract containing the arbitration clause while avoiding the arbitration obligation. *See Kellogg Brown & Root*, 166 S.W.3d at 741 ("[A] nonsignatory should be compelled to arbitrate a claim only if it seeks, through the claim, to derive a *direct benefit* from the contract containing the arbitration provision.").

The intertwined-claims theory of estoppel does not bind J.G. Wentworth or 321 Henderson. Under this theory, a signatory may be estopped from avoiding arbitration with

a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.  *Bridas*, 345 F.3d at 361 (quoting *Thompson-C.S.F., S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)). A signatory, however, "may not estop a nonsignatory from avoiding arbitration regardless of how closely affiliated that nonsignatory is with another signing party."  *MAG Portfolio Consultant, GMBH v. Merlin Biomed Group, LLC*, 268 F.3d  58, 61 (2d Cir. 2001); *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 201–02 (3d Cir. 2001).  Rapid Settlements may not bind J.G. Wentworth or 321 Henderson under either of the estoppel theories.

Rapid Settlements's attempt to bind J.G. Wentworth and 321 Henderson also fails because those parties did not receive notice necessary to provide them a "full and fair opportunity to litigate."  *See Allen v. McCurry*, 449 U.S. 90, 101 (1980).  In the state-court suit to enforce the May 25, 2005 arbitration award, the appellate court refused to grant Rapid Settlements's request to have the judgment against Symetra enforced because "[i]f the Semetra [sic] parties were never served, the portion of the judgment that affects them is voidable."  *In re Rapid Settlements, Ltd.*, No. 01-05-00938-CV, at 2 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding).  Similarly, neither J.G. Wentworth nor 321 Henderson was given notice of the state-court hearing to confirm the arbitration award, where they could have challenged the arbitration and the result.

Moreover, this court has already found that the arbitrator's purported "garnishment" of Gross's structured settlement payment rights in the April 18, 2007 award was in violation

of this court's injunction order.  The injunction prohibited Rapid Settlements from using arbitration procedures to avoid the SSPA requirements to obtain a transfer of a Symetra annuitant's structured settlement payment rights.  (Docket Entry No. 84 at 70).  The arbitrator's order of "garnishment" or "turn over" of Gross's structured settlement payment rights to Rapid Settlements as a remedy for breach of a transfer agreement, when the proposed transfer was not approved by the state court under the applicable SSPA, falls squarely under the ambit of acts this court enjoined.  Any attempt to force 321 Henderson or J.G. Wentworth to comply with the arbitration award would violate the injunction.  This court finds that no justiciable controversy exists between Rapid Settlements and J.G. Wentworth or 321 Henderson.  The motion to dismiss the claim for declaratory relief as to J.G. Wentworth and 321 Henderson is granted.

Rapid Settlements also cannot show that it is entitled to injunctive relief.  A temporary injunction is an equitable remedy available where the court finds that: (1) the plaintiff is likely to prevail on the merits; (2) the plaintiff will be irreparably harmed if the injunction does not issue; (3) the defendant will not be harmed if the injunction does issue; and (4) the public interest will be served by the injunction.  *ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 597 n.34 (5th Cir. 2003) (citations omitted).  For a permanent injunction to issue, Rapid Settlements must prevail on the merits and establish that equitable relief is appropriate.  *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987) (recognizing that the standard for a permanent injunction is essentially the same as for a

preliminary injunction with the exception that the plaintiff must show actual success on the merits rather than a mere likelihood of success).

A party seeking an injunction must plead and prove an irreparable injury for which no adequate remedy at law exists. *Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 861, 867–68 (5th Cir. 2004) (citing *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 795 (Tex. App.—Houston [1st Dist.] 2001, no pet.)).  For purposes of injunctive relief, an adequate remedy at law exists when the situation sought to be enjoined is capable of being remedied by legally measurable damages.  *Id.* (citing *Haq v. America's Favorite Chicken Co.*, 921 S.W.2d 728, 730 (Tex. App.—Corpus Christi 1996, writ dism'd w.o.j.)).

