**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| SYMETRA LIFE INSURANCE CO., *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-05-3167 |
| | § | |
| RAPID SETTLEMENTS, LTD., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

This dispute involves the secondary market in structured settlement payment rights.

Symetra Life Insurance Co. and Symetra Assigned Benefits Service Co. (together,

"Symetra") sued Rapid Settlements, Ltd. ("Rapid"), seeking a preliminary and permanent

injunction preventing Rapid from using arbitration to circumvent the requirements of the

state structured settlement protection statutes.  Specifically, Symetra seeks to prevent Rapid

from using arbitration to effect a transfer of an annuitant's rights to future structured

settlement payments under a Symetra-issued annuity, if a state structured settlement

protection act applies to require a state court to approve the transfer based on specific

findings that the transfer is in the annuitant's best interest, and if the state court has either

disapproved or not approved the transfer.  The National Association of Settlement Purchasers

("NASP") intervened in the suit, also seeking a preliminary and permanent injunction to

prevent Rapid from effectuating transfers of future structured settlement payment rights

through arbitration.  In addition, NASP sought to enjoin Rapid from attempting to enforce

rights of first refusal or security interests in future structured settlement payment rights without first obtaining the state court approval required under the applicable state structured settlement protection act.

After an evidentiary hearing on Symetra's application for a preliminary injunction, this court entered an order on February 6, 2007 prohibiting Rapid from "using arbitration to resolve disputes between it and any Symetra annuitant, if that arbitration, directly or indirectly, effects a transfer of all or part of the annuitant's future-payment stream, unless a state court has approved the transfer as required under the applicable state structured settlement protection act." (Docket Entry No. 84 at 71). On June 4, 2007, this court found Rapid in contempt of the February 6, 2007 preliminary injunction because Rapid had failed to obtain state-court approval of a proposed transfer of Symetra annuitant Kenneth Gross's future-payment stream, obtained an arbitration award effecting such a transfer, and attempted to confirm and enforce that arbitration award against Symetra in Texas state court.

Rapid has filed a motion for reconsideration of this court's June 4, 2007 order of contempt, (Docket Entry No. 175), and a motion for reconsideration of this court's February 6, 2007 preliminary injunction order, (Docket Entry No. 182). Symetra has responded to both motions. (Docket Entry Nos. 187, 195). Rapid has also submitted a document it styled a "Memorandum on Certain Recent Arbitration Developments." (Docket Entry No. 227). In addition, Rapid has filed a motion seeking leave to file a motion to confirm arbitration awards it has obtained against Kenneth Gross, (Docket Entry No. 181), and has filed such

a motion to confirm, (Docket Entry No. 168).  Symetra and NASP have responded to Rapid's motion for leave.  (Docket Entry Nos. 188, 189).

Symetra has moved to dismiss the claims for tortious interference and civil conspiracy that Rapid asserts as the assignee of Symetra annuitants Candy Richardson and Abigail Dempsey. (Docket Entry No. 160).  Rapid has responded.  (Docket Entry No. 172).  Symetra has also moved to dismiss claims that Rapid asserts as the assignee of Symetra annuitant Paul Patterson, (Docket Entry No. 222), and Rapid has responded, (Docket Entry No. 224).

Based on the motions and replies, the record, the parties' submissions, and the applicable law, Rapid's motions for reconsideration of this court's preliminary injunction order and contempt order are denied.  Rapid's motion to confirm and motion for leave to file a motion to confirm are denied.  Symetra's motions to dismiss are granted.  Symetra's application for a permanent injunction is granted.  The reasons for these rulings are set out in detail in the findings of fact and conclusions of law set out below.[1]

## I.   Background

---

[1]Rapid sued Gwendolyn Brown and R&Q Reinsurance Company ("R&Q"), another factoring company in the secondary market of structured settlements, in Texas state court.  Rapid sought to enforce an arbitration award that Rapid had obtained in Texas against Brown, an R&Q annuitant residing in Florida.  R&Q filed a motion to consolidate that action, *Rapid Settlements Ltd. v. Gwendolyn Brown and R&Q Reinsurance Company*, No. 07-cv-2093, with this case. (Docket Entry No. 154).  Rapid has responded.  (Docket Entry No. 163).  The R&Q action has since been dismissed. R&Q's motion to consolidate is denied as moot.

Symetra has also moved for a protective order to prevent Rapid from deposing Symetra's corporate representative on matters that Symetra argues are unrelated to its request for a permanent injunction.  (Docket Entry No. 178).  Rapid has filed a motion to compel deposition testimony from Symetra's corporate representative.  (Docket Entry No. 192).  Symetra has responded.  (Docket Entry No. 200).  Symetra has also moved to exclude deposition testimony from Rapid's corporate representative, (Docket Entry No. 193), and Rapid has responded, (Docket Entry No. 201). Because the parties conducted discovery and this court held an evidentiary hearing on Symetra's permanent injunction motion and finds the record sufficient to resolve the issues presented, Symetra's motion for a protective order and motion to exclude deposition testimony and Rapid's motion to compel deposition testimony are denied as moot.

### A.      The Secondary Market in Structured Settlements

In the secondary market in structured settlements, tort claimants who settled their claims by entering into structured settlements transfer some or all of their future-payment rights to a "factoring company" in exchange for a discounted lump sum paid in the present. The legislatures of forty-three states, including Texas, saw a potential for abuse in these secondary-market transactions and enacted paternalistic statutes regulating them.  These statutes typically require the factoring company fully to disclose the effect of the proposed transfer and require a state-court judge affirmatively to approve the transfer after a hearing as in the best interests of the settling tort claimant.  The purpose of the statutes is to protect the claimant/payee from overreaching by factoring companies and to ensure that the decision to give up future-payment streams in exchange for a present discounted lump-sum payment is informed and voluntary.  The Texas Structured Settlement Protection Act, for example, requires that before a secondary market transfer can occur, a court must approve the transfer after a hearing by finding that the transfer is in the best interests of the payee, that the payee has been advised in writing to seek independent professional advice regarding the transfer, and that the transfer does not violate any applicable statute or order of any court or other governmental authority. TEX. CIV. PRAC. & REM. CODE § 141.004.  The purpose of the "best interests" finding is to make sure that the payee does not give up his or her right to the future-income stream in exchange for a much smaller present payment, unless there is good reason for the transaction. *Settlement Capital Corp. v. BHG Structured Settlements, Inc.*, 319 F. Supp. 2d 729, 734 (N.D. Tex. 2004).  "This maintains the purpose and reason for the

structured settlement while at the same time allowing for changed circumstances that may warrant exchanging future income for current income." *Id.*

State structured settlement protection statutes typically require that the party seeking approval of the transfer serve written disclosures on all interested parties before the hearing to consider whether the proposed transfer is in the best interests of the proposed transferor and meets the other statutory requirements for approval. *See, e.g.*, TEX. CIV. PRAC. & REM. CODE § 141.006(b).[2] Interested parties include the annuity issuer and any other party with continuing rights or obligations under the structured settlement. *Id.* § 141.002(7). Interested

---

[2] Section 141.006(b) provides:

> At least 20 days before the date of the scheduled hearing on any application for approval of a transfer of structured settlement payment rights under Section 141.004, the transferee shall file with the court and serve on all interested parties a notice of the proposed transfer and the application for authorization, including with the notice:
>
> (1)    a copy of the transferee's application;
>
> (2)    a copy of the transfer agreement;
>
> (3)    a copy of the disclosure statement required under Section 141.003;
>
> (4)    a listing of each of the payee's dependents, together with each dependent's age;
>
> (5)    notice that any interested party is entitled to support, oppose, or otherwise respond to the transferee's application, either in person or by counsel, by submitting written comments to the court or by participating in the hearing; and
>
> (6)    notice of the time and place of the hearing and notification of the manner in which and the time by which written responses to the application must be filed to be considered by the court.

TEX. CIV. PRAC. & REM. CODE § 141.006(b)(5).

parties are entitled to "support, oppose, or otherwise respond to the transferee's application, either in person or by counsel, by submitting written comments to the court or by participating in the hearing." *Id.* § 141.006(b)(5).

In 2002, Congress enacted legislation directed at reinforcing the state structured settlement protection acts.  Under this legislation, the Internal Revenue Code imposes a forty percent federal excise tax on any party that acquires payment rights in a "structured settlement factoring transaction" that does not receive court approval required by an applicable statute.  26 U.S.C. § 5891(a).  The statute exempts from the federal excise tax transactions that are approved in advance by a "qualified order."  26 U.S.C. § 5891(b).  A "qualified order" is defined as

> a final order, judgment, or decree which (A) finds that the transfer . . . (I) does not contravene any Federal or State statute or the order of any court or responsible administrative authority, and (ii) is in the best interest of the payee, taking into account the welfare and support of the payee's dependents, and (B) is issued (I) under the authority of an applicable State statute by an applicable State court, or (ii) by the responsible administrative authority (if any) which has exclusive jurisdiction over the underlying action or proceeding which was resolved by means of the structured settlement.

26 U.S.C. § 5891(b)(2).  The Internal Revenue Code exemption requirements dovetail with and implement the two primary requirements for an effective transfer under the state structured settlement protection acts: the proposed transfer must be in the payee's best interests and must be affirmatively approved by a state court under the applicable state structured settlement protection statute.

Rapid is a factoring company that enters into proposed transfer agreements with structured settlement payees, including payees who have annuities issued by Symetra. Symetra Assigned Benefits Service Co. accepts assignments of structured settlement obligations from defendants in personal injury cases. Symetra Assigned Benefits Service Co. meets its obligations by purchasing annuities from, among others, Symetra Life Insurance Co., which issues annuities to fund structured settlements.

### B.    The Preliminary Injunction Hearing

This court held a hearing on Symetra's preliminary injunction hearing on August 31, 2006. The parties presented arguments on the issue of whether Rapid's practice of using arbitration to effectuate, directly or indirectly, a transfer of future-payment rights without state-court approval contravenes the state structured settlement protection acts. Symetra presented evidence showing that Rapid had a practice of entering into proposed transfer agreements with structured settlement payees, including Symetra annuitants. After failing to obtain state-court approval of the proposed transfer—either because a state trial court or appellate court had rejected the proposed transfer, or because Rapid did not seek state-court approval under the state structured settlement protection acts—Rapid invoked the arbitration provision in the proposed transfer agreement, alleging breach of some provision in that agreement. The arbitration usually occurred in Houston, Texas, although the annuitant lived in a distant city. The annuitant usually appeared by telephone and usually without a lawyer. Rapid would obtain an award, usually "agreed to," which would order the transfer of the future-income stream that was the subject of the proposed transfer agreement. The effect of

7

the award would be to require the annuitant to transfer the same payments to Rapid that Rapid would have received if a state court had approved the transfer as required by the applicable state structured settlement protection act.  In some of these arbitration awards, the arbitrator would purport to make the "best interests" finding that the state structured settlement protection acts require of a state-court judge.   Rapid then often sought confirmation of the award in a court of the state where the arbitration award was entered, without providing notice to Symetra.

In the preliminary injunction hearing, Symetra argued that complying with such arbitration awards subjected it to a risk of double liability because the awards conflicted with the applicable state structured settlement protection acts, which require Symetra to make payments to the annuitant identified in the annuity contract unless compelled to do otherwise by a valid court order.  (Docket Entry No. 191 at 15–17).  Symetra also contended that Rapid's practice of invoking arbitration violates the state structured settlement protection acts.  (*Id.* at 48).

Rapid responded that in invoking arbitration against individuals who have entered into proposed transfer contracts with Rapid, before that transfer has been approved (or even after it has been disapproved) under the applicable state structured settlement protection acts, Rapid is only seeking damages for breach of those contracts, not a transfer that would require approval under the state acts.  Rapid also argued that an arbitrator can award such damages under the Federal Arbitration Act without complying with the state structured settlement protection acts.  Rapid argued that the FAA preempts the state acts to the extent those acts

would preclude Rapid's use of arbitration, even if that use circumvents the state act requirements of obtaining a state court judge's approval of the proposed transfer after a hearing is held and specific findings are made.  (Docket Entry No. 191 at 28).

Rapid also advanced an unclean-hands defense.  Rapid argued that Symetra has honored garnishments of future-payment streams from other secondary market companies, but not if Rapid seeks a garnishment of an annuitant's future-payment stream to recover damages for breach of contract.  To the extent that garnishment is an "encumbrance" on a future-payment stream, Rapid argued that Symetra has engaged in unclean hands by honoring garnishments from other parties, but not from Rapid.  (Docket Entry No. 191 at 19–22).  Rapid also argued that Symetra has engaged in unclean hands by objecting to an annuitant's proposed transfer to Rapid under antiassignment provisions in annuity contracts, but refraining to object on the same ground to an annuitant's proposed transfer to a Symetra affiliate or subsidiary.  (*Id.* at 18–19).

