**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| SYMETRA LIFE INSURANCE CO., *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| NATIONAL ASSOCIATION OF | § | |
| SETTLEMENT PURCHASERS, | § | |
| | § | |
| Intervenor, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-05-3167 |
| | § | |
| RAPID SETTLEMENTS, LTD., | § | |
| | § | |
| Defendant. | § | |

**AMENDED MEMORANDUM AND ORDER**

This dispute involves two participants in the structured-settlement payment industry and a trade association representing companies that purchase structured settlements.  Symetra Life Insurance Co. and Symetra Assigned Benefits Co. (together, "Symetra"), sued Rapid Settlements, Ltd., seeking, among other relief, an injunction barring Rapid from using arbitration to obtain rights to payments from structured-settlement funds administered by Symetra.  The National Association of Settlement Purchasers ("NASP") intervened and sought a similar injunction.  This court permanently enjoined Rapid from using arbitration to effect a "transfer," as defined by structured-settlement protection acts in place in 47 states, without obtaining the approval required by those Acts.[1]  (Docket Entry Nos. 240, 253).  The Fifth Circuit affirmed the injunction.  (Docket Entry No. 250, *also located at* 567 F.3d 754).  NASP and Symetra now seek additional relief.

Three motions are pending:

---

[1]Throughout the opinion, "Act" or "Acts" refers to a state structured-settlement protection act or acts.

- Rapid seeks "clarification" of this court's July 28, 2009 permanent injunction. (Docket Entry No. 261). NASP and Symetra have responded. (Docket Entry Nos. 263, 266).

- Symetra seeks summary judgment on its claim for declaratory judgment; partial summary judgment on its claims for abuse of process and tortious interference with contract; and dismissal of Rapid's counterclaims for damages and declaratory relief. (Docket Entry No. 276). Rapid has responded, (Docket Entry No. 279), and Symetra has replied, (Docket Entry No. 280).

- NASP seeks entry of a declaratory judgment and recovery of its attorney's fees. (Docket Entry No. 282). Symetra has responded in support of NASP's motion. (Docket Entry No. 284). Rapid has responded in opposition. (Docket Entry No. 294). Symetra has replied to Rapid's response. (Docket Entry No. 296).

After a thorough review of the extensive record; the motions, responses, and replies; and the relevant law, this court grants Rapid's motion for clarification, grants in part and denies in part Symetra's motion for summary judgment, and grants in part and denies in part NASP's motion for summary judgment.

The reasons for these rulings are explained in detail below.

## I.    Background

The factual background of this litigation is spelled out in detail in this court's previous opinions. *See generally, e.g.*, *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, 599 F. Supp. 2d 809, 813–26 (S.D. Tex. 2008). Those opinions also describe Rapid's transactions with Abigail Dempsey and Troy Walker, both of which are a focus of Symetra's motion for partial summary judgment. *See, e.g.*, *id.* at 820–22 (Dempsey), 823–24 (Walker). The parties also have litigated similar issues in other courts. The results have been consistent. *See Symetra Nat'l Life Ins. Co. v. Rapid Settlements, Ltd.*, No. 14-07-00880-CV, 2009 WL 1057339; (Tex. App.—Houston [14th Dist.] 2009, no pet.); *Rapid Settlements, Ltd. v. Symetra Life Ins. Co.*, 234 S.W.3d 788 (Tex. App.—Tyler 2007, no pet.); *see also, e.g.*, *Fidelity & Guaranty Life Ins. Co. v. Rapid Settlements, Ltd.*, 334 F. App'x 572 (4th Cir. 2009) (per curiam); *Allstate Life Ins. Co. v. Rapid Settlements Ltd.*, 328 F. App'x 289

(5th Cir. 2009) (per curiam); *Allstate Settlement Corp. v. Rapid Settlements, Ltd.*, 559 F.3d 164 (3d Cir. 2009); *Pac. Life Ins. Co. v. Rapid Settlements, Ltd.*, 309 F. App'x 459 (2d Cir. 2009) (per curiam).

To summarize the procedural background, Symetra sued Rapid in this court on September 9, 2005. (Docket Entry No. 1). After battling Rapid around the country, Symetra sought wide-ranging injunctive relief. This court granted NASP's motion to intervene on August 16, 2006. (Docket Entry No. 41). This court preliminarily enjoined Rapid from using arbitration to effect transfers on January 10, 2007. (Docket Entry No. 84). On June 4, 2007, this court found Rapid in contempt for attempting to garnish a Symetra payee's payments. (Docket Entry No. 148). This court granted Symetra's request to make the preliminary injunction permanent on March 31, 2008, and Rapid took an interlocutory appeal. (Docket Entry Nos. 240, 241). The Fifth Circuit affirmed "[f]or essentially for the reasons stated" in this court's memorandum and opinion. (Docket Entry No. 251, at 2). NASP moved for a permanent injunction on similar grounds to Symetra, and this court entered a permanent injunction in NASP's favor on July 28, 2009. (Docket Entry No. 253). This memorandum and order addresses the subsequent outstanding motions.

## II. Rapid's Motion for Clarification

Rapid has moved for clarification of this court's injunction, asking whether a court-order exemplar attached to its motion satisfies the standard set out in the injunction for court approval of a transfer of rights of first refusal and security interests. (*See id.*, at 3). Rapid asks that, if the exemplar does not satisfy the standard, this court provide guidance on the necessary contents of a court order and guidance as to the "ability of Rapid to resolve post-court order issues in arbitration . . . involving, for example, a right of first refusal." (Docket Entry No. 261 at 7).

NASP seems to suggest that clarifying the injunction in light of the sample disclosure and order violates the rule against advisory opinions. *See, e.g.*, *Clinton v. Jones*, 520 U.S. 681, 690 n.11 (1997) (federal courts do not "decide abstract, hypothetical or contingent questions" (internal quotation marks omitted)). That rule, however, does not prevent clarification of an injunction. "[A] person subject to an injunction always has the right to ask the court that is administering it whether it applies to conduct in which the person proposes to engage. If this looks like a request for an 'advisory opinion,' it is one that even a federal court can grant, in order to prevent unwitting contempts." *In re Hendrix*, 986 F.2d 195, 200 (7th Cir. 1993) (Posner, J.) (citations omitted); *see also Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945) ("[W]e think courts would not be apt to withhold a clarification in the light of a concrete situation that left parties or 'successors and assigns' in the dark as to their duty toward the court. Enforcement orders are issued to effectuate the purposes of the Act, not for the entrapment of parties, and courts no less than parties desire to avoid unwitting contempts as well as to punish deliberate ones."); 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE § 2956, at 343 (2d ed. 1995) ("It should be noted that when an interested individual is confused as to the applicability of an injunction to him or whether the scope of an order applies to certain conduct, he may request the granting court to construe or modify the decree."). The Fifth Circuit has acknowledged that district courts may clarify injunctions after entering them. *Cf., e.g.*, *Frazar v. Hawkins*, 376 F.3d 444, 447 (5th Cir. 2004) (explaining that appellate jurisdiction does not extend to district-court orders that clarify injunctions).

This court entered an order enjoining Rapid from:

> seeking to enforce rights of first refusal or security interests in transfer agreements, unless before taking any enforcement action a court authorized by the applicable state structured settlement act to approve the proposed transfer has done so in accordance with that act. "Enforcing rights of first refusal or security interests" in the preceding sentence includes, but is not limited to, sending letters that

4

> threaten legal action, filing UCC statements, or seeking relief in a
> legal proceeding.

(Docket Entry No. 253, at 3).  This court's Memorandum and Order stated that court approval of a

transfer of a right of first refusal or a security interest in accordance with the applicable Act requires

that the approving court make "express findings" that:

> (1)    the transfer is in the best interest of the payee, taking into
>        account the welfare and support of the payee's dependents;
>
> (2)    the payee has been advised in writing by the transferee to
>        seek independent professional advice regarding the transfer
>        and has either received the advice or knowingly waived the
>        advice in writing; and
>
> (3)    the transfer does not contravene any applicable statute or an
>        order of any court or other governmental authority.

(Docket Entry No. 252 at 61 (quoting TEX. CIV. PRAC. & REM. CODE § 141.004)).

The attached exemplar specifically identified monthly payments to be transferred from the

annuitant to Rapid:

> The following portion of the monthly payments originally in the
> amount of $2,337.66 (subject to a 3% annual increase every
> December 27th, presently as of December 27, 2007 in the amount of
> $2,709.99):  Two Hundred Four (204) monthly payments each in the
> amount of $1650 (subject to a 3% annual increase each December
> 27th) beginning on December 27, 2015 through and including
> November 27, 2032 (ultimately increasing to $2,657.77 per month
> (the "Assigned Payments").

(Docket Entry No. 261, Ex. B, at 3).  The exemplar did not mention a right of first refusal or security

interest.  The exemplar did, however, state that the annuitant has been provided with a separate

Disclosure Statement, in compliance with the relevant Act.  (Id. at 2).  The Disclosure Statement,

which Rapid also attached, stated that, "[a]side from the actual payments listed above, you are also

granting to Rapid Settlements, Ltd. a 10 day right of first refusal in all of your remaining Periodic

Payments" and "a security interest in all your remaining Periodic Payments due under your annuity." (*Id.*, Ex. A, at 3).

The exemplar that Rapid attached does not satisfy the standard for court approval. The reference to the Disclosure Statement is not sufficient.[2] The Acts require court approval not just for the sale of structured-settlement payment rights, but also to the "pledge, hypothecation, or other alienation or encumbrance of structured settlement payment rights," all of which include rights of first refusal and security interests. *See, e.g.*, TEX. CIV. PRAC. & REM. CODE §§ 141.002(18), .004. To satisfy this requirement, a court order must specifically identify the right of first refusal or security interest to be granted, as the exemplar did with the portions of the future income stream to be transferred. Because court orders such as Rapid's attached exemplar do not satisfy the standard for a transfer of rights of first refusal or security interests, Rapid may not invoke such court orders in arbitration as a basis for enforcing purported rights of first refusal or security interests.

The motion for clarification is granted to the extent stated above.

## III.    The Motions for Summary Judgment

### A.    The Summary-Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If the burden of proof at trial lies with the nonmoving party, the moving party may satisfy its initial burden by "'showing'—that is, pointing

---

[2] Because the contents of Rapid Settlements's disclosure statements were not at issue in this litigation, this court does not decide whether Rapid's attached Disclosure Statement satisfies the standard for disclosure statements under the Acts.

out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmoving party's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (internal quotation marks omitted).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary-judgment motion by resting on the mere allegations of its pleadings.  The nonmoving party must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).  In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

### B.    The Declaratory Judgment Act

Each party seeks relief under the federal Declaratory Judgment Act, which provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C.

§ 2201(a).  The Declaratory Judgment Act is "an enabling act, which confers a discretion on the courts rather than an absolute right on a litigant."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)).  "The Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."  *Wilton*, 515 U.S. at 286.  "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration."  *Id.* at 288.

