# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| SYMETRA LIFE INSURANCE CO., *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| NATIONAL ASSOCIATION OF | § | |
| SETTLEMENT PURCHASERS, | § | |
| Intervenor, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-05-3167 |
| | § | |
| RAPID SETTLEMENTS, LTD., | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

This Memorandum and Order addresses the final issue in this prolonged litigation — attorneys' fees. Based on the record, the applicable law, and the arguments of counsel, Symetra Life Insurance Co.'s motion for summary judgment on attorneys' fees, (Docket Entry No. 329), is granted in part and denied in part.[1]  Symetra is not entitled under the Washington and Texas Structured Settlement Protection Acts to recover the fees and costs it incurred in this federal court suit.  Symetra is entitled to its fees and costs incurred in the *Gross* litigation ($87,859) and by Rapid's June 2007 contempt of court ($11,095).  Rapid must pay Symetra the amount of $98,954 no later than **December 22, 2012**.  No later than **November 30, 2012**, Symetra and NASP must submit a proposed form of final judgment.

The reasons for these rulings are explained below.

---

[1] The court also denies as moot Symetra's motion for summary judgment, (Docket Entry No. 316); grants Symetra's motion for leave to file a supplemental affidavit, (Docket Entry No. 347); and denies as moot Rapid's motion to strike Symetra's motion for leave to file a supplemental affidavit, (Docket Entry No. 350).

I.      **Background**

A.      **Procedural History**

This dispute, which began in this court seven years ago, involves two participants in the structured-settlement payment industry and a trade association representing companies that purchase structured settlements. The factual background of the litigation is spelled out in detail in this court's previous opinions. *See generally, e.g.*, *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, 599 F. Supp. 2d 809, 813–26 (S.D. Tex. 2008). Only a brief recap is needed here.

On September 9, 2005, Symetra Life Insurance Company and Symetra Assigned Benefits Company (together, "Symetra"), sued Rapid Settlements, Ltd. Symetra sought, among other relief, an injunction barring Rapid from using arbitration to obtain rights to payments from structured-settlement funds administered by Symetra. The National Association of Settlement Purchasers ("NASP") intervened and sought a similar injunction.

In January 2007, this court preliminarily enjoined Rapid from using arbitration to effect a "transfer," as defined by Structured-Settlement Protection Acts in place in 47 states, without obtaining the approval required by those Acts.[2] (Docket Entry No. 84). In June 2007, this court found Rapid in contempt for garnishing a Symetra payee's payments in violation of that injunction. (Docket Entry No. 148). The court reserved ruling on the appropriate sanction. (*Id.*, at 16). In March 2008, this court entered a permanent injunction. (Docket Entries No. 240, 253). In June 2009, the Fifth Circuit affirmed that injunction. (Docket Entry No. 250, *also located at* 567 F.3d 754).

---

[2] Throughout the opinion, "Act" or "Acts" refers to a state structured-settlement protection act or acts.

In October 2011, this court granted in part and denied in part Symetra's and NASP's motions for summary judgment as to Rapid's liability.  (Docket Entry No. 299).  The court issued an amended summary-judgment opinion on May 1, 2012.  (Docket Entry No. 321).  On the same day, the court entered declaratory judgment in favor of Symetra and NASP.  (Docket Entry No. 323). On May 15, the parties confirmed that the only remaining issue was Symetra's motion for summary judgment on damages.  The damages Symetra seeks are its attorneys' fees and costs resulting from Rapid's litigation activities and the fees and costs associated with Rapid's June 2007 contempt of court.  (Docket Entry No. 324).

### B.    Symetra's Motions for Summary Judgment

On February 28, 2012, Symetra filed its motion for summary judgment and supporting memorandum of law.  (Docket Entries No. 316, 317).  Symetra sought the attorneys' fees and costs it had incurred defending its contractual rights against Rapid's actions involving five Symetra annuitants.  Rapid used arbitration to try to transfer the right to the future income stream under these Symetra annuities from the five individuals to Rapid.  The five annuitants are Robert Ayars, Abigail Dempsey, Kenneth Gross, Paul Patterson, and Candy Richardson (collectively, the "Annuitants"). The attorneys' fees and costs Symetra incurred in resisting Rapid's efforts to transfer these annuity rights totaled over $898,000.  (Docket Entry No. 317, Scanlon Aff., ¶ 12).  As its basis for recovering these fees and costs, Symetra relied on attorney-fee provisions in the Texas and Washington Acts, TEX. CIV. PRAC. & REM. CODE § 141.005(2)(B); WASH. REV. CODE § 19.205.040(2)(b).  (*See* Docket Entry No. 317, at 10–13).  Alternatively, Symetra argued that it was entitled to attorneys' fees and costs incurred in defending its contractual rights with regard to Gross alone.  The amount of fees and costs related to Gross totaled nearly $374,000.  (Docket Entry

3

No. 317, Scanlon Aff., ¶ 8).   Here, Symetra relied on the Texas rule permitting a "litigation exception" to the usual "American rule."   This litigation exception allows recovery of fees and costs on a successful tortious-interference claim, *see DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 431 (5th Cir. 2003) (citing *Tex. Beef Cattle Co. v. Green*, 883 S.W.2d 415, 430 (Tex. App.—Beaumont 1994), *rev'd on other grounds*, 921 S.W.2d 203 (Tex. 1996)).   (Docket Entry No. 317, at 14–15).   Finally, as a sanction for Rapid's June 2007 contempt of court, Symetra sought recovery of $11,095, the fees it incurred in bringing the contempt motion.   (*Id.*, at 15–17).   As support for these proposed awards, Symetra submitted the affidavit of one of its attorneys and hundreds of pages of heavily redacted invoices for its fees.   Symetra did not seek any fees relating to its work in this federal action.

On May 31, Rapid filed a nearly 60-page response.[3]   Rapid opposed any award of fees and costs—whether for the Annuitants under the Texas and Washington Acts, for Gross under the Texas litigation exception, or for contempt.   (*See generally* Docket Entry No. 327).   Generally, Rapid argued that Symetra was precluded from seeking fees in this court for defending its contractual rights with respect to the Annuitants because Symetra had not moved for those fees in the state-court actions where the fees had been incurred.   (*See id.*, at 8–11).   As to Gross, Rapid argued that the Texas litigation exception did not apply because "Symetra's litigation with Kent Neimeier was not the natural and proximate result and consequence of Rapid's actions.   Instead, Symetra voluntarily injected itself into the case." (*Id.*, at 7 (internal citation omitted)).   Assuming, however, that Symetra could validly claim fees under the Texas or Washington Acts or under the equitable litigation exception, Rapid argued that Symetra had not presented sufficient summary-judgment evidence

---

[3]   Rapid did not seek leave to file a brief exceeding this court's 25-page limit.   *See* Court Procedures 6.A.
Symetra, however, did not object.

4

establishing the reasonableness of the fees sought.  (*See generally id.*, at 21–50).  Among other

arguments, Rapid contended that: (1) the legal invoices were so heavily redacted that it was

"impossible to reasonably understand the substance or necessity of the costs and fees attested to by

[Symetra's counsel,]" (*id.*, at 27); (2) Symetra had already recovered fees in the underlying state-

court litigation involving one of the five Annuitants, Abigail Dempsey, (*id.*, at 44–45); and (3)

"Symetra ha[d] failed to segregate its fees related to its failed claims, including its abuse of process

cause of action, and the time spent in the trial courts to defeat the transfer proceedings for which fees

are not recoverable[,]" (*id.*, at 46).  Finally, Rapid sought relief from the court's contempt order

because, although it was found to have violated the court's preliminary injunction, "Rapid had a

good faith belief that it was acting in accordance with the Court's rulings and in no way intended

to violate the Court's order."  (*Id.*, at 57).

This court held a hearing.  (Docket Entry No. 328).  Symetra conceded that it "need[ed] to

furnish the Court with more evidence" in support of its proposed fee awards.  (Docket Entry No.

340, at 3–4).  Symetra also agreed to file less heavily redacted invoices.  (*Id.*, at 4–6).  After more

argument, Symetra conceded that it could not seek fees for litigation related to Dempsey, one of the

Annuitants, because it had already recovered those fees in the underlying state-court action.  (*Id.*,

at 15).