As stated, because neither the arbitration award nor the judgment confirming that award are binding on J.G. Wentworth or 321 Henderson, no justiciable controversy exists between Rapid Settlements and those parties as to Gross's structured settlement payments. Moreover, Rapid Settlements cannot show that it will be irreparably harmed or that no adequate remedy exists at law.  Because Rapid Settlements seeks actual damages from J.G. Wentworth and 321 Henderson in the amount of the structured settlement payments it contends it is owed, there is an adequate remedy at law.  Rapid Settlements also waited more than one year after the state court confirmed the arbitration award in May 2005 before filing suit in August 2006, evidence that it will not suffer irreparable injury.  "[D]elay in seeking a remedy is an important factor bearing on the need for a preliminary injunction.  Absent a good explanation, a substantial period of delay militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive

27

relief.   Evidence of an undue delay in bringing suit may be sufficient to rebut the presumption of irreparable harm." *Wireless Agents, L.L.C. v. T-Mobile USA, Inc.*, No. 3:05-cv-0094-D, 2006 WL 1540587, at \*3 (N.D. Tex. June 6, 2006); *see also Tough Traveler, Ltd. v. Outbound Prod.*, 60 F.3d 964, 968 (2d Cir. 1995) (vacating a preliminary injunction where the movant waited four months to seek relief after filing suit); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (finding that a ten-week delay in seeking injunction for trademark infringement undercut the claim of irreparable harm); *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1193 (5th Cir. 1975) (affirming the district court's denial of temporary injunctive relief where the movant, among other things, delayed three months in making its request).   Injunctive relief is unavailable.

Nor can Rapid Settlements show that it is entitled to obtain an order from this court requiring 321 Henderson to interplead the structured settlement payments made to Gross. Interpleader under Rule 22 of the Federal Rules of Civil Procedure and similar state rules "*affords* a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding."   7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE: Civil 3d § 1704 (3d ed. 2001) (emphasis added); *see also White v. F.D.I.C.*, 19 F.3d 249, 251 (5th Cir. 1994) ("Interpleader is a procedural device which *entitles* a person holding money or property, concededly belonging at least in part to another, to join in a single suit two or more persons asserting mutually exclusive claims to the fund." (emphasis added)).   Interpleader may be an

28

option available to 321 Henderson, but Rapid Settlements has not cited authority that would make interpleader a requirement.

The motion to dismiss the claims asserted against J.G. Wentworth and 321 Henderson in Civil Action No. 4:06-cv-2933 is granted.  Those claims are dismissed.

### D.    Sanctions

Rapid Settlements has moved for sanctions against Symetra, asserting that it has created a "proliferation of litigation" in the *Gross* matter.  (Docket Entry No. 83).  Rapid Settlements contends that the *Gross* case consisted at one time of suits in seven different venues and states that Symetra continues to ignore its demands to honor the arbitration awards.

Rapid Settlements moves for sanctions under this court's inherent power rather than under Rule 11 of the Federal Rules of Civil Procedure or 28 U.S.C. § 1927.  Federal courts have "the inherent power to impose sanctions against vexatious litigants."  *Newby v. Enron Corp.*, 302 F.3d 295, 302 (5th Cir. 2002).  A court's inherent power is interpreted narrowly "and its reach is limited by its ultimate source—the court's need to orderly and expeditiously perform its duties."  *Id.* (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)).  An imposition of sanctions requires a finding of bad-faith conduct.  *Chambers*, 501 U.S. at 46.  Symetra filed one of the seven cases involving Gross's structured settlement payments.  The record in this case lacks sufficient evidence of bad-faith conduct on the part of Symetra.  The motion for sanctions is denied.

### III.    Conclusion

29

Rapid Settlements's motion for leave to assert affirmative defenses and counterclaims is granted except as to its motion to seek the declaratory relief in paragraphs 23(a)–23(f) of its "Affirmative Defenses and Counterclaims." NASP's motion for leave to amend is granted. Symetra's motion for leave to amend is also granted. Rapid Settlements's motions for remand of Civil Action Nos. 4:07-cv-855 and 4:07-cv-856 and for reconsideration of this court's consolidation order are denied. Symetra's motion to consolidate Civil Action No. 4:07-cv-1302 is granted; Rapid Settlements's corresponding motion to remand that case is denied. Civil Action No. 4:07-cv-1302 is consolidated into this action. J.G. Wentworth and 321 Henderson's motion to dismiss the claims in Civil Action No. 4:06-cv-2933 is granted; those claims are dismissed with prejudice. Rapid Settlements's motion for sanctions is denied.

A status conference to set a schedule to resolve NASP's preliminary injunction motion and related discovery matters is set for **August 17, 2007 at 10:30 a.m.**

SIGNED on July 19, 2007, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge

30