At the preliminary injunction hearing, Symetra submitted documents relating to seven of its annuitants who had entered into proposed transfer agreements with Rapid and against whom Rapid invoked arbitration provisions.  In these arbitration proceedings, Rapid asserted breaches of the proposed transfer agreements that the had annuitants signed.  Before Rapid invoked the arbitration clauses, a state-court judge had expressly refused to approve the proposed transfer under the applicable state structured settlement protection statute or Rapid had simply not pursued the necessary approval.  As a result, the annuitant had no enforceable obligation under the proposed transfer agreement to pay Rapid all or part of the future-

income stream. In most of the cases, Rapid invoked arbitration based on an allegation that the annuitant had breached the proposed transfer agreement by failing to repay a cash advance, termed a "loan."  To remedy the alleged breach, and to recover the attorneys' fees and costs it allegedly incurred, Rapid sought "damages," usually in the same amount that Rapid would have obtained had the proposed transfer agreement been approved under the state protection act.  The arbitration award was usually the result of an "agreement" from a telephone hearing with the annuitant in a distant location and unrepresented by counsel.  The award required the transfer of all or part of the annuitant's future-payment rights.  Rapid then took the arbitration award to a state court and sought confirmation and the entry of final judgment.

The seven annuitants are Candy Ann Richardson, Paul Patterson, Kenneth Gross, Thomas Remedies, Mary Foreman, Leslie Dean, and Robert Hargette.  The findings of fact as to these annuitants are set out in this court's preliminary injunction order and are not repeated here.  In its preliminary injunction application, Symetra asked this court to enjoin Rapid from seeking to enforce the arbitration awards or the judgments confirming those awards against Symetra with respect to these seven annuitants pending the permanent injunction hearing.  Symetra also asked this court to enjoin Rapid from pursuing any additional arbitrations with Symetra annuitants to effect a transfer of all or part of the future-payment stream if state-court approval under the applicable state protection act has not been obtained, pending the permanent injunction hearing.  On February 6, 2007, this court entered detailed findings and conclusions and issued a preliminary injunction order against Rapid.

10

The order enjoined Rapid from using arbitration, directly or indirectly, to effect a transfer of all or part of a Symetra annuitant's structured settlement future-payment stream unless a state court had previously approved the transfer as required under the applicable state structured settlement protection act.  (Docket Entry No. 98).

### C.    The Permanent Injunction Hearing

On September 21, 2007 and October 9, 2007, this court held a two-day permanent injunction hearing at which the parties submitted evidence and presented witnesses.  Symetra presented Kim McSheridan, Vice President of Symetra, who testified about Symetra's business practices in the structured settlement industry, both as a structured settlement annuity issuer and as a structured settlement annuity repurchaser in the secondary market. As a structured settlement annuity issuer, Symetra enters into annuity contracts with a tort defendant's insurance company.  Under these contracts, Symetra receives funds from the insurance company in exchange for assuming the long-term payout obligations of the structured settlement.  McSheridan testified that Symetra entered the secondary market in structured settlements and began repurchasing future-payment rights from structured settlement payees in early 2005.  Symetra periodically sends solicitation letters to its structured settlement annuitants, offering repurchasing services.  (Docket Entry No. 207 at 51–52).

McSheridan testified that as an annuity issuer, Symetra has objected to all Rapid's proposed transfers with Symetra annuitants when Rapid seeks state-court approval under the state structured settlement protection acts or when Rapid seeks to confirm in a state court

arbitration awards that redirect payments from a Symetra annuitant to Rapid.  Symetra does

not participate in the arbitration proceedings between Rapid and Symetra annuitants because

Symetra is not a party to these arbitrations and has no arbitration agreement with Rapid.

McSheridan testified that Symetra objects to Rapid's proposed transfers "because Rapid

doesn't follow the [state structured settlement protection acts]."  (Docket Entry No. 207 at

58).  Symetra does not object to transfers proposed by other factoring companies, including

transfers proposed by its own subsidiaries or affiliates that repurchase structured settlements,

that comply with Symetra's requirements and comply with the state structured settlement

protection acts.  (*Id.* at 62).  McSheridan testified that Rapid's failure to comply with the state

structured settlement protection acts exposes Symetra to a risk of double payment because

Symetra is contractually obligated by its annuity contracts, and legally obligated by the state

structured settlement protection acts, to make payments to the structured settlement payees

identified in the annuity contracts unless compelled to do otherwise by a valid court order.

(*Id.* at 88).  Because Rapid's arbitration awards purport to require Symetra to send structured

settlement payments to Rapid, rather than the annuitant, without the state-court approval

required by the state structured settlement protection acts, Symetra's compliance with such

an arbitration award would violate its contractual and legal obligations and expose it to

liability.  When asked what Rapid needed to do so that Symetra would honor a proposed

Rapid transfer, McSheridan testified as follows:

> If Rapid were to comply with the [state structured settlement
> protection acts] when they purchased these payments, if Rapid
> were to comply with our other requirements to make sure that

> we're protected in those final orders, then, like every other factoring company out there who is purchasing payments and following all of those requirements, those transfers would go through.

(*Id.* at 125).

McSheridan also testified that Symetra charges all external factoring companies, including Rapid, an administrative fee of $3,000 for transfers involving life-contingent payments. (Docket Entry No. 207 at 145–46). Symetra charges all external factoring companies, including Rapid, lower fees of $650 to $800 for purchases of payment rights limited to a set period. (*Id.* at 192). The fees cover Symetra's costs for reviewing documents, providing a change of address, tracking the necessary information, and other expenses that Symetra did not anticipate when it determined the price for the annuity contract. (*Id.* at 152). Symetra charges a higher fee for life-contingent payments because such payments require additional work to verify the living status of the individual to mitigate the greater risk of overpayments associated with life-contingent payments. (*Id.* at 147–48). Symetra does not charge its subsidiaries any administrative fees for any type of transfer.

At the permanent injunction hearing, Rapid presented Harry Fleming, a lawyer who formerly worked for Rapid on structured settlements. Fleming testified about Rapid's business practices as a structured settlement annuity repurchaser, including Rapid's practice of initiating arbitration against structured settlement payees who had allegedly breached proposed transfer agreements with Rapid. Fleming testified that Rapid has invoked arbitration in approximately five to seven percent of Rapid's proposed transfer agreements

over the past three and a half years. (Docket Entry No. 213 at 13–14). Rapid invokes arbitration in its proposed transfer agreements when the proposed transferor—the structured settlement payee—allegedly breaches transfer agreement obligations, even if the transfer itself has not been approved under the applicable state structured settlement protection act. A breach can occur when the payee attempts to transfer future payments that the payee has already sold to another factoring company. A breach can also occur when the payee fails to repay amounts of money that Rapid has loaned or advanced to the payee before the applicable state structured settlement protection act court has been asked to consider whether to approve the transfer. Fleming testified that initially, Rapid's goal in initiating arbitration proceedings was essentially to circumvent the structured settlement protection acts. Fleming testified that Rapid used arbitration "to really do a transfer under whatever state [structured settlement protection act] applied to the customer" because "[i]t was our belief that we could do a transfer in arbitration." (Docket Entry No. 213 at 20–21). Fleming testified that after "receiv[ing] a surprising amount of push back from the [insurance] carriers on this way of doing arbitrations," Rapid amended its practices to "just do a straight arbitration for lost profits and then a garnishment on any payments [the annuitant] may have to cover the damages award." (*Id.* at 21, 23). Fleming testified that Rapid now seeks arbitration awards based on its lost profits from whatever breach it asserts and attorneys' fees. (*Id.* at 26-27). Fleming acknowledged that such lost-profits damages awards had the same financial effect that the proposed (but not approved) transfer of the future-income stream would have had because the lost profits and fees Rapid seeks are the amount that the annuitant would have

14

transferred to Rapid, minus the lump-sum payment Rapid would have paid to the annuitant. (*Id.* at 34, 50).  Fleming testified that Rapid obtains court orders confirming the awards and then obtains writs of garnishment to enforce the transfers of the annuity payments, despite the absence of state court approval under the applicable protection act.

Fleming testified that Symetra objected to every case in which Rapid seeks state-court approval of a proposed transfer.  Fleming also stated that of all annuity issuers in the primary structured settlement market, Symetra charges the highest administrative fees for life-contingent transfers.  (*Id.* at 156–57).

Symetra also submitted documents relating to three additional Symetra annuitants, Abigail Dempsey, Robert Ayars, and Troy Walker, who entered into proposed transfer agreements with Rapid.  In these cases, Rapid invoked the arbitration provisions in the agreements the annuitants signed, asserting breaches of the agreements.  The resulting arbitration award required the Symetra to pay Rapid the same payments that Rapid would have received under the proposed transfer.  Before Rapid invoked the arbitration clauses, a state-court judge had expressly refused to approve the proposed transfer under the applicable state structured settlement protection statute or Rapid had simply not pursued such approval. The relevant facts as to these three additional annuitants are described below.

### 1.    *Abigail Dempsey*

On March 28, 2005, Rapid and Abigail Dempsey entered into a proposed transfer agreement, under which Rapid would receive a portion of Dempsey's future Symetra annuity payments.  Dempsey's annuity payments consisted of $850 per month for life with twenty

years of guaranteed payments beginning on November 25, 1990. (Symetra Binder 2, Ex. 7.1). Under the proposed transfer agreement, Rapid would receive 120 monthly payments of $800 from November 2011 through October 2020. (*Id.*) These payments had an aggregate value of $96,000 and a discounted present value of $64,016. (Docket Entry No. 208 at 6). In exchange, Rapid was to pay Dempsey a lump sum of $9,000.

On May 5, 2005, Rapid applied for approval of the proposed transfer in Texas state court under the Texas structured settlement protection act. Dempsey is a Texas resident. Symetra filed an objection to the proposed transfer. After conducting a hearing on the proposed transfer, at which Symetra appeared, the state court in Nacogdoches County rejected the transfer on the grounds that it would contravene the Texas structured settlement protection act and was not in the payee's best interests. On August 13, 2005, Rapid sent an arbitration demand to Dempsey, invoking the arbitration clause in the proposed transfer agreement. Rapid alleged that Dempsey breached that agreement by failing to "complet[e] actions required by the Court considering approval" and by refusing to repay $2,000 Rapid had advanced. (Symetra Binder 2, Ex. 7.5). Although Rapid alleges that Dempsey breached the agreement by failing to comply with requirements imposed by the state court as conditions for approving the proposed transfer under the Rapid agreement, a transcript of the hearing reflects that the state-court judge only determined that the transfer violated the Texas structured settlement protection act and was not in Dempsey's best interests. Dempsey wished to transfer her future payments in order to use the lump-sum payment she would receive in exchange to buy special medical equipment for her grandson. The court suggested

16

that Dempsey seek financial aid from charitable organizations to take care of her grandson's medical needs but neither ordered Dempsey to take any action nor promised to approve the transfer if Dempsey met certain conditions.  (Symetra Binder at 7.2).  Rapid had given Dempsey a $1,000 advance before the state-court hearing on the proposed transfer and another $1,000 advance *after* the state court had rejected the proposed transfer.

In the arbitration, Rapid sought recovery of the $2,000 advance along with its attorney's fees and costs or, in the alternative, enforcement of the transfer of all the future-income rights that had been  proposed in the disapproved transfer agreement.  (Symetra Binder 2, Ex. 7.4).  The arbitrator scheduled a hearing, for which Symetra received notice. Symetra did not participate in the arbitration.  Dempsey took part in the arbitration by telephone and without counsel.  On October 7, 2005, the arbitrator awarded Rapid the payments that Dempsey would have transferred to Rapid under the parties' proposed agreement.  The award provided that the "transfer pursuant to the transfer agreement" was "approved."  (Symetra Binder 2, Ex. 7.5).  The arbitrator found that he had "jurisdiction to consider this matter both as to a breach of contract action and alternatively as a transfer under the Chapter 141 of the Texas Civil Practice & Remedies Code."  (*Id.*).  The award provided that the proposed transfer agreement "complies with all substantive and procedural requirements" of the Texas structured settlement protection act.  (*Id.*).  The arbitrator found that Symetra's interest in the arbitration was "in the nature of a stakeholder similar to that in an interpleader action. [Symetra does not] hold any substantive right to the proceeds."  (*Id.*). The arbitrator also found that Symetra will "bear no relevant or material burden whatsoever

17

by changing the address on its computer records and paying the monies as ordered herein to Rapid's assignee rather than to Dempsey." (*Id.*). The award ordered Symetra to pay to Rapid 120 monthly payments of $800 from November 2010 to October 2020, "regardless of whether Dempsey is living." (*Id.*).