Although the permissive "may" in § 2201(a) gives the district court broader discretion to decline to hear a declaratory-judgment action than it has in other kinds of actions, the district court's discretion is not wholly unfettered.  *See Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 390 (5th Cir. 2001); *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590 (5th Cir. 1994); *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993).  In deciding whether to retain or dismiss a federal declaratory-judgment action, a district court "must determine: (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action."  *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 387 (5th Cir. 2003) (citing *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000)).

### C.    NASP's and Symetra's Requests for Declaratory Relief

Symetra and NASP seek similar declaratory relief.  Symetra seeks a judgment declaring that:

> (1)  Rapid's attempts to obtain security interests, secured rights of first refusal and powers of attorney coupled with interests, based on provisions in its transfer agreements, are all "transfers" under the Protection Acts and are ineffective absent court approval;

8

(2)  Rapid must comply with the Protection Act of the state in which each payee resides;

(3)  [U]nder most Protection Acts, Rapid's transfer agreements are ineffective, as against payees, absent court approval due to the Protection Act's "no liability" provisions, and other provisions, when the Acts are read as a whole;

(4)  Symetra is entitled to object to proposed Rapid transfers without regard to Symetra's alleged motives; and

(5)  Symetra is not bound by any garnishment or other collection device that would have the effect of causing a transfer absent Protection Act court approval.

(Docket Entry No. 277, at 15).

NASP seeks a judgment declaring that:

(1)  Rapid's attempts to obtain and acquire security interests, secured rights of first refusal, and powers of attorney coupled with interests from payees are "transfers" under the [Protection Acts] and are ineffective absent state court approval;

(2)  Rapid therefore must comply with the applicable [Protection Act] when it seeks to obtain or acquire security interests or rights of first refusal in structured settlement payment rights;

(3)  Rapid cannot use arbitration proceedings, in lieu of court orders issued under applicable [Protection Acts], to effectuate transfers, including rights of first refusal and security interests, of structured settlement payment rights; and

(4)  Rapid must comply with [Protection Acts] seeking state court approval for any transfer of a structured settlement payment rights.

(Docket Entry No. 282, at 13).

Rapid does not contest the *Sherwin-Williams* factors.  Instead, it argues that this court should not grant declaratory relief insofar as that would duplicate the relief already granted through the final injunctions.  Rapid relies on the Fifth Circuit's decisions in *Pan-Islamic Trade Corporation v. Exxon*

9

*Corporation*, 632 F.2d 539 (5th Cir. 1980), and *Madry v. Fina Oil & Chemical Company*, No. 94-10509, 1994 WL 733494 (5th Cir. Dec. 27, 1994). Neither case supports Rapid's position.

*Pan-Islamic Trade* was not a declaratory-judgment case. Rather, it concerned whether the trial court abused its discretion in denying leave to amend a complaint under Rule 15 to add a claim under the Sherman Act. The Fifth Circuit affirmed, because the plaintiff failed to allege sufficient facts to show it had standing under the Sherman Act. 632 F.2d at 545–46.

In *Madry*, the court invalidated a declaratory judgment that the plaintiff was an at-will employee because the judgment "was duplicative and superfluous in light of the resolution of the contract claim. . . . The declaratory judgment does not declare any significant rights not already at issue in the contract dispute and the grant of such relief was an abuse of discretion under the Texas declaratory judgment statute." 1994 WL 733494, at *2. NASP distinguishes *Madry* from the present case. NASP notes that the relief it seeks includes a declaratory judgment that the power-of-attorney clause in Rapid's transfer agreements is a transfer under the Acts. This issue was not addressed in the injunction litigation, thereby making at least parts of the declaratory relief nonduplicative.

Rapid's reliance on *Madry* is also unpersuasive because the federal Declaratory Judgment Act, not its Texas counterpart, applies in federal court. *See Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998) (citing *Housing Auth. v. Valdez*, 841 S.W.2d 860, 864 (Tex. App.—Corpus Christi 1992, writ denied)); *Little Giant Mfg. Co. v. Chromalox Indus. Heating Prods.*, No. 1:96-CV-44, 1996 WL 363026, at *3 (E.D. Tex. June 26, 1996) (holding that declaratory relief should be examined under federal, not Texas, declaratory-judgment law, even though the case was first filed in state court under the Texas statute); *see also Haagen-Dazs Shoppe Co. v. Born*, 897 F. Supp. 122, 126 n.2 (S.D. N.Y. 1995) (under *Erie*, the federal declaratory-judgment act governs

propriety of declaratory relief in diversity cases); *DeFeo v. Proctor & Gamble Co.*, 831 F. Supp. 776, 779 (N.D. Cal. 1993) (federal declaratory relief applies even in diversity actions); *cf. Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 674 (1950) ("[T]hat the declaratory remedy which may be given by the federal courts may not be available in the State courts is immaterial.").[3]

Under federal law, there is no rule against duplicative relief. The Declaratory Judgment Act allows a court to enter a declaratory judgment "whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Federal Rules of Civil Procedure make clear that a district court cannot decline to entertain a request for a declaratory judgment merely because of the "existence of another adequate remedy." FED. R. CIV. P. 57; *Marinechance Shipping Ltd. v. Sebastian*, 143 F.3d 216, 219 (5th Cir. 1998) ("Rule 57 of the Federal Rules of Civil Procedure expressly states that the availability of an alternative remedy does not prevent the district court from granting a declaratory judgment."). As the 1937 Advisory Committee notes explain, "the fact that another remedy would be equally effective affords no ground for declining declaratory relief." FED. R. CIV. P. 57 advisory committee notes (1937); *Tierney v. Schweiker*, 718 F.2d 449, 457 (D.C. Cir. 1983); *United States*

---

[3]Some courts have relied on decisions interpreting the Texas Declaratory Judgment Act to interpret the federal Declaratory Judgment Act. *See, e.g.*, *Liberty Mut. Ins. Co. v. Hisaw & Assocs. Gen. Contractors, Inc.*, Civ. A. No. 3:09-CV-0867-B, 2010 WL 4340692, at *12 (N.D. Tex. Oct. 25, 2010) (citing *Mandry*, 1994 WL 733494, at *2); *Albritton Props. v. Am. Empire Surplus Lines*, No. 3:04-CV-2531-P, 2005 WL 975423, at *2 (N.D. Tex. Apr. 25, 2005). This court respectfully declines to follow that approach. Although the acts have certain similarities, they differ in important ways. Under Texas law, a party cannot seek declaratory relief "to settle disputes already pending before the court." *See, e.g.*, *Rapid Settlements, Ltd. v. Settlement Funding, LLC*, No. 14-09-00637-CV, 2010 WL 3504182, at *3 (Tex. App.—Houston [14th Dist.] Sep. 9, 2010, no pet.) (citing *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838 (Tex. 1990)). Federal rules allow declaratory relief even when other forms of relief are adequate. *See* FED. R. CIV. P. 57. The Texas rule appears driven in part by the concern that litigants will seek declaratory relief to obtain attorney's fees, which the statute provides, that would not otherwise be available. *See MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 669–70 (Tex. 2009); *City of Houston v. Texan Land & Cattle Co.*, 138 S.W.3d 382, 392 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Another factor is Texas courts' concern that plaintiffs will lose their ability to determine when and where to file suit. *See BHP Petroleum Co.*, 800 S.W.2d at 841 ("[A] declaration of non-liability for past conduct is not normally a function of the declaratory judgment statute because it deprives the potential plaintiff of the right to determine whether to file, and if so, when and where." (quoting *Abor v. Black*, 695 S.W.2d 564, 566 (Tex. 1985))). That concern is not dispositive under federal law. *See Sherwin-Williams*, 343 F.3d at 388 (listing forum-shopping as only one of several factors to consider to decide whether declaratory relief is appropriate); *United States v. Doherty*, 786 F.2d 491, 498 (2d Cir. 1986) ("[T]he fundamental purpose of the DJA is to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage has accrued." (internal quotation marks omitted)).

*v. 0.35 of an Acre of Land, More or Less, Situated in Westchester Cnty., N.Y.*, 706 F. Supp. 1064, 1073 (S.D.N.Y. 1988).  This court will consider the claims for declaratory relief.

> **1.** **The Request for a Declaratory Judgment that the Powers of Attorney Coupled with Rights of First Refusal and Security Interests Are "Transfers" Under the Acts**

NASP and Symetra seek a declaratory judgment that Rapid's use of security interests and rights of first refusal, and of powers of attorney coupled with those interests, are "transfers" under the Acts.  Such a judgment means that Rapid must comply with the applicable Act when it seeks such rights.  This court has already held that the rights of first refusal and security interests are "transfers" under the Acts.  (*See* Docket Entry No. 252, at 50–55).  This court has not yet specifically addressed powers of attorney.

In a typical agreement, the power-of-attorney clause reads:

> 8.   <u>Power of Attorney</u>.  Assignor hereby grants to Rapid Settlements an Irrevocable Power of Attorney with full powers of substitution to do all acts and things that Assignor might do regarding the Periodic Payments and any and all rights Assignor has under the Settlement Agreement, including, without limitation, the power to endorse checks, drafts or other instruments, the power to alter edit and change payment instructions and/or beneficiary designation and any other act which, in the sole discretion of Rapid Settlements as Assignor's Attorney-in-Fact, is necessary or expedient for Rapid Settlements to obtain all of the benefit of the bargain contemplated by this agreement.  The power of attorney is coupled with an interest and shall survive Assignor's death or disability.

(Symetra Preliminary Injunction Binder 2, Ex. 1.3, Agreement at 4–5).  The agreements also typically contain a right of first refusal and security interest in the payments that this court already has held qualify as transfers.  The power-of-attorney clause gives Rapid the power to effect the transfers by "any [] act" necessary.  When linked with the security interests and rights of first refusal, it is an "encumbrance" under the Acts and qualifies as a "transfer."  *See In re Rapid*

*Settlement Ltd.'s Application for Approval of Structured Settlement Rights*, 136 P.3d 765, 769–70

(Wash. Ct. App. 2006).

> ### 2.    The Request for a Declaratory Judgment that Rapid Must Comply with the Applicable Act Before Effecting a "Transfer"

NASP and Symetra seek a declaratory judgment that Rapid must comply with the Acts when seeking any transfer, and that Rapid cannot use arbitration to effect any transfer.  This court already has held that Rapid cannot use arbitration to evade an Act's requirements.  (*See* Docket Entry No. 252, at 64).  Rapid opposes this request to the extent it would require Rapid to comply with the Act of the state in which each payee resides.