After further argument, the court and counsel for Symetra engaged in the following dialogue:

Mr. Lefkowitz:     Your honor, what might be helpful, I'm just throwing this out,
                   is if when we submit follow-up information, any case or any
                   abandoned fees that would fall into that category, we would
                   segregate that from the other fees that we're seeking.  And as
                   to the other fees we're seeking, frankly, I think, *we would
                   seek fees in addition to what we've already given the Court
                   some evidence on, because we did not ask thus far for fees*

<table>
<tr><td></td><td><em>incurred in this case, which I think we can—we're entitled to get under the statute. . . .</em></td></tr>
</table>

| The Court: | Well, I think there is going to be a need for a response or a reply to their response, in which you respond specifically to the argument that by not seeking the fees that predate the entry of—or the end of litigation in the state court . . . during the pendency of the state court litigation, that you are now precluded in the technical sense, that principles of preclusion prevent[] you from seeking them here. |
|---|---|
| Mr. Lefkowitz: | As to those fees that had been incurred up through the date of the conclusion of the state court litigation? |
| The Court: | Yes, sir. |

(*Id.*, at 19–20 (emphasis added)). After further argument still, the following exchange occurred:

| The Court: | Did you [Symetra] want to file a reply in which you address their arguments and either clarify that the *Gross* case is the only one in which you seek to apply the equitable exception and here's how it plays out, *or take a broader view and explain the statutory or case law basis for doing so?* |
|---|---|
| Mr. Lefkowitz: | Yes. |
| The Court: | Okay. I think that's appropriate. And obviously Rapid will get a chance to respond with a brief surreply.<br><br>Is there anything that Rapid wanted to say at this juncture about these arguments? |
| Mr. Craddock: | Yes, Your Honor. The only basis that Symetra moved for fees in this motion for summary judgment filed with the Court is under—is a statutory basis, except for the limited exception of *Gross* and as Mr. Lefkowitz pointed out, only as to the Niemeier situation. So, for them to be able to come back in wouldn't be a supplemental motion, Judge, with all due respect. That's a new motion for summary judgment in which they're basing new claims on new law and we would just for the record just object to that. |

(*Id.*, at 30–31 (emphasis added)).

6

The discussion turned to whether Symetra would be filing an entirely new motion for summary judgment:

| | |
|---|---|
| Mr. Lefkowitz: | Correct.  The fees in this case, I think we are entitled to those under the statute and— |
| The Court: | And you think they were subsumed in the case—in the request you already made, or is that a new request? |
| Mr. Lefkowitz: | I think—I'm not sure, but I think that may be a new request. |
| The Court: | Then my same question, why didn't you raise that earlier? |
| Mr. Lefkowitz: | I didn't write the motion and neither did Ms. Scanlon, Your Honor.  And, so, I don't have a better answer than that.  I guess the question is— |
| The Court: | That's not generally an answer that— |
| Mr. Lefkowitz: | Yeah, I know, but— |
| The Court: | —courts smile benignly and say, "Great." |
| Mr. Lefkowitz: | I understand that, but I wanted to be up-front, Your Honor. |
| The Court: | And I appreciate that. |
| Mr. Lefkowitz: | I think this is an effort to put all of this to bed, and I don't see how Rapid would be harmed. |
| The Court: | Except for having to do the additional work.  On the other hand, we extended the time for Rapid's response considerably, and Rapid used the time to good effect. [Rapid] raised a lot of issues.  *So, I'm inclined to allow you [Symetra] to address the question of the fees in this case.*  I am not inclined to allow you to address an additional basis for the equitable exception. |

(*Id.*, at 32–33 (emphasis added)).

Rapid objected, arguing that allowing Symetra to argue for fees incurred in this federal litigation would send Rapid "back to phase one in some ways."  (*Id.*, at 34).  The court disagreed:

7

"I don't think so.  You'd have a discrete set of fees to address and it's a base, but it's not rebuilding the entire structure." (*Id.*).  After further argument, including on the propriety of Symetra's motion to recover the fees it incurred in moving to have Rapid held in contempt, the court and parties set a schedule for additional briefing.  The court proposed that Symetra file its supplemental brief and exhibits by July 27, and that Rapid respond with its supplemental brief and exhibits by August 17. The parties agreed to this schedule. (*Id.*, at 43–45).  Rapid did raise concerns over the 15-page limit set by the court, arguing that "[Symetra is] going to raise a lot of new issues." (*Id.*, at 45).  The court disagreed: "You know, a lot of it actually I don't think is new.  There's that one category that I don't think is—I think it is—it's still within the rubric of damages—attorney's fees for tortious interference is a category of damages. . . . So, it's—the legal basis for it, I don't think is new." (*Id.*). With the schedule set, the hearing ended.

On July 27, Symetra filed an "Amended Motion for Summary Judgment as to Attorneys' Fees." (Docket Entry No. 329).  At the outset, Symetra stated that it was submitting the amended motion "in lieu" of the original summary-judgment motion. (*Id.*, at 1).  For damages, Symetra no longer sought to recover the attorneys' fees and costs related to the state-court cases involving the Annuitants. (*Id.*, at 2).  Instead, Symetra sought to recover fees and costs incurred in *this* litigation. Symetra sought fees ranging from $850,000 to $1.06 million and costs of $43,457.  By contrast, Symetra had sought approximately $898,000 in state-court fees related to the Annuitants.  The new figures, according to Symetra, excluded certain claims in this federal action, primarily those on which Symetra had not prevailed.  These figures included Symetra's fees and costs defending the permanent injunction against Rapid's appeal to the Fifth Circuit.  As in its original summary-judgment motion, Symetra relied on the Texas and Washington Act attorney-fee provisions as the

legal basis for recovering the fees and costs it had incurred in obtaining rulings that Rapid was violating state structured settlement protection acts. (*See id.*, at 7–12).

Alternatively, and as it had in the original summary-judgment motion, Symetra argued that it was entitled to the attorneys' fees and costs it incurred in defending its contractual rights with regard to Gross. Originally, Symetra had sought nearly $374,000 for fees in the *Gross* litigation. In its amended motion, however, Symetra sought only $87,859 for fees. Once again, Symetra relied on the Texas "litigation exception" allowing recovery of fees and costs on a tortious-interference claim. (*See id.*, at 12–14).

Finally, and as in its original motion, Symetra sought recovery of $11,095 as a sanction for Rapid's June 2007 contempt of court. (*See id.*, at 14–15). In support of these awards, Symetra attached the affidavits of its two lead counsel and (mostly) unredacted invoices.

Rapid's 15-page surreply was due by August 17, the date set by the court and the parties during the June 6 motion hearing. At 4:14 p.m. on August 17, Rapid filed a motion to extend the surreply deadline to August 27 and to extend the 15-page limit to 25 pages. (Docket Entry No. 342). Rapid's motion was largely based on its argument that Symetra had filed an "entirely new" motion for summary judgment, requiring additional time and pages for Rapid to respond properly. The court granted the motion in part and denied the motion in part. (Docket Entry No. 343). The court recounted the schedule set by the court and the parties at the June 6 hearing. The court then stated:

> Moreover, what the plaintiff has titled its "amended motion for summary judgment" is not a brand-new motion for summary judgment but rather a motion that addresses the defects identified by the court at the hearing. There is nothing improper about the filing. And the defendant was given, and still has, the opportunity to respond accordingly and submit any supplemental exhibits.

9

(*Id.*, at 1–2).  The court gave Rapid about two additional days to file its surreply but denied Rapid's request for an extension of the page limit.

Rapid filed its surreply on August 19.  (Docket Entry No. 344).  Rapid vigorously objected to Symetra's amended motion and supplemental evidence, generally arguing that "Symetra must be held to the theories for recovery of fees set forth in the [original summary-judgment motion] and the evidence attached thereto," which Symetra had abandoned in the amended motion.  (*Id.*, at 3).  More fully, Rapid argued:

> Symetra failed to provide proof of fees in this case by its February 28, 2012 briefing deadline for its summary judgment.  Symetra failed to disclose the fees it now seeks in this case in Rule 26 disclosures. And Symetra represented to this Court and Rapid in the May 15, 2012 Joint Status Report that no other claims were being made other than as reflected in the MSJ—which in itself should be viewed as a disclosure equivalent to that required by Rule 26.  Rapid relied on such in its presentations to this Court and otherwise and now finds itself being dealt an unfair hand, having been harmed in the process. To be clear, Rapid doesn't believe the June 6, 2012 hearing contemplated this Court's granting leave to Symetra to file a New MSJ with $1 million in distinct, new attorneys' fees as evidence.  As set out in the June 6th transcript, what was contemplated was new affidavits and less redacted bills supporting the existing motion. What was received was an entirely new motion for summary judgment with $1 million of newly submitted attorneys' fees statements.  Symetra's attempting to slide this into the proceeding is wholly improper.  Given that Symetra has abandoned those claims and theories in the MSJ as set out in the New MSJ, Symetra has no admissible evidence and should not recover any fees.  Symetra certainly should not recover fees for time incurred in preparing the MSJ which Symetra has withdrawn.  Symetra's New MSJ should be denied and final judgment entered in this case.