On October 31, 2005, Rapid filed a petition against Dempsey in state court in Harris County, Texas seeking a final judgment confirming the arbitration award. Symetra filed suit in Nacogdoches County, Texas court, arguing that under the Texas structured settlement protection act, jurisdiction and venue were in Nacogdoches County, where Dempsey resides. The Harris County court abated its case on November 29, 2006. Symetra sought injunctive relief in the Nacogdoches County court to prevent Rapid from seeking to enforce or confirm the arbitration award. The Nacogdoches court enjoined Rapid from attempting to enforce or confirm the arbitration award in any other court. Rapid appealed to the Texas Court of Appeals in Tyler, which affirmed the trial court's preliminary injunction on August 31, 2007.

### 2.   *Robert Ayars*

Robert Ayars is a Georgia resident. On September 28, 2005, Rapid and Ayars entered into a proposed transfer agreement under which Rapid would receive a portion of Ayars's future annuity payments. Ayars's annuity payments consisted of a lump-sum payment of $25,000 paid on September 13, 2006; a lump-sum payment of $30,000 paid on September 13, 2001; and monthly payments of $425 beginning on September 13, 1991, payable for life, with thirty years of payments guaranteed. (Symetra Binder 2, Ex. 8.1). Under the proposed transfer agreement, Rapid would receive 120 monthly payments of $425 from October 2005

18

through October 2015.  (*Id.*)  These payments had an aggregate value of $51,000 and a discounted present value of $40,042.  (Docket Entry No. 208 at 7).  In exchange, Rapid was to pay Ayars a lump sum of $28,000.

Ayars subsequently tried to cancel the proposed transfer agreement by sending Rapid a letter on January 1, 2006.  In the letter, Ayars stated that if he had known that Rapid and Symetra were currently in litigation, he "would never have signed" the proposed transfer agreement.  (Symetra Binder 2, Ex. 8.1).  On January 25, 2006, Rapid sent Ayars a demand invoking the arbitration clause in the proposed transfer agreement, seeking to garnish the future-income payments.  In the demand, Rapid stated "that the amount of the garnishment and the payments garnished yield the same economic result for Rapid as the originally contemplated transaction, after accounting for attorneys' fees and other collection costs." (*Id.*).  Ayars did not appear at the arbitration, which took place in Houston, Texas.  Symetra received notice of the arbitration but did not participate.  On May 27, 2006, the arbitrator awarded Rapid all the payments that Ayars would have transferred to Rapid under the parties' proposed agreement.  The arbitrator found that he had "jurisdiction to consider this matter both as to a breach of contract action and alternatively as a transfer under the Official Code of Georgia, 51-12-70 through 51-12-77."  (Symetra Binder 2 at 8.2).  The award stated that the proposed transfer agreement "complies with all substantive and procedural requirements" of the Georgia structured settlement protection act.  (*Id.*).  The arbitrator found that Symetra's interest in the arbitration was "in the nature of a stakeholder similar to that in an interpleader action. [Symetra does not] hold any substantive right to the proceeds."  (*Id.*).

19

The arbitrator also found that Symetra will "bear no relevant or material burden whatsoever by changing the address on its computer records and paying the monies as ordered herein to Rapid's assignee rather than to Ayars." (*Id.*).  The award ordered Symetra to pay to Rapid "the amounts due under the contract," or, in the alternative, the arbitration award "shall have the effect of the garnishment of the Assigned Payments as the remedy for Ayars' breach of contract, with Rapid entitled to specific performance of the contract." (*Id.*).  Rapid filed suit against Ayars in state court in Harris County, Texas to confirm the arbitration award on June 1, 2005.  Symetra received no notice of the state-court confirmation proceeding.  However, on March 7, 2007, a Georgia state court found that under the Georgia structured settlement protection act, a transferor "has an irrevocable right to cancel any proposed transfer of structured settlement payment rights within 21 days of execution of the Transfer Agreement or at any hearing with respect thereto." (Symetra Binder 2, Ex. 8.4).  Because Ayars "has effectively exercised his right to cancel the Transfer Agreement in open court," the Georgia court found that the transfer agreement "has been properly cancelled and is void and of no effect." (*Id.*).  Rapid has moved to abate the Harris County court confirmation proceeding until Symetra's request for a permanent injunction in this court is resolved.

### 3.   Troy Walker

On September 21, 2004, Walker and Rapid entered into a proposed transfer agreement under which Rapid would receive a portion of Walker's future annuity payments.  Walker's annuity payments consisted of 360 monthly payments of $1,750, beginning on October 1, 2000.  (Symetra Binder 2, Ex. 9.2).  Under the proposed transfer agreement, Rapid would

receive 120 monthly payments of $1,750 from January 2013 through December 2022.  (*Id.*)
These payments had an aggregate value of $210,000 and a discounted present value of
$108,864.  (Docket Entry No. 208 at 8).  In exchange, Rapid was to pay Walker a lump sum
of $30,000.

Walker is a Tennessee resident.  On October 26, 2004, Rapid filed an application for
approval of the proposed transfer in Tennessee state court.   On February 23, 2005, a
Tennessee state court rejected the proposed transfer on the grounds that it failed to comply
with the Tennessee structured settlement protection act, the proposed transfer was not in
Walker's best interests, and rights under the original settlement agreement were not
assignable.  The court found that the Rapid–Walker proposed transfer agreement failed to
make full disclosure and transferred rights without court approval, in violation of the
Tennessee act.   The court also found that the original settlement agreement was
nonassignable.  (Symetra Binder 2, Ex. 9.1).

On October 6, 2005, Rapid sent a demand to Walker invoking the arbitration clause
in the proposed transfer agreement on the ground that Walker had breached the agreement
by attempting to cancel it.  In the demand, Rapid sought "the enforcement of the contract as
a whole."  (Symetra Binder 2, Ex. 9.3).  Walker appeared at the arbitration, which was held
in Houston, by telephone and without counsel.  Symetra received notice of the arbitration but
did not participate.

On December 5, 2005, the arbitrator awarded Rapid the payments that Walker would
have transferred to Rapid under the parties' proposed transfer agreement.   The award

21

provided that the "transfer pursuant to the transfer agreement" was "approved" and "in the best interest of Walker and his one dependent." (Symetra Binder 2, Ex. 9.4). The arbitrator found that he had "jurisdiction to consider this matter both as to a breach of contract action and alternatively as a transfer under the Structured Settlement Protection Act, Tennessee Code Annotated Section 47-18-2601." (*Id.*) The award provided that the proposed transfer agreement "complies with all substantive and procedural requirements" of the Tennessee structured settlement protection act. (*Id.*). The award ordered Symetra to pay Rapid all "the assigned payments." (*Id.*). Rapid filed suit against Walker in state court in Harris County, Texas to confirm the arbitration award on December 28, 2005. Symetra received no notice of the state-court confirmation proceeding. A hearing on the confirmation was continued until Symetra's request for a permanent injunction in this court is resolved.

### D.   The Evidence as to How Rapid Uses Arbitration

Rapid enters into proposed transfer agreements with structured settlement payees. Under a proposed agreement, Rapid receives a portion of the payee's future annuity payments in exchange for a lump-sum payment. The agreement contains a broad arbitration clause that requires the parties to arbitrate "[a]ny dispute or disagreement arising under this Agreement of any nature whatsoever including but not limited to those sounding in constitutional, statutory, or common law theories as to the performance of any obligations, the satisfaction of any rights, and/or the enforceability hereof." (Symetra Binder 2, Ex. 7.4).

Disputes with a customer payee arise under a variety of circumstances. A customer may wish to cancel his or her contract, which may have a limited rescission period that is

permitted under state law.  (Docket Entry No. 213 at 17).  Some customers—innocently or otherwise—attempt to sell the same future-payment rights to multiple factoring companies. (*Id.* at 17).  Several of the customers discussed at the permanent injunction hearing failed to repay money that Rapid advanced them before Rapid obtained the necessary court approval of the proposed transfer, and on occasion even after a court has refused such approval.  (*Id.* at 58–60).  Other customers failed to repay advances that Rapid had given them after a state trial court had approved the proposed transfer but before a state appellate court had rejected the transfer on appeal.  (*Id.* at 37–39, 42–43).  In the cases of at least two customers, Candy Ann Richardson and Abigail Dempsey, Rapid asserted breach of contract based on the customer's failure to perform actions that Rapid alleges a state court required as a condition precedent to approving the proposed transfer, although the evidence did not support this allegation.  In the disputes that go to arbitration, Rapid has not obtained state-court approval of the proposed transfer as required under the state structured settlement protection acts.

The arbitrations usually take place in Houston, Texas, where Rapid is located, regardless of where the customer resides.  The same arbitrators, selected by Rapid, usually preside.  Most of the customers are in a distant location, usually out of state.  As a result, the customer often appears in the arbitration by telephone.  (Docket Entry No. 213 at 30). Symetra does not participate in the arbitration on the ground that it has no obligation to arbitrate with Rapid.  (Docket Entry No. 207 at 196).  In most arbitrations, Rapid reaches an agreement with the customer and prepares an agreed award for the arbitrator's signature.  (*Id.* at 216).  Rapid drafts the agreed arbitration award to contain language similar or identical to

23

the language found in court orders approving transfers.  (Docket Entry No. 213 at 180–81).

In arbitration, it was originally Rapid's practice to request the same transfer as in the parties' proposed transfer agreement, which the state court had failed to approve as required under the applicable state structured settlement protection act.  (Docket Entry No. 213 at 59). Arbitration awards from these older arbitrations have some variation in language, but generally purport to approve the transfer and require the annuity issuer to pay Rapid the same payments that Rapid would have received under the parties' proposed transfer agreement if the necessary approval had been obtained.  The awards contain the following (or similar) language:

> Based on the foregoing findings and being satisfied that the proposed transfer satisfies all applicable statutory requirements, it is hereby,
>
> ORDERED, ADJUDGED, AND DECREED that the transfer agreement and the Application is GRANTED, and the transfer pursuant to the transfer agreement . . . is APPROVED.

(Rapid Binder 3, Ex. 121; *see also* Symetra Binder 2, Ex. 7.5).[3]  In July 2006, after meeting resistance from annuity issuers and after this litigation began, Rapid stopped requesting a transfer of the same payments it would have received under the proposed transfer agreements.  Instead, Rapid termed the relief it sought in arbitration as damages for lost

---

[3]   The transfer agreements for each of the Symetra annuitants are found in various places in the record, including the parties' binders of exhibits to the permanent injunction hearing.  (Rapid Binder; Symetra Binder).

profits based on breach of the proposed transfer agreement and fees and costs incurred in collecting the damages.  (Docket Entry No. 213 at 59).  Because Rapid's damages calculation determines lost profits based on the assumption that a state court would have approved the proposed transfer, the lost-profits damages award usually has the same financial effect as the parties' proposed transfer.  (*Id.* at 34, 50).  Although styled as awards of damages for breach of contract, Rapid's newer arbitration awards still require the annuity issuer to pay Rapid the same payments that Rapid would have received under the proposed transfer had the necessary state-court approval been obtained under the applicable protection act.  The more recent arbitration awards Rapid obtained state:

> It is further ORDERED that the Assigned Payments shall be made payable to and delivered to [Rapid] . . . .

> It is further

> ORDERED that, in the alternative, on account of [the customer's] breach of contract, this Order shall have the effect of the garnishment of the Assigned Payments as the remedy for [the customer's] breach of contract, with Rapid entitled to specific performance of the contract in exchange for the called for consideration to be paid to [the customer] less damages caused by him.

(Symetra Binder 2, Ex. 8.3).

The arbitration awards Rapid obtained, whether approving a transfer or awarding lost-profits damages for breach of contract, also state:

> The transfer of the Assigned Payments . . . as described in the petition in this matter complies with all substantive and procedural requirements of the [applicable state structured settlement protection act] (recognizing that this matter is being

25

> heard in arbitration) and does not contravene any applicable law. Notice of this hearing was sent to all interested parties in compliance with the [applicable state structured settlement protection act]. The transfer also satisfies the Internal Revenue Code Section 5891, especially so if this order is then confirmed and domesticized of this judgment, and does not contravene any Federal or State statute or the order of any court or responsible administrative authority.

(*Id.*). Rapid thus attempts to obtain the federal income-tax benefits that are linked to state court approval under the state structure-settlement protection acts, despite the fact that such approval has either been refused or simply not obtained. Rapid then takes the arbitration awards to the state court and seeks confirmation and the entry of final judgment. In the past, Symetra received no notice of such filings until the time for challenging the award was effectively over. More recently, Rapid has provided Symetra notice of such filings, and Symetra has succeeded in challenging the awards.