Rapid and Symetra have already contested one iteration of this issue in the State of Washington.  Symetra argued in a Washington state court that the judge should not approve the proposed transfer unless it met the requirements set out in the Act in effect in North Carolina, where the payees lived.   Under the Washington Act, a court had to find that the "transfer does not contravene any applicable statute" as a condition for approval.  WASH. REV. CODE § 19.205.030(3); *Rapid Settlements*, 136 P.3d at 772; *see also* WASH. REV. CODE § 19.205.060(5) ("This chapter does not authorize any transfer of structured settlement rights in contravention of any law . . . .").  The Washington court looked to the North Carolina Act, which required court approval of any transfer of structured-settlement payments to a person "domiciled" in North Carolina.  *Rapid Settlements*, 136 P.3d at 367 (citing N.C. GEN. STAT. §§ 1-543.11(12)(a), .12)).  The Washington court held that the North Carolina Act applied to the transfer at issue.  *Id.*

Both the Texas and Washington Acts require the court from which approval is sought to find that the proposed transfer does not contravene *any* applicable law.  TEX. CIV. PRAC. & REM. CODE § 141.004(3); WASH. REV. CODE § 19.205.030(3).   As this court has already observed, this requirement is "typical[]," (Docket Entry No. 252, at 5).  Rapid has not identified Acts that vary in

13

this respect. Nor has Rapid suggested that the North Carolina Act is unusual.  Rapid's only argument is that 26 U.S.C. § 5891 preempts this requirement. Courts have repeatedly rejected this argument. *See, e.g.*, *Annuity Transfers, Ltd. v. United States*, 86 Fed. Cl. 173, 182–83 (Fed. Cl. 2009).[4]  Section 5891 determines what tax treatment a transfer receives, not whether a transfer is valid.  Subsection (a) creates a tax "imposed on any person who acquires directly or indirectly structured settlement payment rights in a structured settlement factoring transaction."  Subsection (b) then allows exceptions to the tax.  Section 5891 specifically acknowledges that the Acts exist, making approval under an Act a precondition to an exemption from the tax.  *See* 26 U.S.C. § 5891(b)(2).  Section 5891 does not preempt the Acts.  *See Wyeth v. Levine*, 129 S. Ct. 1187, 1194–95 (2009) (explaining the presumption that Congress has not preempted state law unless preemption was "the clear and manifest purpose of Congress" (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. at 470, 485 (1996))).

NASP and Symetra are entitled to a declaratory judgment that Rapid must comply with the Acts when seeking any transfer, and that Rapid cannot use arbitration to effect any transfer.

### 3. The Request for a Declaratory Judgment that  the Enforceability of a Transfer Agreement Is Contingent on Court Approval

Symetra seeks a declaratory judgment that a proposed transfer agreement is ineffective against a payee until a court approves it under the applicable Act.  California, Nevada, and West Virginia expressly so provide.  CAL. INS. CODE § 10136(c)(1); NEV. REV. STAT. § 42.030(1); W. VA.

---

[4]*See also Allstate Life Ins. Co. v. Rapid Settlements, Ltd.*, No. 3:06CV00629DPJ, 2007 WL 2745806, at *3 (S.D. Miss. Sept. 20, 2007); *Rapid Settlements, Ltd. v. Symetra Life Ins. Co.*, No. E040289, 2007 WL 1576437, at *7 (Cal. Ct. App. June 1, 2007); *In re Rapid Settlements, Ltd.*, 202 S.W.3d 456, 461 (Tex. App.—Beaumont 2006, pet. denied); *Rapid Settlements*, 136 P.3d at 772–73; *In re Foreman*, 850 N.E.2d 387, 392 (Ill. App. Ct. 2006); *Rapid Settlements Ltd. v. Safeco Nat'l Life Ins. Co.*, No. CV0440001979, 2005 WL 246458, at *2 (Conn. Super. Ct.  Jan. 4, 2005); *Singer Asset Fin. Co. v. CGU Life Ins. Co. of Am.*, 567 S.E.2d 9, 11 (Ga. 2002).

CODE § 46A-6H-3(a),[5] and Rapid conceded that in such states, the transfer agreement is invalid absent court approval.

The parties disagree about whether transfer agreements are invalid absent court approval under Georgia law. Under the Georgia Act, "[a]ny payee who executes in writing a transfer agreement shall have the right to rescind the transfer within the next 21 days following the written execution of the transfer agreement or at the hearing . . . , whichever event occurs last." GA. CODE § 51-12-72(c). Rapid argues that although this Act allows rescission of a transfer, the Act does not make the validity of the entire transfer agreement contingent on court approval.

The declaratory relief Symetra seeks appears broader than Georgia law supports. The Georgia statute gives the payee the right to rescind the transfer within a set period, but the payee's decision to rescind, not the court's approval or disapproval of the transfer, is the trigger.

Symetra contends that issue preclusion, or collateral estoppel, applies to prevent Rapid from relitigating whether court approval is a condition precedent to a valid transfer agreement. Symetra argues that the court in *Ayars v. Rapid Settlements, Ltd.*, No. 06-CV-867-TB, 2007 Extra LEXIS 20 (Ga. Super. Ct. Sep. 13, 2007), held that court approval was a condition precedent to the validity of transfer agreements under the Georgia Act. "The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to give the same preclusive effect to state court judgments that those judgments would receive in the courts of the state from which the judgments emerged." *Capital City Ins. Co. v. Hurst*, 632 F.3d 898, 903 (5th Cir. 2011). Under Georgia law, "collateral estoppel precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies." *Karan, Inc. v. Auto-Owners Ins. Co.*, 629 S.E.2d 260, 262 (Ga. 2006) (internal quotation marks omitted).

---

[5]For example, California law requires a disclosure "that the agreement is not effective until the date on which a court enters a final order approving the transfer agreement." CAL. INS. CODE § 10136(c)(1).

15

Applying the test for collateral estoppel under Georgia law leads to a finding that there is no preclusion because the issues presented are not the same.  In *Ayars*, the payee invoked § 51-12-72(c) to cancel the transfer agreement after learning of Rapid and Symetra's disputes under other Acts. 2007 Extra LEXIS 20, at *2.  Rapid sought to compel arbitration, and Ayars sought declaratory relief in state court.  *Id.* at *2–3.  The court concluded that Ayars had effectively exercised his right to cancel under Georgia contract law.  Under that law, the agreement did not become effective until the state court approved the transaction.  The court's conclusion turned on the contract language, not on the Act.  The contract stated that "the Transfer Agreement is subject to court approval," *id.* at *18, and that the arbitration clause applied only to disputes "under this Agreement," *id.* at *20. "If the 'Agreement' is subject to court approval, and the court's approval has not been sought or granted," the *Ayars* court reasoned, "then the Agreement is ineffective and the requirement to arbitrate is not available to the parties to resolve their dispute."  *Id.*  Symetra seeks a broader declaration, that no transfer agreement is valid without prior court approval.  Unlike the court's decision in *Ayars*, Symetra's proposed declaratory judgment does not depend on the language of the particular contract.  Collateral estoppel does not apply.

Symetra contends that the Acts of 41 states make court approval a condition precedent to transfer because those Acts contain "no liability" provisions.[6]  The Texas Act is typical.  The "no liability" provision in the Texas Act states:

> A payee who proposes to make a transfer of structured settlement payment rights may not incur any penalty, forfeit any application fee or other payment, or otherwise incur any liability to the proposed transferee or any assignee based on any failure of the transfer to satisfy the conditions of this chapter.

---

[6]Symetra acknowledges that the Kentucky, Louisiana, Maryland, and Missouri Acts lack the "no liability" provisions.

16

TEX. CIV. PRAC. & REM. CODE § 141.007(d).  This language does not make court approval a condition precedent to any transfer agreement.  Instead, it prevents a payee from incurring liability as the result of a court's decision not to approve a transfer.  If liability is based on something besides "any failure of the transfer to satisfy" the Act, the "no liability" provisions do not apply.

Symetra relies on cases from Indiana and Florida to support its argument that collateral estoppel prevents Rapid from arguing that a transfer can be valid without court approval.  The cases on which Symetra relies involved different issues.  *See Ghosh v. Ind. State Ethics Comm'n*, 930 N.E.2d 23, 26 (Ind. 2010)  (requiring the same issue as an element of collateral estoppel); *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 945 So. 2d 1216, 1235 (Fla. 2006) (same).  The Florida case, *In re Approval of Transfer of Structured Settlement Payment Rights*, No. 05 010839(18), 2005 WL 3963846 (Fla. Cir. Ct. Nov. 7, 2005), appears to have dealt with a narrower issue than the one on which Symetra now seeks declaratory relief.  That case appears to have involved Rapid's attempt to use arbitration to effectuate a transfer, in violation of the Act.  The court applied collateral estoppel to find that an earlier final judgment voiding a transfer based on the antiassignment provisions in Symetra's contracts prohibited the transfer; that another company had already purchased the right to the payments Rapid sought, and Rapid had failed to join that company; and that the disclosures were inadequate under Florida's Act.  *Id.* at *1–2.  The opinion contains broad  language stating that the "proposed transfer agreement is void, and the Petition and proposed transfer fail as a matter of law."  *Id.* at *1.  But the opinion does not suggest that Rapid sought to enforce any provision in the transfer agreement other than the transfer itself.

The Indiana case, *Niemeier v. Gross*, Cause No. 65C01-0504-PL-00105, 2008 Extra LEXIS 34 (Ind. Cir. Ct. Apr. 10, 2008), is similarly narrower than the relief Symetra seeks.  Like the court in the Florida case, the Indiana court in *Gross* stated that "Rapid's transfer agreement is void and

of no effect against any party." *Id.* at *2.  But the focus was on Rapid's efforts to obtain a transfer through arbitration.  *See id.* at *3. The court separately noted that another judge had voided the arbitration provision, without explaining the reason for doing so.  *Id.* at *2.

The "no liability" provisions in the Acts do not make court approval a condition precedent to the effectiveness of all parts of the proposed transfer agreements.  To be clear, that does not does not mean that Rapid can enforce the agreements in any way prohibited by the Acts or other law.  Rapid cannot, for example, obtain relief from liability "based on" a court's disapproval of a transfer, because the "no liability" provisions specifically prohibit that outcome.  Nor can Rapid effect a transfer without approval consistent with the applicable Act, even if Rapid's proposed transfer agreement purports to allow Rapid to do so.  Rapid is prohibited from using arbitration and similar methods this court and other courts have held to violate the Acts.  Whether a proposed transfer or transfer agreement violates the applicable Act determines whether Rapid may enforce contract terms beyond the transfer provisions.  The declaratory relief Symetra seeks, to make every part of a proposed transfer agreement ineffective unless it is approved by a court, goes beyond what the Acts support.  Symetra's request for a declaratory judgment that no part of a transfer agreement is effective without court approval is denied.

### 4.   The Request for a Declaratory Judgment that Symetra Has No duty to Give Information to Rapid Except as the Acts Provide

Symetra seeks a declaratory judgment that it "has no duty to Rapid to perform any act, answer any Rapid question or furnish any information to Rapid with respect to any proposed transfer to Rapid except as expressly provided in any applicable Protection Act." (Docket Entry No. 277, at 69). When Rapid agrees to purchase settlement payments from a payee, it requires the payee to send a letter to the annuity issuer.  An example is the letter Abigail Dempsey sent to Symetra. (Docket Entry No. 279, Ex. A).  The letter stated that Dempsey agreed "transfer a portion of [her]

18

periodic payments" under the listed annuity-policy number and asked Symetra to send certain information to Dempsey at Rapid's address.  (*Id.*).  The letter asked for information on the annuity, including beneficiaries in the event of Dempsey's death.  The letter also asked Symetra to confirm the amount due Dempsey under the annuity; that Dempsey had not previously transferred the payment; that the payments were to continue only while she was alive; that Symetra would send the payments to Rapid after Rapid obtained a court order; and that Symetra would provide a certified copy of the annuity contract.  (*Id.*).  The letter sought a response within seven days and concluded in bold and italicized text, "Please comply with all of your obligations as my fiduciary in honoring this request on a timely basis.  Please note that I am in immediate need of cash and any delay in your response or not completely providing the requested information within the time frame requested will harm me."  When Symetra objected to the transfer, Rapid complained that Symetra's refusal to provide information about prior transfers made it impossible for Rapid to obtain approval for the transfer.  (*See* Docket Entry No. 264, Ex. 52, at 4).[7]

Symetra contends that it does not have to provide information to Rapid because the Acts place the burden of compliance on Rapid.  Symetra contends that Rapid is simply trying to shift its due-diligence burdens to Symetra.