(*Id.*, at 3–4 (internal citations omitted)).

Rapid also argued that all of Symetra's supplemental evidence on attorneys' fees should be excluded under Rule 37 of the Federal Rules of Civil Procedure.  According to Rapid, Symetra

failed to meet its Rule 26 disclosure obligations with respect to this evidence by failing to disclose the witnesses and the documents Symetra relied on to seek fees.  (*Id.*, at 5–7).  Rapid also argued against any fee award on the merits.  (*See generally id.*, at 7–15).  In support of its arguments, Rapid submitted supplemental exhibits, including the affidavit of one of its lead counsel.

This court held a second motion hearing on August 20.  (Docket Entry No. 345).  For the first half of the hearing, the court and the parties discussed Rapid's procedural arguments opposing Symetra's amended summary-judgment motion and its attached evidence.  According to Symetra, its amended motion raised no new legal theories.  Rather, it sought to recover fees incurred in this litigation under the Washington and Texas Acts, under "arguments . . . in our amended motion [that] are basically the same as in the prior motion."  [Draft Tr. at 3.]  Symetra conceded that it had not disclosed that its two lead lawyers would submit affidavits in support of the attorney-fees motion. Symetra argued that exclusion of the affidavits was unwarranted: "[T]he purpose of Rule 26 is to prevent surprise and prejudice, and they can't be prejudiced that Miss Scanl[o]n and I would be the people to testify about these [issues] and can't be prejudiced by any surprise by learning that we have incurred fees in this case." (*Id*. at 4–5).  The court largely agreed, telling counsel for Rapid that it was "at a little bit of a loss to understand why you are either surprised or prejudiced" by Symetra's amended motion, noting in particular that "attorneys' fees often get moved for after final judgment. The [Federal Rules] expressly provide for that."  (*Id*. at 6).  As to Rapid's argument that it was entitled to additional discovery on the fees issue, the court noted that discovery on a fee issue is rare, and that there was no dispute here that the time recorded had in fact been spent as described on the billing records.  (*Id*. at 7).

Rapid nonetheless maintained that it was prejudiced by Symetra's shift because, based on Symetra's positions in its original summary-judgment motion, Rapid had "followed a particular strategy in the case, both in our briefing and . . . in settlement discussions with Symetra."  (*Id*. at 8).  The court disagreed with this complaint:

> Nobody is stopping you from having renewed settlement discussions, and you were given an opportunity to respond to their arguments. . . . I understand your position, but I am wondering how you were prejudiced.  You knew from the beginning what the briefing schedule was.  I didn't hear from you that you needed additional time until the day the brief was due.  I gave you some additional time.

(*Id*. at 9).  Rapid asserted that this court was giving Symetra "a mulligan" on its summary-judgment motion.  (*Id*. at 10; *see also id*. at 14, 19, 54).  The court responded: "I guess my point is you had your opportunity to respond.  You made a response.  They're good arguments.  I have . . . to deal with them as I work my way through to the right answer.  But you've had your opportunity to respond."  (*Id*. at 10).

During the second half of the August 20 hearing, the parties argued the merits of Symetra's amended motion, focusing on three issues: (1) the applicability of the attorney-fee provisions in the Texas and Washington Acts to this litigation, which did not challenge a particular annuity transfer but rather addressed Rapid's general approaches to such transfers; (2) the propriety of awarding fees incurred in taking an interlocutory appeal; and (3) the propriety of awarding fees under the Washington and Texas Acts for Rapid's violations of other states' Acts.

On the first issue, the court asked Symetra how the prefatory phrase "[f]ollowing a transfer" in the Texas and Washington Act attorney-fee provisions applied when the fees sought were incurred in challenging Rapid's approaches to transfers generally in seeking to prevent the use of these approaches in future transfers.  Symetra answered with a "but-for" argument: but for efforts

12

to effect transfers through unlawful processes, such as arbitrations that circumvented state protection acts, Symetra would not have had to file this federal lawsuit in the first place. (*See id.* at 27–34). Symetra conceded, however, that if this court concluded "that the statute would not apply to unnamed future arbitrations, . . . then, I don't know of another way that we would be entitled to the fees." (*Id.* at 32).

As to the second issue, the court asked whether it, as opposed to the Fifth Circuit, had the authority to award Symetra its fees for successfully opposing Rapid's appeal of this court's injunction order. Symetra had not considered that issue. (*Id.* at 37–38). As to the third issue, the court asked whether it could award fees under either the Texas or Washington Acts for Symetra's legal work to show that Rapid violated other states' Acts. Symetra argued that, because it was a Washington company, the Washington Act applied to any transfer involving a Symetra annuitant and another factoring company such as Rapid. (*Id.* at 44).

Near the close of the hearing, the court ordered the parties to submit "either a joint status report or separate status reports, stating whether the parties have taken the position in motions, briefs, or other filings that an order by a Texas state court confirming an arbitration award obtained by Rapid Settlement effected a transfer under the Texas [Act.]" (Docket Entry No. 345). Symetra represented that "[t]he arbitration awards for the non-Texas payees do not refer to the Texas Act." (Docket Entry No. 346, at 1). Symetra argued, however, that the court need not consider this because "Rapid is barred by claim preclusion from arguing that the Washington Act, which allows recovery of fees and costs, does not apply to all payees where Symetra is the annuity issuer or owner and Rapid is the transferee." (*Id.*, at 2). Symetra argued alternatively that if this court concluded that Symetra could not recover fees for work involving its non-Texas annuitants, then this court

should consider a supplemental affidavit by Symetra's counsel segregating the fees and costs related to Texas annuitants from those related to non-Texas annuitants.  (*See id.*, at 5–6).

Symetra moved for leave to file such a supplemental affidavit.  (Docket Entry No. 347). That supplemental affidavit stated that "between 70% and 80% of the time spent by Symetra's lawyers in this case as the result of Rapid's use of arbitration and its failure to comply with the Protection Acts would have been necessary even if this case did not involve any non-Texas payees." (Docket Entry No. 347, Ex. A, ¶ 5).  The affidavit stated that legal fees incurred in resisting Rapid's attempted transfers of Texas annuitants' future-income-stream interests ranged from $595,000 to $848,000; legal fees incurred in the interlocutory appeal were $189,904; and costs ranged from $20,705 to $26,980.  (*Id.*)

Rapid represented to the court that it could find only two cases involving arbitration awards for Texas annuitants in which the state-court order confirming the award stated that the transfer occurred under the Texas Act.  (Docket Entry No. 349).  Rapid objected to, and moved to strike, Symetra's motion for leave to file a supplemental affidavit and the attached affidavit because they were untimely and the Rule 26 disclosure obligations were violated.  (Docket Entry No. 350). Alternatively, Rapid moved for leave to file its own affidavit and for leave to respond to Symetra's posthearing memorandum, or for a continuance under Rule 56(f) to allow Rapid to take discovery into the issue of fees.

This court finds it both fair and appropriate to consider Symetra's supplemental affidavit in deciding whether it is entitled to its fees and costs incurred in this federal litigation under the Acts. Symetra's motion for leave to file a supplemental affidavit, (Docket Entry No. 347), is granted.

14

Based on the record, this court denies the relief Symetra seeks using that affidavit.  Rapid's motion to strike this affidavit, (Docket Entry No. 350), is denied in part because it is moot.

The parties' arguments as to whether Symetra is entitled to recover the attorneys' fees and costs it now seeks for this federal litigation, including for Rapid's June 2007 contempt of court, are analyzed below.