## II.    Rapid's Motion for Reconsideration

Rapid moves for reconsideration of this court's order issuing the preliminary injunction. Rapid argues that the Federal Arbitration Act (FAA) preempts the state structured settlement protection acts to the extent that acts "'undermine' or 'limit' or 'restrict'" the FAA's application. (Docket Entry No. 182 at 3). Rapid also contends that state structured settlement protection acts define "transfers" as "voluntary actions by a payee for consideration," such that the awards entered in arbitration proceedings and judgments confirming those awards are not "transfers" that require state-court approval under the state structured settlement protection acts. Finally, Rapid argues that the state structured

settlement protection acts "seem[] to contemplate the availability of arbitration" and that this court should "give meaning" to this language.  (*Id.* at 5).  These legal arguments were fully addressed in the January 10, 2007 preliminary injunction order.  Rapid raises one new legal argument based on a recent Supreme Court case, which is fully explored below in analyzing the reasons for denying Rapid's motion for reconsideration, taking into account the expanded factual record and developments in the case law.

### A.     Preemption

Rapid cites *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001), for the proposition that the FAA preempts laws "which restrict or limit the ability of [parties] to enter into arbitration agreements," (Docket Entry No. 182 at 8), and notes that the *Circuit City* Court reaffirmed *Southland Corp. v. Keating*, 465 U.S. 1 (1984).  Rapid argues that under *Southland*, the FAA preempts state structured settlement protection acts to the extent that the acts conflict with the arbitration right set out in Rapid's transfer agreements.

In *Southland,* the Court found that the FAA preempted a state statute prohibiting arbitration.  *Southland*, 465 U.S. at 10.  In that case, the California Supreme Court had interpreted the California Franchise Investment Law "to *require* judicial consideration of claims brought under the State statute" and to preclude arbitration of such claims.  *Id.* (emphasis added).  Such an interpretation "directly conflicts with § 2 of the Federal Arbitration Act and violates the Supremacy Clause."  *Id.*  FAA preemption occurs under *Southland* only if the state statute in question prohibits the arbitration of claims.  Because the state structured settlement protection acts do not prohibit or limit arbitration, and this court

27

did not apply those acts to preclude Rapid from arbitrating any of its claims with individuals with whom it enters proposed transfer agreements, preemption does not invalidate this court's order.   Rapid is free to arbitrate disputes with Symetra annuitants who signed proposed transfer agreements with Rapid, within the scope of the arbitration agreements. The only effect of this court's injunction is to prevent Rapid from using the arbitration process to effect a transfer of that individual's future-payment rights when that transfer has not been approved as required under the applicable state structured settlement protection act. The conflict between the FAA and the state statute that led the Court to find preemption in *Southland* is not present in the state structured settlement protection acts.       A Texas appellate court confronted with the same argument that Rapid reiterates also found:

> None of the court findings required by section 141.004 [of the Texas state structured protection act] prohibits the creation of arbitration rights in a transfer agreement. . . .   Nothing in the statute prohibits parties from including an arbitration provision in the transfer agreement. . . .   Section 141.004 of the SSPA requires prior court approval of the transfer agreement, not the arbitration clause, and is therefore not pre-empted by the FAA.

*In re Rapid Settlements*, 202 S.W. 3d 456, 460 (Tex. App.–Beaumont 2006, pet. denied); *see also Allstate Life Ins. Co. v. Rapid Settlements, Ltd.*, No. CIV. A. 3:06cv00629DPJ, 2007 WL 2745806 (S.D. Miss. Sept. 20, 2007) (adopting the reasoning of this court's preliminary injunction); *Allstate Settlement Corp. v. Rapid Settlements, Ltd.*, No. 06-4989, 2007 WL 1377667, at *5 n.4 (E.D. Pa. May 8, 2007) ("Pennsylvania's Protection Act does not prohibit arbitration let alone even mention the issue of arbitrability.  Nothing in this statute prohibits parties from including an arbitration provision in a transfer agreement. . . . Moreover, the

court approval required by the Act is of the transfer agreement, not of the arbitration provision within it.  Therefore, the FAA does not preempt the court approval requirement of the Pennsylvania Protection Act." (internal citations omitted)); *Rapid Settlements, Ltd. v. Symetra Life Ins. Co.*, 234 S.W.3d 788 (Tex. App.—Tyler 2007, no pet.) (adopting the reasoning of the Beaumont court and finding no preemption).

Rapid cites no cases holding that the FAA preempts state structured settlement protection acts or similar statutes that do not conflict with the FAA.  Rapid relies on  *In re David's Supermarkets, Inc.*, 43 S.W.3d 94 (Tex. App.–Waco 2001, no pet.), and *Commerce Park at DFW Freeport v. Mardian Constr. Co.*, 729 F.2d 334 (5th Cir. 1984), for the proposition that the FAA preempts state statutes that "undercut" the enforceability of arbitration agreements or "prohibit or restrict an arbitrator's fashioning relief in a reward." (Docket Entry No. 182 at 9–10).  Neither case that Rapid cites is similar to the current case. Both involve purported absolute prohibitions on arbitration.  In compelling the plaintiff to submit to arbitration with his employer, the *David's Supermarkets* court rejected the plaintiff's argument that "Texas public policy as manifested in the workers' compensation statutes *prohibits* the arbitration of his claims."   43 S.W. 3d at 99 (emphasis added). Similarly, in *Commerce Park*, the Fifth Circuit rejected the plaintiff's argument that the Texas Deceptive Trade Practices Act (DTPA), which prohibited any waiver of a consumer's DTPA cause of action, precluded arbitration of DTPA claims.  729 F.2d 334.  The Fifth Circuit found that such an application of the DTPA's no-waiver provision "would abrogate section 2 of the Arbitration Act" and "violate the supremacy clause."  *Id.* at 338.

The state structured settlement protection acts do not prohibit arbitration of the disputes that Rapid has pursued with individuals who sign transfer agreements.  Rapid has arbitrated disputes such as whether individuals signing transfer agreements breached by failing to return an advance payment or by seeking to sell the same future-payment stream twice.  This court's preliminary injunction did not prohibit Rapid from arbitrating such disputes.  Rather, this court's preliminary injunction prohibited Rapid only from using arbitration to effect a transfer of an annuitant's future-payment stream "unless a state court has approved the transfer as required under the state structured settlement protection act." (Docket Entry No. 84 at 70).  The preliminary injunction did not "block litigants from entering into . . . arbitration agreements involving structured settlement payment rights." (Docket Entry No. 227 at 5).  Arbitration is available to both Rapid and the proposed transferor as long as Rapid does not use arbitration to effect a transfer, directly or indirectly, of the transferor's future-payment stream without obtaining the necessary state-court approval of the transfer under the state structured settlement protection act.

The Supreme Court's recent decision in *Preston v. Ferrer*, 128 S.Ct. 978 (2008), does not change the result.  In that case, the Court held that the FAA supersedes the California Talent Agencies Act (TAA) to the extent that the TAA vested exclusive original jurisdiction to resolve disputes arising under the act in the Labor Commissioner of California.  The TAA regulates talent agents and talent agency agreements and requires any person providing the services of a talent agency to an artist to have a license.  The TAA provides that any contract between an unlicensed agent and an artist is illegal and void.  The challenged TAA provision

30

required controversies arising under that Act to be referred to the Labor Commissioner, who hears and resolves the dispute.  The Commissioner's decision is appealable to a California superior court, which considers the dispute *de novo*.  Preston, a California attorney, invoked the arbitration provision in his contract with Ferrer, who appears as "Judge Alex" on a television network program.  Preston sought management fees that he was allegedly owed under the contract.  Ferrer responded by filing a petition with the California Labor Commission, alleging that the contract was invalid and unenforceable under the TAA because Preston had acted as a talent agent without the license required by the TAA.  Ferrer argued that Preston's unlicensed status made the entire contract void.  The Supreme Court held that "[w]hen parties agree to arbitrate all questions arising under a contract, the FAA supersedes state laws lodging primary jurisdiction in another forum, whether judicial or administrative."  128 S.Ct. at 987.

This holding does not alter the preemption analysis in this case.  The state structured settlement protection acts do not lodge primary jurisdiction over disputes arising under a proposed transfer contract in another forum, either judicial or administrative, as the TAA did.  Nor do the state structured settlement protection acts limit the parties' ability to arbitrate disputes if they have entered into an otherwise enforceable arbitration agreement.  The Supreme Court held in *Preston* that the FAA supersedes state laws lodging primary jurisdiction over the dispute that is subject to arbitration in another forum, whether judicial or administrative.  128 S.Ct. at 387.  In holding that the FAA supersedes the TAA to the extent that the TAA required parties first to bring disputes to the Labor Commissioner, the

Court emphasized that this holding addressed a situation in which the arbitration clause directed the parties to submit a dispute to arbitration and state law directed the parties to submit the same dispute to an administrative agency.

The state structured settlement protection acts differ from the TAA in that they do not vest primary jurisdiction over disputes between a factoring company and an annuitant arising out of a proposed transfer agreement in a nonarbitral forum.  Nor do the state structured-settlement protection acts allow parties who have contracted to arbitrate their disputes to "escape resolution of those rights in an arbitral forum." *Preston*, 128 S. Ct. at 987.  Under the state structured settlement protection acts, parties entering into a proposed transfer agreement are free to agree that an arbitrator will have exclusive original jurisdiction to resolve disputes that arise under the parties' agreement.  The protection acts require only that the parties must obtain state-court approval of the proposed transfer of the future-income payment right, based on a hearing and certain findings, before the obligation to make the transfer is effective.  Because a court must approve a proposed transfer before the parties' transfer obligations under the agreement become effective, Rapid has not sought arbitration based on the claim that an annuitant's failure to make the transfer is a breach of the agreement if the state court has not approved the proposed transfer under the applicable state structured settlement protection act.  Rather, Rapid has sought arbitration of other disputes, such as the annuitant's failure to repay a cash advance made before a state court denied approval.  Nothing in this court's order precludes such arbitrations.  In requiring a state court to approve a proposed transfer from a structured settlement payee to a third-party factoring

company such as Rapid, the state structured settlement protection acts do not prohibit arbitration and are not in conflict with, or preempted by, the FAA.

State-court approval of the transfer is a condition precedent to Rapid's obligation to pay the assignment price and to the annuitant's ability and obligation to make the assignment, but not a condition precedent to the existence of the proposed transfer agreement containing the arbitration clause.  Contrary to Rapid's argument, neither this court's preliminary injunction nor the state structured settlement protection acts block arbitration of disputes involving structured settlements without advance court approval of the contract.  Under the state structured settlement protection acts, Rapid is free to initiate arbitration proceedings against a structured settlement payee with whom Rapid has an arbitration agreement and to pursue damages awards for enforceable claims under that agreement.  The state protection acts require only that a state court approve any proposed transfer of structured settlement payment rights before the transfer is valid and effective.  Rapid may seek in arbitration any kind of money damages that does not require a diversion of an annuitant's future-payment stream to Rapid without first obtaining the necessary state-court approval as required by the state structured settlement protection acts.  The effect of this court's order is not to prevent Rapid from arbitrating claims with its proposed transferors or from obtaining damages awards.  The only effect of this court's order is to prevent Rapid from using arbitration to effect a transfer of structured settlement payment rights if that transfer has not been approved under the applicable state structured settlement protection act.      Rapid's motion for reconsideration based on FAA preemption is denied.

33

### B.    The Definition of "Transfer"

Rapid argues that the language of the state structured settlement protection acts "does not and cannot encompass an arbitration proceeding." (Docket Entry No. 182 at 14). Rapid contends that a "transfer" under the state structured settlement protection act must be "made by a payee for consideration" and that a payee must be the person "proposing" to make a transfer. This court addressed this argument in its June 4, 2007 contempt order, (Docket Entry No. 84), and Rapid raises no new arguments.

The state structured settlement protection acts require state-court approval of a proposed "transfer." The evidence shows that Rapid uses arbitration awards to obtain a payee's future-payment rights without the necessary state-court approval. The fact that an arbitrator orders the payee to have the payments made to Rapid does not obscure the basis for the order. Rapid and the payee entered into a contract in which the payee "proposed to make the transfer" to Rapid, for consideration. Rapid also gives the payee money immediately, calling it a "loan" or "advance." If the arbitrator awards Rapid all or part of the payee's future-payment stream as "lost-profits" or "damages" made the basis of "garnishment," Rapid receives the same payments that the payee would transfer to Rapid if a state court had approved the proposed transfer agreement under the state structured settlement protection act. And in calculating the damages or lost profits, the arbitrator makes findings that Rapid has subtracted an amount that is "fair value" as consideration for the future-payment stream. In entering into the proposed transfer agreement with Rapid, the payee proposed a transfer of the future-payment stream for consideration. The fact that

Rapid has obtained such a transfer by an arbitration award purporting to award "lost profits" or "damages" for a breach of the agreement does not change the fact that it is a transfer under the applicable state structured settlement protection act.