Under the Acts, "[c]ompliance . . . [is] solely the responsibility of the transferee in any transfer of structured settlement payment rights, and neither the structured settlement obligor nor the annuity issuer bear any responsibility for, or any liability arising from, noncompliance with the requirements or failure to fulfill the conditions" of the acts.  TEX. CIV. PRAC. & REM. CODE §

---

[7]Symetra also points to Rapid's efforts to have Symetra cited for contempt.  (Docket Entry No. 277 at 68).  Those efforts appear to be arguments that Symetra should be sanctioned for disobeying court orders, not related to duties under the Acts.  (Docket Entry No. 264, Ex. 52, at 3; Symetra Permanent Injunction Binder, Ex. 3.10).

141.007(f).[8]  Although this language is broad, it does not appear to prevent Rapid from requiring its proposed payees to ask Symetra, the annuity issuer, to supply certain information to Rapid, the proposed transferee.  The Acts appear to be concerned with making it clear that transferees, such as Rapid, cannot sue structured-settlement obligors or annuity issuers when a court refuses to approve a transfer.  The Acts do not address whether an obligor or issuer has a duty to provide information requested by a payee.  Symetra is not entitled to a declaratory judgment that it has no obligation to provide information to Rapid unless an Act expressly provides.

### 5.      The Request for a Declaratory Judgment that Rapid Cannot Garnish or Otherwise Collect Payees' Payments Without Court Approval Under the Applicable Act

Symetra requests a declaratory judgment that Rapid cannot garnish structured-settlement payments without court approval under the applicable Act.  Rapid argues that it should be allowed to garnish such payments when it advances funds to payees in advance of court action, no approval occurs, and the payments are not returned.  Alternatively, Rapid contends that it should be able to garnish settlement payments when it enters into unrelated "business transactions" and the person with whom it contracts has no other resources to pay a judgment.

Under the Acts, "no structured settlement obligor or annuity issuer shall be required to make any payment directly or indirectly to any transferee of structured settlement payment rights unless the transfer has been approved in advance" with the three findings required by the acts. *E.g.*, TEX. CIV. PRAC. & REM. CODE § 141.004.  A "transferee" is "a party acquiring or proposing to acquire

---

[8]Other Acts contain similar provisions. *See* ALA. CODE § 6-11-56(f); ARIZ. REV. STAT. § 12-2904(E); ARK. CODE § 23-81-707(f); CAL. INS. CODE § 10139.3(b); COLO. REV. STAT. § 13-23-107(6); CONN. GEN. STAT. § 52-225*l*(f); HAW. REV. STAT. § 676-6(f); IDAHO CODE § 28-9-109(d)(13)(B)(vi)(6); 215 ILL. COMP. STAT. § 153/30(f); IOWA CODE § 682.7(6); KAN. STAT. § 40-466(f); MICH. COMP. LAWS § 691.1307(6); MISS. CODE § 11-57-13(6); MONT. CODE § 33-20-1411(1); N.J. STAT. § 2A:16-69(f); N.M. STAT. § 39-1A-7(F); N.Y. GEN. OBLIG. LAWS § 5-1708(f); N.D. CENT. CODE § 32-03.4-11; 12 OKLA. STAT. § 3244(F); ORE. REV. STAT. § 33.875(6); R.I. GEN. LAWS § 27-9.3-7(f); S.C. CODE § 15-50-70(F); S.D. CODIFIED LAWS § 21-3B-11; UTAH CODE § 78B-6-1507(6); VA. CODE § 59.1-477.1(F); WASH. REV. CODE § 19.205.060(6); WYO. STAT. § 1-16-607(f).

structured settlement payment rights through a transfer." *E.g.*, *id.* § 141.002(21).  When Rapid makes an advance to a payee who is a proposed transferee, that payee is a transferee under the Act and the payment is a transfer.  Rapid cannot garnish the payee's payments unless a court makes the required findings, because that would require the structured-settlement obligor or annuity issuer to make settlement payments to the transferee without court approval.  Rapid's argument that it should be able to garnish payments to recover money it advances in anticipation of court approval that does not occur is unpersuasive.

Rapid is correct, however, that a transaction wholly unrelated to acquiring structured-settlement payment rights does not need court approval.  The Acts require approval only when a "transferee" seeks settlement payments from a structured-settlement obligor or annuity issuer.  *Id.* § 141.004.  The key to determining if a party seeking garnishment, for example, must obtain approval under an Act is whether that party is "acquiring or proposing to acquire structured settlement payments rights through a transfer."  *Id.* § 141.002(21).  Rapid may not, however, circumvent the Acts by the label it puts on a transfer.   Calling a transfer an "advance" in order to use garnishment or a similar collection effort does not avoid the Act's requirements.  Courts have consistently condemned Rapid's stubborn efforts to use such procedures as arbitration and advances followed by garnishment to evade the Act's requirements.  *See Allstate Settlement Corp.*, 559 F.3d at 172 & n.11 (collecting cases).  Symetra is entitled to a declaratory judgment that Rapid cannot use garnishment or otherwise collect payees' payments without court approval under the applicable Act when the collection effectuates a transfer under that Act.

### 6.    The Request for a Declaratory Judgment that Symetra Is Entitled to Object to Rapid's Transfers

Symetra seeks a declaratory judgment that it is entitled to object to Rapid's transfers "without regard to whether Symetra's alleged motive is acceptable to Rapid."  (Docket Entry No.

277, at 67).  Symetra notes that many courts have upheld its objections, either under the Acts or the antiassignment clauses in Symetra's contracts.  *See, e.g.*, *Rapid Settlements, Ltd. v. Dickerson*, 941 So. 2d 1275,1276–77 (Fla. Dist. Ct. App. 2006); *In re Foreman*, 850 N.E.2d 387, 388, 393–94 (Ill. Ct. App. 2006).  Rapid has not objected to this part of the proposed declaratory judgment.  The request is granted.

### D.    Rapid's Request for Declaratory Relief

In its counterclaim, Rapid seeks a declaratory judgment that "[a]ny attempt by Symetra to assert that a transfer must comply with the Washington [Act] in addition to the [Act] of the state in which the transfer takes place is improper."  Rapid explains:

> Symetra has long argued that a structured settlement application must comply with the law of multiple states.  For example, Symetra has argued in the case of Rapid Settlements' applications, that an application for the transfer of structured settlement payment rights must comply with the law of the state in which the transfer is taking place and Washington State, where Symetra is based.  The result is that Symetra demands multiple Disclosure Statements to be provided to its customers.  Such is contrary to the relevant [Acts] and creates unnecessary confusion   for Rapid Settlements' customers and needless administrative burden.  Yet, in Symetra's own transfers, Symetra simply complies with the law of the state in which the transfer occurs.

(Docket Entry No. 171, ¶ 23(a)).  Symetra argues that the parties have already litigated the issue in the Washington Court of Appeals.  *See generally Rapid Settlements*, 136 P.3d at 772–73.  Symetra contends that under claim and issue preclusion, Rapid cannot relitigate the issue in this court.

Under Washington law, claim preclusion applies when the current action and a previous action share the same subject matter, cause of action, parties, and "the quality of the persons for or against whom the claim is made."  *Gold Star Resorts, Inc. v. Futurewise*, 222 P.3d 791, 798 (Wash. 2009) (quoting *City of Arlington v. Cent. Puget Sound Mgmt. Hearings Bd.*, 193 P.3d 1077, 791–92 (Wash. 2008)).  Unlike claim preclusion, issue preclusion "prevents a second litigation of issues

22

between the parties, even though a different claim or cause of action is asserted." *Hisle v. Todd Pac. Shipyards Corp.*, 93 P.3d 108, 114 n.9 (Wash. 2004) (internal quotation marks omitted).  Issue preclusion applies when the actions share "(1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied." *Gold Star Resorts*, 222 P.3d at 737–38 (quoting *Cent. Puget Sound*, 193 P.3d at 792).

Symetra relies on previous litigation in which it challenged the transfers of two structured-settlement payment streams held by North Carolina residents.  The Washington Act allows an application for approval under the Act in the principal place of business of the structured-settlement payment obligor.  Symetra's principal place of business is in Washington. Washington and North Carolina, where the payees lived, both had Acts, but North Carolina's was somewhat stricter.  The transfer violated the North Carolina Act.  The Washington Act required that a court withhold approval of a transfer that violated "any applicable statute."  Symetra argued that the North Carolina Act, which the transferred violated, was an applicable statute under the Washington Act.  The Washington state court rejected Rapid's arguments that 26 U.S.C. § 5891 preempted North Carolina's law and divested the court of subject-matter jurisdiction.  The Washington court held that the North Carolina Act was an "applicable statute" under Washington's Act.  *See Rapid Settlements*, 136 P.3d at 772–73.  The Washington court held that the transfer had to satisfy the North Carolina Act in order to satisfy the Washington Act.

This case involves the same issue.  Claim preclusion applies to prevent Rapid from relitigating its claim that "[a]ny attempt by Symetra to assert that a transfer must comply with the

Washington [Act] in addition to the [Act] of the state in which the transfer takes place is improper."
Rapid is not entitled to the declaratory judgment it seeks.

### E.    Symetra's Motion for Partial Summary Judgment on Other Claims

#### 1.    Rapid's Antitrust Claims

Rapid asserts counterclaims under the Sherman Antitrust Act, 15 U.S.C. § 2, and the Texas

Free Enterprise Antitrust Act, TEX. BUS. & COM. CODE § 15.05.  The requirements are the same for

both.  *Tex. Commercial Energy v. TXU Energy, Inc.*, 413 F.3d 503, 509 (5th Cir. 2005); *see also*

TEX. BUS. & COM. CODE § 15.04.  Symetra moved for summary judgment on both causes of action,

arguing that Rapid did not and cannot produce evidence to support essential elements of the claims.

Rapid did not address this argument in its response.  Instead, Rapid argued that Symetra's motion

should be denied as to its tortious-interference and abuse-of-process claims.  Rapid's response did

not discuss the antitrust claims.  As a result, Rapid has abandoned those claims.  *See Black v. N.*

*Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006); *see also Ervin v. Sprint Comms.*, 364 F.

App'x 114, 117–18 (5th Cir. 2010) (quoting *Vaughner v. Pulito*, 804 F.2d 873, 877 n.2 (5th Cir.

1986)).  Symetra's motion for summary judgment dismissing those claims is granted.