## II.   Waiver

The threshold question is whether Symetra waived any right to recover its attorneys' fees and costs incurred in this federal action by originally moving for its fees and costs incurred only in state-court litigation against Rapid related to the Annuitants.[4]  Before turning directly to that question, the court agrees with Rapid that Symetra's amended motion for summary judgment seeking the fees and costs incurred in this federal rather than state-court litigation is a new motion that replaced Symetra's original motion.  Symetra admitted as much in its amended motion, (Docket Entry No. 329, at 1), and during the August 20 motion hearing, [Draft Tr. at 3.]  On further consideration, therefore, this court retracts its previous contrary statement in the August 17 order.  (*See* Docket Entry No. 343, at 1–2).  This does not affect the substance of that order.  At the June 6 hearing, this court had expressly invited Symetra to file supplemental briefing and exhibits on the issue of attorneys' fees incurred in this federal litigation and entered a briefing schedule under which Rapid had the usual three-week period to respond.[5]

---

[4]  In the original summary-judgment motion as well as the amended motion, Symetra alternatively moved for fees incurred in defending its contractual rights with respect to Gross, as well as for those fees incurred in bringing the motion for contempt.  Thus, accepting Rapid's waiver argument, Symetra would remain entitled to a decision on the merits on these fee issues.

[5]  Rapid ended up receiving additional time to file its response.

In the amended motion, Symetra abandoned its argument that it is entitled under the Washington and Texas Acts to recover fees incurred in the underlying state-court litigation against Rapid involving the Annuitants. Symetra stated: "By this Amended Motion, Symetra revises its request for fees and does not seek to recover fees incurred in any state court proceeding except fees incurred in the [*Gross*] proceeding." (Docket Entry No. 329, at 2). Symetra's theory for recovering fees incurred in the *Gross* proceeding is limited to the Texas litigation exception for tortious-interference claims. Symetra's amended motion did not argue that it was entitled to such fees on the basis of the Texas or Washington Acts.

In the amended motion as properly considered, Symetra's grounds for relief are: (1) it is entitled to the fees and costs it incurred in this litigation under the Washington and Texas Acts; (2) it is entitled to the fees it incurred in the *Gross* litigation under the Texas litigation exception; and (3) it is entitled to the fees it incurred in bringing the motion for contempt. Rapid argues that all of these grounds are waived because they were not originally raised. According to Rapid, Symetra had "one shot" to move for attorneys' fees; it did so in its original motion for summary judgment; it voluntarily withdrew that motion when it filed the amended summary-judgment motion; the effect of its voluntary withdrawal is that it abandoned any claim to fees and costs at all.

The waiver argument clearly lacks merit as to Symetra's second and third grounds for recovery. In its original summary-judgment motion, Symetra asserted both of these grounds for recovering its fees and costs. Symetra argued that it was entitled under the Texas litigation exception to recover the fees it incurred in the *Gross* proceeding; and second, that it was entitled to recover its costs of bringing the motion for contempt in this federal litigation. The amended motion raises these same grounds. The only material difference is that Symetra's original motion sought

16

about $374,000 for the *Gross* litigation, but the amended motion sought only about $88,000.  Rapid had two opportunities to respond to the same arguments for Symetra to recover its fees incurred in the *Gross* litigation and for the June 2007 contempt of court.  *Cf. Peper v. U.S. Dep't of Agric.*, Nos. 08-1131, 11-1237, 2012 WL 1450423, at *6 (10th Cir. Apr. 27, 2012) (holding that issues developed for the first time in a reply brief are waived because such development "deprives defendants of an opportunity to address the issue" (citing *Starkey ex rel. A.B. v. Boulder Cnty. Soc. Servs.*, 569 F.3d 1244, 1259 (10th Cir. 2009))); *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 123 (D.C. Cir. 2010) (same); *Kelso v. Bayer Corp.*, 398 F.3d 640, 643 (7th Cir. 2005) (same) (citing *Wilson v. Giesen*, 956 F.2d 738, 741 (7th Cir. 1992)).

Rapid's more significant objection, as evidenced both by its surreply (more accurately described as Rapid's response) and its arguments at the August 20 hearing, is that Symetra has waived its argument that it is entitled to fees in this federal action.  According to Rapid, Symetra had one shot, in its original summary-judgment motion, to seek attorneys' fees.  In that motion, Symetra sought only the fees it incurred in the state-court proceedings against Rapid related to the Annuitants.  Rapid argues that Symetra went beyond what this court envisioned at the June 6 hearing when it allowed Symetra to supplement its initial motion and supporting evidence.  Symetra did not supplement its motion, but instead filed a new motion seeking different fees incurred in a different proceeding.

Although the court understands Rapid's frustration with Symetra initially moving for summary judgment for fees incurred in the underlying state-court proceedings and subsequently withdrawing that motion and instead moving for fees incurred in this federal action, the court cannot conclude that the shift worked an unfair surprise or that Rapid was prejudiced.  As the court noted

17

at the August 20 hearing: "This litigation has been going on for seven years.  The notion that you're stunned by the fact that . . . they're seeking recovery of fees as a prevailing party is . . . surprising in itself."  It is wholly unsurprising that Symetra, after prevailing on most of its claims in this federal action would seek to recover the fees it incurred in doing so.  Both the original motion for summary judgment and the joint status report stated that the remaining issue in this case was attorneys' fees. While Rapid might claim surprise in Symetra's shift from claiming fees incurred in state-court litigation involving Rapid's actions with respect to the Annuitants, as opposed to in this federal court action, Rapid cannot claim surprise that Symetra moved for fees incurred in challenging Rapid's repeated efforts to circumvent the state Acts.

This court permitted Symetra to expand its initial summary-judgment motion to include not only additional exhibits in support of the fees it originally sought, but also in support of fees incurred in this federal action.  During the June 6 hearing, counsel for Symetra raised the topic of expanding its summary judgment motion to include fees incurred in this action.  (*See* Docket Entry No. 340, at 19, 30–33).  The court stated that it was "inclined" to allow Symetra to address the question of fees in this case.  (*Id.*, at 33).  The context made clear that Symetra would be allowed to use its supplemental submissions to address the issue of fees incurred in this federal action.  Rapid objected. The court overruled its objection.  (*Id.*, at 34).

At the close of the hearing, the court asked if the parties needed additional time to complete "a somewhat expanded list of assignments."  (*Id.*, at 43).  One of Symetra's lawyers stated that it would take over thirty days "to gather additional invoices and prepare the papers and address the legal issues *that you've asked for*."  (*Id.* (emphasis added)).  One issue was Symetra's attorneys' fees incurred in this federal litigation.  (*Id.*, at 45).  This court finds unpersuasive Rapid's argument that

18

Symetra's amended motion went beyond what the court allowed at the June 6 hearing.  The court allowed Symetra to supplement its arguments and evidence on the fees it incurred defending in state court litigation its contractual rights related to the Annuitants, and to submit arguments and evidence of its entitlement to fees incurred in this federal litigation.  Instead, Symetra dropped the first issue and addressed only the second.

Moreover, Rapid cannot claim prejudice.  In the appellate context, a purpose of the waiver doctrine is to prevent one party from "sandbagging" another party.  A party sandbags another when it does not raise an issue or objection, which could have been raised before the district court, until appeal.  *See, e.g.*, *United States v. Robinson*, 583 F.3d 1265, 1269 n.1 (10th Cir. 2009); *Webb-Edwards v. Orange Cnty. Sheriff's Office*, 525 F.3d 1013, 1030 (11th Cir. 2008); *Carson v. Polley*, 689 F.2d 562, 570 (5th Cir. 1982).  In the appellate- and district-court contexts, one party typically sandbags another by raising an argument or legal theory for the first time in a brief that gives the opposing party no chance to respond.  *See Gen. Elec. Co.*, 610 F.3d at 123; *N.Y. Rehab. Care Mgmt., LLC v. NLRB*, 506 F.3d 1070, 1076 (D.C. Cir. 2007); *see also In re Katrina Canal Breaches Litig.*, 620 F.3d 455, 459 n.3 (5th Cir. 2010); *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1307 (11th Cir. 2012).  The Fifth Circuit has held that a district court may consider arguments and evidence presented for the first time in a reply brief so long as the opposing party has an adequate opportunity to respond.  *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir. 2004).

At the June 6 hearing, the court allowed Symetra to submit supplemental argument and evidence on the issue of its entitlement to fees incurred in this federal action.  In doing so, Symetra largely changed only the fees it was seeking, not the legal theories supporting the fee award.  This court gave Rapid the customary 21-day period, and an additional 2 days, to respond and to submit

supplemental evidence.  This court held a hearing at which both Symetra and Rapid presented argument on the issues raised and all the evidence submitted.  Rapid had ample opportunity to respond to all of Symetra's arguments and evidence, and did so.