Rapid argues that an arbitration award that effects a transfer of a future-payment stream to pay for a damages award for breach of contract falls outside the scope of the state structured settlement protection acts, just like federal tax liens, child-support orders, bankruptcy court orders, and other court orders that require an annuity issuer to redirect structured settlement payments from the original payee to a third party. The state structured settlement protection acts do not apply to federal tax liens, child-support payments, and similar orders because they are not "transfers" under the state structured settlement protection act definitions. Rapid's attempt to equate a "breach of contract" arbitration award that effectuates a transfer of structured settlement payments to tax liens, domestic-relations orders, and bankruptcy court orders is unpersuasive. Federal tax liens, child support liens, and turnover orders do redirect structured settlement payments to a third party. But such orders are not based on an agreement proposed by the payee to sell the structure-settlement payment to that third party, for consideration. The state structured settlement protection acts were not enacted to protect structured settlement recipients from paying child support or creditors (other than would-be factoring companies seeking to avoid protection acts). The state structured settlement protection acts were enacted to protect unwary structured settlement recipients who are "in need of cash from exploitation by factoring companies."

*Johnson v. Structured Asset Servs., L.L.C.*, 148 S.W.3d 711, 729 (Tex. App.—Dallas 2004, no pet.).

The evidence shows that Rapid—a factoring company in the secondary market in structured settlement payment streams—enters into agreements to obtain, by transfer proposed by the payee for consideration to the payee, the future-payment stream. Rapid uses arbitration to obtain awards that require the payees to relinquish to Rapid all or most of the same payments that the payees would have transferred under the proposed transfer agreement. Such arbitration awards do effect transfers under the state structured settlement protection act definition. The record shows that Rapid initiates arbitrations to achieve the same transfers proposed by the payee for consideration, after failing to obtain the state-court approval required for those transfers.

Rapid's motion for reconsideration of this court's preliminary injunction order is denied.

## III.     Symetra's Application for a Permanent Injunction

This court held a two-day evidentiary hearing on Symetra's permanent injunction application. The parties presented witnesses and submitted documentation relating to the seven annuitants who were the subject of evidence submitted at the preliminary injunction hearing held on August 31, 2006, as well as documentation relating to three additional annuitants, Abigail Dempsey, Robert Ayars, and Troy Walker.

### A.     Analysis and Findings

36

To obtain a permanent injunction, a party must demonstrate: (1) actual success on the merits; (2) no adequate remedy at law; (3) that the threatened injury outweighs any damage to the defendant; and (4) that the injunction will not disserve the public interest. *See DSC Comms. Corp. v. DGI Tech., Inc.*, 81 F.3d 597, 600 (5th Cir.1996).

Symetra moves for a permanent injunction prohibiting Rapid from using arbitration conducted under clauses in proposed transfer agreements with Symetra annuitants to obtain, directly or indirectly, a transfer of all or part of the future annuity payments, unless a state court has approved the proposed transfer under the applicable state structured settlement protection statutes. Symetra alleges that Rapid is using arbitration to circumvent the state protection statutes and their requirement of court approval for proposed future-income stream transfers following hearings and specific findings that the transfers are in the transferor's best interests. Symetra alleges that Rapid uses arbitration to prevent annuity issuers such as Symetra from objecting to such improper conduct. Symetra asserts that by obtaining such transfer orders in arbitration, Rapid interferes with Symetra's contractual relationships with its payees and exposes Symetra to the risk of competing demands for payment. Symetra also asserts that because the court transfer orders based on confirmation of arbitration awards obtained by Rapid violate the state structured settlement protection act, such orders may not protect Symetra from conflicting payment demands.

Rapid has asserted a number of objections to the arguments Symetra raises. Rapid argues that there is no inconsistency between the state structured settlement protection acts and Rapid's use of arbitration to resolve disputes arising out of breach of transfer agreements.

Rapid argues that the damages it obtains in arbitration awards are not "transfers" governed by the state protection acts, even when the awards order the same transfer of the future-income stream proposed in the parties' transfer agreements but not approved under the state acts. Rapid also asserts a defense of unclean hands. Each of these arguments is examined below.

### 1.    Actual Success On the Merits

Symetra has shown that the arbitration proceedings and awards that Rapid pursues, as well as the judgments purporting to confirm such awards, are improper because they circumvent and undermine the state structured settlement protection acts. Rapid argues that in arbitration, it seeks only lost profits arising out of a breach of the proposed transfer agreement obligations, other than the transfer obligation itself, as well as attorney's fees and collection costs. The record, however, shows that the arbitration awards in most cases require Symetra to pay the same amount to Rapid as Symetra would have paid under the terms of the proposed transfer.[4] Harry Fleming, who formerly worked for Rapid's counsel on structured settlements, testified that in arbitration Rapid's practice is to seek attorneys'

---

[4] Harry Fleming testified that before this litigation, Rapid would seek a transfer of future payments, as set out in the parties' proposed transfer agreement, as damages in arbitrations for an alleged breach of contract by a proposed transferor. (Docket Entry No. 213 at 59). Because "[i]t was [Rapid's] belief that we could do a transfer in arbitration," Rapid "wanted to make [the transfer in arbitration] look exactly like a state SSPA transfer so that we could present the insurance carriers an order that they were used to seeing." (Id. at 21). After this litigation started and Rapid began "getting all the push back from the carriers," Rapid stopped seeking transfers in arbitration and began styling its damage request as one for lost profits, seeking a garnishment of future payments. (Id. at 59). According to Fleming's testimony, Rapid determined that in the event of a breach by a proposed transferor, "if we were going to get future—a future stream of payments or garnish them in arbitration, we need to go through a strict lost profits and garnish them in the process." (Id. at 65).

fees and the lost profits it would have earned assuming that a state court had approved the proposed transfer.  (Docket Entry No. 213 at 25–28).  Fleming acknowledged that such lost-profits damages awards had the same financial effect as a transfer under the Rapid/annuitant agreement, despite the absence of the state-court approval necessary to make the transfer provision of that agreement permissible and enforceable.  The lost profits Rapid seeks are the amount that the annuitant would have transferred to Rapid, minus the lump-sum payment Rapid would have paid to the annuitant.[5]  (Docket Entry No. 213 at 34, 50).  By obtaining the arbitration award and confirming it in state court, Rapid asserts that it has the right to the future-income payment stream but avoids obtaining state-court approval of the proposed transfer required by the state structured settlement protection acts.  As this court noted in its preliminary injunction memorandum, obtaining confirmation of an arbitration award in state court does not equate to the statutorily required court approval of the proposed transfer because a court's inquiry in confirming an arbitration award is necessarily limited.  An arbitrator's recitation in an award that a proposed transfer is in the annuitant's best interests does not satisfy the court-approval requirements of state structured settlement protection acts, even if that award is confirmed by a state court.

_____

[5]  Although Fleming initially testified that the amount of lost profits is also discounted to present value, (Docket Entry No. 213 at 50), he acknowledged that the arbitration awards in the *Patterson*, *Remedies*, and *Foreman* cases—the three cases that arose after Rapid decided to stop seeking transfers in arbitration—garnished the same payments covered by the proposed transfer agreement in each case, (*id.* at 173–75). The record shows that the lost-profits damages that Rapid sought in the *Patterson*, *Remedies*, and *Foreman* arbitrations were the same payments that Rapid would have received if the proposed transfer had been approved by a state court under the applicable state structured settlement protection act.

Rapid argues that an arbitration award for breach of contract requires no state-court approval under the state structured settlement protection acts because that arbitration award is no different from a federal tax lien, a child-support order, a bankruptcy court's order, or other court order that requires an annuity issuer to redirect structured settlement payments from the original payee to a third party. It is undisputed that the state structured settlement protection acts do not apply to federal tax liens, child-support payments, and similar orders. They are not "transfers" under the state structured settlement protection act definitions. Rapid contends that a "breach of contract" arbitration award that effectuates a transfer of structured settlement payments falls outside the scope of the state structured settlement protection acts. This argument is not persuasive. The state structured settlement protection acts were enacted to protect unwary structured settlement recipients who are "in need of cash from exploitation by factoring companies." *Johnson v. Structured Asset Servs., L.L.C.*, 148 S.W.3d 711, 729 (Tex. App.—Dallas 2004, no pet.). The acts were not enacted to protect structured settlement recipients from paying tax or child-support obligations or from paying creditors (other than factoring companies such as Rapid). The acts were specifically intended to protect against precisely the type of agreements that Rapid is seeking to enforce by using arbitration. Rapid's claim to any of the structured settlement payments arose only because the payee proposed to transfer them to Rapid, for consideration – clearly a transfer under the structured settlement protection acts. Rapid's situation and claim of right to structured settlement payments are readily distinguishable from those of third parties who receive structured settlement payments as a result of court orders enforcing a payee's liabilities or

40

obligations that originate independently of structured settlement payment rights.   T h e future-payment rights Rapid seeks to obtain through arbitration awards all proceed from what is clearly a "transfer" as defined in the state structured settlement protection acts.  In each case, Rapid enters into an agreement to obtain, by transfer proposed by the payee for consideration to the payee, the future-payment stream.  Rapid uses arbitration to effect all or most of the proposed transfer.  Such arbitration awards do effect a transfer under the state structured settlement-protection act definition.  By contrast, federal tax liens, child-support liens, and turnover orders redirect structured settlement payments to a third party.  Such orders are not based on an agreement by that third party to purchase the structured settlement payment rights from the payee, for consideration.  The record shows that Rapid initiates arbitration to achieve the same transfers proposed by the payee for consideration, after failing to obtain the state-court approval required for that transfer.

Symetra has shown that Rapid is circumventing, and violating, state structured settlement protection acts by using arbitration awards and subsequent state-court confirmation proceedings to effect the transfer to Rapid of Symetra annuitants' future-payment rights without obtaining statutorily required state-court approval of the transfer. This factor weighs in favor of granting the permanent injunction.

### 2.    No Adequate Remedy at Law

Symetra has shown that it will be irreparably harmed without injunctive relief because it will be exposed to the risk of double payments or, alternatively, making payments in violation of the state structured settlement protection acts.  Rapid argues that Symetra

41

overstates the risk of double payment in the context of arbitration awards because Symetra is exposed to the risk of double payment any time it sends payments to a recipient other than the payee identified in an annuity contract.  Rapid points out that aside from the arbitration awards it obtains, Symetra complies with court orders it receives requiring the diversion of structured settlement payments to help satisfy such encumbrances as federal tax liens, domestic-relations liens, garnishments, and child-support liens.  Rapid argues that in these situations, Symetra does not claim that it is seriously at risk of making double payments or violating the state structured settlement protection acts by paying someone other than the payee.

Rapid's argument is not persuasive.  Kim McSheridan, Vice President of Symetra, testified that Symetra will only redirect payments in compliance with a valid court order and that the legal department at Symetra reviews all court orders purporting to direct payments away from the payee identified in the annuity contract.  Under the state structured settlement protection acts, a state court must approve a proposed transfer after a hearing based on findings that the proposed transfer is in the transferor's best interests.  Symetra could itself violate a state structured settlement protection act if instead of sending annuity payments to it annuitant, it sends those payments to Rapid, even if the transfer to Rapid has not been approved – or has been rejected by – a state court under the state protection act.  Rapid has obtained judgments confirming arbitration awards that purport to require Symetra to redirect payments from its annuitants to Rapid.  Symetra has shown that Rapid's practice of obtaining arbitration awards and judgments confirming those awards that effect a transfer without the

statutorily required state-court approval exposes Symetra to uncertainty as to whom it must pay, to a risk of violating the state structured settlement protection acts, and to a significant risk of double liability.  This factor weighs in favor of granting a permanent injunction.

### 3.    The Balance of Harms and the Public Interest

At the permanent injunction hearing, Rapid confirmed that it continues to use arbitrations in only a small percentage of its structured settlement transfers.  Over a period of more than three and a half years, "arbitrations are probably five to seven percent of the files of Rapid."  (Docket Entry No. 213 at 11).  Because arbitrated transfers make up a relatively small percentage of Rapid's business, a permanent injunction will not cause harm to Rapid as to weigh against granting a permanent injunction.