#### 2.    Rapid's and Symetra's Claims for Tortious Interference with Contractual Relations

Rapid and Symetra both assert claims for tortious interference with existing contractual

relations.  The parties address this claim under Texas law. The elements of a tortious interference

with contract are:  "(1) the existence of a contract subject to interference; (2) a willful and

intentional act of interference; (3) the act was a proximate cause of the plaintiff's damages; and (4)

actual damage or loss."  *Tex. Beef Cattle Co.*, 921 S.W.2d at 210 (citing *Holloway v. Skinner*, 898

S.W.2d 793, 795–96 (Tex. 1995)); *see also Nova Consulting Grp. v. Eng'g Consulting Servs. Ltd.*,

290 F. App'x 727, 737 (5th Cir. 2008); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002).

Justification is a defense a tortious interference with contract claim. *Tex. Beef Cattle Co.*, 921 S.W.2d at 210; *see also Friends for Am. Free Enter. Ass'n v. Wal-Mart Stores, Inc.*, 284 F.3d 575, 577 (5th Cir. 2002). A defendant's interference with another's contract is justified if she has a legal right to interfere or she has "a good-faith belief claim to a colorable legal right, even though that claim ultimately proves to be mistaken." *Tex. Beef Cattle Co.*, 921 S.W.2d at 211; *see also Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 724 (Tex. 2001). "[I]f the trial court finds as a matter of law that the defendant had a legal right to interfere with a contract, then the defendant has conclusively established the justification defense." *Id.* "A jury question is presented only when the court decides that although no legal right to interfere exists, the defendant has nevertheless produced evidence of a good faith, albeit mistaken, belief in a colorable legal right." *Id.*

The Texas Supreme Court has not defined what it means for a right to be "colorable" in the tortious-interference context. In *Bennett v. Computer Associates International, Inc.*, the court concluded that "a right is colorable if it appears, without further inquiry (that is, if it appears on its face), genuine, truthful, valid, or existing." 932 S.W.2d 197, 202 (Tex. App.—Amarillo 1996, no pet.). The court drew the definition from the term's use in other contexts. *Id.* (citing *Cox v. Houston & T.C.R. Co.*, 4 S.W. 455, 457 (1887), *Black's Law Dictionary*, and *Merriam-Webster's Third New International Dictionary*). Other courts have followed *Bennett*'s definition of "colorable." *Am. Tech. Res., Inc. v. Network Staffing Servs., Inc.*, No. 05-00-01124-CV, 2001 WL 969210, at *6 (Tex. App.—Dallas Aug. 28, 2001, no pet.); *Brown Servs., Inc. v. Brown*, No. 01-98-00304-CV, 1999 WL 681964, at *11 (Tex. App.—Houston [1st Dist.] Sep. 2, 1999, pet. denied); *Beard v. Whitaker*, No. 05-96-01188-CV, 1998 WL 423453, at *3 (Tex. App.—Dallas July 29, 1998, pet. denied). Whether a claim is colorable is a question of law. *Brown Servs.*, 1999 WL 681964, at *11 n.3.

25

A defendant asserting justification must also show a good-faith belief in the legality of its actions. *See Bennett*, 932 S.W.2d at 204 (evaluating separately whether a defendant's exercise of a colorable right was in good faith). "The issue of 'good faith' is normally a question of fact." *Buck v. Century 21 Beezley Real Estate, Inc.*, 907 S.W.2d 660, 664 (Tex. App.—Eastland 1995, no writ); *see also Bennett*, 932 S.W.2d at 204; *Beard*, 1998 WL 423453, at *4; *Modular Tech. Corp. v. City of Lubbock*, 529 S.W.2d 273, 276 (Tex. App.—Amarillo 1975, writ ref'd n.r.e.)  Good faith, in this sense, means a good-faith belief in legality, not the absence of ill will toward the plaintiff. *See Tex. Beef Cattle Co.*, 921 S.W.2d at 211–212 (holding that a jury's finding that the defendant had a good-faith belief in its right to interfere established justification, even though the jury also found that the defendant acted with "actual malice") (citing W. PAGE KEETON ET AL., PROSSER & KEETON ON THE LAW OF TORTS § 129, at 984 (5th ed. 1984) ("[W]here the defendant has a proper purpose in view, the addition of ill will toward the plaintiff will not defeat his privilege."))  Good faith means "something akin to having an objectively well grounded and justifiable belief of a right." *Bennett*, 932 S.W.2d at 203 (internal quotation marks and alteration omitted).

### a.  Rapid's Claim for Tortious Interference with Contractual Relations and for Civil Conspiracy

Symetra argues that it is entitled to summary judgment on Rapid's claims for tortious interference with contractual relations.  Rapid's state-court petition claimed that Symetra tortiously interfered with its rights as an assignee of payments due to Candy Richardson, Abigail Dempsey, and Paul Patterson.  Symetra moved to dismiss those claims.  (Docket Entry No. 160).  This court granted Symetra's motion, dismissing the claims with prejudice.  (Docket Entry No. 240).  Dismissal was appropriate because Symetra, as an "interested party[, was] entitled to support, oppose or otherwise respond to the transferee's application" under TEX. CIV. PRAC. & REM. CODE § 141.006(b).  Because Symetra was statutorily entitled to oppose the transfers, its interference was

justified as a matter of law.  (Docket Entry No. 240, at 67–69).  Symetra now seeks summary judgment on Rapid's counterclaim for tortious interference with contractual relations on the same grounds it sought dismissal of the tortious interference claim that was asserted in the state court petition.  (Docket Entry No. 171, ¶¶ 13–14).

In its counterclaim, Rapid alleged that Symetra contacted Rapid's customers to tell them that Symetra would not consent to transfers under the Acts and that Symetra objected to all of Rapid's attempts to obtain approval for transactions under the Acts.  Rapid alleged that at the same time, Symetra was engaged in widespread repurchasing of its own structured-settlement payment streams. Rapid alleged that Symetra's actions in contacting customers, refusing to consent to Rapid's proposed transfers from these customers, and objecting to all Rapid's efforts to obtain court approval for these proposed transfers, are unjustified.  Symetra responded that its interference is justified based on the Acts and the antiassignment provisions in its contracts.  It also argued that the *Noerr-Pennington* doctrine barred Rapid's claim, because Symetra successfully contested Rapid's transfers in state court.  Rapid has not responded to Symetra's arguments.  Rapid has abandoned its counterclaim for tortious interference with contractual relations.  *See Black*, 461 F.3d at 588 n.1; *see also Ervin*, 364 F. App'x at 117–18.  Symetra is entitled to oppose Rapid's efforts to obtain approval of transfers under the Acts.  *See, e.g.*, TEX. CIV. PRAC. & REM. CODE § 141.006(b)(5).

Rapid's allegations of civil conspiracy depend on the viability of its tortious-interference claim.  (Docket Entry No. 171, ¶ 5 ("Symetra has engaged in an unlawful civil conspiracy to interfere with Rapid Settlements' contractual relationships . . . .")).  Civil conspiracy is a derivative tort.  *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007); *Chu v. Hong*, 249 S.W.3d 441, 444 (Tex. 2008).  Because the tortious-interference claim fails, Rapid's conspiracy

27

claim must be dismissed.  Rapid also abandoned this counterclaim by failing to pursue it.  *See Black*, 461 F.3d at 588 n.1; *see also Ervin*, 364 F. App'x at 117–18.

Symetra is entitled to summary judgment dismissing Rapid's tortious interference and civil conspiracy counterclaims.

### b.    Symetra's Claim for Tortious Interference with Contractual Relations

Symetra also moved for partial summary judgment on its claim for tortious interference with contractual relations.  Its motion addressed liability, not damages.   Symetra argued that no genuine dispute of material fact exists as to Rapid's wrongful interference with its Symetra's contracts with payees by using arbitration to attempt to circumvent judicial rulings disapproving transfers.  Symetra noted that its contracts with payees contain enforceable antiassignment provisions.  Recognizing that this court has already held that the Acts prevent it from effectuating transfers through arbitration, Rapid argued that its use of arbitration was nonetheless a good-faith pursuit of a colorable right.  Rapid argued that it was unclear that effectuating transfers through the arbitrations it arranged violated the Acts until this court so ruled.

Symetra is clearly entitled to summary judgment that Rapid interfered with its contracts without justification.   The Acts' requirement that courts approve transfers is plain.   Under the Tennessee and Texas Acts, which are typical, "[n]o direct or indirect transfer of structured settlement payment rights shall be effective and no structured settlement obligor or annuity issuer shall be required to make any payment directly or indirectly to any transferee" without court approval.  TENN. CODE § 47-18-2603; TEX. CIV. PRAC. & REM. CODE § 141.004.  Both Acts define "transfer" broadly to include "any sale, assignment, pledge, hypothecation, commutation, advance or other form of alienation or encumbrance made by a payee for consideration.  TENN. CODE § 47-18-2602(16); *see also* TEX. CIV. PRAC. & REM. CODE § 141.002(18) (similar).

In both the *Dempsey* and *Walker* cases, a court denied the proposed transfer. Instead of appealing the decisions, Rapid sought to effect the transfer by invoking and arranging for arbitration for alleged breaches of the proposed transfer contract. But the Acts forbid such an approach. Rapid sought to enforce an "assignment . . . made by a payee for consideration." Under the Acts, such transfers were ineffective absent court approval. Rapid did not contend that an arbitrator is—or even colorably could be—authorized to approve a transfer within the meaning of the states' structured settlement protection acts.

The Tennessee and Texas Acts are typical in providing that payees may not "incur any penalty, forfeit any application fee or other payment, *or otherwise incur any liability* to the proposed transferee based on any failure of the transfer to satisfy the conditions" of the structured settlement protection act. TENN. CODE § 47-18-2605 (emphasis added); *see also* TEX. CIV. PRAC. & REM. CODE § 141.007(d) (similar). Yet that is precisely what Rapid attempted to obtain by seeking contractual damages against Dempsey and Walker. Instead of complying with the state-court orders that disapproved the transfer, Rapid ignored them and attempted to effect the transfer through an arbitration it arranged. The court orders disapproving the transfers were clear and Rapid's disregard of those orders even clearer.

The Walker case is illustrative. After considering the transfer application for Walker, the state court concluded "that Rapid's application fails to comply with the Tennessee [Act], by not making full disclosure, obtaining rights without court approval, and the transfer does not appear to be in the best interests of Mr. Walker. The settlement agreement was non-assignable and is a bar to this and further applications." *In re Transfer of Structured Settlement Payment Rights of Troy L. Walker*, No. 4647, 2005 WL 3963830, at *1 (Tenn. Cir. Ct. Feb. 23, 2005). Four months later, Rapid initiated arbitration against Walker for breaching the proposed transfer agreement's

29

requirement that Walker "fully cooperate with Rapid Settlements, including . . . performing any and all acts necessary to facilitate the objectives of this Agreement." (Docket Entry No. 279, Ex. I, Agreement at 5). In an arbitration proceeding that Rapid arranged, the arbitrator found that Walker had breached his duty to cooperate and ordered the same transfer that the court had already rejected, making the findings required under the Tennessee Act that the court had refused to make. (Symetra Permanent Injunction Binder 2, Ex. 9.4, Award).