Rapid described the prejudice resulting from the shift in Symetra's clam to recover fees and costs, as follows:

> In reliance on Symetra's filing of its MSJ [motion for summary judgment] pursuant to Symetra's representations in the Joint Status Report, Rapid invested extraordinary resources on its part—Rapid wound down its operations years ago—and undertook specific legal strategies in responding to and otherwise addressing Symetra's MSJ and in ongoing settlement discussions, and in oral arguments that followed on June 6, 2012.

(Docket Entry No. 344, at 1–2).  The Joint Status Report, however, merely stated that the only issue that remained in this case was Symetra's entitlement to attorneys' fees, which was, and remained, true.  Rapid's description of the prejudice it suffered does not explain what the specific legal strategies in responding to and otherwise addressing Symetra's original fee arguments prejudiced its ability to respond fully to Symetra's amended motion.  Nor has Rapid explained how Symetra's shift in the fees sought precluded Rapid from renewing settlement discussions.[6]  Rapid had, and used, an adequate opportunity to respond to new issues and evidence raised by the amended motion.

Symetra has not waived the arguments made in its amended motion for summary judgment, in particular the argument that it is entitled to recover fees and costs incurred in this federal litigation.  Because the amended motion replaces the original motion, (Docket Entry No. 329, at 1), Symetra's original motion for summary judgment, (Docket Entry No. 316), is denied as moot.  As Symetra concedes, it has abandoned its argument that it is entitled to fees incurred in state-court

---

[6] The court made this point at the August 20 hearing.  [Draft Tr. at 9.]

litigation related to the Annuitants on the basis of the Texas and Washington Acts.  (Docket Entry No. 329, at 2).

## III.     Rule 26 Disclosures

The next question is whether, under Rule 37, the affidavits from Symetra's lead lawyers and the supporting evidence on attorneys' fees must be excluded because Symetra did not meet its Rule 26 disclosure obligations.  At the August 20 hearing, counsel for Symetra conceded that it had not designated the lawyers as experts and had not made other Rule 26 disclosures.  Counsel argued that Rapid could not be surprised or prejudiced to learn that the lawyers who had done the work would testify about the fee issues.  Similarly, counsel argued that Rapid could not be surprised by the amount of work and time Symetra's lawyers had spent.

The court rejected Rapid's counsel's suggestion that discovery on fees was required, noting the absence of any dispute about whether the work had been done or the time accurately recorded.  The Rule 26 initial-disclosure requirements do not extend to fee invoices.  *See R&R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012) ("Contrary to the district court's apparent suggestion, R & R was not required to affirmatively produce its attorney's fee invoices during the discovery period without a request from AIG.").  To the extent that Rapid complains about not having the invoices disclosed until now, its complaint lacks merit.  Its complaint also is illogical: a prevailing party generally cannot initially disclose its invoices for fees to be incurred in litigation.

A purpose of the Rule 26 disclosure requirement is to ensure that "[a] party is not allowed to lie in wait . . . and then ambush the other party with a key piece of evidence" that could and should have been disclosed "after extensive discovery and expenses have been incurred."  *Tobias v. Davidson Plywood*, 241 F.R.D. 590, 594 (E.D. Tex. 2007).  While Rule 26 violations may warrant

21

evidence preclusion, it is, or can be, a harsh sanction.  Rule 37(c)(1) states that a court may disregard a Rule 26 violation if it is harmless.  The Fifth Circuit instructs district courts to consider four factors to determine whether a Rule 26 violation is harmless:  "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 729 (5th Cir. 2010) (internal quotation marks omitted). These factors demonstrate that Symetra's failure to make an earlier disclosure of the affidavits and invoices (and to disclose the identities of its attorneys as the experts on fees) is harmless.

The affidavits and invoices are crucial evidence of the attorneys' fees sought.  In practical terms, to disallow this evidence as a sanction for the Rule 26 violation would "deal[] a fatal blow" to Symetra's fee request and would "amount[] to dismissal of a claim."  *R&R Sails*, 673 F.3d at 1247; *see also United States v. Filson*, 347 F. App'x 987, 990 (5th Cir. 2009) (holding that this factor supports admissibility when, to prove the claim, the evidence is of "paramount importance"); *Nichols v. Allstate Tex. Lloyd's*, No. Civ. A. H-04-2242, 2005 WL 2405922, at *2 (S.D. Tex. Sep. 29, 2005) (holding that this factor supports admissibility when the evidence "is essential" to the plaintiff's claim).

As to the second factor, Rapid will not be prejudiced by admitting the evidence.  Rapid has known since the outset of this litigation that Symetra would be seeking an award of "reasonable and necessary attorneys' fees and costs of court *incurred in this cause*."  (Docket Entry No. 1, ¶ 35). Rapid knew that Symetra's attorneys would introduce time and billing records and supporting affidavits by counsel after the claims and defenses had been resolved.  Rapid reasonably should have known that counsel for Symetra would testify about the reasonableness of the fees sought.  It is

standard practice for counsel of record to testify on attorneys' fees. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 564 (5th Cir. 2004) ("NAICO knew, or should have known, that Boyer [an attorney who had been personally involved in the underlying litigation] was going to testify about as to the reasonableness of the attorney's fees incurred by Primrose and that Boyer was basing his opinion primarily on a review of the bills[.]"). This court gave Rapid two opportunities to respond to the evidence Symetra submitted and to submit any controverting evidence. *See Filson*, 347 F. App'x at 991 (holding that this factor supports admissibility when, in part, the party "had the chance to respond to the evidence" not compliant with Rule 26).

The prejudice to Rapid is that the evidence would be admitted. That is not a basis for excluding the evidence. "The focus of the prejudice inquiry is on whether [Symetra]'s failure to comply with Rule 26 prejudiced [Rapid]'s ability to prepare for trial, not on whether [Rapid] will be prejudiced by use of the evidence at trial." *Norton v. Assisted Living Concepts, Inc.*, 786 F. Supp. 2d 1173, 1189 (E.D. Tex. 2011) (citing *Primrose Operating*, 382 F.3d at 564). Because Rapid will suffer no cognizable prejudice by admitting this evidence, the court need not consider the third factor—whether any prejudice could be cured by a continuance.

The fourth factor, Symetra's lack of justification for not meeting all the Rule 26 obligations, weighs against admitting the evidence. *Norton*, 786 F. Supp. 2d at 1189; *Lofton v. McNeil Consumer & Specialty Pharms.*, Civ. A. No. 3:05-CV-1531-L (BH), 2008 WL 4878066, at *10 (N.D. Tex. July 25, 2008). The key factor is, however, prejudice. The absence of prejudice strongly supports allowing the evidence in this case. *See Norton*, 786 F. Supp. 2d at 1189 (denying a motion to strike evidence, for which the party failed to explain its failure to comply with Rule 26, because

23

the  opposing party would suffer no prejudice from the evidence's admissibility).  As this court

stated in a previous case:

> Attorneys' fee claims are generally resolved at the close of the case,
> after both liability and damages have been determined.   The
> [prevailing party's] delay in designating the expert testimony on their
> claim for attorneys' fees and in providing the report did not prejudice
> [the nonprevailing party].

*Straus v. DVC Worldwide, Inc.*, 484 F. Supp. 2d 620, 633 (S.D. Tex. 2007).

The balance of the four factors demonstrate that Symetra's failure to disclose its attorneys

as experts on attorneys' fees and disclose the subsequent invoices earlier is harmless.  The court

overrules Rapid's objections to Symetra's affidavits and invoices.

## IV.     Fees and Costs

### A.     The Request for Fees and Costs Incurred in This Litigation

Symetra first argues that it is entitled to an award of attorneys' fees in the range of $937,859

to $1,147,859 and costs of $43,457 under the attorney-fee provisions of the Texas and Washington

Acts.  For purposes of this opinion, the court assumes, without deciding, that the Texas and

Washington Acts apply to any transfer attempted that involves a Symetra annuitant.[7]

The Washington Act provides:

> Following a transfer of structured settlement payment rights under
> this chapter: . . .
>
> > (2) The transferee shall be liable to the structured settlement
> > obligor and the annuity issuer: . . .
> >
> > > (b) For any other liabilities or costs, including
> > > reasonable costs and attorneys' fees, arising from

---

[7] At the August 20 hearing, counsel for Symetra appeared to take the position that, because Symetra is domiciled in Washington, the Washington Act applies to any transfer involving a Symetra annuitant.  [Draft Tr. at 44–45].  Symetra confirmed this position in its posthearing memorandum.  (Docket Entry No. 346, ¶ 6).