In addition, a permanent injunction would serve the public interest.  The state structured settlement acts require court approval before a proposed transfer takes effect.  The purpose of this requirement is to protect structured settlement recipients who are "in need of cash from exploitation by factoring companies."  *Johnson v. Structured Asset Servs., L.L.C.*, 148 S.W. 3d 711, 729 (Tex. App.—Dallas, no pet.).  Rapid's use of arbitration thwarts this purpose by effecting a transfer of an annuitant's future-payment stream without the court oversight that the protection acts require.  Other courts have found that the use of arbitration to effectuate a transfer of an annuitant's future-payment rights without the requisite state-court approval impermissibly circumvents the state structured settlement protection acts. *See, e.g.*, *Allstate Life Ins. Co. v. Rapid Settlements, Ltd.*, No. Civ.A.3:06CV00629DPJ, 2007 WL 2745806 (S.D. Miss. Sept. 20, 2007) (finding that the arbitration award "was not a mere

43

involuntary damages award—it was a transfer" and that the award "is void as to [the annuity issuer] for want of requisite approval"); *Pac. Life Ins. Co. v. Rapid Settlements, Ltd.*, No. 06-CV-6554L, 2007 WL 2530098 (W.D.N.Y. Sept. 5, 2007) (finding transfer agreement and arbitration award void for failure to obtain court approval); *R&Q Reinsurance Co. v. Rapid Settlements, Ltd.*, No. 06-14329-CIV, 2007 WL 2330899 (S.D. Fla. Aug. 13, 2007) (holding that the arbitration award "would violate the applicable Florida Protection Act" and is "unenforceable"); *Allstate Settlement Corp. v. Rapid Settlements, Ltd.*, No. 06-4989, 2007 WL 1377667 (E.D. Pa. May 8, 2007) (finding arbitration award improperly circumvented state statute requiring court approval of transfer agreements); *Rapid Settlements, Ltd. v. Symetra Life Ins. Co.*, 234 S.W.3d 788, 800 (Tex. App.—Tyler 2007, no pet.) ("We are not persuaded that the provisions of the [structured settlement protection act] can be so easily circumvented or its purpose frustrated by so transparent a stratagem. . . . The scope of an arbitration agreement cannot comprehend an agreement to arbitrate to an award the substantive law clearly prohibits"); *In re Rapid Settlements, Ltd.*, No. 14-06-00698-CV, 2007 WL 925698, at *3 (Tex. App.—Houston [14th Dist.] Mar. 29, 2007 [mand. denied]) ("Rapid Settlements may not avoid mandatory state statutes designed to protect the beneficiaries of structured settlements by resorting to arbitration"); *In re Rapid Settlements, Ltd.*, 202 S.W.3d 456 (Tex. App.—Beaumont 2006, orig. proceeding [mand.denied]) (refusing to order arbitration because a state court had not approved the proposed transfer under the Texas structured settlement protection act).  Rapid's use of arbitration to effect a transfer of an annuitant's future-payment stream without state-court approval is contrary to the public

44

interest embodied in the forty-three state structured settlement-protection acts.  This factor weighs in favor of granting a permanent injunction.

### 4.    *Rapid's Unclean Hands Defense*

Rapid advances an unclean hands defense, arguing that Symetra engages in self-dealing by soliciting its own annuitants for transfers; charging Rapid excessively high fees to implement a transfer; invoking antiassignment provisions in an annuitant's structured-settlement agreement or in the annuitant's agreement with Symetra to prevent transfers to Rapid, but not to Symetra affiliates; and objecting to all proposed transfers to Rapid while declining to object to proposed transfers to Symetra affiliates.

"The unclean hands doctrine is used to defeat an undeserving plaintiff's claim for equitable relief against a defendant that he has injured."  *Positive Black Talk Inc. v. Cash Money Records*, 394 F.3d 357, 379 (5th Cir. 2004) (citing *Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979)).  It applies when the plaintiff has engaged in wrongful acts that "in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication."  *Mitchell Bros. Film Group*, 604 F.2d at 863 (citing *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933)).  "[H]e who comes into equity must come with clean hands."  *Flory v. United States*, 138 F.3d 157, 160 (5th Cir. 1998).

Rapid has failed to show that Symetra engages in bad-faith or inequitable conduct that affects the equitable relations between Rapid and Symetra with respect to the issue this court is asked to decide: Rapid's use of arbitration to effect transfers of Symetra annuitants' future-

payment streams without complying with the applicable state structured settlement protection act requirements.  Kim McSheridan, Vice President of Symetra, testified that Symetra objects to Rapid transfers "because Rapid doesn't follow the [state structured settlement protection acts]" and fails to obtain state-court approval for the proposed transfers it seeks to effectuate through arbitration.  (Docket Entry No. 207 at 58).  She also testified that Symetra affiliates in the structured settlement industry "meet [Symetra's] requirements that comply fully with the [structured settlement protection] act in the various states and there's been no need for [Symetra] to object to any of those."  (*Id.* at 61).  She stressed that when any factoring company "wishes to purchase in compliance with the various acts," Symetra does not object to the proposed transfer.  (*Id.* at 61).  Rapid has failed to show that Symetra has engaged in inequitable conduct by objecting only to Rapid's proposed transfers but not other factoring companies' proposed transfers when a state court has not approved the transfer.  Rapid has also failed to show that Symetra only invokes antiassignment provisions in its agreements with its annuitants when opposing transfers to Rapid, but not when opposing transfers to its affiliates or to other factoring companies that comply with the state structured settlement protection acts.  Rapid has failed to show that in seeking transfers of future-payment rights from its own annuitants, Symetra uses arbitration to avoid obtaining state-court approval of the proposed transfer.

The fact that Symetra and Rapid are competitors does not support Rapid's contentions that Symetra's efforts to seek of future-payment rights from its annuitants constitute inequitable or bad-faith conduct that weighs against a permanent injunction.  Rapid has failed

to show that in soliciting its own annuitants for transfers, Symetra or its affiliates fail to abide by the state structured settlement protection acts. McSheridan testified that Symetra objects only to those proposed transfers that do not satisfy the requirements of the applicable state protection acts. She also testified that Rapid is the only factoring company that has attempted to compel Symetra to honor arbitration awards that effect a transfer of structured settlement payment rights without required court approval. In response to Rapid's argument that Symetra charges Rapid extraordinarily high fees, McSheridan testified that Symetra routinely charges a transfer fee to cover administrative costs, including a higher fee of $3,000 when life-contingent payments are being transferred. (Docket Entry No. 207 at 144). Symetra charges lower fees to cover administrative costs for purchases of payment rights limited to a set period. A transfer of life-contingent payments requires additional work to verify whether the annuitant is living, to determine the risk of payments being made after the individual has died, and to review the documents associated with such a transfer. (*Id.* at 146). McSheridan testified that in dealing with life-contingent payments, Symetra faces a greater risk of overpayments that it may not be able to recover if the recipient has died. McSheridan stated that for both life-contingent and period payment rights, the fee that Symetra charges covers its costs of reviewing documents, providing the necessary change of address, tracking the relevant information, and performing other tasks that Symetra did not consider when pricing out an annuity contract and taking on liability as the annuity issuer. The record shows that Symetra charges the $3,000 fee for all external factoring companies seeking to purchase life-contingent payment rights, not just Rapid. Rapid has not shown that

47

Symetra engages in inequitable conduct by charging higher fees than Symetra charges other external factoring companies.

Rapid also argues that while Symetra objects to court orders effecting transfers of future annuity payments to Rapid, Symetra complies—usually without objection—with numerous other court orders that effect a diversion of an annuitant's future-payment stream, including to satisfy federal tax liens, domestic relations orders, and bankruptcy court orders. As discussed above, however, these "diversion" orders are not initiated by a factoring company whose purpose is to acquire the future-payment stream from the annuitant in exchange for consideration paid by the factoring company. The "diversion" orders, such as a tax lien or child support lien, involve a third party, often the United States government or a bankruptcy trustee, whose source of authority and rights to the payments is independent of the agreements creating the structured settlement payment stream. Rapid has failed to show how these diversions of future payments, to which the state structured settlement protection acts do not apply, are remotely similar to a proposed transferee factoring company invoking arbitration to effect the transfer of a future-payment stream without the state-court approval required under the state structured settlement protection acts.

Rapid similarly argues that Symetra does not object to "wraps," which are old transfer agreements, executed before the state structured settlement protection acts became effective, bundled with more recent transfer agreements that were executed after the enactment of, and which are subject to, the protection acts. McSheridan testified that Symetra does not object

48

to the old transfer agreements that were not subject to the state-court approval requirements of the protection acts.

Rapid has not shown that Symetra has engaged in inequitable conduct because it has declined to object to transfer agreements not covered by the state structured settlement protection acts.

### B.    Conclusions[6]

Rapid is using arbitration to circumvent the state structured settlement protection acts. By obtaining arbitration awards that require an annuity issuer to redirect from the annuitant to Rapid the same payments that the payee would have assigned to Rapid under a proposed transfer agreement, Rapid effects a transfer of the annuitant's future-payment rights without the court approval required by the state structured settlement protection acts.  Rapid's practice of using arbitration to effect a transfer of an annuitant's future-payment stream without state-court approval prevents annuity issuers, including Symetra, from asserting their contractual and statutory rights to oppose transfers that have not complied with the state structured settlement protection acts.

The arbitration awards that Rapid has obtained with respect to Symetra annuitants have improperly circumvented the applicable state structured settlement protection act, regardless of whether the arbitration award purported to award damages for lost profits and

---

[6] To the extent any of the conclusions of law are findings of fact, they should be considered findings of fact. To the extent any of the findings of fact are conclusions of law, they should also be considered conclusions of law.

49

attorney's fees and collection costs, or purported to order a garnishment or turnover of payments owing from Symetra to the annuitant to satisfy a damages award.  The state structured settlement protection acts apply to the transfers effected by these arbitration awards.  Rapid used the arbitration process to circumvent court approval required to effect a transfer of the future payments.  Obtaining state-court confirmation of an arbitration award that effects a transfer of future-payment rights does not equate to obtaining state-court approval of the proposed transfers under the state structured settlement protection acts.

The FAA does not preempt the state structured settlement protection acts because the protection acts do not prohibit arbitration or conflict with the FAA.

Because the awards and judgments confirming these awards violate the state structured settlement protection acts, they may not protect Symetra from conflicting payment demands and pose a risk that Symetra itself may be violating the structured settlement protection acts if it transfers annuity payments without the court approval required by the acts.  Symetra has shown irreparable injury and injury in fact because of the exposure to double liability, its exposure to competing judgments, and its risk of violating the applicable state structured settlement protection acts.  These injuries directly result from Rapid's use of arbitration proceedings to effect transfers that were proposed in transfer agreements between Rapid and Symetra annuitants but as to which Rapid did not obtain the state-court approval required under the applicable state structured settlement protection act.

Rapid has failed to show that Symetra has unclean hands.  To the extent that Rapid has complained of Symetra's objections in various state-court structured settlement

50

protection act proceedings, Rapid has failed to show that these objections were in bad faith or improperly filed.  Rapid has not shown that Symetra engages in inequitable conduct by using arbitration to avoid obtaining necessary state-court approval of proposed transfers of future-payment streams.  Symetra's acquiescence to "wraps" that involve bundles of transfer agreements executed before the effective date of the state structured settlement protection acts with transfer agreements executed after the effective date of the protection acts is not evidence of unclean hands.  The state structured settlement protection acts do not apply to transfer agreements executed before the protection acts' effective date and provide that nothing in the acts may be construed to imply that such transfers are valid or invalid.  Wraps are not analogous to the arbitration awards that Rapid obtains because the arbitration awards are used to effect transfers proposed in agreements that are clearly subject to the state structured settlement protection acts.

An injunction would serve the public interest.  Using arbitration to effect a transfer of all or part of an annuitant's future payments, when a state court has either refused to approve such a transfer under the applicable state structured settlement protection act or such approval has not been pursued or obtained, is contrary to the laws of 43 states.  An injunction would further serve the public interest by precluding further illegal practices by Rapid and preventing Rapid from attempting to use arbitration and court orders confirming arbitration awards to accomplish what "the substantive law clearly prohibits."  *Rapid Settlements*, 234 S.W.3d at 800.

A final injunction order will issue separately.

51

**IV.     Rapid's Motion for Reconsideration of the June 4, 2007 Order of Contempt**

Rapid also moves for reconsideration of this court's June 4, 2007 order finding that Rapid violated this court's preliminary injunction by obtaining an arbitration award against Symetra annuitant Kenneth Gross, an award which purported to bind Symetra.  Rapid argues that neither the Texas structured settlement protection act nor the injunction prohibited Rapid from pursuing damages for breach of contract; that its actions were not contumacious because it "had already obtained Gross's payments" through the first arbitration and was only seeking to enforce the first arbitration award in the second  arbitration and subsequent suit in Texas state court, (Docket Entry No. 175 at 8); and that the preliminary injunction order was so unclear that a contempt finding was unjustified.