Rapid's use of arbitration against Dempsey was similar. Just over a month after the Texas court denied the application for transfer approval, Rapid initiated arbitration. (Docket Entry No. 279, Exs. P, R). Rapid accused Dempsey of failing to "complet[e] actions required by the Court considering approval." (*Id.*, Ex. R, at 1). Symetra successfully contested the transfer. In its opinion affirming the trial court's refusal to approve the arbitration, the court of appeals observed the obvious: that "the arbitrator's award effectuated the exact transfer denied by the statutorily mandated court." (Symetra Permanent Injunction Binder 2, Ex. 7.8, at 10). In both the *Walker* and *Dempsey* cases, the arbitrator used a form of judgment Rapid provided. Rapid's former attorney, Harry Fleming, admitted during the injunction hearing that Rapid's aim was to obtain approval of transfers through arbitration even if the courts had disapproved them. (Docket Entry No. 219, at 19–21).

Courts have repeatedly rejected Rapid's attempts to use arbitration to effect transfers. *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, 567 F.3d 754, 754 (5th Cir. 2009) (per curiam).[9]

---

[9]*See also, e.g., Allstate Life Ins. Co.*, 328 F. App'x at 291 (5th Cir.); *Allstate Settlement Corp.*, 559 F.3d at 169–71 (3d Cir.); *Pac. Life Ins. Co. v. Rapid Settlements, Ltd.*, 309 F. App'x 459, 460 (2d Cir. 2009); *Fidelity & Guar. Life Ins. Co. v. Harrod*, No. Civ. CCB-5-2732, 2007 WL2847966, at *3–4 (D. Md. Sep. 27, 2007); *Pac. Life Ins. Co. v. Rapid Settlements, Ltd.*, No. 06-CV-6554L, 2007 WL 2530098, at *1–3 (W.D.N.Y. Sep. 5, 2007); *R&Q Reinsurance Co. v. Rapid Settlements Ltd.*, No. 06-14329-CIV, 2007 WL 2330899, at *2–3 (S.D. Fla. Aug. 13, 2007); *Allstate Settlement Corp. v. Rapid Settlements, Ltd.*, Civ. A. No. 06-4989, 2007 WL 1377667, at *5–6 (E.D. Pa. May 8, 2007); *Prudential Ins. Co. of Am. v. RS Funding, LLC*, No. 01-09-01037-CV, 2011 WL 286130, at *1–2 (Tex. App.—Houston [1st Dist.] Jan. 27, 2011, no pet.); *Rapid Settlements, Ltd. v. Green*, 294 S.W.3d 701, 707–08 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *Symetra Nat'l Ins. Co.*, 2009 WL 1057339, at *3–4 (Tex. App.—Houston [14th Dist.]); *Transamerica Occidental*, 284 S.W.3d at 390–92 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *Rapid Settlements, Ltd.*, 234 S.W.3d at 801–02 (Tex. App.—Tyler); *In re Rapid Settlements Ltd.*, No. 14-06-00698-CV, 2007 WL 925698,

In its opinion affirming this court's entry of a permanent injunction against Rapid, the Fifth Circuit called Rapid's arbitration arrangement an "end run" around the Acts and a "a sham arbitration . . . used as a device to bring about an otherwise unlawful transfer." *Id.* Other courts have called Rapid's arbitration process "transparent attempts . . . to evade" substantive legal requirements. *Allstate Settlement Corp.*, 559 F.3d at 172; *Pac. Life Ins. Co. v. Rapid Settlements, Ltd.*, 2007 WL 2530098, at *3 ("[T]his arbitration is simply an attempt to end run the statutes . . . that provide[] very specific procedures for doing what Rapid seeks to do here."); *Rapid Settlements*, 234 S.W.3d at 800, 801 ("so transparent a stratagem" and "a violation of the substantive law"). One court determined that Rapid's arguments in support of its arbitration practices were frivolous and warranted Rule 11 sanctions. *Fid. & Guar. Life Ins. Co. v. Harrod*, Civ. No. CCB-5-2732, 2007 WL 2847966, at *6 (D. Md. Sep.27, 2007), *aff'd*, 334 F. App'x 572 (4th Cir. 2009); *see also Fid. & Guar. Life Ins. Co. v. Harrod*, Civil No. CCB-05-2732, 2008 WL 2246518, at *6 (D. Md. Apr. 15, 2008) (awarding $41,883.75 in attorney's fees), *aff'd*, 334 F. App'x 572 (4th Cir. 2009).

Courts repeatedly reached the same conclusion in rejecting Rapid's transfers based on the antiassignment clauses. *Rapid Settlements, Ltd. v. Symetra Life Ins. Co.*, No. E040289, 2007 WL 1576437, at *4–8 (Cal. Ct. App. June 1, 2007) (reversing a settlement approval because it conflicted with Symetra's antiassignment provisions and rejecting Rapid's preemption argument); *Rapid Settlements, Ltd. v. Dickerson*, 941 So. 2d 1275, 1277 (Fla. Dist. Ct. App. 2006) (reversing approval of a Rapid settlement transfer because of the structured settlement agreement's antiassignment provisions); *In re Pikula*, No. C3-05-1487, 2005 WL 3963777, at *2–3 (Minn. Dist. Ct. Nov. 3, 2007) (voiding a Rapid transfer after Symetra objected that the antiassignment provision barred the

at *2–3 (Tex. App.—Houston [14th Dist.] Mar. 29, 2007, mandamus denied) (per curiam); *Rapid Settlements*, 202 S.W.3d at 461–62; *In re Approval of Structured Settlement Payment Rights*, No. 05 010839(18), 2005 WL 3963846, at *1–2 (Fla. Cir. Ct. Nov. 7, 2005).

transfer); *Rapid Settlements, Ltd. v. Safeco Nat'l Life Ins. Co.*, No. CV044001979, 2005 WL 246458, at *2 (Conn. Super. Ct. Jan. 4, 2005) (voiding a Rapid transfer based on an antiassignment provision).  Courts enforced such antiassignment clauses even before states passed the Acts.  *See, e.g.*, *Windsor-Thomas Grp. v. Parker*, 782 So. 2d 478, 483–84 (Fla. Dist. Ct. App. 2001).

Although "doubtful" legal claims may be "colorable," *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 939 (Tex. 1991) (quoting *Sakowitz, Inc. v. Steck*, 669 S.W.2d 105, 107 (Tex. 1984), *overruled on other grounds by Sterner v. Marathon Oil Co.*, 767 S.W.2d 686 (Tex. 1989)), Rapid's legal claims were without merit, without basis, and were clearly not colorable.  There was "no possible legal justification" for Rapid to rely on its arbitration agreements to violate court orders and state statutory requirements, repeatedly.  Contract terms "offer no legal justification for violating a court order under any interpretation."  *See In re Allied Pilots Class Action Litig.*, No. 3:99-CV-0480P, 2000 WL 1405235, at *5 (N.D. Tex. Sept. 26, 2000) (finding no colorable claim when a union that disagreed with an injunction violated the injunction instead of appealing).  Rapid did not appeal court orders disapproving transfers, but instead sought to violate and circumvent them. Or Rapid ignored the statutory requirement of seeking court approval of a proposed transfer.  Rapid's use of arbitration to effect transfers was, as a matter of law, not an exercise of a colorable right.[10] Symetra is entitled to partial summary judgment that Rapid is liable for tortious interference with contractual relationships.

### 3.    Symetra's Abuse of Process Claim

Symetra alleged that "Rapid has initiated and pursued arbitration as a means to evade the requirements of the Protection Acts of various states."  (Docket Entry No. 174, ¶ 18).  Like the

---

[10]To the extent that Rapid argues that its arbitration proceedings were attempts to collect damages instead of to effect transfers, Texas and Tennessee plainly prohibit agreements that cause transferees to "incur any liability . . . based on any failure of the transfer to satisfy the conditions" of the Acts.  TENN. CODE § 47-18-2605(b); TEX. CIV. PRAC. & REM. CODE § 141.007(d).

tortious interference claim, the abuse of process claim is based on Rapid's attempt to obtain transfers by asserting a breach of the proposed transfer agreement and invoking the arbitration clause Rapid drafted in that agreement. Symetra seeks summary judgment on Rapid's liability for abuse of process. Rapid responded that Symetra has confused abuse of process with malicious prosecution, the claim for relief when a proceeding is instituted for an improper reason.

The parties have briefed the issue under Texas law. The elements of an abuse of process cause of action in Texas are:

> (1) an illegal, improper, or "perverted" use of the process, neither warranted nor authorized by the process;
>
> (2) an ulterior motive or purpose in exercising such use; and
>
> (3) damages as a result of the illegal act.

*Martinez v. English*, 267 S.W.3d 521, 528 (Tex. App.—Austin 2008, pet. denied). A Texas court recently summarized the differences between causes of action for abuse of process and malicious prosecution, as follows:

> An abuse-of-process claim involves the use of a process, such as a writ, that has been utilized to achieve an end beyond the purview of what the process was designed to accomplish or to compel a party to do a collateral thing that otherwise he could not be compelled to do. For abuse of process to be established, the process must have been used improperly after issuance. Even if the process is accompanied by an ulterior motive, if the process is used for the purpose for which it was intended, no abuse of process occurs. If the claimant alleges that wrongful intent or malice caused the process to be used initially, then the claim, instead, is a claim for malicious prosecution.

*Gerdes v. Fogler*, No., 2009 WL 3111857, at *6 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (citing *Bossin v. Tower*, 894 S.W.2d 25, 33 (Tex. App.—Houston [14th Dist.] 1994, pet. denied)). Symetra alleged and presented summary judgment evidence that Rapid "initiated and pursued arbitration" for improper purposes. The facts Symetra alleged and the evidence on which it relied present the elements of a malicious prosecution claim, but not an abuse of process claim.

*See Internet Corporativo S.A. de C.V. v. Business Software Alliance, Inc.*, Civ. A. No. H-04-2322, 2004 WL 3331843, at *8–10 (S.D. Tex. Nov. 15, 2004).

Moreover, Symetra has not identified what process Rapid abused.  The complaint referred only to the institution of the arbitration and confirmation proceedings.  It did not identify subsequent legal process issued by the court or arbitrator or abused by Rapid.  *See id.* at *9.  Summary judgment on the abuse of process claim is neither necessary for the relief Symetra seeks nor warranted.

### 4.    Rapid's Counterclaim for Unfair Competition

Rapid has counterclaimed for unfair competition based on Symetra's efforts to oppose Rapid's proposed transfer agreements.  (*See* Docket Entry No. 171, ¶ 15).  Symetra has moved for summary judgment on this counterclaim, arguing that "Rapid has not shown an illegal act by Symetra which interfered with Rapid's ability to conduct its business."  (Docket Entry No. 277, at 92).  Like its argument for summary judgment on Rapid's counterclaim for tortious interference with contractual relations, Symetra asserts that it is legally entitled to oppose Rapid's proposed transfer agreements.  Rapid has not responded to Symetra's argument.  Rapid has abandoned its counterclaim for unfair competition.  *See Black*, 461 F.3d at 588 n.1; *see also Ervin*, 364 F. App'x at 117–18.  And Symetra is entitled to oppose Rapid's efforts to obtain approval of transfers under the Acts.  *See, e.g.*, TEX. CIV. PRAC. & REM. CODE § 141.006(b)(5).  Symetra's motion for summary judgment dismissing Rapid's counterclaim for unfair competition is granted.