> compliance by such parties with the order of the court or responsible administrative authority or arising as a consequence of the transferee's failure to comply with this chapter[.]

WASH. REV. CODE § 19.205.040.  The Texas Act provision is materially indistinguishable.  *See* TEX. CIV. PRAC. & REM. CODE § 141.005.  Symetra argues that it "incurred fees and costs in this lawsuit as the result of Rapid's failure to comply with the Protection Acts," (Docket Entry No. 329, ¶ 12), and that its entitlement to these fees and costs is "directly pursuant to the Fee Section of the Acts, as in *[Rapid Settlements, Ltd. v. Green*, 294 S.W.3d 701 (Tex. App.—Houston [1st Dist.] 2009, no pet.)]," (*id.*, ¶ 16).  Rapid asserts that the Washington and Texas Acts are inapplicable because "Symetra has incurred no compliance costs and no taxes as a consequence of any transfers at issue in this case."  (Docket Entry No. 344, at 8).

The cases in which attorneys' fees are awarded to a litigant such as Symetra under the Acts related to an attempted transfer of the annuity.  In cases such as *Green*, on which Symetra relies, the underlying litigation on which the annuity issuer sought attorneys' fees under the Acts involved a direct challenge to an arbitration award used to effect an unlawful transfer.  In such cases, the annuity issuer (as the prevailing party) was entitled to fees under the Acts because it challenged a specific transfer.  *See, e.g.*, *Green*, 294 S.W.3d at 708.  In this federal litigation, however, Symetra did not challenge any specific transfer.[8]  Rather, Symetra challenged Rapid's general business practices of using arbitrations and similar tactics to effect a transfer, which circumvented, and violated, the Acts.  Symetra sought declaratory relief and prospective injunctive relief to stop Rapid from attempting such transfers in the future.  The relief Symetra sought in this federal action was

---

[8]  The exceptions, of course, are the Annuitants.  But Symetra has abandoned its argument that it is entitled to the fees and costs in the underlying state-court cases involving the Annuitants.

not tied to specific attempted or completed transfers.  Rather, it sought to prevent efforts to effect transfers in the future.  At the August 20 hearing, Symetra generally argued that the Acts applied to these possible future transfers because, but for Rapid's previous attempted transfers that violated the Acts and for which Symetra could recover fees, Symetra would not have had to bring this broader lawsuit.  [*See* Draft Tr. at 28; *see also id.* at 29–32.]

"Texas has long followed the 'American Rule' prohibiting fee awards unless specifically provided by contract or statute."  *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 669 (Tex. 2009).  Statutory provisions authorizing attorneys' fees are "strictly construed because they are penal in nature and are in derogation of the common law."  *Martin v. Cockrell*, 335 S.W.3d 229, 243 n.22 (Tex. App.—Amarillo 2010, no pet.) (citing *New Amsterdam Cas. Co. v. Tex. Indus., Inc.*, 414 S.W.2d 914, 915 (Tex. 1967)); *accord, e.g.*, *Gard v. Bandera Cnty. Appraisal Dist.*, 293 S.W.3d 613, 617 (Tex. App.—San Antonio 2009, no pet.) (citing *Martin v. Harris Cnty. Appraisal Dist.*, 44 S.W.3d 190, 196 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)); *Musquiz v. Marroquin*, 124 S.W.3d 906, 913 (Tex. App.—Corpus Christi 2004, pet. denied) (citing *New Amsterdam Cas. Co.*, 414 S.W.2d at 915).  In interpreting Texas statutes, the Texas Supreme Court has stated that a court's "chief aim is to determine and give effect to the Legislature's intent, and where the statutory language is straightforward, it is determinative."  *Gonzalez v. Guilbot*, 315 S.W.3d 533, 541 (Tex. 2010) (footnote omitted).  "[E]very word in a statute is presumed to have a purpose and should be given effect if reasonable and possible."  *AEP Tex. Cent. Co. v. Pub. Util. Comm'n*, 345 S.W.3d 60, 63–64 (Tex. 2011).[9]

---

[9]  Washington law follows these same general principles.  Washington follows the American Rule, but recognizes that it "can be modified by contract, statute, or a recognized ground in equity."  *Cosmopolitan Eng'g Grp., Inc. v. Ondeo Degremont, Inc.*, 149 P.3d 666, 669 (Wash. 2006).  Because statutes authorizing attorneys' fees are in derogation of the common law, Washington courts construe such statutes narrowly and require a "clear expression of

The attorney-fee provisions of the Washington and Texas Acts contain a prefatory clause: "[f]ollowing a transfer of structured settlement payment rights . . . ."  WASH. REV. CODE § 19.205.040; TEX. CIV. PRAC. & REM. CODE § 141.005.  Rapid argues that the fee provision applies only after a court-approved transfer of structured-settlement payment rights.  Most (if not all) courts reaching the issue disagree, holding that "transfer" includes unsuccessful attempts to effect a transfer by, for example, using arbitration.  *See RSL Funding, LLC v. Aegon Structured Settlements, Inc.*, — S.W.3d —, 2012 WL 2146789, at *3 (Tex. App.—Eastland 2012, no pet. h.); *Green*, 294 S.W.3d at 708; *Rapid Settlements, Ltd. v. Symetra Life Ins. Co.*, 139 P.3d 411, 413 (Wash. Ct. App. 2006).  *But cf. RSL Funding*, 2012 WL 2146789, at *4–5 (Wright, C.J., dissenting) (disagreeing with the majority's holding that there need not be a court-approved transfer for § 141.005 to apply).  In abandoning its claim for fees incurred in the state-court litigation relating to the Annuitants, Symetra no longer seeks fees tied to a specific "transfer," whether it is completed or attempted.  Rather, Symetra seeks fees tied to possible future transfers, before any attempt has even occurred.

The legal work done in federal litigation did not seek fees "following a transfer."  Instead, the legal work was to obtain declaratory relief and prospective injunctive relief to alter Rapid's general (unlawful) business practices in the future.

Symetra's but-for argument—but for the numerous unlawful transfers that Rapid had effected or attempted to effect across the country, Symetra would not have had to bring this

---

intent from the legislature" authorizing fee awards.  *Id.* at 672; *accord Costanich v. Wash. State Dep't of Soc. & Health Servs.*, 194 P.3d 988, 997 (Wash. 2008) (Alexander, C.J., dissenting) (citing *Cosmopolitan Eng'g Grp.*, 149 P.3d at 669); *Brotherton v. Kralman Steel Structures, Inc.*, 269 P.3d 307, 313 (Wash. Ct. App. 2011) (citing *Cosmopolitan Eng'g Grp.*).  A court's "purpose in interpreting a statute is to discern and implement the intent of the legislature."  *Columbia Physical Therapy, Inc. v. Benton Franklin Orthopedic Assocs., P.L.L.C.*, 228 P.3d 1260, 1265 (Wash. 2010) (internal quotation marks omitted).  To determine legislative intent, courts must first look to the statutory text and determine whether the statutory language is plain.  *Cosmopolitan Eng'g Grp.*, 149 P.3d at 669.  Finally, "[a] court must, when possible, give effect to every word, clause[,] and sentence of a statute."  *Am. Legion Post #149 v. Wash. State Dep't of Health*, 192 P.3d 306, 314 (Wash. 2008) (internal quotation marks omitted).

lawsuit—is unavailing.  Under the Washington and Texas Acts, the attorney-fee provisions must be narrowly construed.   Although other courts have ably explained why "following a transfer" encompassed Rapid's attempted transfers, the fees incurred in this litigation do not follow any particular transfer, completed or otherwise.  Rather, the fees were incurred to change Rapid's general business practices.  Symetra's argument would interpret the Acts' provisions so as to excise the prefatory clause.  In practice, this conclusion means that Symetra could recover its fees by playing Whack-A-Mole whenever Rapid attempted to effect a transfer in the state court under the applicable protection act, but it cannot recover its fees through this global litigation.  The plain meaning of the Acts' attorney-fee provisions, coupled with the principle that attorney-fee statutory provisions are to be construed narrowly, requires this interpretation.  Symetra is not entitled to fees incurred in this litigation under the Acts.