**A.     Background**

Rapid entered into four separate transfer agreements with Gross: one on August 9, 2004; one on February 9, 2005; and two on March 28, 2005.  (Docket Entry No. 82, Exs. B–E).  Rapid sought approval of the August 2004 proposed transfer agreement in an Indiana court under that state's structured settlement protection act.  The Indiana court rejected the proposed transfer on December 20, 2004.  Gross then entered into a February 9, 2005 proposed transfer agreement with Rapid.  Rapid did not seek state-court approval of this transfer, as required by the state structured settlement protection act.  Gross also entered into a proposed transfer agreement with 321 Henderson.  Upon learning of Gross's contract with 321 Henderson, Rapid invoked the arbitration clauses in its two agreements with Gross, asserting that by entering into an agreement with 321 Henderson, Gross had breached the

right-of-first-refusal provisions in the February 9, 2005 proposed transfer agreement. Gross then cancelled his agreement with 321 Henderson and entered into the two March 2005 proposed transfer agreements with Rapid. Rapid did not seek state-court approval under the applicable state structured settlement protection act for these proposed transfers. Rapid instead pressed forward with an arbitration proceeding against Gross in Harris County, Texas, seeking an award that would effect a transfer of Gross's future-payment rights under his Symetra annuity.

An arbitrator in Harris County, Texas, selected by Rapid, issued an "agreed" arbitration award on May 25, 2005. Symetra had notice of the arbitration but did not participate except to file a written objection to any attempt to bind it to the result, noting that it was not a party to any contract requiring it to arbitrate with Rapid. Gross and his attorney "appeared" in the arbitration by telephone from Indiana. The arbitration award stated that Gross was receiving the "present fair-market value" for his future structured settlement payments from Rapid and that the transfer was in his best interests. (Docket Entry No. 52, Ex. 3.7). The arbitrator ordered Symetra to pay Gross's future structured settlement payments to Rapid. The arbitrator also ordered Rapid to pay Gross the amounts due under the March 2005 transfer agreements once the arbitration award was domesticated in an Indiana court.

A Harris County, Texas state court entered an "agreed" final judgment confirming the arbitration award two days later, on May 27, 2005. The final judgment adopted the language of the "agreed" arbitration award and ordered Symetra to make Gross's annuity payments to

Rapid.  In the Texas state court, Symetra asserted that it did not receive notice of the application for, or the issuance of, the final judgment confirming the arbitration award in that court until more than thirty days after the judgment had issued.  Symetra nonetheless asked that court to vacate the final judgment on the basis that the arbitration could not circumvent the requirements of the Texas Structured Settlement Protection Act.  On July 19, 2005, the Texas state court vacated its earlier issued final judgment confirming the arbitration award. Rapid then sought mandamus relief from a Texas appellate court.  The First Court of Appeals held that when the trial court vacated its judgment, it lacked plenary power to do so.  The appellate court refused, however, to order enforcement of the judgment as to Symetra because Symetra had not received notice within the time that would have permitted it to challenge Rapid's effort to confirm the award or to appeal from the final judgment confirming the award.  "If the Symetra parties were never served, the portion of the judgment that affects them is voidable."  *In re Rapid Settlements, Ltd.*, No. 01-05-00938, 2006 WL 2640398, at *1 (Tex. App.—Houston [1st Dist.] Sept. 11, 2006, no pet.).  Rapid also tried to domesticate the Texas judgment against Gross in state court in Posey County, Indiana, in June 2005, but that court denied the domestication.

On November 10, 2006, Symetra received notice from Rapid of an arbitration hearing scheduled for November 17, 2006, at which Rapid planned to seek an arbitration award ordering Gross to comply with the May 2005 arbitration award.  On November 13, 2006, Symetra filed a motion for a temporary restraining order to prevent Rapid from proceeding with the second arbitration.  This court held a hearing on Symetra's TRO application on

54

November 14, 2006.  After hearing the parties' arguments, this court and declined to issue a TRO preventing Rapid from arbitrating any dispute it had with Gross, but found that Rapid had no contractual relationship with Symetra that would allow Rapid to compel Symetra to participate in the arbitration or to bind Symetra to the results of the arbitration.

In the January 10, 2007 memorandum and order, this court found that Symetra had shown a likelihood of success in demonstrating that Rapid's use of arbitration to obtain awards that effected a transfer of a structured settlement annuitant's payment streams, without obtaining state-court approval of the transfer under the applicable structured settlement protection acts, and Rapid's confirmation of those arbitration awards in state courts, violated the applicable state structured settlement protection acts.  This court found that in the *Gross* matter, Symetra had shown a likelihood of success in demonstrating that Rapid had not obtained state-court approval of the proposed structured settlement transfer as required by the applicable state structured settlement protection act and had used arbitration to circumvent those requirements.  This court enjoined Rapid from "taking further action to compel Symetra to comply with the judgments entered in the . . . *Gross* matters pending the hearing on a permanent injunction."  (Docket Entry No. 84 at 70).  This court also enjoined Rapid from "using arbitration to resolve disputes between it and any Symetra annuitant, if that arbitration, directly or indirectly, effects a transfer of all or part of the annuitant's future-payment stream, unless a state court has approved the transfer as required under the applicable state structured settlement protection act."  (*Id.* at 71).

Despite the injunction, Rapid continued the arbitration proceeding it had begun against Kenneth Gross in October or November 2006.  That arbitration resulted in an award in Rapid's favor on April 18, 2007.  In the arbitration, Rapid sought to enforce the May 25, 2005 arbitration award and judgment confirming that award.  Rapid used the same arbitrator in both the May 2005 arbitration and the April 2007 proceeding.  The April 2007 arbitration awarded Rapid as "damages" Gross's future-payment stream under the Symetra annuity.  The award also purported to require Symetra to transfer Gross's rights under the annuity to Rapid, despite the absence of any state-court order approving the transfer under the applicable state structured settlement protection act and despite a state-court order disapproving the transfer sought in an earlier proposed agreement under the applicable act.

The arbitration award stated in part as follows:

THEREFORE, IT IS HEREBY:

> ORDERED, ADJUDGED, AND DECREED that Kenneth R. Gross, his representatives, employees, agents, assigns, attorneys, any person or persons claiming by, through or under Mr. Gross and all persons acting in concert with any of the aforementioned and all persons with knowledge of the First Award or this Second Award, are hereby enjoined from interfering with the terms of the First Award or this Second Award, including specifically by way of example and not by way of limitation, acting in any way which would impair, undermine, or delay the payment of the Assigned Payments herein to Rapid or its assignee as set forth herein; . . . It is further

> . . . .

> ORDERED ADJUDGED, AND DECREED that the Assignment Payments are hereby ordered garnished and turned over to Rapid's assignee under the First Award . . . ; it is further

56

. . . .

ORDERED, ADJUDGED, AND DECREED that Mr. and Mrs. Gross shall execute the following documents contemporaneously with the entry of this Second Award: (I) an irrevocable Power of Attorney Coupled with an interest in carrying out the terms of this Award; (ii) an Irrevocable Change of Address; (iii) Irrevocable instruction to the Symetra entities and J.G. Wentworth, 321 Henderson signed by both Gross and his wife, which provides that all payments of the Assigned Payments payable to Kenneth R. Gross, Jr. shall be made by mail or wire transfer and sent by any disbursing party c/o RSL-3B-IL, Ltd.; (iv) the confirmation of this Second Award by the Texas courts; (v) filings consistent with the First Award and this Second Award prepared by Rapid to be made with the appropriate Courts, including any courts where cases may exist with Symetra and Niemeier; and (vi) such other documents that Rapid may from time to time submit in aid of enforcement of this matter; it is further

ORDERED, ADJUDGED, AND DECREED that . . . [i]f Gross does not execute these documents within thirty days after entry of this Second Award, Rapid shall be entitled to further damages in the amount of $500 per day, in addition to the amount of $155,000.00 in attorneys' fees awarded above. . . . Payment from Rapid [of the $397,400.00 under the First Award] is due upon fulfillment of the conditions set forth in the First Award; it is further

. . . .

ORDERED, ADJUDGED, AND DECREED that this Order shall have the effect of a garnishment of the Assigned Payments in favor of Rapid, in addition to Rapid's attorneys' fees, plus interest, as well as the additional damages found herein of $500 per diem until full and continuing compliance with this Second Award is had.  Further, this Second Award shall constitute a Turnover Order as to the Assigned Payments awarded to Rapid in the First Award . . . .

(Docket Entry No. 126, Ex. A at 19–20).

Shortly after the arbitrator issued the second award, Rapid sought a hearing to confirm that award in Texas state court.  The hearing was set on May 7 or 8, 2007.  At a hearing in this court on April 27, 2007, Symetra first raised the issue of whether Rapid had violated the preliminary injunction.  Symetra filed its motion for civil contempt on April 30, 2007.  On that same day, counsel for Rapid sent Symetra's counsel a letter demanding that Symetra pay Kenneth Gross's structured settlement payments to Rapid, based on the arbitration award and the irrevocable power of attorney, change of payee, and change of address papers Gross signed in favor of Rapid.  Rapid attached executed copies of those papers to the April 30, 2007 letter.  This court held a hearing on the contempt motion on May 24, 2007 and ruled that Rapid had violated this court's February 6, 2007 injunction order.  Rapid now moves for reconsideration.  (Docket Entry No. 175).

Rapid argues that the February 6, 2007 injunction did not prohibit Rapid from "pursuing a breach of contract action, as distinct from under taking a 'transfer' in arbitration." (Docket Entry No. 175 at 2).  Rapid also argues that this court's contempt order "is at odds" with this court's denial of Symetra's application for a TRO to enjoin Rapid from pursuing arbitration against Gross.  (*Id.* at 8).  Rapid contends that inherent in this court's denial of Symetra's TRO application was an acknowledgment that Rapid could proceed with arbitration against Gross.  Rapid argues that its actions were not contumacious because it "had already obtained Gross's payments" through the first arbitration and was only seeking to enforce the first arbitration award in the April 2007 arbitration and in the subsequent suit in Texas state court.  (*Id.* at 8).  Rapid contends that by providing Symetra with notice of its

suit to confirm the second arbitration award in Texas state court, it complied with the preliminary injunction. Rapid renews its argument that because the arbitration award payment was not "proposed" by the annuitant, the preliminary injunction cannot encompass Rapid's actions to obtain and enforce the arbitration awards against Gross. In the alternative, Rapid argues that the preliminary injunction was so unclear and vague that a contempt finding is not warranted.

### B.    Analysis

As this court noted in finding that Rapid had violated the preliminary injunction, Rapid failed to obtain state-court approval of the proposed transfer of Gross's future-payment stream as required under the Indiana structured settlement protection act. Despite failing to obtain the necessary state-court approval, in May 2005 Rapid invoked the arbitration provision in its proposed transfer agreements with Gross, purportedly seeking damages for Gross's breach of the right-of-first-refusal provision in the February 2005 agreement by entering into another proposed transfer agreement with 321 Henderson. In the April 2007 arbitration Rapid sought to enforce the May 25, 2005 arbitration award and judgment confirming that award. Although Rapid could have sought any kind of money damages against Gross that did not require a diversion of Gross's future-payment stream to Rapid, Rapid sought and obtained an arbitration award that effected a transfer to Rapid of Gross's future-payment rights under his annuity. The April 2007 award assigned Gross's future-payment rights to Rapid in exchange for Rapid's payment of what the arbitrator found to be "fair-market value" consideration for those payments. Paragraph (a) of the injunction

59

prohibited Rapid "from using arbitration to effect, directly or indirectly, a transfer of all or part of a Symetra annuitant's future-payment stream, unless before the arbitration a court authorized by the applicable state structured settlement protection act to approve the proposed transfer has done so in accordance with that act." (Docket Entry No. 98 at ).  The April 2007 arbitration award enjoins "all persons with knowledge of the First Award or this Second Award" from interfering with the terms of either arbitration award, including "acting in any way which would impair, undermine, or delay the payment of the Assigned Payments herein to Rapid."  (Docket Entry No. 126, Ex. A at 19).  By pursuing a second arbitration award that effected a transfer of Gross's future-payment stream under the Symetra annuity without state-court approval of the transfer, Rapid violated this court's injunction.

Rapid also violated this court's injunction by attempting to enforce the May 25, 2005 arbitration award and judgment confirming that award against Symetra.  The preliminary injunction prohibited Rapid from seeking to obtain Symetra's compliance with that judgment. Rapid contends that it did not seek to enforce any arbitration award or judgment against Symetra.   The April 2007 arbitration award required Gross to provide "irrevocable instruction" to Symetra to make future payments from Gross's annuity to Rapid, and Rapid attempted to confirm the award against Symetra in state court.  Paragraph (c) of the preliminary injunction prohibited Rapid from seeking enforcement of any arbitration award confirmed by final judgment before the date of the order—including the judgment confirming the arbitration award against Gross—unless notice was given *before* that final judgment was obtained.  The fact that Rapid may have provided notice to Symetra of the May 2007 state-

court hearing does not make the May 2005 judgment—obtained without notice to Symetra—enforceable against Symetra.  The preliminary injunction prohibited Rapid from pursuing the April 2007 arbitration to enforce the May 2005 arbitration award against Symetra in the first place.