## IV.    NASP's Request for Attorney's Fees

NASP seeks an award of attorney's fees for the costs of pursuing this action.  (Docket Entry No. 282 at 15).  "As a general rule, litigants must pay their own attorney's fees."  *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 997 (5th Cir. 2008) (citing *Alyeska Pipeline Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)).  The Declaratory Judgment Act allows a party to obtain further necessary relief against an adverse party in a declaratory-judgment action but "does

not by itself provide statutory authority to award attorney's fees that would not otherwise be available under state law in a diversity action." *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998) (quoting *Mercantile Nat'l Bank v. Bradford Trust Co.*, 850 F.2d 215, 218 (5th Cir. 1988)).   An award of attorney's fees under the Declaratory Judgment Act "is confined to two situations: (i) where, under the restrictive American rule, attorney's fees are allowed; and (ii) where controlling substantive law permits recovery." *Id.* (quoting *Mercantile Nat'l Bank*, 850 F.2d at 218).

NASP argues that it is entitled to attorney's fees either under the Texas Act or this court's inherent authority.  The arguments are analyzed below.

### A.     Attorney's Fees Under the Texas Structured Settlement Protection Act

The Texas Act allows recovery of attorney's fees by certain parties.  *Rapid Settlements, Ltd. v. Green*, 294 S.W.3d 701, 708 (Tex. App.—Houston [1st Dist.], 2009, no pet.).  Section 141.005 of the Texas Civil Practice and Remedies Code sets out the rules for awarding attorney's fees under the Texas Act:

> Following a transfer of structured settlement payment rights under this chapter:
>
> . . .
>
> (2) the transferee shall be liable to the structured settlement obligor and the annuity issuer:
>
> . . .
>
> (B) for any other liabilities or costs, including reasonable costs and attorney's fees, . . . arising as a consequence of the transferee's failure to comply with this chapter;
>
> (3) the transferee shall be liable to the payee:
>
> . . .
>
> (B) for any other liabilities or costs, including reasonable costs and attorney's fees, arising as a consequence of the transferee's failure to comply with this chapter;

35

TEX. CIV. PRAC. & REM. CODE § 141.005.

A state law that provides for fee shifting applies in federal court only if "it embodies a substantive policy." *Camacho v. Tex. Workforce Comm'n*, 445 F.3d 407, 412 (5th Cir. 2006) (internal quotation marks and alteration omitted). NASP argues that the Texas Act, and the Acts of other states, qualify because "the Texas [Act] and similar statutory regimes enacted in 46 other states provide the substantive law underlying NASP's request for declaratory relief." (Docket Entry No. 282, at 19).

The issue in *Camacho,* and in this case, is when a state statute's provision on attorney fee awards is a "substantive" state law under *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), that allows a federal court sitting in diversity to deviate from the usual rule that parties bear their own attorney's fees. *Camacho*, 445 F.3d at 412 (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't Health & Human Res.*, 532 U.S. 598, 602 (2001)). In *Camacho*, the court identified the requirement for awarding fees to a prevailing party in a diversity case. "[O]nly fee-shifting statutes limiting fee awards to prevailing parties are substantive for *Erie* purposes." *Id.* The Fifth Circuit has held that the Texas Declaratory Judgment Act, which provides that "the court may award costs and reasonable and necessary attorney's fees as are equitable and just," TEX. CIV. PRAC. & REM. CODE § 37.009, is not a state substantive law that shifts fees in federal court, because it allows fee-shifting regardless of outcome. *Camacho*, 445 F.3d at 412–13. By contrast, the Texas Act provisions are substantive under *Camacho*. Unlike the Texas Declaratory Judgment Act, the Act allows a party to recover fees against a "transferee" if the party prevails in proving "the transferee's failure to comply with [the Act]." TEX. CIV. PRAC. & REM. CODE §§ 141.005(2)(B), (3)(B). The fee-shifting provisions of the Texas Act are substantive under *Camacho* and must be applied in federal court.

Rapid argues that the language "following a transfer of structured settlement rights under this chapter" means that attorney's fees can be awarded only if the court has approved a transfer.

36

Alternatively, Rapid contends that NASP is not entitled to its attorney's fees, because NASP is not a "structured settlement obligor," "annuity issuer," or "payee" under the Acts.  *See, e.g.*, TEX. CIV. PRAC. & REM. CODE § 141.005(2)–(3).  At least one court has rejected Rapid's first argument. *Rapid Settlements*, 139 P.3d at 413–14.  It is unnecessary for this court to address this issue, however, because this court agrees with Rapid that NASP is not a party eligible to receive attorney's fees under the Texas Act.

The Texas Act lists only three classes of parties eligible to recover its attorney's fees against a losing proposed or actual transferee: structured-settlement obligors, annuity issuers, and payees. TEX. CIV. PRAC. & REM. CODE § 141.005.  A structured-settlement obligor is "the party that has the continuing obligation to make periodic payments to the payee under a structured settlement agreement or a qualified assignment agreement." *Id.*  An annuity issuer is "an insurer that has issued a contract to fund periodic payments under a structured settlement." *Id.* § 141.002(1).  A payee is "an individual who is receiving tax-free payments under a structured settlement and proposes to transfer payment rights under the structured settlement." *Id.* § 141.002(9).

Under Texas law, "[s]tatutory provisions for the recovery of attorney's fees are in derogation of the common law, are penal in nature and must be strictly construed." *Knebel v. Capital Nat'l Bank in Austin*, 518 S.W.2d 795, 804 (Tex. 1975); *accord Shook v. Walden*, 304 S.W.3d 910, 921–23 (Tex. App.—Austin 2010, no pet.) (holding that attorney's fees are not "compensatory damages" payable under Chapter 41 of the Texas Civil Practices and Remedies Code); *PopCap Games, Inc. v. MumboJumbo, LLC*, 317 S.W.3d 913, 914 (Tex. App.—Dallas 2010, no pet.) (same) (citing *Shook*).[11]  Courts in many of the states that have enacted Acts apply the same rule.  Many of

---

[11]Under TEX. GOV. CODE § 312.006(b), "[t]he common law rule requiring strict construction of statutes in derogation of the common law does not apply to the Revised Statutes."  This has been the law since 1895.  *Haden v. David J. Sacks, P.C.*, 332 S.W.3d 523, 530 n.6 (Tex. App.—Houston [1 Dist] 2009, pet. denied).  As the Texas Supreme Court has explained, "Texas follows the rule that statutes in derogation of the common law are not to be strictly construed.  Nevertheless, it is recognized that if a statute creates a liability unknown to the common law . . . the statute

these states require "express" authorization to shift fees.  *See, e.g.*, *Eagle Bluff, L.L.C. v. Taylor*, 237

P.3d 173, 179 (Okla. 2010); *Pepper's Steel & Alloys, Inc. v. United States*, 850 So. 2d 462, 465 (Fla.

2003); *Gottlieb v. Kenneth D. Laub & Co.*, 626 N.E.2d 29, 33–34 (N.Y. 1993).   This narrow

approach, requiring strict construction of statutory language when it is present and refusing to rely

on implicit authority when it is not, extends to determining which parties may claim attorney's fees.

*See, e.g.*, *Comm'r of Envtl. Prot. v. Mellon*, 945 A.2d 464, 470 (Conn. 2008).   For example, in

*Mellon,* the Connecticut Supreme Court held that the state's Commissioner of Environmental

Protection could not recover attorney's fees under a statute authorizing courts to "award any person,

partnership, corporation, association, organization, or other legal entity . . . obtain[ing] declaratory

or equitable relief against the defendant . . . a reasonable attorney's fee."  CONN. GEN. STAT. § 22a-

18(e).  The commissioner argued that it was a "person" under a statutory definition of person that

included "any . . . municipality, agency or political or administrative subdivision of the state, or

other legal entity of any kind."  *Mellon*, 945 A.2d at 468 (quoting CONN. GEN. STAT. § 22a-2(c)).

The court rejected this argument, finding that the statutory provision, considered in context, made

the term ambiguous.  *Id.* at 468–69.  The commissioner could not recover because, among other

reasons, the court would not "presume that the legislature intended for a statute to operate in

derogation of our long-standing common-law rule disfavoring the award of attorney's fees to the

prevailing party" absent a "clear expression of the legislature's intent to create a statutory exception

to the rule."  *Id.* at 470 (internal quotation marks and alterations omitted).  The court conceded that

"[a]lthough this rule typically is invoked when the statutory language is unclear as to whether it

authorizes an award of attorney's fees to any person, . . . it also applies when the legislature clearly

---

will be strictly construed in the sense that it will not be extended beyond its plain meaning or applied to cases not clearly
within its purview."  *Smith v. Sewell*, 858 S.W.2d 350, 354 (Tex. 1993) (internal citation omitted).

has authorized the court to award attorney's fees but . . . the statute is ambiguous as to whether a particular entity is entitled to such an award." *Id.*

NASP acknowledged that it does not fall within the statutory definitions. (*See* Docket Entry No. 282, at 18–19 (acknowledging that "the Texas [Act] does not explicitly provide for an award to a trade association such as NASP")). NASP argued that "the Texas Legislature could not have foreseen the substantial and widespread injury that Rapid's corrupt tactics would inflict far beyond the entities identified in the Texas [Act]." (*Id.* at 20). NASP argues that this litigation has benefitted its members, who are structured-settlement obligors and annuity issuers under TEX. CIV. PRAC. & REM. CODE § 141.002, by forcing Rapid to comply with the Acts. NASP noted that it had standing to intervene because its members' interests were implicated.

It is not clear why, as a trade association for companies the Act sought to protect, NASP is among the entities the Texas Legislature could not have foreseen when it drafted the Act. Setting that aside, NASP cannot recover attorney's fees under the statute, because, as it concedes, it does not fit any of the statutory definitions. "[A] statute creat[ing] a liability unknown to the common law . . . will not be extended beyond its plain meaning or applied to cases not clearly within its purview." *Sw. Bell Tel., L.P. v. Harris Cnty Toll Road Auth.*, 282 S.W.3d 59, 64 (Tex. 2009) (internal quotation marks omitted); *see also Smith*, 858 S.W.2d at 354. NASP cannot recover attorney's fees under the Texas Act.

### B.    NASP Is Not Entitled to Attorney's Fees Under This Court's Inherent Powers

NASP asked this court to award reasonable attorney's fees for prosecuting this suit under this court's inherent power. NASP argued that "Rapid's repeated attempts to manipulate the judicial system for its own competitive gain is the very definition of abuse of the judicial process for which sanctions are appropriate." (Docket Entry No. 282, at 14). NASP asked this court to punish Rapid for its "multiple, intentional misrepresentations to various courts" and "illegal scheme" of using

arbitration to effect transfers by requiring Rapid to pay all of the attorney's fees it incurred in this case. (*Id.* at 15). Alternatively, NASP contended that it is entitled to a fee award as punishment for Rapid's violation of this court's preliminary injunction, granted on Symetra's application, that resulted in a contempt finding.

"When a party's deplorable conduct is not effectively sanctionable pursuant to an existing rule or statute, it is appropriate for a district court to rely on its inherent power to impose sanctions." *Carroll v. The Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290, 292 (5th Cir. 1997) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991)); *Klein v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d 98, 108 (3d Cir. 1999) ("[A] trial court should consider invoking its inherent sanctioning powers only where no sanction established by the Federal Rules or a pertinent statute is 'up to the task' of remedying the damage done by a litigant's malfeasance . . . ."). This inherent power includes the power to award attorney's fees "in narrowly defined circumstances." *Chambers*, 501 U.S. at 45 (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980)). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* at 44 (citing *Roadway Express*, 447 U.S. at 764); *cf.* 5A Federal Practice & Procedure § 1336.3 ("A significant number of courts held that the sanctions imposed by the district judge should be the least severe necessary to serve the purposes of Rule 11.").

A court's inherent power "is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function." *FDIC v. Maxxam, Inc.*, 523 F.3d 566, 591 (5th Cir. 2008) (quoting *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d F.2d 696, 702 (5th Cir. 1990)). "A court should invoke its inherent power to award attorney's fees only when it finds that 'fraud has been practiced upon it, or that the very temple of justice has been defiled.'" *Boland Marine & Mfg. Co. v. Rihner*, 41 F.3d 997, 1005 (5th Cir. 1995) (quoting *Chambers*, 501 U.S. at 46). In all cases, courts must be mindful that the inherent

40

power is available "only if essential to preserve the authority of the court." *In re FEMA Trailer Formaldehyde Prods. Liability*, 401 F. App'x 877, 883 (5th Cir. 2010) (quoting *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996)).

This court cannot invoke its inherent power to punish Rapid for repeated violations of the Acts. The "bad-faith exception to the American rule . . . is not a punitive award in the 'tort' sense of punishing the underlying conduct that gives rise to a plaintiff's claim." *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1503 (5th Cir. 1995), *abrogated on other grounds by Atl. Sounding Co. v. Townsend*, 129 S. Ct. 2561 (2009); *see also Maxxam*, 523 F.3d at 593 ("To the extent that the FDIC engaged in underlying conduct that the district court found distasteful, such as paying the OTS to bring a case in administrative court, it is not within the court's power to sanction such conduct." (footnote omitted)); *Galveston Cnty. Navigation Dist. No. 1 v. Hopson Towing Co.*, 92 F.3d 353, 359 n.13 (5th Cir. 1996) (explaining that "it is clear that we are concerned only with the present defendants' alleged abuse of the litigation process, and not with the nature of the tort underlying this law suit," when considering an award of sanctions).[12]

NASP argues that inherent power allows this court to punish Rapid for misrepresentations to other courts. That conduct is also beyond the reach of this court's inherent authority. Because the "purpose of a court's sanctioning power is to enable it to ensure its own proper functioning," *Conner v. Travis Cnty.*, 209 F.3d 794, 800 (5th Cir. 2000), "[i]nherent power must arise from the litigation before that court," *id.* (quoting *In re Case*, 937 F.2d 1014, 1024 (5th Cir. 1991)). A court's power to sanction behavior before other courts is strictly limited. A court's inherent power allows sanctions for "actions taken in another forum" only if they are "'in direct contravention of the [court's] orders.'" *Id.* (quoting *Chambers*, 501 U.S. at 57). This is true even when "the substantive

---

[12] Other circuits follow the same approach. *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 766–67 (10th Cir. 1997) (citing cases).

issues in [other] proceeding[s are] the same." *Id.* (quoting *In re Case*, 937 F.2d at 1024). The Fifth Circuit has repeatedly enforced this rule. For example, the Circuit has invalidated sanctions imposed by a bankruptcy court for actions taken in state-court proceedings that were "completely collateral to the proceedings in the bankruptcy court," even though the state-court action involved the same parties as the proceedings in bankruptcy court. *Case*, 937 F.2d at 1023. It has rejected a district court's imposition of sanctions for a frivolous appeal, holding that the power to do so rests with the court of appeals. *Conner*, 209 F.3d at 799–802. It has overturned a court's sanctions of an expert witness for exaggerating her role in the litigation to another court. *FEMA Trailer*, 401 F. App'x at 883–84. It has vacated sanctions against a participant in an underlying arbitration involving the same dispute as the district court litigation. *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 461 (5th Cir. 2010) (reasoning that arbitration is a separate proceeding, not "annex" to litigation). Consistent with these cases, this court cannot invoke its inherent authority to punish Rapid's actions before other courts because those actions did not violate this court's order or otherwise impair proceedings before this court.

NASP finally cited this court's finding of contempt for Rapid's violation of the preliminary injunction as a basis for imposing fees. (Docket Entry No. 148). A violation of a court's order can support an award of attorney's fees under the court's inherent power. *Chambers*, 501 U.S. at 45 (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258 (1991)); *see also In re Bradley*, 588 F.3d 254, 265 (5th Cir. 2009) ("[C]ivil contempt remains a creature of inherent power."). NASP appears to acknowledge that it cannot recover all of its fees if this court is limited to awarding fees actually spent as a result of Rapid's contempt. Citing *Chambers*, NASP argued that "the Supreme Court has expressly held that such an award is not limited to the amount of fees incurred as a direct result of the contemptuous conduct." (Docket Entry No. 282, at 17).

In some cases, an award of attorney's fees for the entire cost of litigation is appropriate. But that is only the case when the entire litigation is vexatious. A primary purpose of awarding attorney's fees under a court's inherent powers is to "mak[e] the prevailing party whole for expenses caused by his opponent's obstinacy." *Chambers*, 501 U.S. at 46 (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978)). Courts awarding fees either for a violation of an order or vexatious litigation appear to limit the award to the fees incurred as a result of the misconduct. *Halderman ex rel. Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 941 (3d Cir. 1995) ("An award of fees and expenses in this case is permissible . . . under the court's inherent power to reimburse a party for outlays incurred in securing an adjudication of contempt. . . . [T]he innocent party is entitled to be made whole for the losses it incurs as the result of the contemnors' violations, including reasonable attorneys' fees and expenses."); *Lance v. Plummer*, 353 F.2d 585, 592 (5th Cir. 1965) ("As to appellant's contention that the part of the order requiring the payment of the attorney's fee and the costs of bringing the proceedings were punitive, we think it plain that these requirements were permissible in a civil contempt proceeding. They are clearly compensatory to the injured party."); GREGORY P. JOSEPH, SANCTIONS: THE FEDERAL LAW OF LITIGATION ABUSE § 28(B)(2), at 4-40 (4th ed. 2008) (noting that the amount of fees "may be less—but should never be more—than the amounts expended as a result of the misconduct" when awarding fees under the court's inherent power).

In *Chambers*, a business agreed to purchase a Louisiana television station's FCC license and facilities. 501 U.S. at 35–36. The seller breached the agreement, and the purchaser sued. *Id.* at 36. The seller sought a temporary restraining order. *Id.* When the court asked the seller whether it had plans to sell the properties, the seller failed to disclose that it had placed the properties in a trust, believing that doing so would insulate the property from a court's reach. *Id.* at 36–37. The court

enjoined the seller from selling or otherwise encumbering the property. *Id.* at 37.  But the seller continued to operate the station under a leaseback agreement executed with the trust. *Id.*  When the court learned of the seller's actions, the court instituted a second injunction requiring the trust not to sell or encumber the property and told the seller that its conduct had been unethical. *Id.*  The seller was uncooperative during discovery, refusing to allow inspection of corporate records. *Id.* at 38.  The district court found him in contempt and fined him $25,000. *Id.*  After filing two meritless appeals of the contempt order, the seller continued to file meritless motions, triggering further warnings. *Id.*  The district court warned the parties that further misconduct would not be tolerated and gave the parties a copy of a recent article on sanctions under Rule 11. *Id.* at 38 & n.3.  The abuse persisted.  After verdict, but before judgment, the seller sought a new license from the FCC and permission to move the transmission equipment to a new site, which would have eviscerated the value of the contract. *Id.* at 39.  The buyer had to seek contempt sanctions before the seller abandoned the effort. *Id.*  After the court entered judgment and refused to stay the injunction it entered, the seller lobbied the FCC to reject the buyer's application for transfer of the license, violating the judgment and injunction. *Id.*  Finally, after the court ordered the seller to conclude the sale, the seller removed the transmission equipment from the property, returning it only after the court ordered him to do so. *Id.*  The buyer moved for sanctions. *Id.* at 40.  The parties briefed the court and the court held a hearing. *Id.*  The court imposed sanctions in the form of attorney's fees and expenses "for the manner in which this proceeding was conducted in the district court from October 14, 1983, the time that plaintiff gave notice of its intention to file suit to this date." *Id.* at 40–41 (quoting *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 124 F.R.D. 120, 123 (W.D. La. 1989)).  The decision to award the entire amount of costs and attorney's fees was based on clear misconduct throughout the case.

44

NASP relies on the court's statement that "a court's discretion to determine '[t]he degree of punishment for contempt' permits the court to impose as part of the fine attorney's fees representing the entire cost of the litigation." *Id.* at 45. That statement quotes *Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399 (1923). In *Toledo Scale,* the "the entire cost of the litigation" did directly result from the contemptuous conduct. In that case, the Seventh Circuit enjoined proceedings initiated in a federal district court in Ohio that were "instituted to halt and defeat the decree of the Circuit Court of Appeals, while that decree was still in that court to be enforced by mandate to the lower court." *Id.* at 426. The Supreme Court held that the Seventh Circuit was within its discretion both to enjoin the Ohio proceedings under a predecessor to the All Writs Act and to tax a reasonable attorney's fee. *Id.*

In contrast to *Chambers* and *Toledo Scale*, the sanctionable conduct NASP invoked for this argument is Rapid's violation of the preliminary injunction, for which this court held Rapid in contempt. There is, however, no evidence suggesting that NASP incurred any significant amount of attorney's fees as a result of the violation. It was Symetra, not NASP, that filed the motion for contempt and supplied an affidavit concerning attorney's fees. (Docket Entry Nos. 131, 133, 145). *Chambers* does not support NASP's position.[13] The record presents an insufficient basis to tax all or part of NASP's fees to Rapid under this court's inherent power.[14]

NASP's motion for an award of attorney's fees is denied.

## V.    Conclusion

---

[13] In the conclusion to its reply to Rapid's response to NASP's motion for summary judgment, Symetra briefly suggests that it might be entitled to attorney's fees arising out of Rapid's contempt in this litigation. (Docket Entry No. 296, at 8). It provides no argument on that point or evidence of any fees it incurred.

[14] Even if this court had inherent authority to award attorney's fees, it does not find such an award appropriate at this time.

Rapid's motion for clarification is granted.  NASP's and Symetra's motions for summary judgment are granted in part and denied in part.  A declaratory judgment, consistent with this Amended Memorandum and Opinion, is entered by separate order.

SIGNED on May 1, 2012, at Houston, Texas.

Lee H. Rosenthal
United States District Judge