Finally, Symetra argues that if it is not entitled to these fees and costs under the Acts, it is entitled to them as a result of Rapid's tortious interference.  Symetra's alternative argument reads in full:

> Alternatively, Symetra seeks judgment for such fees and costs as damages suffered due to Rapid's tortious interference.   The Lefkowitz Affidavit states that the fees and costs incurred by Symetra in this lawsuit, for which Symetra seeks judgment against Rapid, were incurred as the natural and proximate result and consequence of Rapid's tortious conduct.   Such tortious conduct being Rapid's wrongful use of arbitration to effect transfers.

(Docket Entry No. 329, ¶ 16).

This alternative argument was raised in such a conclusory manner that it is waived.  *See Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 n.7 (5th Cir. 2003) ("Arguments that are insufficiently addressed in the body of the brief, however, are waived.").  Even assuming the

argument is not waived, it fails on the merits.  Symetra asserted many claims against Rapid in addition to tortious interference.  According to the Lefkowitz affidavit, Symetra seeks to recover fees incurred in pursuing seven of these claims, including "Symetra's claim for tortious interference to the extent based on the arbitration scheme."  (Docket Entry No. 330, Ex. A, ¶ 11).  By contrast, Symetra does not seek to recover fees incurred in pursuing nine of its claims, including two tortious-interference claims:  "Symetra's claim for tortious interference to the extent based on efforts by Rapid to impose extra-contractual obligations on Symetra" and "Symetra's alleged tortious interference with Rapid's contractual relationships with its annuitants."  (*Id.*, ¶ 12).

"The general rule regarding the recovery of fees in Texas is that 'fee claimants have always been required to segregate fees between claims for which they are recoverable and claims for which they are not." *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 298 (5th Cir. 2007) (quoting *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006)).  Standing alone, "intertwined facts" between claims for which fees are recoverable and claims for which fees are not recoverable are an insufficient basis for bypassing the segregation requirement. *Chapa*, 212 S.W.3d at 313.  Difficulty in segregating fees between one claim and another, or one party and another is similarly insufficient. *Peak Tech. Servs., Inc. v. Land & Sea Eng'g, LLC*, Civ. A. No. H-10-1568, 2012 WL 3234203, at *5 (S.D. Tex. Aug. 6, 2012) (citing *Navigant Consulting*, 508 F.3d at 298). "[I]t is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Chapa*, 212 S.W.3d at  313–14.

In this case, even assuming that Symetra adequately segregated its fees for meritorious claims from its fees for nonmeritorious claims, Symetra did not attempt to segregate its fees incurred for its tortious-interference claim based on Rapid's arbitration scheme from the other six claims on

which Symetra seeks fees.  These seven claims, though dependent on the same general set of facts and circumstances, cannot be said to "require[] the same research, discovery, proof, or legal expertise."  *Id.* at 313.[10]  And this court has no basis to award a percentage of the attorneys' fees sought because Symetra has provided no evidence of what this percentage would be.  *Cf. Navigant Consulting*, 508 F.3d at 298 (explaining that a district court has discretion to "award[] a percentage of [attorney's] fees rather than denying recovery of fees completely" when it has sufficient evidence to assess the extent to which the claims were intertwined).[11]

The record continues to provide an insufficient basis to award Symetra its fees and costs incurred in this litigation on the basis of the attorney-fee provisions in the Texas and Washington Acts.

**B.      The Request for Fees Incurred in the *Gross* Litigation**

Alternatively, Symetra argues that it is entitled to those fees that it incurred in defending its contractual rights with regard to one of its annuitants, Kenneth Gross, in Indiana state court.  This court previously summarized the *Gross* litigation.  (*See* Docket Entry No. 84, at 18–25.)

Briefly, Gross is an Indiana citizen and a Symetra annuitant.  He entered into a transfer agreement with Rapid in August 2004.  Rapid sought approval of proposed transfer in an Indiana state court under the Indiana Act.  The Indiana court rejected the proposed transfer in December 2004.  Gross then entered into another transfer agreement with Rapid in February 2005.  Rapid

---

[10]  At a minimum, Symetra did not attempt to make this argument.

[11]  Symetra's counsel stated in his supplemental affidavit that  "[i]n my opinion, between 70% and 80% of the time spent by Symetra's lawyers in this case as the result of Rapid's use of arbitration and its failure to comply with the Protection Acts would have been necessary even if this case did not involve any non-Texas payees."  (Docket Entry No. 347, Ex. A, ¶ 5).  This estimate, however, does not provide any evidence of how much time Symetra's lawyers spent on the single tortious-interference claim for which Symetra alternatively seeks fees.

invoked the arbitration clauses in the August 2004 and February 2005 agreements based on Gross's alleged breach.  Gross then canceled the February 2005 agreement and entered into two transfer agreements with Rapid in March 2005.  At the arbitration, which took place in Harris County, Texas, with Gross uncounseled and participating by telephone, Rapid sought a finding approving the March 2005 transfer agreements.  The arbitrator issued the requested award in May 2005.  The award ordered Rapid to pay Gross the lump-sum amounts under the agreements once the award had been domesticated in an Indiana court.  In a Harris County court, Gross and Rapid immediately filed an agreed final judgment confirming the arbitration award.  The Harris County court entered final judgment confirming the award.  Symetra moved to vacate that judgment on the ground that the transfer violated the Texas Act.  In July 2005, the Harris County court granted Symetra's motion and vacated the judgment.  Rapid appealed.  The First Court of Appeals held that the Harris County court lacked authority to vacate its judgment, but it declined to enforce the judgment against Symetra.

Meanwhile, Kent Niemeier had obtained a nearly $113,000 judgment against Gross.  In November 2005, Niemeier asked an Indiana state court to garnish Gross's $150,000 lump-sum payment from Rapid, scheduled for September 2006.  In August 2006, Rapid contacted Symetra and demanded that Symetra comply with the arbitration award and the final judgment confirming that award.  Symetra refused on the basis of the Indiana garnishment order and the order of the Texas First Court of Appeals refusing to enforce the Harris County judgment against Symetra. Rapid again invoked the provision in its transfer agreement arbitration again and in late 2006 obtained an arbitration award enforcing the original May 2005 arbitration award and Harris County final judgment.

31

Back in the Indiana state court, Niemeier moved to hold Symetra in contempt for failing to comply with the garnishment order (by not transferring the payments as ordered by the arbitration awards). Symetra then moved for a declaratory judgment against Rapid that Rapid's use of arbitration violated the Indiana Act. The Indiana court agreed with Symetra and declared the underlying transfer agreement to be invalid. *See Niemeier v. Gross*, No. 65C01-0504-PL-00105, 2008 WL 4892985 (Ind. Cir. Ct. Apr. 10, 2008).

Symetra now seeks fees of $87,859 that it incurred in the *Gross* litigation. Symetra relies on the affidavit of one of its lead lawyers, Katherine Scanlon, who was directly involved in the *Gross* litigation. (Docket Entry No. 339, Ex. B, ¶ 7). Scanlon's affidavit states her opinion as to why the fees sought are necessary, reasonable, and customary. Scanlon's affidavit is supported by numerous pages of detailed legal invoices. (*See* Docket Entry No. 339, Exs. B–1, B–2).

Rapid opposes the award on three grounds. First, Rapid argues that claim preclusion[12] bars Symetra's recovery of attorneys' fees in the *Gross* litigation because it could have sought such an award of fees before the Indiana court, but did not do so. Second, Rapid argues that the Texas "litigation exception," on which Symetra relies for its fees related to the *Gross* litigation, is inappplicable because "Symetra's litigation with Kent Niemeier was not the natural and proximate result and consequence of Rapid's actions"; rather, "Symetra voluntarily injected itself into the

---

[12] Rapid has referred interchangeably to claim preclusion (res judicata) and issue preclusion (collateral estoppel) in its arguments. (*See, e.g.*, Docket Entry No. 327, at 9 ("Symetra . . . is collaterally estopped by claim preclusion from now asserting a claim for fees under the SSPA in this proceeding.")). "Claim preclusion bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Duffie v. United States*, 600 F.3d 362, 372 (5th Cir. 2010) (internal quotation marks omitted). By contrast, issue preclusion "bars the relitigation of 'issues actually adjudicated and essential to the judgment' in a prior litigation between the same parties." *Seiferth v. Camus*, 377 F. App'x 417, 421 (5th Cir. 2010) (per curiam) (quoting *Kaspar Wire Works, Inc. v. Leco Eng'g & Machine, Inc.*, 575 F.2d 530, 535–36 (5th Cir. 1978)). The issue here is claim preclusion: Symetra could have litigated its claim for attorneys' fees in the *Gross* litigation, but did not do so.

case." (Docket Entry No. 327, at 7).  Third, Rapid argues that Symetra has not adequately supported

its claim for fees for work by legal assistants.[13]

First, claim preclusion.  Symetra relies on the Texas litigation exception.  The Fifth Circuit

has explained this exception:

> One of the equitable exceptions to the general rule on attorneys' fees
> adopted by a Texas court of appeals allows recovery of attorneys'
> fees in tortious interference cases. . . . *Texas Beef Cattle* held "that
> necessary and reasonable attorneys' fees and costs *even though
> expended and incurred in previous litigation* can be recovered as
> proper damages *in a later suit* based on tortious interference of
> contract."  This exception is limited to situations "where the natural
> and proximate results and consequences of prior wrongful acts had
> been to involve a plaintiff . . . in litigation with and against third
> parties and other parties."

*DP Solutions*, 353 F.3d at 431 (second alteration in original) (emphasis added) (quoting 883 S.W.2d

at 430).  Symetra seeks the fees it incurred in previous litigation—the *Gross* litigation, which pitted

Symetra against Rapid—as damages for the claim in this lawsuit that Rapid tortiously interfered

with Symetra's annuity contract with Gross.  Claim preclusion does not bar Symetra's recovery of

fees, given the exception on which it relies.

Second, Rapid argues that the litigation exception is inapplicable because Symetra

"voluntarily injected itself" itself into the Indiana litigation between Gross and Niemeier.  (Docket

Entry No. 329, at 7).  This is wholly unpersuasive.  Niemeier had obtained a nearly $113,000

judgment against Gross, a Symetra annuitant.  Gross, meanwhile, had agreed to transfer his rights

under a Symetra annuity to Rapid for a $150,000 lump-sum payment.  Rapid unlawfully attempted

to effect that transfer through arbitration, circumventing the Indiana Act.  Niemeier then obtained

---

[13] Rapid does not argue that Symetra failed to segregate its fees with respect to the *Gross* litigation; rather, its nonsegregation argument is limited to the fees sought in this litigation.  (*See* Docket Entry No. 344, at 11).  Even had Rapid raised such an argument, however, the Scanlon affidavit and supporting invoices clearly segregate those fees related solely to the *Gross* litigation.

a garnishment order for $113,000 on that lump-sum payment. Rapid demanded that Symetra comply with the transfer agreement. When Symetra refused, Niemeier moved to hold Symetra in contempt. Symetra did not "inject itself" into the litigation; rather, Rapid's actions—attempting to effect an unlawful transfer, which led to Niemeier trying to take advantage of that unlawful transfer—brought Symetra into the litigation. Symetra's response—seeking declaratory relief against Rapid that the underlying transfer was invalid under the Indiana Act, so as to defeat the motion for contempt and alter the underlying garnishment order—was both reasonable and foreseeable.

The litigation exception is "limited to situations 'where the natural and proximate results and consequences of prior wrongful acts had been to involve a plaintiff . . . in litigation with and against third parties and other parties.'" *DP Solutions*, 353 F.3d at 431 (alteration in original) (quoting *Tex. Beef Cattle*, 883 S.W.2d at 430). Rapid's actions—its illegal attempts to effect transfers through the arbitration process—were not just a substantial factor in embroiling Symetra in cases such as the *Gross* litigation to defend its contractual rights and prevent Rapid's abusive tactics. Rapid's actions were the *only* factor that involved Symetra in the litigation. It was reasonably foreseeable to Rapid that its attempts to effect unlawful transfers with Symetra annuitants would result in Symetra involving itself in litigation to protect its legal rights, including bringing tortious-interference-with-contract claims against Rapid.

Symetra has clearly established that Rapid's attempts to effect a transfer of a portion of Gross's annuity through the arbitration process caused Symetra to be involved in the *Gross* litigation in Indiana. As damages for Symetra's tortious-interference claim as it relates to the Gross annuity, Symetra is entitled under the Texas litigation exception to its necessary and reasonable attorneys' fees incurred in the *Gross* litigation. *See id.*

34

Finally, Rapid argues that Symetra is not entitled to its requested fees because it failed adequately to support the reasonableness of the hours incurred, and rates charged, by its legal assistants. The argument is meritless. Scanlon's affidavit, in conjunction with the detailed legal invoices, adequately supports the reasonableness of the legal-assistant fees. (*See* Docket Entry No. 329, Ex. B, ¶ 8).

The Texas Supreme Court recently stated:

> When obtaining payment for work done by paralegals or legal assistants, Texas courts have required more information, such as: (1) the qualifications of the legal assistant to perform substantive legal work; (2) that the legal assistant performed substantive legal work under the direction and supervision of an attorney; (3) the nature of the legal work performed; (4) the legal assistant's hourly rate; and (5) the number of hours expended by the legal assistant.

*El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 763 (Tex. 2012) (alteration in original) (internal quotation marks omitted). This court has carefully reviewed the affidavit and supporting invoices and finds that the evidence, as a matter of law, establishes the reasonableness of the fees sought for the work performed by the legal assistants on the *Gross* litigation.[14] The affidavit and supporting invoices, in addition, also establish as a matter of law the reasonableness of the attorneys' fees incurred in the *Gross* litigation[15]—which, in any event, Rapid does not contest, aside from challenging the reasonableness of the legal-assistant fees.

---

[14] The court is aware that "[t]he non-movant may raise a fact issue as to attorney's fees by filing an affidavit of an attorney contesting the reasonableness of the movant's attorney's affidavit." *Roberts v. Roper*, 373 S.W.3d 227, 233 (Tex. App.—Dallas 2012, no pet. h.). The affidavit of Rapid's counsel, rather than presenting evidence that creates a fact issue, casts unsubstantiated aspersions on the reasonableness of the legal assistants' fees (and attorneys' fees). It does not create a genuine issue of material fact as to the fees' reasonableness.

[15] *See generally, e.g.*, *Arthur Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (listing the "[f]actors that a factfinder should consider when determining the reasonableness of a fee").

35

Symetra is entitled to an award of $87,859 as damages on its tortious-interference claim for those fees incurred in the *Gross* litigation.

### C.   The Request for Fees Incurred by Rapid's Contempt of Court

Last, Symetra seeks an award of $11,095 for the fees it incurred in bringing the motion for contempt.  That motion resulted in this court holding Rapid in contempt in June 2007.  (*See* Docket Entry No. 148).  Rapid concedes that this court held it in contempt.  Rapid argues that this court should not award Symetra the fees for bringing the motion because "Rapid had a good faith belief that it acted in accordance with the Court's rulings and did not intend to violate the Court's order." (Docket Entry No. 344, at 14).

Rapid's argument verges on the frivolous.  Had the court believed that Rapid was acting in good faith and honestly did not intend to violate this court's injunction, it would not have found Rapid to be in contempt.  And the Fifth Circuit "has consistently held that good faith is not a defense to a finding of civil contempt."  *United States v. City of Jackson*, 359 F.3d 727, 735 n.25 (5th Cir. 2004).

The court has reviewed the contempt order in light of the full record in this case, as well as the supporting affidavit of Symetra's counsel about the fees incurred in bringing the motion for contempt.  (Docket Entry No. 145).  The fees sought by Symetra are appropriate.  *See Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 582 (5th Cir. 2005) ("Upon a finding of contempt, the district court has broad discretion in assessing sanctions to protect the sanctity of its decrees and the legal process.").  Symetra is entitled to an award of $11,095 for Rapid's contempt of court.

## V.   Conclusion and Order

The court: (1) denies as moot Symetra's motion for summary judgment, (Docket Entry No. 316); (2) grants Symetra's motion for leave to file a supplemental affidavit, (Docket Entry No. 347);

(3) denies as moot Rapid's motion to strike Symetra's motion for leave to file a supplemental affidavit, (Docket Entry No. 350); and (4) grants in part and denies in part Symetra's amended motion for summary judgment, (Docket Entry No. 329).   Symetra is not entitled under the Washington and Texas Acts to the fees and costs it incurred in this litigation.   Symetra is entitled to its fees and costs incurred in the *Gross* litigation ($87,859) and by Rapid's June 2007 contempt of court ($11,095).   Rapid must pay Symetra the amount of $98,954 no later than **December 22, 2012**. Final judgment will be entered by separate order.   No later than **November 30, 2012**, Symetra and NASP must submit a proposed form of final judgment.

SIGNED on November 21, 2012, at Houston, Texas.

Lee H. Rosenthal
United States District Judge