Rapid's motion for reconsideration of this court's June 4, 2007 order of contempt is denied.

## V.    Rapid's Motion for Leave to File Motion to Confirm and Rapid's Motion to Confirm Arbitration Award Against Kenneth Gross

On July 18, 2007, the state court that had previously entered a final judgment confirming the May 2005 arbitration award against Gross vacated that judgment "based on subject matter grounds related to the amount in controversy."  (Docket Entry No. 168 at 4). Rapid has now filed a motion asking this court to confirm the May 2005 and April 2007 arbitration awards it obtained against Gross.  (Docket Entry No. 168).  Rapid has also filed a motion for leave to file its motion for confirmation of the arbitration awards.  (Docket Entry No. 181).  Symetra and NASP oppose the motion for leave to file the motion to confirm. They contend that Rapid's failure to obtain state-court approval of the proposed transfer of Gross's future-payment stream to Rapid means that confirming the arbitration awards would violate the Indiana Structured Settlement Protection Act.

In its motion to confirm, Rapid reasserts many of the same arguments that this court has already considered and addressed.  The record shows that Rapid failed to obtain state-court approval of the proposed transfers from Gross as required by the Indiana Structured

61

Settlement Protection Act.  Rapid's attempt to recharacterize the arbitration awards as damage awards for breach of contract does not obscure the fact that the awards purport to order the transfer of Gross's future-payment stream to Rapid, based in part on the payment by Rapid to Gross of "fair-market value" consideration for that transfer, without the required state-court approval.  This court's injunction prohibits Rapid from using arbitration to effect a transfer, "directly or indirectly," in derogation of the state structured settlement protection act requirements.  Rapid's motion for leave and motion for confirmation are denied.

## VI.    Symetra's Motions to Dismiss

Rapid filed suit against Symetra in Texas state court, alleging tortious interference and civil conspiracy based on Rapid's status as the assignee of Symetra annuitants Candy Richardson, Abigail Dempsey, and Paul Patterson.  Symetra removed to federal court and the actions were consolidated with this case.  (Docket Entry Nos. 115, 164).  Symetra now moves to dismiss Rapid's claims under Rule 12(b)(6).

Rapid alleges that Symetra attempted to interfere with Rapid's contracts with Candy Richardson, Abigail Dempsey, and Paul Patterson.  Richardson and Dempsey are Symetra annuitants who entered into proposed transfer agreements with Rapid.  Under these agreements, Rapid obtained the right to receive a portion of the annuitant's future monthly annuity payments in exchange for a lump-sum payment to the annuitant, conditioned on the approval of the state court under the state's structured settlement protection act.  Richardson and Dempsey both live in Texas.  Rapid sought approval of the transfers from Texas state courts under the Texas structured settlement protection act.  Symetra filed an objection to

Rapid's applications for approval.  The state courts refused to approve the transfers.  Rapid subsequently invoked the arbitration clauses in the proposed transfer agreements and obtained arbitration awards against the annuitants.  The awards ordered Symetra to pay Rapid the amounts identified in the proposed transfer agreements, effectuating the very transfers that the state courts had refused to approve.  Rapid filed petitions against the annuitants in Texas state courts in Harris County, seeking final judgments confirming the arbitration awards.  According to Symetra, Rapid did not serve or otherwise provide notice of the suit against Richardson and the Harris County court entered an "agreed" final judgment confirming the arbitration award.  Symetra successfully sought to abate the Harris County suit against Dempsey by filing suit in Nacogdoches County court, arguing that under the Texas structured settlement protection act, jurisdiction and venue were in Nacogdoches County, where Dempsey resides.  The Harris County court abated Rapid's action against Dempsey and the Nacogdoches County court enjoined Rapid from attempting to enforce or confirm the arbitration award in any court but the Nacogdoches County court.

On February 5, 2007, Rapid sued Symetra in Texas state court, asserting claims for tortious interference and civil conspiracy based on Symetra's conduct in opposing the proposed transfers.  Rapid also alleged that Symetra improperly solicited a transfer of Richardson's payments to a Symetra affiliate, Clearscape Funding, Inc.  Symetra removed Rapid's lawsuits to federal court.

Patterson is an Iowa resident and Symetra annuitant who entered into a proposed transfer agreement with Rapid.  Under this agreement, Rapid obtained the right to receive a

set number of Patterson's future monthly payments in exchange for a lump-sum payment to Patterson. Rapid sought approval of the transfer from a Texas state court and Symetra filed an objection to Rapid's application for approval. Rapid took no additional action in the Texas state court or in another court to obtain approval of the proposed transfer. The state court did not approve the transfer, as required by the state structured settlement protection act. Despite the absence of state-court approval of the proposed transfer, Rapid sought to obtain the transfer through arbitration. Rapid filed an arbitration demand against Patterson on June 15, 2006, alleging that Patterson had breached the proposed transfer agreement by failing to return to Rapid an advance payment of $1,000 and by selling his future-payment right to a third party. The resulting "agreed" arbitration award ordered Symetra to pay Rapid the amount set out in the proposed, but unapproved, transfer agreement between Rapid and Patterson. Rapid sought and obtained a final judgment confirming the award in a Texas county court without providing Symetra notice of Rapid's petition to confirm the award. According to Symetra, Rapid did not serve Symetra or otherwise provide notice of the filing of the petition to confirm the award. On March 22, 2007, Rapid sued Symetra in Texas state court, asserting claims for tortious interference and civil conspiracy based on Symetra's conduct in opposing the proposed transfer. Symetra removed the suit to federal court.

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b) (6). The Supreme Court recently clarified the standards that apply in a motion to dismiss for failure to state a claim. In *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007), the Court confirmed that Rule

64

12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A court must not dismiss a complaint for failure to state a claim unless the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1974; *see also Erickson v. Pardus*, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). Although material allegations in the complaint must be accepted as true and construed in the light most favorable to the nonmoving party, a court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.

When a plaintiff's complaint is dismissed for failure to state a claim, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir.2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.").  However, a plaintiff should be denied leave to amend a complaint if the court determines that "allegations of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see also Great Plains Trust Co.*, 313 F.3d at 329; *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1996).

Symetra argues that Rapid cannot state a claim for tortious interference in any of these cases because Rapid cannot show a "willful and intentional act of interference with the contract." (Docket Entry No. 160 at 5). Symetra argues that it had "the right and privilege to oppose Rapid's transfers" under section 141.006(b) of the Texas structured settlement protection act and that the "bona fide exercise of a legal right" cannot form the basis of a tortious interference claim. (*Id.* at 6.). Symetra also contends that its conduct is privileged under the *Noerr-Pennington* doctrine because it successfully contested Rapid's transfers. Symetra further asserts that its actions were justified by an antiassignment provision in its structured settlement agreement with Richardson that it was entitled to enforce, as well as by the increased risk of conflicting claims that would result from the transfers Rapid was trying to effectuate. Symetra argues that Rapid cannot state a claim for civil conspiracy because such a claim depends on the viability of Rapid's tortious interference claim. In addition, Symetra argues that Rapid has not shown that it has standing as an assignee because the proposed transfers between Rapid on the one hand and Richardson and Dempsey, both Symetra annuitants, on the other hand, were never approved by the state court as required by the state structured settlement protection act. Symetra contends that because the transfers were never approved, any assignments contained in the transfer agreements never became effective.

In response, Rapid argues that it had valid, enforceable contracts with Richardson and Dempsey and that it had a validly assigned right to receive Richardson's and Dempsey's future payments under their Symetra annuities. Rapid also contends that Symetra's

objections to the proposed transfers were unjustified because "Symetra systematically objects to all of Rapid's transfers across the country while attempting to obtain transfers for itself with regard to the same annuitants." (Docket Entry No. 172 at 6). Rapid argues that Symetra's privilege cannot qualify "as litigation privilege" when they "really form a monopoly of tortious interference," (Docket Entry No. 224 at 5). Citing *Owen v. CNA Insurance/Continental Casualty Co.*, 771 A.2d 1208 (N.J. 2001), Rapid further argues that the antiassignment provision in Richardson's structured settlement agreement with Symetra is not enforceable. Rapid asserts that because it has a valid tortious interference claim, it also has a valid civil conspiracy claim.

The parties rely on Texas law. Richardson, Dempsey, and Rapid are Texas residents. The proposed transfer agreements between Richardson and Rapid and between Patterson and Rapid contain a choice-of-law provision stating that Texas law applies. The proposed transfer agreement between Dempsey and Rapid is not in the current record. Because the parties do not object to the application of Texas law, this court will examine Rapid's claims under Texas law.

To recover for tortious interference with an existing contract, a plaintiff must prove: (1) the existence of a contract; (2) a willful and intentional act of interference; (3) that the act was a proximate cause of the plaintiff's damages; and (4) actual damage or loss. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002) (citing *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex. 1996); *Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex. 1995)); *see also Flourine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 864 (5th Cir. 2004). The

67

plaintiff must show that the defendant's conduct was either independently tortious or unlawful, that is, that the conduct violated some other recognized tort duty. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex.2001).  Justification is an affirmative defense to tortious interference with contract and can be based on the exercise of either (1) one's own legal rights or (2) a good-faith claim to a colorable legal right, even if that claim ultimately proves to be mistaken.  *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W. 3d 74, 80 (Tex. 2000).  If a defendant has a legal right to interfere with a contract, the defendant's motive in interfering is irrelevant.  *Id.*  Alternatively, the defendant may not be held liable if the interference occurred in the exercise of a colorable right in good faith.  *Id.*

Symetra argues that Rapid's claims should be dismissed because Rapid cannot show that Symetra committed an "independently tortious or unlawful" of interference.  *Sturges*, 52 S.W.3d at 713.  Symetra argues that it had a statutory right to oppose the proposed transfers under the Texas structured settlement protection act.   The Texas structured settlement protection act provides that a proposed transferee must provide notice to the court and "all interested parties a notice of the proposed transfer and the application for authorization," including "notice that any interested party is entitled to support, oppose, or otherwise respond to the transferee's application . . . ."  Tᴇx. Cɪᴠ. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ § 141.006(b).  The Texas structured settlement protection act defines "interested parties" to include "the annuity issuer," "the structured settlement obligor," and "any other party that has continuing rights or obligations under the structured settlement."  *Id.* § 141.002(7).  Symetra argues that because it had a statutory right to oppose the proposed transfers to

Rapid, Rapid cannot show that Symetra committed an independently tortious act of interference.

As a matter of law, if Symetra is asserting a statutory right, that cannot amount to an independently tortious or unlawful act that violates a recognized tort duty owed to Rapid. Texas law recognizes a defense of justification when the allegedly interfering party acts in a "bona fide exercise of a legal right." *George v. Nat'l Ass'n of Letter Carriers*, 185 F.3d 380, 392 (5th Cir. 1999). Rapid argues that Symetra's conduct was not justified "given that it was itself attempting to solicit transfers from the same annuitants." (Docket Entry No. 172 at 6). Rapid contends that Symetra "has systematically objected to the transfer of future payments" only "because Symetra is not receiving some type of financial benefit for itself." (*Id.* at 1). Because Symetra has a legal right to oppose proposed transfers under the Texas Structured Settlement Protection Act, its motives for doing so do not make its opposition independently tortious. *Prudential Ins. Co. of Am.*, 29 S.W. 3d at 80. Rapid has failed to allege facts showing that Symetra committed an independently tortious act of interference.

Because Rapid has failed to state a claim for tortious interference, it has similarly failed to state a claim for civil conspiracy. To recover for civil conspiracy, a plaintiff must show (1) two or more persons; (2) an object to be accomplished—an unlawful purpose or a lawful purpose by unlawful means; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667 (Tex. 1998). Rapid has not alleged that Symetra

has committed any "unlawful, overt act" beyond its statutory right to oppose proposed transfers of the rights to future payments from its annuitants.

Symetra's motion to dismiss is granted. Because the extensive record before this court shows that allegations of additional facts consistent with Rapid's complaint "could not possibly cure the deficiency" in Rapid's claims, there is no need to grant Rapid leave to amend. *See Schreiber Distrib. Co.*, 806 F.2d at 1401.

**VII.   Conclusion**

Rapid's motions for reconsideration of this court's preliminary injunction order and contempt order are denied. Rapid's motion to confirm and motion for leave to file a motion to confirm are denied. Symetra's motions to dismiss are granted. Symetra's application for a permanent injunction is granted. R&Q's motion to consolidate, Symetra's motion for protective order, Symetra's motion to exclude testimony, and Rapid's motion to compel testimony are denied as moot. An order of injunction will issue separately.

SIGNED on March 31, 2008, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge